**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| IN RE: KUGEL MESH HERNIA PATCH LITIGATION | MDL Docket No. 07-1842-ML |
| as it relates to: ALL CASES | Hon. Mary M. Lisi |

# PETITION FOR APPOINTMENT OF A PLAINTIFFS' STEERING COMMITTEE, INCLUDING CO-LEAD PLAINTIFFS' COUNSEL AND LIAISON COUNSEL, AND ARGUMENTS IN SUPPORT OF PROPOSALS EFFECTING PROCEDURAL STRUCTURE

Plaintiffs Sonia Montiel and Carol Nunes-McNamara, *Montiel and Nunes-McNamara v. Davol, Inc., et al*, 07-064-ML, Lynn Jones, *Jones v. Davol, Inc. et al*, 1:07-cv-00190, and Bonnie Tompkins, *Tompkins v. Davol, Inc. et al*, 1:07-cv-00191 (the "Movants"), by their attorneys, submit this Petition For Appointment of a Plaintiffs' Steering Committee, including Co-Lead Plaintiffs' Counsel And Liaison Counsel ("PSC"), and Arguments In Support Of Proposals Effecting Procedural Structure. In support of their petition, Movants state as follows:

## INTRODUCTION

Movants respectfully move this Court to exercise its discretionary authority, consistent with (1) 28 U.S.C. § 1407; (2) the June 22, 2007 Transfer Order issued by the Judicial Panel on Multidistrict Litigation (the "JPML"); (3) the Supreme Court's decision in *Lexecon, Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach*, 523 U.S. 26 (1998), and other case law and secondary authorities; and (4) the Federal Judicial Center's MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004), and appoint a Plaintiffs' Steering Committee ("PSC") consisting of the twelve proposed member attorneys, including the designation of three attorneys

as Co-Lead Counsel and one of these lead attorneys (Mr. Donald A. Migliori) to serve the important role of Plaintiffs' Liaison Counsel. Accordingly, Movants respectfully submit that this Court should approve of the proposed organizational structure and enter Proposed Practice and Procedure Order No. 2, attached as Exhibit A.

In addition to the above motion for appointment of a Plaintiffs' leadership structure, Movants provide arguments in support of several procedural suggestions which Movants' counsel believe will increase the efficiency of this MDL litigation. These are all suggested agenda items for the September 27, 2007 initial pretrial conference. See letter to Clerk of Court, Exhibit B, dated September 6, 2007. First, Movants submit that this Court should designate certain actions pending in this District (and several other related actions transferred to this District) as "lead" or "bellwether" cases for purposes of discovery, motions and trial. With respect to these bellwether cases, Movants suggest the Court require the parties to submit a proposed framework for the trial of these bellwether cases and a proposed scheduling order with respect to discovery of the litigation as a whole. Additionally, Movants submit that this Court should direct Co-Lead Plaintiffs' Counsel to draft and file a Master Complaint for all individual personal injury actions in this MDL, as well as a separate consolidated amended complaint for medical monitoring class actions. Next, Movants submit that this Court establish a mechanism for the direct filing of cases into this MDL. Movants also submit that this Court extend its proclamation in Paragraph 5 of Practice and Procedure Order No. 1 – relieving Counsel in cases transferred from other Districts of their obligation to file an appearance before this Court – to all cases subsequently filed in the District of Rhode Island. Finally, Movants submit that this Court direct the parties to draft a proposed order for the preservation of evidence relevant to this litigation.

Movants advance this Petition and the accompanying proposals in the interests of judicial efficiency and to promptly secure Plaintiffs the legal and equitable relief they seek through this litigation. Movants recognize that the above proposals may require the input of Defense counsel. Should the Court find these proposals appropriate, Movants believe it possible for the PSC, if appointed by this Court, and Defense counsel to work together amicably to draft the necessary documents within a short period of time after the initial pretrial conference. As explained in more detail below, while this litigation is complex, its complexity should not equate to unnecessary delay and complication for the parties. Movants respectfully suggest that the matters raised in this Petition will efficiently advance the timely prosecution of these related cases, and that they will enable this Court to timely adjudicate the merits of Plaintiffs' claims and Defendants' defenses.

## BACKGROUND

Numerous lawsuits have been filed in various federal and state courts against Defendants Davol, Inc., and C.R. Bard, Inc., relating to their Composix Kugel Mesh Patch ("Patch"). The Patch at issue is a polypropylene mesh prosthetic device developed to repair ventral hernias, or hernias of the abdominal region. By design, the Patch is folded one or more times in order to be inserted into a patient's body. Once inside the abdomen, the Patch re-deploys as a result of its hard "memory recoil ring," which surrounds the mesh and is the primary component of the Patch. The actions allege that due to inherent defects in the Patch it is prone to breakage and migration both during and after insertion into the patient's body. The Composix Kugel Mesh Patch has and can cause serious injury, including: intestinal perforations; ring migration through the abdominal wall; abscesses; bowel obstruction and sepsis; and chronic intestinal fistulae (abnormal connections or passageways between the intestines and other organs). As a result of

this dangerous condition, and the numerous serious injuries that have occurred, the FDA issued Class 1 recalls of the X-Large Oval, Large Oval and Large Circle varieties of the Composix Kugel Mesh Patch starting in December 2005. Plaintiffs in all of the related actions claim they were injured as a result of Defendants' defective product and ask that relief be granted by the Court.

**A. Transfer, Consolidation and Coordination Pursuant to 28 U.S.C. § 1407**

On February 23, 2007, counsel for Plaintiffs Montiel and Nunes-McNamara (Motley Rice LLC and Wexler Toriseva Wallace LLP) moved the JPML for an Order, pursuant to 28 U.S.C. § 1407, that: (1) transfers the related actions, pending in United States District Courts around the country, as well as any cases that may subsequently be filed asserting similar or related claims, to this Court; and (2) consolidates those proceedings with Movants' actions. On June 22, 2007, the JPML granted Movants' petition and transferred the related actions to the District of Rhode Island.

