**IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA**

| | | |
|---|---|---|
| BRENDA GAYVONT, on behalf of herself and all others similarly situated, Plaintiff, | ) | CASE NO. 07-C-206K |
| vs. | ) | CLASS ACTION |
| DAVOL, INC., and C.R. BARD, INC. Defendants. | ) | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

2007 AUG 24 PM 3:03

Plaintiff, Brenda Gayvont, by and through her attorneys, brings this action individually and on behalf of all others similarly situated, and for their Class Action Complaint (hereinafter "Complaint"), allege the following upon information and belief:

**NATURE OF THE ACTION**

1. Plaintiff brings this action on behalf of herself and the Class defined herein against C.R. Bard, Inc. (hereinafter "Bard") and its wholly owned subsidiary, Davol, Inc., (hereinafter "Davol"), for their sale and distribution of defective Composix Kugel Mesh Patches. The Defendants' defective product has been surgically implanted into the body of the Plaintiff and the class members. The patch presents, and will continue to present, a substantial risk of injury or death to the Plaintiff and the Class Members. As a result, Plaintiff and the class have been injured and will need continual and ongoing medical monitoring.

**PARTIES**

2. Plaintiff Brenda Gayvont ("Brenda") is an individual citizen and resident of the State of West Virginia. During the relevant time period, Brenda had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into her body. That patch remains

in her body to date. Brenda Gayvont meets the definition of a class member set forth in this Complaint.

3. Defendant Davol Inc. (hereinafter "Davol") is and was a wholly owned subsidiary of Bard, with its principal place of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920. At all times relevant, Davol was a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business for manufacturing hernia surgical repair products in Cranston, Rhode Island. Davol designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners, certain hernia surgical repair products to be surgically implanted in patients throughout the United States, including the State of West Virginia.

4. Defendant Bard is a New Jersey corporation with its principal office and place of business at 730 Central Avenue, Murray Hill, New Jersey, 07974, and at all times relevant designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners, certain hernia surgical repair products to be surgically implanted in patients throughout the United States, including the State of West Virginia.

**JURISDICTION AND VENUE**

5. Ordinarily, the Federal Court would have diversity jurisdiction over the Class pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) of the Class Action Fairness Act of 2005 if Plaintiff and each member of the putative Class have suffered aggregate damages exceeding five million dollars ($5,000,000), exclusive of interest and costs and because there are members of the Class who are citizens of a different State than Defendants. While Plaintiff has chosen the forum of

this State Court to proceed with this class action, Plaintiff would respectfully proceed in Federal Court, as she would be obligated to do so, if there was jurisdiction and could claim, in good faith, that the jurisdictional threshold is met under the Class Action Fairness Act. That does not appear to be the case here at this time. In addition, whether to simply waive the jurisdictional threshold and proceed in Federal Court is not within Plaintiff's right, even if she wanted to do so.

6. Therefore, upon information and belief, and at the present time, Plaintiff believes the Class Action Fairness Act prohibits her from filing in federal court. Also, upon information and belief, approximately 100,000 devices were distributed throughout the United States. According to the U.S. Census Bureau, the State of West Virginia has approximately 0.6% of the United States population as a whole. *See* http://quickfacts.census.gov./qfd/states/54000.html. Taking these two numbers into account, approximately 600 hundred people in the State of West Virginia had these defective devices implanted in their bodies.

7. The medical monitoring program, while expensive, would have to exceed $8,333.33 for each member of the class to meet the jurisdictional threshold of the Class Action Fairness Act. Accordingly, it does not appear that this jurisdictional threshold will be exceeded at this time, and therefore, venue is proper in this Court as plaintiff resides in this district.

8. Plaintiff reserves the right to amend these pleadings as discovery develops on this issue and, to the extent these figures are challenged by the defendants, to seek discovery to determine the exact number of class members in the State of Vest Virginia. Upon information and belief, defendants have this information.

## GENERAL ALLEGATIONS

9. This class action involves the Composix Kugel Mesh Patch manufactured by Defendants between 2001 and January 2007. These Composix Kugel Mesh Patches were sold

by Defendants for implantation in patients in the course of hernia repair surgery.

10. A hernia occurs when the stomach muscles are too weak to contain the intestines, and as a result, a rupture occurs in the muscle wall which allows the intestines to protrude. The Composix Kugel Mesh Patch was designed to treat ventral hernias caused by the thinning or stretching of scar tissue that forms after surgery.

11. The Kugel Mesh line of products was first manufactured by Surgical Sense, Inc., starting in or around 1996. In January of 2000, Bard acquired the Kugel line of hernia repair products from Surgical Sense, Inc. Shortly thereafter, in 2001, Bard introduced the Composix Kugel Mesh Patch through its subsidiary, Davol.

