**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § | |
| | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | § § | **JUDGE LISI** |
| | § | |

**PLAINTIFFS' POSITION PAPER REGARDING SCOPE OF MDL-1842**

The Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") intended for MDL-1842 ("MDL") to encompass all ring and mesh hernia patch products that were designed, manufactured or sold by the Defendants (irrespective of recall status) which demonstrate product failures, including all types of ring failures, as well as hernia patch migration and separation. For the reasons set forth below, Plaintiffs respectfully request this Court uphold the Panel's intent regarding the scope of the MDL.

## I. ARGUMENT

### A. MDL-1842 INCLUDES ALL RING AND MESH HERNIA PATCH PRODUCTS DESIGNED, MANUFACTURED OR SOLD BY DEFENDANTS

In its Transfer Order issued June 28, 2007, the JPML recognized that the MDL encompasses defects in various models of hernia patches manufactured and sold by Defendants. Transfer Order at 2 (App. A). The JPML did not limit the Kugel Mesh Hernia Patch MDL to certain types or models of Defendants' hernia patches. Furthermore, at no time did the Panel state the MDL was limited only to recalled hernia patches.

The Panel was aware of the various hernia patch product models manufactured and sold by Defendants, and that some of those models were not yet subject to recall. See Defs. Mem. at 3 (App. B). Nonetheless, the Panel did not denote in its Transfer Order that this MDL was to be limited to models subject to recall. Instead, the JPML used the broad phrase "various models of hernia

patches manufactured and sold by [Defendants]." Further, the JPML never limited the MDL to the specific "Composix" product.[1]

Defendants want this Court – and this MDL – to focus only on recalled products. But, problems with Defendants' defective hernia patch products reach far beyond the select models recalled by Defendants thus far. In fact, Defendants have had knowledge of similar defects in other hernia patch products, but have intentionally or negligently withheld this information from Plaintiffs, their physicians, the FDA and the public. For example, Defendants' own records show that as early as 2003, Defendants were aware the small oval hernia patch was subject to ring breaks. See email from Charlie Lema (App. C). The same records include documented "ring breaks" in large oval hernia patches in 2003 and 2004. The large oval hernia patches were recalled in March 2006. The small oval hernia patches have not yet been recalled, although Defendants are aware these products also fail.[2]

Defendants own actions show that the MDL is not limited to recalled Composix products. Approximately 220 cases have been transferred to the MDL thus far. Originally, thirteen (13) actions were submitted by Plaintiffs to the JPML for transfer. All of the remaining 200+ cases have been transferred at the Defendants' request. Of these, approximately forty-five (45) cases involve non-recalled hernia patch products manufactured by Defendants. Defendants now wish to limit the MDL to recalled products, when they themselves have requested that non-recalled hernia patches be included in the MDL. MDL-1842 should not be so limited.

---

[1] The word "Composix" does not appear in the Transfer Order. In fact, the parties agreed that all orders, pleadings, motions and other papers used in the MDL proceedings would bear the caption "In re: KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION" which, again, does not include the word "Composix."

[2] Even after select hernia patches were recalled, Defendants withheld valuable information from Plaintiffs, their physicians, the FDA and the public. For example, as late as October 23, 2006 – more than ten (10) months after the first recall – Defendants' sales representatives were informing surgeons that, because this was a voluntary and not an FDA-mandated recall, patients need not be informed of the recall. See Contact Report at 1 (App. D).

### B. MDL-1842 Encompasses All Types of Hernia Patch Product Failure, Including Not Only Ring Failures, But Also Patch Migration and Separation

Significantly, this MDL is not about "ring breaks." In its Transfer Order issued June 28, 2007, the Panel specifically recognized that this MDL involves "various types of defects." Transfer Order at 2. In making its determination to create MDL-1842, the panel reviewed thirteen (13) actions, as well as motions and memorandums from both Plaintiffs and Defendants. The thirteen (13) actions alleged different types of product failure. In their memorandum to the Panel, the Defendants obviously wished to limit this litigation to "ring break" cases, and therefore pointed out that, not only did the pending actions allege different types of product failure, but only two (2) of those cases alleged a "ring break." Defendants argued that because of this, these cases did not involve a common question of fact. The Panel, however, dismissed Defendants' argument.[3] The JPML did not limit the MDL to cases alleging "ring breaks." In fact, the phrase "ring break" was never used in the Transfer Order.[4] Instead, the Panel found that "all actions involve common questions of fact." More specifically, the Panel stated that "each of the thirteen MDL-1842 actions involves *allegations of defects* in various models of hernia patches manufactured and sold by [Defendants]." Transfer Order at 2 (emphasis added).

Given this ruling by the Panel, MDL-1842 encompasses all types of product failures involving Defendants' hernia patch products. Thus far, upon information and belief, Defendants' hernia patch products have failed in the following ways: ring weld spot failures, cracked or fractured rings (as opposed to breakage at the weld point), adhesions resulting from ring failure (integrity of patch shape compromised by product failure), and adhesions resulting from improper

---

[3] The JPML summarized Defendants' arguments stating, in part, "the actions [...] allege various types of defects" and then the Panel stated that it was "not persuaded by these arguments." Transfer Order at 2.

[4] The Panel was aware that Defendants were attempting to limit this MDL to "ring breaks" at the time of issuing the Transfer Order. Defendants used the phrase "ring break" or "ring weld break" at least a dozen times in their Memorandum of Law in Opposition to Plaintiffs' Motion for Transfer. (App. B)

instructions to surgeon (migration or slippage due to too few sutures as directed by Defendants). These product failures have occurred in recalled and non-recalled devices.

Not only do these hernia patches fail in a variety of ways, but "ring breaks" are also very difficult to detect. A break in a ring is difficult to find even before the hernia patch has been placed in a patient, much less after implantation. See email from Paula Lusignan (App. E). Because of this, patients can present to their doctor or the emergency room with a variety of symptoms, and can be incorrectly diagnosed at first. In fact, even Defendants' records document that "ring breaks" have been found "by chance during surgery unrelated to the mesh or ring." Contact Report at 1.

The difficulty in spotting a "ring break" – even by personnel trained and employed by Defendant before the mesh has been inserted – is yet another reason why the MDL's scope properly encompasses failures beyond simply "ring breaks."[5] When a surgeon sees the hernia patch has not retained its proper shape, but instead has folded upon itself, or worse, has wrapped around or attached itself to the bowel or other organs, it is the direct result of product failure. Such failure is likely caused by the ring breaking or shattering, but even if not, the ring has failed to do the job for which it was designed. This is product failure and should be included within the scope of the MDL, particularly since the JPML recognized these issues in its Order transferring these cases to this Court.

## II. CONCLUSION

Plaintiffs hereby respectfully request this Court find that the Judicial Panel on Multidistrict Litigation intended the scope of MDL-1842 to include all ring and mesh hernia patch products designed, manufactured or sold by Defendants (irrespective of recall status) which demonstrate product failure, including all types of ring failures, as well as hernia patch migration and separation.

---

[5] See App. E which states that Defendants' sales representative received a pre-implant patch from a doctor that had failed due to a break in the ring. Defendants' employee "had a difficult time finding the break."

January 2, 2008

On behalf of Co-Lead Counsel for Plaintiffs,

Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 (fax)

*MDL 1842 Plaintiffs' Liaison and Co-Lead Counsel*