**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § § | **MDL Docket No. 07-1842-ML** |
| | § § | **JUDGE LISI** |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | § § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR THE ENTRY OF A PRESERVATION ORDER**

Plaintiffs respectfully request that the Court enter Plaintiffs' Proposed Order For The Preservation Of Evidentiary Documents And Certain Discoverable Materials, attached hereto as Exhibit 1. In support of their Motion, Plaintiffs submit this memorandum of law:

## INTRODUCTION

Plaintiffs request the entry of a preservation order to precisely define Defendants' duties and responsibilities in preserving potentially relevant evidence (and that which may lead to relevant evidence). Without such an Order, this information may be inadvertently destroyed. Once evidence is destroyed, it is lost to the litigation, even if sanctions are later imposed. As such, a preservation order is necessary to preserve this potentially relevant information and to prevent future disputes and unnecessary motion practice. Plaintiffs concede that Defendants have an obligation to preserve documents under the Federal Rules; however, the scope and nature of that preservation is not entirely clear as it applies to this case. Plaintiffs' counsel merely seeks a clear directive from the Court as to the preservation of evidence. As already demonstrated to the Court, the parties' views differ drastically regarding the scope of this litigation; and therefore, what information qualifies as relevant and needs to be preserved. As explained herein, the parties still cannot agree on the extent of the Defendants' preservation

obligations (in this case) or an appropriate manner for this preservation to be carried out. A preservation order will properly outline duties and eliminate any further misunderstanding by either party.

## ARGUMENT

### I. Under the circumstances, Defendants' preservation obligations should be explicitly defined.

Defendants have a general duty to preserve evidence:

> Even where an action has not been commenced and there is only a potential for litigation, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. Where a party is on notice of potential litigation, the party is subject to sanctions for action taken which prejudice the opposing party's discovery evidence. *Allstate Insurance Company v. Creative Environment, et.al*. 28 Fed. R. Serv. 3d (District Court of Rhode Island, 1994).

Rules 26 through 37 of the *Federal Rules of Civil Procedure* generally govern discovery in federal courts. Defendants assert that the Federal Rules of Evidence regarding preservation apply, and therefore, a preservation order is not necessary. While it is true that the general obligations of the Federal Rules do apply, Defendants' specific responsibilities under those Rules (as they relate to this litigation) are not clearly defined. Defendants manufacture multiple types of mesh hernia patches which have been the subject of complaints. However, not every size and variety of these patches is currently represented in this MDL. As such, the scope and nature of their preservation responsibility is far from clear under the Federal Rules alone. A preservation order is a simple and efficient way to prevent future spoliation of evidence issues. It will add clarity to rules already in existence.

Defendants claim to have effectively placed a hold on information relating to recalled patches. Therefore, preserving additional evidence relating to non-recalled patches is not unduly

burdensome. *Williams, Jr. v. Mass. Life Ins. Co.*, 226 F.R.D 144 (D.Mass. 2005)(not unduly burdensome to order defendants to preserve all documents, hard drives and e-mail boxes which were searched by their forensic expert)(citing *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004), which held that "one seeking a preservation order [must] demonstrate that it is necessary and not unduly burdensome.").[1] Specifically, Plaintiffs request the immediate preservation of all evidence that has been determined to be within the scope of the MDL, which has been broadly defined to include: all nine (9) models of Bard® Composix® Kugel® Hernia Patches (Product Codes 0010201 through 0010209); all other Davol hernia patches with rings, including the Bard® Kugel® Hernia Patch; Bard® Ventralex® Hernia Patch; Bard CK Parastomal Patch; and Bard® Modified Kugel™ Patch; and other Davol hernia meshes with duel-mesh technology, including the Bard® Composix® E/X Mesh.

If, as Defendants claim, the preservation requirements of the Federal Rules are clear (and sufficient), then the entry of a preservation order will present no additional burdens on Defendants – as it will not expand Defendants' evidence preservation policies. The only way the entry of a preservation order could impose additional burdens on Defendants (beyond those imposed by the Federal Rules) is if the preservation they are currently conducting is inadequate and overly narrow.