At present there are 94 complaints that have been transferred to this Court, or will be transferred to this Court once the JPML issues its notice of tag-along actions. Each of the Complaints contains the same core allegations concerning Defendants and the subject devices. For the convenience of the Court, Movants have prepared the attached list of related actions and have conferred with defense counsel to ensure that the list is accurate and up to date – a process which is ongoing. *See* Exhibit C, List of Related Actions. As such, there is an immediate need for organization of the parties and the coordination of discovery efforts and motion practice to promote fairness, to avoid unnecessary duplication and ensure the most efficient use of the Court's, and the parties', resources.

### B. The Montiel, Jones and Tompkins Actions

The *Montiel* case is a proposed class action consisting of all persons who were surgically implanted with Defendants' defective product. Plaintiffs Montiel and Nunes-McNamara allege that they were implanted with Composix Kugel Mesh Patches and that the Patches present, and will continue to present, a substantial risk of injury or death to the Plaintiffs and the Class Members. As a result, named plaintiffs and the class have been injured and will need continual and ongoing medical monitoring.

The *Tompkins* and *Jones* cases were the first personal injury cases pending in this Court. They are both individual personal injury actions alleging severe injury as a result of the surgical implantation – and malfunction – of the Composix Kugel Mesh Patch. Moreover, as the *Jones* and *Tompkins* actions were originally removed to the District of Rhode Island by Defendants, it appears they are the only individual personal injury cases currently pending in the MDL that can be tried in this District pursuant to the Supreme Court's holding in *Lexecon*. 523 U.S. at 28. Should they be selected as "lead" or "bellwether" cases, Movants' counsel believe that the *Tompkins* and *Jones* cases could be ready for trial in less than one year. Resolving these cases will also, because of the common issues inherent in these cases, go a long way towards resolution of the litigation as a whole.

## PETITION FOR APPOINTMENT OF PSC

Movants respectfully request this Court appoint a PSC comprised of Co-Lead Plaintiffs' Counsel (Co-Lead Counsel), Donald A. Migliori, Teresa C. Toriseva and Ernest Cory, with Donald A. Migliori to also serve as liaison counsel to this Court. In addition to Co-Lead Counsel, the proposed PSC is comprised of the following attorneys: Alex Alvarez, Vance R. Andrus, Robert J. Binstock, Amy M. Carter, Lewis W. Garrison, Michael A. London, Jerrold S.

Parker, Christopher A. Seeger and Sol H. Weiss. Having this steering committee in place with these lawyers, who have already devoted substantial time and resources to advancing the litigation will achieve the goals of efficiency, organization and, ultimately, resolution. Proposed Practice and Procedure Order No. 2 identifies the duties and responsibilities each of these lawyers are willing to undertake.

**I. Appointment of Co-Lead Counsel and a Plaintiffs' Steering Committee is Critical to the Management and Success of Multi-Party Complex Litigation.**

"In multi-party, multi-case litigation, the district court's success is largely dependent on its ability to uncomplicate matters." *In re Recticel Foam Corp.* 859 F.2d 1000, 1004 (1st Cir. 1988). In complex matters such as this, one of the key organizational tools the district court has is to appoint a steering committee of counsel. *See* Manual For Complex Litigation (Fourth) § 10.221 (2004) (suggesting mechanisms to organize counsel and discovery in multi-party litigation); *see also In Re Linerboard Antitrust Litigation*, 292 F. Supp. 2d 644, (E.D. Penn. 2003) ("The multiplicity of suits requires that the district court be allowed to combine procedures, . . . recognize steering committees of lawyers, limit and manage discovery, etc., to minimize expense to all litigants and to provide judicial efficiency." (citing *In re Showa Denko K.K.*, 953 F.2d 162, 165 (4th Cir. 1992)).

Indeed, in "a case of this magnitude and complexity, it is imperative that counsel be well organized and work efficiently and harmoniously among themselves and with opposing counsel" to avoid additional costs and unnecessary time expenditures as a result of duplicative pre-trial proceedings. *In re Domestic Air Trans. Antitrust Litig.*, 1990 U.S. Dist. LEXIS 20095, at *1 (N.D. Ga. Dec. 21, 1990), see also MANUAL § 10.221 (Lead Counsel is to cooperate and work together with Defendant in developing and implementing a litigation plan). Appointment of Co-Lead Counsel and a PSC will surely provide such organization and efficiency in this case. After

all, the primary purpose of the proposed structure is to preserve and collect evidence and frame, write and argue and respond to pretrial motions – it simply makes sense for plaintiffs to speak with one voice on these issues rather than having the defendants respond to dozens of plaintiffs' counsel. Proposed Practice and Procedure Order No. 2 allows that to happen.

## II. Counsel Appointed as Lead Counsel or to a Steering Committee Should Have Exemplary Qualifications and Experience.

Appointment of the proposed Co-Lead Counsel and PSC, and the assignment of responsibilities to Co-Lead Counsel is consistent with the *Manual's* recommended organizational structure and ultimate goal of achieving "efficiency and economy" in this litigation. *See* MANUAL § 10.221. All counsel appointed to a plaintiffs' steering committee are charged with the ultimate responsibility of acting for, and in the best interest of, all plaintiffs throughout pre-trial proceedings by addressing matters of common concern and representing all plaintiffs when discussing such matters with the court and defendants. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2007 U.S. Dist. LEXIS 2650, at *18 (E.D.N.Y. Jan. 12, 2007) (citing MANUAL § 10.221 (2004)). As such, the court must appoint counsel to the steering committee who are fully capable and qualified to represent all parties on their side fairly and adequately.

When determining which counsel should be appointed to a steering committee, it is important for the court to assess the following factors:

- Qualifications, functions, organization, and compensation of designated counsel;
- Would-be designated attorneys' competence for assignments;
- Whether designated counsel fairly represent the various interests in the litigation;

- The attorneys' resources, commitment, and qualifications to accomplish the assigned tasks;
- The attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court; and
- The attorneys' experience in similar roles in other litigation.

MANUAL § 10.224. As discussed in the subsequent sections, proposed Co-Lead Counsel and the PSC satisfy these factors.