12. The Composix Kugel Mesh Patch, invented by Dr. Robert D. Kugel, is a polypropylene mesh prosthetic device developed to repair ventral hernias, or hernias of the abdominal region. The Composix Kugel Mesh Patch is inserted behind the hernia defect in the abdomen through a small incision. In order to fit through the small incision the mesh is folded in half. Once inside the abdomen the mesh re-deploys as a result of a hard "memory recoil ring" (or "PET coil ring") that surrounds the mesh.

13. Due to defects in the design and manufacturing of the Composix Kugel Mesh Patch, the "memory recoil ring" that opens the patch can fail under the stress of placement of the product in the intra-abdominal space. Once the memory recoil ring has failed, it can later come loose and cause serious injuries as it travels through the body. These injuries include: intestinal perforations; ring migration through the abdominal wall; abscesses; bowel obstruction and sepsis; and chronic intestinal fistulae (abnormal connections or passageways between the intestines and other organs).

14. The Composix Kugel Mesh Patches present and constitute an unreasonable risk of

danger and injury in the following respects:

a. the memory recoil ring of the Composix Kugel Mesh Patch is likely to malfunction during, or after, it is implanted;

b. the Composix Kugel Mesh Patch was not properly manufactured;

c. the Composix Kugel Mesh Patch was defectively designed;

d. the Composix Kugel Mesh Patch did not perform as safely as an ordinary consumer/patient would expect;

e. the Composix Kugel Mesh Patch was inadequate or insufficient to maintain its integrity during normal use after implantation in the consumer/patient; and

f. such further and additional defects as discovery and the evidence reveal.

15. As a result of this dangerous and defective condition, and the numerous serious injuries that have resulted, the FDA issued Class 1 recalls of the X-Large Oval, Large Oval and Large Circle varieties of the Composix Kugel Mesh Patch. A Class 1 recall is the highest level of recall available to the FDA. It is issued when the FDA believes a medical product is dangerous or defective and predictably could cause serious health problems or death.

16. On December 22, 2005 and January 13, 2006, Davol and Bard announced the recall of the Composix Kugel Mesh X-Large patch. Subsequently, in March of 2006, the Defendants announced the recall of the Composix Kugel Mesh Large Patch as well.

17. Under these FDA recalls, the following products were subject to recall:

| | | | |
|---|---|---|---|
| PC#0010206 | Bard Composix Kugel | Extra Large Oval | 8.7" x 10.7" |
| PC#0010207 | Bard Composix Kugel | Extra Large Oval | 10.8" x 13.7" |
| PC#0010208 | Bard Composix Kugel | Extra Large Oval | 7.7" x 9.7" |
| PC#0010209 | Bard Composix Kugel | Large Oval | 6.3" x 12.3" |
| PC#0010202 | Bard Composix Kugel | Large Oval | 5.4" x 7" |

PC#0010204 Bard Composix Kugel Large Circle 4.5"

18. Then, on January 10, 2007, Davol and Bard expanded the recall to include all Composix Kugel Mesh Large Oval and Large Circle Mesh patches, as well as all products manufactured from January 2004 to January 2006, that had the same component design as the recalled manufacturing lots.

19. On information and belief, as of January 2007, roughly 100,000 Composix Kugel Mesh Patches had been sold. Upon information and belief, the vast majority of the patches which have been implanted are currently still inside patients residing in the United States.

20. At all times relevant, Defendants were engaged in the design, manufacturing, assembling, distributing, conveying and/or selling of the Composix Kugel Mesh Patch in their ordinary course of business. Defendants designed, manufactured, assembled and sold the devices to hospitals and physicians, knowing that they would be thereby sold to patients who needed hernia repair surgery, including Plaintiffs and all other members of the Class.

21. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid products were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, were not suitable for the purpose they were intended and were unreasonably likely to injure the products' users.

22. Defendants' Composix Kugel Mesh Patches are uniformly defective because they possess the same potential for breakage or malfunction of the memory recoil ring and, as a result, are subject to risk of resulting injury.

23. Defendants did not timely apprise the public and physicians of the defect in their Composix Kugel Mesh Patches, despite Defendant's knowledge that memory recoil rings had

failed due to the described defects. Defendants' concealment of a known defect from Plaintiffs and Class members equitably tolls any applicable statutes of limitation. No member of the Class could have discovered the existence of the defect in the implanted Composix Kugel Mesh Patches until at least December 27, 2005, when Defendants first began to provide notice of the recall.

24. Defendant's conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of the Plaintiff and the members of the Class.

25. The purpose of Defendants' conduct, directed at patients, physicians and consumers, was to create demand for and sell the Composix Kugel Mesh Patches. Each aspect of Defendants' conduct combined to artificially create sales of the Composix Kugel Mesh Patches.