## II. A Preservation Order is necessary to ensure that adequate steps are being taken to preserve evidence in this litigation.

A preservation order may be entered, even when there has not been intentional destruction. Once evidence has been destroyed, even if inadvertently, the direction of the

[1] In *Pueblo of Laguna*, the court ordered a document preservation order, and saw no reason "to consider whether Plaintiff is likely to be successful on the merits of its case in deciding whether to protect records from destruction. In the court's view, such an approach would be decidedly to put the cart before the horse." 60 Fed. Cl. at 138.

litigation can be unfairly manipulated.[2] Even though Defendants have taken steps for preservation, their attempts to preserve evidence have been inadequate. For example, Defendants issued a hold notice regarding Composix Kugel products, and distributed that retention letter to certain individuals. See attached Exhibit 2. However, Paul Bissett, one of Defendants' sales representatives, was not part of the distribution, nor did the recipients of this letter include territory managers or district managers. *See* Paul Bissett deposition p. 235, 16-22 and 236, 1-16. In his recent deposition, Bissett affirmed that no efforts were made to preserve information stored on his personal – Davol supplied – computer used for work purposes, and that to his knowledge he did not provide anything in response to any hold letter he *may* have received in the past. *Id* at 231-234. Plaintiffs' initial review of the documents produced thus far also appear to indicate that no similar responsive searches were performed (or documents produced) for any of Defendants' other territory managers or district managers. This group encompasses approximately 100-150 employees who were on the front line of dealing with doctors, hospitals and patients concerning the sale, distribution, and marketing of the subject Patches, and were also partially responsible for some aspects of tracking and reporting on device failures. Defendants' failure to take adequate steps to preserve the relevant information in their possession further demonstrates the need for a preservation order.

Additionally, the form of the electronic production implemented by Defendants is substandard and many documents have been overlooked due to insubstantial search criteria. Defendants designated *only 8 search terms* to determine the relevance of material to be produced:

- composix kugel
- ck

[2] The mere rebooting of a computer begins to erase the hard drive and an uninformed employee may be erasing material even if involuntary.

- xl
- ring break
- broken rings
- compkugle
- comkugle

Those are the only terms used in Defendants' search for electronic information. See Exhibit 3, Plaintiffs' 1/6/08 letter to defense counsel. This is simply not sufficient. This search ignores many of the most commonly used terms when referring to the problems and injuries at the heart of this litigation; terms such as: failure; migration; complaints; weld; recoil; malfunction; implant; fold; puncture; pierce; bent; crack; deteriorate; damage; injure and even patch – to name just a few. Plaintiffs have compiled a list of necessary search terms for Defendants' convenience, but Defendants have refused to expand their original searches using these terms. Defendants' extraordinarily limited search – for only 8 terms – means that all other documents are at risk of being lost forever.

Moreover, not only do these limited terms chosen by Defendants fail to capture all of the myriad ways that the Composix Kugel Patch (and all of the other hernia patch products now part of this MDL) are discussed within Defendants' own documents, Defendants failed to include basic variations of the few terms they deigned to include. For example, despite the fact that Defendants recognized that "xl" (referring to the extra large patches) was an important search term, Defendants' failed to search for standard variations of this term, and emails and documents containing the terms: extra large; x-large; x large; x-l; xlg; xlck; and xlkc would not have been discovered and preserved. Other examples of variations on these terms that would escape the small net cast by Defendants are: ring failure; defective ring; weld break; ring malfunction; mesh migration; and ring damage. Any document containing these very common terms would be relevant to Plaintiffs' cases.

As such, it is more than likely that relevant and discoverable information is not being preserved and produced to Plaintiffs. Therefore, the entry of a preservation order calling for an expansion of the search terms by Defendants is necessary. Moreover, in light of the relevant information they are sure to contain, additional searches are not excessively time consuming or costly. See Exhibit 3, pg. 3.

**III. A Preservation Order is not a novel, unusual, or impractical request in MDL proceedings and is appropriate in the current instance.**

Preservation Orders are routinely entered in MDL proceedings such as this. *See In re: Guidant Litigation,* MDL No. 1708 (D. Minn. Sept. 16, 2005)(issuing order); *In re: Propulsid Products Liability Litigation,* MDL No. 1355 (E.D. La., Apr. 19, 2001)(issuing order); *In re Baycol Products Litigation,* MDL No. 1431 (D. Minn. Mar. 4, 2002) (issuing order); *see also In re Celexa & Lexapro Prods. Liab. Litig.*, MDL No. 1736, 2006 U.S. Dist. LEXIS 91590 (E.D. Mo. Nov. 13, 2006); *In re Prempro Prods. Liab. Litig.*, MDL No. 1507 (E.D. Ark., Nov. 17, 2006)(issuing order); *In Re Bridgestone/Firestone Inc., MDL No. 1373,* 2001 U.S. Dist. LEXIS 2536 (S.D. Ind. March 6, 2001)(preservation order requiring good faith negotiation regarding preservation and production including information relating to non-recalled products).

Likewise, based on the deposition testimony above, Plaintiffs in this MDL have shown that a risk of loss exists if Defendants are not subject to a preservation order. It appears that key employees of Defendants were not notified of the mandatory hold and relevant documents are not being revealed due to loose search terms. Furthermore, as evidenced by the attached letter, Defendants refused to issue a broader hold letter including the products identified at the latest hearing, until a formal order was in place. See Exhibit 3. Defendants should have issued the letter without prompting by the Plaintiffs, as they were fully apprised of the scope of the MDL during the hearing. Defendants ask this Court to trust them to be the gatekeeper of this vital

information – to permit them to determine when and how the Federal Rules dictate preservation of evidence without input from Plaintiffs or guidance and direction from the Court. Yet, even after the Court determined that the scope of the MDL was broader than their current preservation hold, and Plaintiffs requested the requisite expansion of Defendants' preservation policy, Defendants refused to take steps to preserve relevant information until explicitly ordered to do so by this Court. This brings into question Defendants' entire approach to evidence preservation and, at a minimum, their "trust us to interpret and follow the rules" approach should be rejected.

## IV. Defendants refuse to negotiate a Preservation Order with Plaintiffs.

The advisory committee's notes to Federal Rule 26(f) require that "the parties' discussion on preservation should pay particular attention to the balance between the competing needs to preserve relevant evidence and to continue routine operations critical to ongoing activities . . . [t]he parties should take into account these considerations in their discussions, with the goal to agreeing on reasonable preservation steps." Defendants have refused to negotiate a preservation order in this case. They assert that the Federal Rules sufficiently guide their preservation of evidence. However, as evidenced by the advisory committee's notes, the Federal Rules contemplate that preservation will be tailored to the needs and circumstances of each individual case (through negotiations by counsel). The end result of these discussions is an agreed preservation order that both parties can live with. Unfortunately, that was not possible in this litigation. Prior to filing this Motion, Plaintiffs provided Defendants with a copy of the attached proposed Preservation Order and offered to negotiate its content. Defendants would not agree to a Preservation Order in any form.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter Plaintiffs' Proposed Order For The Preservation Of Evidentiary Documents And Certain Discoverable Materials, attached as Exhibit 1.

DATED: January 28, 2008

Respectfully submitted,

By: /s/ Donald A. Migliori ___

Donald A. Migliori (#4936)
Vincent L. Greene (#5971)
Leah J. Donaldson (#7711)
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX

Teresa C. Toriseva
Nancy C. Wilkins
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Ernest Cory
Jon C. Conlin
Stephen R. Hunt, Jr.
CORY WATSON CROWDER & DEGARS P.C.
2131 Magnolia Ave.
Birmingham, AL 35209
205-328-2200
205-326-7896 Fax

Fred Thompson, III
Rhett D. Klok
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
55 Monroe Street, Suite 3300
Chicago, Illinois 60603
312-346-2222
312-346-0022 FAX

*MDL 1842 Plaintiffs' Lead Counsel*