While nearly all of the transferred cases are brought as individual personal injury actions, the factors that a court is to look to when determining whether lead counsel should be appointed – as set out in the *Manual* – are analogous to the factors weighed by a court under Rule 23(g). In addition to meeting the general principles for complex litigation case management set forth in the *Manual,* Proposed Case Management Order No. 2 complies with Federal Rule of Civil Procedure 23's criteria governing the appointment of lead counsel. In considering the appointment of Class Counsel under Rule 23(g) of the Federal Rules of Civil Procedure, the Court is instructed to evaluate the following factors: 1) the work counsel has done in identifying or investigating potential claims in the action; 2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; 3) counsel's knowledge of the applicable law; and 4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

As discussed below in more detail, each of the counsel seeking appointment as Co-Lead Counsel and to the PSC have a great deal of experience with complex mass tort litigation. These attorneys and law firms have impressive qualifications, a long record of success in complex litigation and a demonstrated willingness to invest substantial resources in the prosecution of complex cases. They have already committed thousands of hours to this litigation and will vigorously and skillfully represent the interests of the individual plaintiffs. They have already

performed extensive legal and factual investigations into the matters at issue in this litigation and have held meetings, given presentations and written articles advising other plaintiffs' attorneys about these issues and the dangers presented by the Defendants' product. Their commitment is also demonstrated by the fact they have already established a litigation fund in this District to marshal the resources necessary to hire and retain experts for this litigation and manage the discovery process. Additionally, Co-Lead Counsel and the PSC, by their count, have the largest and diverse number of clients who are involved in this litigation. Therefore, the proposed organizational structure satisfies the factors set forth in the *Manual*.

## III. This Court Should Appoint the Proposed Twelve Attorney PSC, with Mr. Migliori, Mrs. Toriseva and Mr. Cory as Co-Lead Plaintiffs' Counsel, Based on Their Experience, Competence, and Integrity.

As lead counsel and committee members in several settled and pending MDL complex litigation proceedings, counsel proposed to serve as Co-Lead Counsel are fully capable of representing the plaintiffs in all actions during pre-trial proceedings and efficiently and effectively guiding all of the cases in this litigation. These seasoned counsel are prepared for the many tasks ahead, such as initiating, coordinating and conducting pre-trial discovery to develop evidence on issues common to all plaintiffs, calling meetings of counsel for plaintiffs for appropriate purposes, and acting as spokespersons for all plaintiffs at pre-trial proceedings and in response to any inquiries by the court. Moreover, as explained in this petition, these attorneys have already demonstrated an ability to efficiently and cooperatively work together in this litigation. MANUAL § 10.224. And, perhaps just as important, prior MDL experience has taught these attorneys the humility necessary to serve as lead counsel in complex civil litigation such as this.

Donald A. Migliori: Donald A. Migliori has reached the highest levels of the plaintiffs' bar. Among many other accomplishments, Mr. Migliori has: won multi-million dollar asbestos verdicts; litigated on behalf of the 9/11 families and victims of aviation disasters; and helped the States' Attorneys General with the Big Tobacco litigation. As the Court knows, Mr. Migliori understands his role as "the gatekeeper" in this Court and has committed to successfully negotiate with defendants whenever possible even under the most contentious of circumstances.

Working alongside Mr. Migliori will be several other highly accomplished and well respected Motley Rice attorneys, including Fred Thompson III and Rhett Klok. Fred Thompson has over twenty five years of trial experience in commercial, personal injury, toxic tort and mass tort law. Mr. Thompson currently leads Motley Rice's medical practice group, managing all cases related to defective medical devices, medical malpractice, nursing home abuse and harmful pharmaceutical drugs. Likewise, Rhett Klok has years of experience in complex litigation such as *In re Silicone Breast Implant Litigation* and the groundbreaking *Castanto v. American Tobacco Company, et al.* – which later became the forerunner of Third Wave of Tobacco Litigation. Mr. Klok has worked on a variety of consumer litigation, including several medical device cases such as this one. Both of these attorneys have worked on this litigation from its inception and bring substantial expertise to the table. The firm resume and attorney biographies of Migliori, Thompson and Klok can be found on the Motley Rice firm website at www.motleyrice.com.

i. Donald Migliori Should Also Be Appointed as Liaison Counsel.

The proposed Co-Lead Counsel, and the members of the proposed PSC, recognize the importance of having experienced and able liaison counsel to serve as a conduit to the Court. If appointed, Mr. Migliori will serve as a local presence for Plaintiffs spread across the country and

provide the Court with an easily accessible representative to respond to any inquiries or requests that may arise during the course of this litigation. Additionally, as noted in CMO No. 2, Liaison Counsel, Mr. Migliori will be responsible for several important acts, including, among other things: (1) accepting service of documents from opposing parties and counsel; (2) keeping an up-to-date service list and providing appropriate notice to all Plaintiffs' counsel where required by law, custom and practice or at the direction of this Court; and (3) acting as Treasurer for the PSC. In fact, Mr. Migliori has already started to fulfill his role as Treasurer, by establishing a Litigation Fund in this District. *See* Practice and Procedure Order No. 2.

Teresa C. Toriseva: Ms. Toriseva brings experience and expertise in the very area of law that is at issue in this case. She has been appointed to serve in leadership positions in many complex cases, including appointment to the Plaintiffs' Steering Committee for the Guidant Multidistrict Litigation, and the Medtronic Multidistrict Litigation, both defective medical device MDL proceedings pending in the United States District Court for the District of Minnesota. MDL Docket Nos. 1708 and 1726. She is also the current President of the West Virginia Association for Justice (formerly the West Virginia Trial Lawyers' Association) and a sustaining member of the American Association for Justice (formerly the Association of Trial Lawyers of America). On multiple occasions, she has been appointed Special Assistant Attorney General by the State of West Virginia to handle consumer protection and antitrust litigation. Finally, she has published articles on a variety of related legal topics, including: trial preparation; pharmaceutical and medical device litigation; mass torts; and preemption law.

Like Mr. Migliori's firm, Ms. Toriseva's firm, Wexler Toriseva Wallace LLP has a continuing commitment to this litigation, which it has been involved in from inception. The biographies of her partner, Edward A. Wallace (who has been appointed as lead counsel in

Federal District Court and other State Courts as lead counsel in his own right), and the associates that will be working with Ms. Toriseva and Mr. Wallace in this litigation can be found on the firm's website at www.wtwlaw.com.

Ernest Cory: Ernest Cory is a litigator with over twenty-five years of experience. He and his firm, Cory, Watson, Crowder & DeGaris also specialize in the type of complex litigation currently in front of this Court. Mr. Cory's practice focuses on medical device litigation, product liability, toxic tort and pharmaceutical litigation. His experience and talents in these fields will be directly applicable to this litigation. Additionally, Mr. Cory has held leadership positions – including lead counsel – in multiple MDL cases, including: *In Re: General Motors Corporation Dex-Cool Products Liability Litigation*, MDL No. 1562; *In Re: ProteGen Sling and Vesica Systems Products Liability Litigation*, MDL No. 1387; and *In Re: Phenylpropanolamine (PPA) Products Liability Litigation*, MDL No. 1407. The attorney biography of Mr. Cory is contained on the Cory, Watson, Crowder & DeGaris firm website at www.cwcd.lawoffice.com.

Like the proposed Co-Lead Counsel, the attorneys proposed to join them on the PSC have litigated countless complex civil actions and will draw on their combined experiences and resources to zealously represent all Plaintiffs involved in this MDL. As demonstrated by the attached firm résumés, these firms and attorneys have substantial experience and knowledge in litigating mass tort cases, which will prove essential in the litigation of these cases. They all represent plaintiffs and have agreed to work together for all plaintiffs. Just as importantly, each of these attorneys – from across the country – has demonstrated special talents in their field and will be a resource to be drawn upon during this litigation. Simply put, they are well qualified to lead this MDL and have pledged to work cooperatively to advance this litigation on behalf of others. As such, attorneys Alex Alvarez, Vance R. Andrus, Robert J. Binstock, Amy M. Carter,

Lewis W. Garrison, Michael A. London, Jerrold S. Parker, Christopher A. Seeger and Sol H. Weiss are qualified to serve on the Plaintiffs' Steering Committee and to assist Co-Lead Counsel in the pre-trial litigation of this matter.

Alex Alvarez: As the founder of The Alvarez Law Firm, Mr. Alvarez's practice focuses on complex civil litigation, including: pharmaceutical litigation, mass torts, product liability, medical negligence, and wrongful death. His experience and skill as a litigator have resulted in his inclusion on the PSC of multiple MDL actions. More specifically, he has served as Co-Chair of Trial Committee as a PSC member in the Medtronic MDL and on the Discovery Committee as a member of the PSC for the Vioxx MDL. The attorney biography of Mr. Alvarez can be found on The Alvarez Law Firm website at http://www.integrityforjustice.com.

Vance R. Andrus: Mr. Andrus' 35 years of legal experience have found him representing both plaintiffs and defendants. In fact, Mr. Andrus has founded firms focusing on both plaintiff and defense work – including Andrus, Boudreaux, PLC, where he has been a shareholder for the last twenty years. Of particular significance here is the fact that Mr. Andrus served for nine years as Chair of the Spitzfaden Breast Implant PSC in New Orleans. As such, he led a team of 23 law firms in simultaneous class action proceedings against Dow Chemical Corporation, Baxter Healthcare, 3M, Inc. and BritolMyersSquibb. After a successful six month trial against Dow Chemical Co., plaintiffs negotiated a settlement with the remaining defendants – resulting in over $200 million dollars in individual settlements for the class members. Currently, Mr. Andrus also serves as a member of the PSC Executive Committee in the Fosamax Products Liability Litigation, MDL No. 1789. The attorney biography of Mr. Andrus can be found on the Andrus, Boudreaux, Lemoine & Tonore, P.L.C firm website at www.abltlaw.com.

Robert J. Binstock: For the last twenty years, Mr. Binstock has been a shareholder with Reich & Binstock, practicing in the areas of mass tort, products liability, personal injury law, medical negligence and toxic tort law. He has served on several committees in MDL actions such as this one, including: *In re: Phenylpropanolamine ("PPA") Products Liability Litigation,* MDL No.1407; *In Re: Vioxx Products Liability Litigation,* MDL No.1657; *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* MDL No. 1358; *In Re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation,* MDL No. 1203. The attorney biography of Mr. Binstock can be found on the Reich & Binstock firm website at www.reichandbinstock.com.

Amy M. Carter: Since graduating Order of the Coif from The University of Texas School of Law, Amy Carter has represented plaintiffs in silicosis, latex glove, fen-phen, Bextra, Vioxx, Paxil and Kugel Mesh litigation. After joining Williams Kherkher Hart Boundas, LLP, in 2005, Amy has tried three cases involving eleven fen-phen cases to verdict and participated in three Vioxx trials. She is licensed to practice in California, Pennsylvania and Texas. The attorney biography of Ms. Carter can be found on the Williams Kherkher Hart Boundas, LLP firm website at www.williamsbailey.com.

Lewis W. Garrison: As a partner at Heninger Garrison Davis, LLC, Mr. Garrison's practice focuses on pharmaceutical products liability and commercial, consumer and environmental litigation. Mr. Garrison's MDL experience is vast and varied, as he has contributed as a committee member to the litigation of the following MDL actions: *In re Zyprexa Litigation*, MDL No. 1596; *In re Diet Drug Litigation*, MDL No. 1203; *In re Vioxx Litigation*, MDL No. 1657; *In re Baycol Litigation*, MDL No. 1431; *Neurontin Sales Practices and Product Liability Litigation*, MDL 1629; *In re Sulzer Orthopedics Litigation*, MDL No. 1401; *In re*

*Guidant Corp. Litigation*, MDL No. 1708; *In re Ortho Evra Litigation*, MDL No. 1742; *In re Medtronic, Inc. Litigation*, MDL No. 1726; *In re MasterCard International, Inc. Internet Gambling Litigation,* and *Visa International Service Association Internet Gambling Litigation*, MDL Nos. 1321 and 1322; *In re American General Life and Accident Ins. Litigation*, MDL No. 1429; and *In re Life of Georgia Industrial Ins. Litigation*, MDL No. 1390. The attorney biography of Mr. Garrison can be found on the Heninger Garrison Davis, LLC firm website at www.hgdlawfirm.com.

Michael A. London: Mr. London is one of the founding partners in the law firm of Douglas & London, P.C., located in New York City. He has devoted his career to representing injury victims, primarily in mass tort settings. His practice focuses on products liability litigation with an emphasis in pharmaceutical litigation. Over the years, Mr. London has been appointed to serve on multiple Plaintiff Steering Committees for Federal MDL actions, including: *In re: Ortho Evra Products Liability Litigation,* MDL No. 1742; *In re Imagitas Inc. Drivers' Privacy Protection Act Litigation*, MDL No. 1828; and *In re: Zyprexa Products Liability Litigation*, MDL No.1596 (Vice-Chair of PSC). The attorney biography of Mr. London can be found on the Douglas & London, P.C. firm website at www.douglasandlondon.com.

Jerrold S. Parker: Mr. Parker's 20 years of experience in mass torts – including defective medical device cases – add even further experience and expertise to this well qualified PSC. Like the other proposed PSC members, Mr. Parker has been appointed to several PSC in other Federal MDL actions, including: *In re Eli Lilly & Co. Prozac Prod. Liab. Litig.*, MDL No. 907; *In re Zyprexa Litigation*, MDL No. 1596; and *In re Ortho Evra Products Liability Litigation*, MDL No.1742. The attorney biography of Mr. Parker can be found on the Parker Waichman Alonso LLP firm website at www.yourlawyer.com.

Christopher A. Seeger: Mr. Seeger is a founding member of Seeger Weiss LLP and focuses his practice on complex and mass tort actions such as this one. He has been appointed to leadership positions in multiple federal MDL actions, including: *In re Vioxx Litigation*, MDL No. 1657 (Co-Lead Counsel), *In re: Zyprexa Products Liability Litigation*, MDL No.1596; *In re Ephedra Products Liability Litigation*, MDL No. 1598; PPA, *In re Rezulin Products Liability Litigation*, MDL No. 1348; *In re Propulsid Products Liability Litigation*, MDL No. 1355; *In re: Phenylpropanolamine (PPA) Products Liability Litigation*, MDL No. 1407. The attorney biography of Mr. Seeger can be found on the Seeger Weiss LLP website at www.seegerweiss.com.

Sol H. Weiss: As a shareholder in Anapol Schwartz, Mr. Weiss concentrates his practice on complex civil litigation, including cases involving products liability and the pharmaceutical and medical fields. He is a skilled litigator with 35 years of experience behind him. His abilities and successes are evidenced by the favorable resolutions he has obtained in the many complex civil litigation cases listed in his biography, which can be found on his firm's website at www.anapolschwartz.com.

## IV. Proposed Co-Lead Counsel Have Worked Together to Substantially Further This Litigation From its Outset – and Will Continue to Do So With the Assistance of the PSC.

Despite the fact that this litigation was only recently consolidated before this Court, proposed Co-Lead Counsel have been coordinating efforts of plaintiffs' counsel and working to further the interests of all of the plaintiffs touched by Defendants' acts since the outset of this litigation. Among other things, proposed Co-Lead Counsel have: successfully petitioned the JPML for transfer and consolidation of these cases before the District of Rhode Island; reached out to plaintiffs counsel around the country to organize and recruit other talented lawyers with

related cases to serve as the PSC; continually monitored federal dockets throughout the country for any related cases and provided timely notice to the JPML of these tag-along actions; held strategy meetings; given multiple presentations to other plaintiffs' lawyers relating to the facts, liability, damages involved in this case and the advisable method of case intake; written and published articles to inform other interested attorneys of the circumstances of the recall, the nature of the defect, and the status of the litigation; researched legal and evidentiary issues that will effect all of the related actions; reviewed tens of thousands of pages of medical records; argued substantive motions on issues that effect the claims of all plaintiffs; consulted with multiple experts; and pursued discovery in related State Court proceedings. Also, some of them have, for many months now, pursued litigation in Rhode Island State Court, which started well before these related Federal MDL proceedings began. In sum, proposed Co-Lead Counsel have already demonstrated that they are willing and able to fairly and adequately represent the interests of all of the Plaintiffs. As such, the general principles for complex litigation case management set forth in the *Manual* are satisfied, these attorneys are appropriately appointed as a PSC and Co-Lead Counsel for Plaintiffs in this MDL and Movants respectfully request Practice and Procedure Order No. 2 be entered.

## PROPOSALS RELATING TO PROCEDURAL STRUCTURE

Based upon the experience (both the good and the bad) they have gained in the litigation of similar MDL litigation, Proposed Co-Lead Counsel and the PSC submit the following proposals relating to the procedural structure of this MDL. Each of these proposals are set forth as suggested agenda items at the initial pretrial conference. Movants recognize that the implementation of these procedural devices would require consultation and negotiation with Defense counsel, along with the guidance and supervision of this Court. Also, Movants are well

aware that the Court has its own ideas about how to streamline this litigation, as well as its own concerns about the issues that may arise on the road ahead – Movants welcome the chance to discuss these additional ideas and concerns with the Court if the Court so chooses. Should this Court enter the proposed leadership structure, Movants respectfully suggest that they first confer with Defendants about these proposals (as well as others that may work), and then, perhaps in a few short weeks, submit a joint statement on these issues to the Court – together with proposed order(s). Where there are any disagreements, Movants suggest the parties each submit a brief (very brief) statement outlining the differences.

## I. Designating Certain Actions as "Lead" Or "Bellwether" Cases for Discovery, Motions and Trial on the Merits Is Appropriate

To obviate the recurring problems of delay and complexity in many multi-district litigations, the Federal Judicial Center's MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.132, at 224 (2004) (the "MANUAL"), emphasizes the power of "the transferee court [to] conduct a bellwether trial of a centralized action or actions originally filed in the transferee district." *Id.* (emphasis added). *See also* § 20.14, at 227 (noting the power of the transferee court to "treat one case as the 'lead case'"); § 22.36, at 372-75 (emphasizing the power of the transferee judge to try "lead" or "bellwether" cases). Movants submit that such "lead" or "bellwether" cases could be selected by Co-Lead Counsel and Defense counsel from among the cases pending in this District and cases filed elsewhere.

There is ample support in the *Manual* for the designation of "lead" cases and the use of a "bellwether" trial. *See Id.*, § 20.132 at 224 (emphasizing the power of "the transferee court [to] conduct a bellwether trial of a centralized action or actions originally filed in the transferee district"); § 20.14, at 227 (noting the power of the transferee court to "treat one case as the 'lead case'"); § 22.315 at 360 (same); § 22.36, at 372-75 (emphasizing the power of the transferee

judge to try "lead" or "bellwether" cases); § 22.56 at 397-98 (same); and § 22.93 at 463-68 (same). The Movants recommend that the Court designate "bellwether" cases from among the actions pending in this District, including the *Jones* and *Tompkins* actions. *See, In re Chevron USA, Inc.*, 109 F.3d 1016, 1020-21 (5th Cir. 1997) (recognizing that under appropriate circumstances, a trial court may try a "bellwether" trial of properly selected "representative" plaintiffs and use the results of that trial to resolve common issues alleged by the remaining mass of plaintiffs); see also James M. Wood, The Judicial Coordination of Drug and Device Litigation: A Review and Critique, 54 FOOD & DRUG L. J. 325 (1999). As Judge Parker of the Fifth Circuit stated in the *Chevron* decision:

> The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar. References to bellwether trials have long been included in the Manual for Complex Litigation. See MANUAL FOR COMPLEX LITIGATION §§ 33.27-28 (3d ed. 1995). The reasons for acceptance by bench and bar are apparent. If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts. Common issues or even common liability may also be resolved in a bellwether context in appropriate cases.

109 F.3d at 1019. In the words of one commentator, the trial of "test" or "bellwether" cases:

> ...involves the selection of a relatively few sample plaintiffs. These 'bellwether' plaintiffs' claims are then fully litigated prior to those of the remaining claimants. The expectation is that resolution of the bellwether plaintiffs' claims will provide a reasonable basis for evaluating the merits of the remaining claims and thereby enable the parties to reach an appropriate resolution of those claims.

Michael Dore, LAW OF TOXIC TORTS § 20:14 (2005) (footnote omitted) (citing, *inter alia*, *Perez v. Wyeth Labs., Inc.*, 713 A.2d 520, 521-22 (App. Div. 1998) (upholding the trial court's use of "bellwether" plaintiffs in mass tort action brought by consumers against the manufacturer of a prescription drug; "We agree with [the trial court's] analysis and decision to

select bellwether plaintiffs, as such practice of using bellwether cases is firmly established in the law"); *see also*, *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 702 (E.D. Tex. 1997) (contraceptive implant class action; "the court decided that ... bellwether trials were necessary to aid the court in determining the appropriateness of issue of certification").

The selection of "lead" or "bellwether" cases from among the cases filed in this District, and other related cases,[1] will permit the efficient litigation of the common issues that are enumerated in all the complaints filed in the related actions. As another commentator has stated, "in a mass products liability action, the presence or absence of an adequate warning, or the presence or absence of a manufacturing or design defect, might be proper common issues." Faulk, *Better Mousetrap?* 29 Tex. Tech. L. Rev. at 804-05. If the common issues are "selected carefully, a single bellwether/unitary trial can dispose of the entire controversy if the defendants prevail. If the plaintiffs prevail, favorable disposition of the common issues will streamline the remaining proceedings substantially ... The use of representative bellwether plaintiffs also serves one of the more traditional functions of bellwether trials, namely, to provide a reasonable projection of the value of the remaining untried claims." *Id.* at 805-06 (footnotes and citations omitted).

Approximately 94 cases from 30 districts have already been transferred to this Court. When all pretrial proceedings are complete, the MDL Panel will send dozens – if not hundreds – of lawsuits back to their respective transferor districts for trial, in accordance with the Supreme Court's decision in *Lexecon* 523 U.S. 26, 28. See, e.g., *In re New Motor Vehicles Canadian*

---

[1] As the Sixth Circuit opined, "[t]here are essentially four basic approaches in selecting representative plaintiffs: (1) plaintiffs' counsel selects all representatives; (2) each side selects an equal number of representatives; (3) plaintiffs' counsel or both sides nominate plaintiffs and the judge selects the representatives; or (4) representatives are randomly selected from established categories of plaintiffs." *Sterling* v. *Velsicol Chem. Corp.*, 855 F.2d 1188, 1196 n.6 (6th Cir. 1988).

*Export Antitrust Litigation*, 227 F.R.D. 156, 158 (D. Me. 2005). Again in the words of the *Manual*,"[i]n a number of recent MDL centralizations, transferee judges have exercised their discretion to select test cases for discovery, motions, and trial, and to coordinate their dockets with state courts handling similar cases." *Id.*, § 22.36 at 374 (footnotes omitted).[2] As such, Movants propose that the *Jones* and *Tompkins* actions, which were pending in this jurisdiction before the MDL transfer order, serve as bellwether cases and the parties stipulate to the bellwether trial of two or three other cases selected from those originally filed in other districts.

Proposed Co-Lead Counsel and members of the PSC are quite familiar with the use of bellwether cases – and the efficiency they can bring to MDL litigation – as many of them have previously taken part in MDL litigation (including the actual trial of these cases) where the Court has selected bellwether cases to proceed in advance of the crowd. The designation of bellwether cases allows the parties to conduct case-specific discovery. This narrows and focuses the issues facing the parties; allowing them to better determine the strengths and weaknesses of factual and legal arguments – at an early stage – which will play out in all of the cases contained in the MDL. It also allows the parties to take discovery common to all parties, which can and has led to an early resolution of litigation. Movants submit that the designation of lead or bellwether cases could have the same effect on this MDL.

As stated above, the *Jones* and *Tompkins* cases were pending in this District before the JPML transferred and consolidated the related actions before this Court. Therefore, the trials of *Jones* and *Tompkins* will inevitably occur in this District and these cases should be selected to serve as two of the bellwether cases. Additionally, Movants recommend that once this Court has

---

[2] *See also* MANUAL§ 22.315, at 360 (discussing selection of "test" cases and implementation of test-case strategy beginning at the pretrial stage); *id.*, § 22.93, at 463-68 (discussing the use of a test-case strategy at the trial stage). The *Manual* cites the following recent cases in which the "test" case approach was utilized: *In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 471-72 & n.l (E.D. La. 2001) (determining that a test case was the best approach to resolve plaintiffs' civil RICO claims), *aff'd*, 313 F.3d 257 (5th Cir. 2002).

created an appropriate case leadership structure it should direct Co-Lead Counsel for Plaintiffs to meet-and-confer with Defendants' counsel to agree upon a protocol whereby representative "bellwether" cases may be chosen. See MANUAL § 22.315, at 360 (emphasizing importance of choosing "bellwether" plaintiffs "and claims" that are "representative of the range of cases"); Faulk, *Better Mousetrap?*, 29 Tex. Tech. L. Rev. at 794-97, 801-05 (same). Movants suggest that this Court direct Co-Lead Counsel and Defense counsel to report back to the Court within two weeks with a list of two or three cases – in addition to *Jones* and *Tompkins* – they agree should serve as bellwether cases, along with a proposed scheduling order for the trial of these cases. Additionally, the parties should propose a procedural framework for how this litigation should proceed generally. Movants believe the bellwether selection process should be simple and should not lead to undue delay. If counsel cannot agree on the selection of bellwether cases, or stipulate to a proposed scheduling order, Movants propose that this Court require the parties to submit concise competing proposals.

## II. A Master Complaint for Individual Personal Injury Actions is Appropriate

A Master Complaint is a procedural device utilized to promote judicial efficiency and economy. *See* Diana E. Murphy, *Unified and Consolidated Complaints In Multidistrict Litigation,* 132 F.R.D. 597, 597-98 (1991). While not explicitly mentioned in the Federal Rules of Civil Procedure, numerous courts have interpreted Fed. R. Civ. P. 42(a) to permit the filing of a master complaint in cases consolidated for pretrial purposes. *See In re Propulsid Products Liab. Litig.*, 208 F.R.D. 133, 141 (E.D. La. 2002); *see also*, Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2382 (2d. ed. 1994). Furthermore, this procedural device has been utilized by courts in this District and throughout the First Circuit to promote efficiency and to reduce administrative burdens. *Gonsalves v. Derderian*, 2007 U.S. Dist.

LEXIS 7479 (D.R.I. 2007) ("the Court encouraged plaintiffs to adopt a master complaint in this action."); *In re Fidelity/Micron Secs. Litig.,* 1998 U.S. Dist. LEXIS 21698 (D. Mass. 1998) ("after appointing Lead Counsel, the court directed the filing of a Master Complaint…").

The well-settled rule is that a master complaint is merely a procedural device which does not alter the substantive claims or positions of the plaintiffs or merge suits into a single action. *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 262, 264 (D. Minn. 1989) (master complaint operates in place of the individual complaints for pretrial purposes and does not supersede them). Each case retains its individual identity. Coordination of Multiple Actions: 3.5 Coordination Techniques: Consolidated Pleadings Complex Litigation, § 3.5[A] (PLI Dec. 1998). In sum, a master complaint should be "considered as only an administrative device to aid efficiency and economy." *In re Propulsid Products Liability Litig.,* 208 F.R.D. 133, 142 (E. D. La. 2002).

Movants respectfully request that this Court enter an order establishing a Master Complaint for all individual personal injury actions in this MDL because it will serve as an organizational device to promote efficiency in the conduct of the MDL and to reduce the administrative burdens presented by complex litigation such as this. The Master Complaint shall not supersede nor be a substitute for the allegations made in each individual complaint regarding damages. Should this Court elect to appoint lead counsel (or co-lead counsel), Movants respectfully submit that this Court should permit lead counsel to draft and file a Master Complaint to be used by all other plaintiffs bringing individual personal injury actions, which can be adopted by those that have and will file their actions.

## III. Consolidated Amended Complaint for Medical Monitoring Class Actions

Plaintiffs in the *Montiel* action seek to represent a nationwide class of people who require medical monitoring as a result of the surgical implantation of the Patch into their bodies.

Movants expect similar medical monitoring cases will be filed in district courts across the nation. When these related cases are transferred to this MDL it will be beneficial for all of the medical monitoring class actions to precede under the same allegations and claims. See MANUAL § 21.25 ("[problems] may be solved by ordering or allowing the filing of a consolidated complaint that amends existing complaints to add the necessary or appropriate claims and parties. A single pleading, in a single action, can then serve as the vehicle for defining the proposed class and deciding class certification"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 175-76 (C.D. Cal. 1976) (holding the consolidation of pleadings for pretrial to be within a court's discretion, particularly in multidistrict litigation, and citing the economies gained), *see also,* Diana E. Murphy, *Unified and Consolidated Complaints in Multidistrict Litigation*, 132 F.R.D. 597, 598-600 (1991) (federal judge describing the factors courts should consider in deciding whether to order or allow consolidated pleadings). As such, Movants suggest that the Court enter an order requiring Co-Lead Counsel, if appointed, to draft a Consolidated Amended Complaint for all medical monitoring class actions.

## IV. Direct Filing of Cases into This MDL

As this Court is aware, Davol Inc., is located in this District and the JPML has determined that principles of equity, efficiency and justice make this District the favored location for these cases. Movants submit that these principles will be furthered by the Court encouraging Plaintiffs from across the country to bring their cases to Providence and file them directly into this MDL.[3] As members of this proposed PSC can attribute, this contributes greatly to the ease, efficiency and convenience of an MDL, as it allows for a central docket and file that can be monitored, managed and coordinated by the court. Movants submit that this Court should direct

[3] Courts presiding over other MDL litigation, including the District of Minnesota in *In re: Medtronic, Inc., Implantable Defibrillators Product Liability Litigation*, MDL No. 1726, have entered this very type of order in the past.

the parties to draft and enter a joint proposed case management order permitting the direct filing of cases and documents into this MDL.

## V. Filing Separate Appearances Is No Longer Necessary

On July 5, 2007, this Court entered Practice and Procedure Order Number 1. Paragraph 5 of that Order states:

> Counsel who appeared in the transferor district court prior to the transfer need not enter a separate appearance before this court.

*See* Practice and Procedure Order Number 1, ¶ 5. Movants submit that this paragraph should be expanded to encompass all cases subsequently filed in the District of Rhode Island. Absolving parties of the requirement to file a separate appearance will work in tandem with the creation of a Master Complaint to streamline the filings in this MDL.

## V. The Need for a Preservation Order

A litigant owes a duty "to take reasonable measures to preserve the integrity of relevant and material evidence." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 121, 692 N.E.2d 286, 290 (1998). Movants do not contend that they are aware of any wrongdoing or purposeful destruction of documents on behalf of Defendants; however, Movants propose that a preservation order is appropriate to better define the parties' responsibility and duty to preserve evidence – as it applies to the facts and circumstances of case. After all, by the time evidence that a preservation order is necessary becomes available, thousands of documents, including electronically stored documents such as e-mails, may be gone irretrievably. *See Keir v. UnumProvident Corp.*, 02 CIV. 8781 (DLC), 2003 U. S. Dist. LEXIS 14522, at **1-8, 31-32 (S.D.N.Y. Aug. 22, 2003). As such, a preservation can order be entered without evidence of wrongdoing. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 169 F.R.D. 598, 600 (D.N.J. 1997).

There is little question that businesses such as the Defendants' are generating and storing vast quantities of documents and data in electronic form. It has been estimated that in recent years, over 50% of all electronically generated data, including electronic mail ("e-mail") is not printed out in hard copy. *See* Joan E. Feldman, *Essentials of Electronic Discovery: Finding and Using Cyber Evidence* 1-2 (Glasser LegalWorks, 2003). There is a significant threat that relevant, electronically stored material may be destroyed in the normal course of Defendants' business, as part of a routine document retention policy or as part of routine system maintenance which may operate automatically. Movants, of course, are concerned that Defendants in this matter preserve both electronic and traditionally stored data and information that may be evidence in this case. A preservation order promotes judicial economy by sparing the Court difficult and time-consuming review to determine whether documents were improperly destroyed pursuant to a retention policy or pursuant to a routine maintenance procedure. Even if such a review were to be conducted, improperly destroyed documents would be irretrievable and, thus, lost to this litigation.

For these reasons, Movants request that the Court order, and that the parties undertake, the immediate preservation of all information, but especially computer-based information relevant to the issues in this case. Movants are not asking that Defendants do a wholesale revamp of an entire enterprise's document retention practices. Movants do suggest, however, the Court order the preservation of limited categories of electronically and traditionally stored information already made known to Defendants through the subject matter of the Complaints and previously served discovery requests. Because this litigation is in its earliest stages and Movants have no idea of Defendants' retention polices or bureaucratic structure, Plaintiffs further propose that the parties work together to identify key individuals or corporate departments likely to have relevant

information that should be preserved in order to minimize any interference with Defendants' normal business operations. *See* Fed. R. Civ. P. 26(f)(3) (regarding the obligation to promptly confer regarding electronic discovery issues). Movants suggest that the Court should direct the parties to negotiate a stipulated preservation order, and submit it to the Court within 14 days. Again, should there be a difference of opinion on this issue, those differences can be explained in a status report.

## CONCLUSION

For the reasons set forth herein and in order to provide for the orderly and efficient conduct of pre-trial proceedings in this litigation, Plaintiffs respectfully request that the Court enter the proposed Proposed Practice and Procedure Order No. 2, appointing Co-Lead Plaintiffs' Counsel comprised of attorneys Donald A. Migliori, Teresa C. Toriseva and Ernest Cory, with Donald A. Migliori to serve as liaison counsel, and appointing a Plaintiffs' Steering Committee comprised of attorneys Alex Alvarez, Vance R. Andrus, Robert J. Binstock, Amy M. Carter, W. Lewis Garrison, Michael A. London, Jerrold S. Parker, Christopher A. Seeger and Sol H. Weiss.

Additionally, Movants respectfully request that this Court consider the above proposals affecting the procedural structure of this MDL and allow counsel for Plaintiffs and Defendants the opportunity to discuss these submissions at the status hearing on September 27, 2007, and then, if the Court enters the leadership structure proposed in Proposed Practice and Procedure Order No. 2, allow Co-Lead Counsel and Counsel for Defendants the opportunity to discuss the procedural matters raised in this pleading and promptly provide the Court with a joint report (as well as a proposed order(s)) on these matters.

Dated: September 6, 2007

Respectfully submitted,

Donald A. Migliori (#4936)
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX

Teresa C. Toriseva
Nancy C. Wilkins
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV 26003
304-238-0066
304-238-0149 FAX

Fred Thompson, III
Rhett D. Klok
Carmen Scott
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
312-346-2222
312-346-0022 FAX

Ernest Cory
John Conlin
CORY WATSON CROWDER &
DeGARIS, P.C.
2131 Magnolia Avenue
Birmingham, AL 35205
(205) 328-2200

**CERTIFICATION**

I hereby certify that on this 6th day of September 2007, that a true copy of the within *Petition for Appointment of a Plaintiffs' Steering Committee* has been filed electronically and that it is available for viewing and downloading from the ECF system. I also certify that a true copy of this document was also mailed to all counsel of record.

/s/ Donald A. Migliori

Donald A. Migliori
RI Bar#4936
Motley Rice LLC
321 South Main Street
Providence, RI 02903
Telephone (401)457-7700
Fax: (401)457-7708