26. As a direct and proximate cause of cumulative and indivisible nature of Defendants' conduct and the recalled Composix Kugel Mesh Patches, Plaintiff and the Class have suffered injuries and will require continual medical monitoring and care. Accordingly, Plaintiff and the Class have incurred and will continue to incur damages related to the recalled Composix Kugel Mesh Patches.

**NAMED PLAINTIFF'S EXPERIENCE**

27. Brenda underwent a hernia repair surgical procedure on October 2, 2006 at Ohio Valley Medical Center located in Wheeling, West Virginia, and, during the course thereof, Brenda's physician implanted a Composix Kugel Mesh Patch into her body.

28. The Composix Kugel Mesh Patch implanted in Brenda was designed,

manufactured, sold and distributed by Defendants, and was intended to be used by surgeons for hernia repair surgeries. Defendants represented these Composix Kugel Mesh Patches to be appropriate and suitable products for such purposes.

29. The Composix Kugel Mesh Patch in Brenda's body presents a serious ongoing health risk due to its defective design and/or manufacture.

30. As a direct and proximate result of Defendants' defective design, manufacture, function and/or inadequate warnings regarding the Composix Kugel Mesh Patch, Brenda has sustained, and will continue to sustain, injuries and damages, including, but not limited to, medical monitoring.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated, as members of a proposed West Virginia plaintiff class (the "Class") defined as follows:

> All citizens, residents or domiciliaries of the State of West Virginia who have had a recalled Composix Kugel Mesh Patch implanted into their person, which has not been explanted, and who have not previously filed a claim or lawsuit for personal injury and who do not currently suffer any manifestation of symptoms related to the product failure, but will require medical monitoring.

This action is brought and may properly be maintained as a class action pursuant to the provisions of Rule 23(a)(1)-(4), 23(b)(2), and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

32. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives,

employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

33. The Class is so numerous that the individual joinder of all its members is impracticable. As set forth in paragraph 6, the number of class members is at least several hundred.

34. Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

a. whether there are design and/or manufacturing defects in the Composix Kugel Mesh Patch;

b. whether Defendants failed to follow U.S. Food & Drug Administration ("FDA") good manufacturing practices, failed to properly investigate manifestations of the Composix Kugel Mesh Patch over the past several years, failed to adequately document reports of the defect, and failed to exercise adequate quality control;

c. whether Defendants' conduct in designing, manufacturing, marketing and monitoring the Composix Kugel Mesh Patch fell below the duty of care owed by Defendants to Plaintiff, Plaintiff's participants, and Class members;

d. whether Defendants intentionally, knowingly, carelessly, recklessly, or negligently concealed information regarding the existence of a defect in the Composix Kugel Mesh Patch from the FDA, physicians, Plaintiffs' members, and the members of the Class;

e. whether Composix Kugel Mesh Patch listed in the proposed Class definition share a common and inherent design defect that causes them to break, creating a risk of injury or death to patients in whom they were

implanted;

f. whether Defendants are liable for selling a dangerously defective product; and

g. whether the Class is entitled to medical monitoring and treatment, at Defendant's expense.

35. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the members of the Class have suffered similar injury and are facing further damages arising out of Defendants' common course of conduct, as alleged herein. The damages of each Class member were and are caused directly by Defendants' conduct, as alleged herein. Plaintiff and the members of the Class must prove the same facts in order to establish the same claims, as described herein, which apply to all Class members.

36. Plaintiff is an adequate representative of the Class because she has been billed for the Composix Kugel Mesh Patch and medical costs relating to such devices, and will continue to incur related medical expenses, and her interests do not conflict with the interests of the members of the Class she seeks to represent. Plaintiff has retained experienced and competent counsel, and together Plaintiff and counsel intend to prosecute this action vigorously for the benefit of the Class. The interests of the Class members will fairly and adequately be protected by Plaintiff and her counsel.

37. A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse, and an inequitable

allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all Composix Kugel Mesh Patch claims. By contrast, the Rule 23 class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

38. The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Rule 23(b)(1) and/or (b)(2) because:

a. the prosecution of separate actions by thousands of individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendants;

b. the prosecution of separate actions by individual Class members would also create the risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members who are not a party to such adjudications and would substantially impair or impede the ability of such non-party Class members to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

39. Plaintiff and the Class are consumers of the defective product and were injured by Defendants' tortuous conduct.

40. Had the Defendants not engaged in the conduct described above, Plaintiff and members of the Class would not require medical monitoring of their condition.

41. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff and Class members for the Composix Kugel Mesh Patches and/or for the costs of replacing the Composix Kugel Mesh Patches that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

## COUNT I

**(Breach of Implied Warranty of Merchantability)**

42. Plaintiff re-alleges and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.

43. Defendants are liable to Plaintiff for their breach of implied warranty of merchantability in the following respect:

a. Defendants designed, manufactured, distributed, and/or sold the Composix Kugel Mesh Patches which were implanted in Plaintiff. Defendants impliedly warranted to Plaintiff, her physicians and health care providers, that the Composix Kugel Mesh Patches were of merchantable quality and safe for the use for which they were intended.

b. The Composix Kugel Mesh Patch is designed or manufactured in an unsafe and unreasonably dangerous way. This condition is a result of inadequate or faulty testing, designing, developing, manufacturing, promoting, distributing, and/or sale of the Composix Kugel Mesh Patch.

c. Defendants knew or should have known that the Composix Kugel Mesh Patches at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

44. When the Composix Kugel Mesh Patch was distributed into the stream of commerce and sold by Defendants, they were unsafe for their intended use, and not of merchantable quality, as warranted by Defendants in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

45. Plaintiff is a hernia repair surgery patient who had the Composix Kugel Mesh Patch surgically implanted into her body. As such, Defendants expected, or reasonably should have expected, Plaintiff to use or be affected by the medical device.

46. As a direct and proximate result of Defendants' conduct and breach of their implied warranty, Plaintiff now requires medical monitoring.

## COUNT II

**(Negligence)**

47. Plaintiff re-alleges and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.

48. At all times herein mentioned, Defendants had a duty to Plaintiff and the members of the Class to provide a safe product in design and manufacture, and to warn Plaintiff and Class members of the defective nature of Defendants' devices. Defendants breached its duty of reasonable care to Plaintiff and Class members by incorporating a defect into the design of the devices, thereby causing injuries to Plaintiff and Class members.

49. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid products were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, and were unreasonably likely to injure the products' users.

50. Defendants so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the aforesaid products, that they were dangerous and unsafe for the use and purpose for which they were intended.

51. Defendants breached their duty of reasonable care to Plaintiff and Class members by manufacturing and assembling the devices in such a manner that they were prone to fail to operate and malfunction and expose Plaintiff and Class members to injury.

52. Defendants breached their duty of reasonable care to Plaintiff and Class members by failing to notify Plaintiff and the Class at the earliest possible date of known design defects in

the devices.

53. Defendants breached their duty of reasonable care to Plaintiff and Class members by failing to exercise due care under the circumstances.

54. As a direct and proximate result of the carelessness and negligence of Defendants, as set forth in the preceding paragraphs, Plaintiff and Class members have sustained and will continue to sustain damages, and are therefore entitled to compensatory damages and declaratory relief according to proof.

**COUNT III**

**(Medical Monitoring)**

55. Plaintiff re-alleges and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.

56. Plaintiff and the Class have been significantly exposed to a hazardous product through the tortuous conduct of Defendants. As a direct and proximate result of that exposure, Plaintiff and the Class have suffered an increased risk of incurring serious latent injury relative to individuals who do not have Defendants' mesh product surgically implanted in their bodies. This increased risk of injury makes it reasonably necessary for Plaintiff and the Class to undergo periodic diagnostic medical examinations different from what would be prescribed in absence of the exposure to Defendants' defective device. As such, medical monitoring is necessary and reasonably certain to be incurred as a proximate result of Defendants' conduct.

57. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class have incurred and will likely continue to incur medical costs relating to the Composix Kugel Mesh Patch, including medical monitoring and/or other hospital costs, in an amount to be proven at trial.

58. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class are entitled to injunctive relief in the form of a court supervised medical monitoring program.

59. Medical monitoring is medically reasonable and necessary in order to provide for the early detection and prevention of irreparable harm, severe and debilitating injuries and death. In the absence of such relief, Plaintiff and the members of the Class might not receive prompt medical care that could prolong their productive lives, increase prospects for improvement and to minimize disability.

60. Medical testing and monitoring procedures are currently available, including but not limited to CT Scans, to determine whether any problems have developed due to the implanted mesh patch.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, pray for judgment against Defendants as follows:

1. For an Order certifying the Class and any appropriate subclasses thereof under the appropriate provisions of Rule 23, and appointing Plaintiff and her counsel to represent the Class;

2. For an Order establishing a medical monitoring program, funded by Defendants, to provide medical testing, screening, services, research and education and a medical/legal registry to ensure that the Class members receive prompt and proper medical treatment;

3. For an award of attorneys' fees and costs;

4. For prejudgment interest; and

5. For such other and further relief as this court may deem just and proper.

## JURY DEMAND

Plaintiff on behalf of herself and all others similarly situated, hereby demands a trial by jury in this case.

Dated: August 24, 2007

Teresa C. Toriseva
WV ID#6947
Nancy C. Wilkins
WV ID#10098
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Fred Thompson, III
Rhett D. Klok
Fred Thompson
Henry Leventis
Carmen Scott
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
55 Monroe Street, Suite 3300
Chicago, Illinois 60603
312-346-2222
312-346-0022 FAX

Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX