**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § § | **MDL Docket No. 07-1842-ML** |
| | § | |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | § § § | **Judge Mary M. Lisi** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR THE ENTRY OF AN ORDER DETAILING THE FORM AND FORMAT OF DOCUMENTS TO BE PRODUCED**

Plaintiffs respectfully request that the Court enter Plaintiffs' *Proposed Order Detailing the Form and Format of Documents to be Produced by Defendants*, attached hereto as Exhibit 1. In support of their Motion, Plaintiffs submit this memorandum of law:

## INTRODUCTION

Plaintiffs request the entry of this production order to precisely define Defendants' duties and responsibilities in producing discoverable evidence. For over a year, prior even to the formation of the current MDL, counsel for Plaintiffs and Defendants have been in disagreement over the form and format of the document production which should occur in this litigation. No agreement was ever reached on this matter and Defendants unilaterally determined that no metadata would be included in the production made to undersigned Plaintiffs in other non-MDL litigations. Defendants instead chose to simply "TIFF" the documents in a sanitized fashion without giving the matter another thought.

Plaintiffs were first provided this other inadequate production on September 20, 2007. *See Exhibit 2.* Along with the sanitized fashion of the production, Defendants stated that they

had relied on the presence of only 8 search terms to determine the relevance of material to be produced. These terms are:

- composix kugel
- ck
- xl
- kugel ring
- ring break
- broken rings
- compkugel
- comkugel

*Id.* at 2

Parties have since that time continued to engage in expansive verbal and written discussions regarding both the form and format of the production as well as the mechanism with which Defendants would go about identifying the documents which should be produced. *See Exhibits 3, 4, 5, 6, 7* (representative correspondences between parties dated 11/7/07, 11/21/07, 1/6/08, 1/17/08, 1/23/08, respectively). To date, the only compromise has been Defendants' recognition of their need to produce at least some limited metadata for e-mails, but their refusal to offer expanded search terms or to include any other metadata requested by Plaintiffs. *See Exhibit 7*.

With MDL-1842 discovery requests now having been served on Defendants for both the case specific ADR Plaintiffs and for MDL Plaintiffs in-common, and with parties at an impasse on production, Plaintiffs now seek guidance from the Court so as to prevent another unilaterally chosen, and unreasonably inadequate, production by Defendants delaying discovery and/or requiring duplicitous undertakings be either party. The Court's entry of the current production order will properly outline Defendants' duties and eliminate any further misunderstanding by either party.

## ARGUMENT

### I. THE PRODUCTION OF METADATA IS A RECOGNIZED ELEMENT OF DISCOVERY AS CONTEMPLATED BY THE FEDERAL RULES OF CIVIL PROCEDURE AND DEFENDANTS SHOULD BE REQUIRED TO INCLUDE IT IN THEIR PRODUCTION

Federal Rules of Civil Procedure ("FRCP") 34 provides that the parties may request "data compilation." "Data compilation" (or computer-stored information) includes all information retained on a computer or a computer system, and extends to information contained on hard drives, optical disks, magnetic computer tapes (often used as back-ups) and the network itself. *See Santiago v. Miles*, 121 FRD 636, 640 (W.D.N.Y. 1988); *Daewoo Elecs. Co v. United States*, 650 F. Supp 1003 (1986); *Momah v. Albert Einstein Medical Ctr.*, 164 F.R.D. 412, 418 (E.D. Pa. 1996) (ordering production of computer list screen to determine when documents were created); *Kleiner v. Burns*, 48 Fed. Rules Serv., 3d 644 (D. Kan. 2000) (defendant required to produce all forms of electronic data in its possession relating to defendant's claim, including voicemail, e-mail, program files, log files, cache files, cookies, deleted files, and back up files). Metadata is irrefutably an integral component of every electronic document or e-mail. Obtaining electronic computer files, including the synchronized metadata, rather than or in addition to hard copies is essential to discovery in today's increasingly electronic age, and metadata is an important piece of those electronic files.

#### A. <u>Metadata is Both Relevant and Essential to Understanding Electronic Production and Defendants Should Not be Permitted to Produce Electronic Documents Which Have been "Sanitized"</u>

Metadata is coding which shows, for example, how many times a document was worked on, when, the users who worked on it, and similar information. The information which metadata represents is created simultaneously by the application software at the moment a new electronic document or e-mail starts to be created and is stored on the computer along with the document's

own data as one data file. *See Exhibit 8* at 4 (Affidavit of Robert Guinaugh)**.** Put another way, metadata is not separated and stored in an unassociated state from the document "parent." *Id*. This electronic metadata is dynamic throughout the stages of initial creation and development, but is finalized once the user has saved the document or in the case of e-mails has sent the e-mail. *Id.* Such information is important because it can show if a document was prepared earlier or later than the other party contends, was altered, or that a certain individual had access to it. The relevance of metadata lies in the fact that a copy of an electronic document is not a 100% duplicate of the original without its metadata. *Id*.

Because metadata is no more than "other" data that is unique unto the document it was created with, then a producing party cannot without showing cause, scrub portions (metadata) of a data file (the document or e-mail). *See Exhibit 8* at 5**.** Defendants have an obligation to produce all relevant, responsive documents and e-mails in a complete manner. If Defendants believe that certain electronic documents or e-mails have metadata which reveals privileged information, they should be required to review the metadata first, before redacting any of the metadata. However, under no circumstances, should Defendants be permitted to arbitrarily “scrub” portions of a document's content (data) and/or unilaterally decide not to produce all computer stored information without first showing cause. *See GTFM, Inc. v. Wal-Mart Stores, Inc.,* 49 Fed. R. Serv. 3d 219 (S.D.N.Y 2000). This mass unilateral sanitization is what Defendants have already attempted to force upon Plaintiffs with their earlier inadequate and unresponsive production.

**B. <u>The Process of Producing Metadata in No More Labor Intensive or Expensive than Producing the "Scrubbed" Electronic Versions Defendants Unilaterally Produced and Production of Nearly Identical Metadata has been Ordered in Other Similar MDL Litigations</u>**

As a general rule, only the costs of searching and restoring inaccessible data should be shifted to the requesting party and it is understood that the producing party should always be expected to bear the costs, both in terms of time and money, of reviewing and producing electronic data. *See Zubulake v. UBS Warburg LLC*, 55 Fed. R. Serv. 3d 622 (S.D.N.Y. 2003); see also *Byers v. Illinois State Police*, 53 Fed. R. Serv. 3d 740 (N.D. Ill. 2002). The process of copying the metadata with the original document for production purposes is no more labor intensive or monetarily expensive than the TIFF scanning routine Defendants have previously determined they wanted to undertake. *See Exhibit 8* at 5. With the ease in which metadata can be coded and produced, along with the inherent importance and relevance contained therein, allowing Defendants to sanitize the production, as they have shown is their intention to do, is tantamount to letting a party unilaterally decide to redact otherwise discoverable information from all documents without showing cause. To further bolster the reasonableness of Plaintiffs current request, The Hon. Charles Breyer ordered a virtually identical metadata production in *In Re: Betxra and Celebrex Marketing Sales Practices and Product Liability Litigation*, MDL – 1699 to what Plaintiffs are currently seeking from this Court. *See Exhibit 9* at page 7-8 (Pretrial Order No. 10, Format of Pfizer Entities' Document Production).

As such, Plaintiffs now respectfully request the Court grant their motion and order Defendants to make all productions with the representative metadata as outlined by Plaintiffs in their *Proposed Order Detailing the Form and Format of Documents to be Produced by Defendants*, attached as Exhibit 1.

## II. DEFENDANTS SHOULD BE REQUIRED TO PERFORM MORE THAN A PERFUNCTORY EIGHT TERM KEYWORD DOCUMENT SEARCH WHEN INSURING ALL DISCOVERABLE MATERIALS ARE BEING PRODUCED

It is well-established law that in fulfilling discovery obligations, a party must produce all relevant "electronically stored information." *Bills v. Kennecott Corp*, 108 F.R.D. 495, 461 (D. Utah 1985); *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp. 2d 1050, 1053 (S.D. Cal. 1999); and *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No.94-2120, 1995 WL 649934, *2 (S.D.N.Y. Nov. 3, 1995). Since the 1970 amendments to the Federal Rules of Civil Procedure, the "growth in electronically stored information and in the variety of systems for creating and storing such information has been dramatic." *FED. R. CIV. P. 34*, Advisory Committee Notes (2006). These Rules have been amended to provide national rules for the unique issues surrounding e-discovery. Thomas Y. Allman, *The Impact of the Proposed Federal E-Discovery Rules*, 12 RICH J.L. & TECH. 13 (2006)

It is undisputed here that FRCP Rule 34 entitles the requesting party to inspect and copy electronic computer materials. If it is expected, however, that the responding party will have to search extensive computer files to obtain responsive materials, the requesting party is encouraged to specify search terms to be used. *See Alexander v. FBI*, 194 F.R.D. 316 (D.D.C. 2000); *Tulip Computers International BV v. Dell Computer Corp.*, 52 Fed R.. Serv. 3d 1420 (D. Del. 2002) (parties directed to agree upon list of search terms to be used in searching defendant's email files). Plaintiffs have repeatedly communicated with Defendants, both verbally and through written correspondence, about the need for an expansive search term index. *See Exhibits 3, 4, 5, 6.* Defendants have, on the other hand, unilaterally deigned to use only eight (8) search terms and have made no other endeavors to agree to an expansion of such. *See Attachment 7.*

### A. **<u>Defendants' Have Chosen a Restrictive and Unreasonable Search Criteria by which to Confirm Relevant Document will be Produced</u>**

In Defendants' October 15, 2007 correspondence accompanying its production, Defendants stated they had relied on the presence of only eight (8) search terms to determine the relevance of material to be produced. *See Exhibit 2*. These terms are:

- composix kugel
- ck
- xl
- kugel ring
- ring break
- broken rings
- compkugel
- comkugel

Not only do these limited terms chosen by Defendants fail to capture all of the myriad ways that the Composix Kugel Patch and other relevant hernia patch products are discussed within their own companies, Defendants failed to include basic variations (lemma) of the very terms they deigned to include. For example, the term "xl**"** which Defendants chose as a limiting search term actually has several variations ***in the very collection*** for which Defendants chose n***ot*** to include in their searches:

- extra large
- x-large
- x large
- x-l
- xlg
- xlck
- xlkc

Any time one of these other terms for "xl" was used in a document ***without*** one of the other seven (7) terms Defendants chose to employ, Defendants' searches would neither have identified the document nor flagged it for production. This example demonstrates, ***on the most basic level***, how relying on the limited and speculative list Defendants' generated guarantees that

relevant information will be ignored and thus not be produced to Plaintiffs. To more easily demonstrate the scale of Defendants' deficient identifying search Plaintiffs' experts have provided the following small sample of examples in KWIC (key word in context) of language in produced documents that would not have been produced but for the chance occurrence of one of Defendants' other document identifying terms:

- *pm to hutchinson tom subject ck **ring breakage** in canada tom i just wanted*
- *fective in mitigating any addition **weld breaks** the division needs to address*
- *all 5 5 of the confirmed **weld breaks** occurred prior to the expanded*
- *in the process three recoi l **ring fractures** were noticed the pt received a*
- *groin area several years ago the **mesh broke** loose didn t hold and he*
- *he asked if there were **ring breaks** on non recalled lots i said*
- *mesh vi possible consequences of **product failure** on patient safety i e possibl*
- *or lot numbers she reports the **mesh failed** 2 weeks after surgery a advised*
- *puerto rico a maxine perry 725 **mesh tore** brqf6157 puerto rico a maxine perry*
- *rico a maxine perry 726 mesh **patch malfunctioned** unknown puerto rico*
- *a k stevens 504 broken recoil **ring punctured** kidney colon or intestine*
- *robust safety factor the proposed **weld collapse** parameter would be 0 018 and*
- *t date dec 11 2002 kugel **monofilament break** 030 rm00302 request 4995*
- *diagram used as part of the **kugel failure** tnvestigation scope effects of*
- *0010202 unk skin ulcer part of **ring protruding** 84096 5 8 06 200600151 si*
- *2 1 06 unk piece of **mesh tore** away patient pain n a 1*
- *the explanted mesh and that the **mesh had folded** over and there was bowel*
- *he said it was the inner **ring that had broken** not the outer ring*
- *yes no comments theoretically the **ring will protrud**e into the abdominal wall*
- *may very well be that the **ring is bending** or in these cases crimping*
- *rough 724 sutures tore through 725 **mesh patch malfunctioned** 726 wouldn't lay fla*
- *across the weld was implicated in **weld break failures** conclusions it can be*
- *straight shots m mdr 309 memory **recoil ring cracked** n none reported*
- *testing showed that three of the **products tested failed** to meet the process*
- *rico tbd g kirksey 64 **broken recoil ring piercing** intestine infection*

- *was received in 2004 for the* ***mesh getting stuck in a hole*** *in the bowel*
- *beyond the local area of the* ***mesh however if the ring migrates*** *anteriorly*
- *upwards into the tissue above the* ***mesh the surgeon removed the broken*** *part*
- *sutured upper left of photo the* ***patch also appeared to be somewhat kinked***
- *recall other sizes of the kugel* ***patches and why the broken*** *recoil ring does*
- *mesh and eptfe layers of the* ***product or in some cases the ring was bent***
- *were confident that we were recalling any* **products with risk of ring weld breakage** *trend*

*See Exhibit 10* at 16

This evidence demonstrates that relevant and discoverable language is being overlooked by use of the Defendants' current identifying terms; and thus, Defendant's list is unquestionably inadequate. This obvious oversight by Defendants does not even address Plaintiffs' separate contention that the former production must be expanded to include information about non-recalled sized Composix Kugel Patches, Kugel Patches, other relevant memory recoil ring devices, and/or other relevant products as recently defined by this Court.

**B. Keyword Searches as Plaintiffs Propose are Both Reasonable and Accepted Forms of Identifying Discoverable and Responsive Electronic Materials**

Courts have implicitly accepted keyword searching performed by electronic discovery service providers. In Zubulake, the court discussed keyword searching performed by Pinkerton Consulting & Investigations and also noted by example the restoration and keyword searching capabilities of Applied Discovery and Computer Forensics Inc. *See Zubalke at 290* (S.D.N.Y. 2003). *See also Wiginton v. CB Richard Ellis, Inc.,* No. 02 C 6832, 2004 WL 1895122 (N.D. Ill. Aug. 10, 2004) (discussing restoration and keyword search processing by Kroll Ontrack in complex sexual harassment litigation).

In order to improve the quality of the Defendants' searches and insure that discoverable material was not ignored and/or wrongly withheld during production, Plaintiffs' experts

undertook a detailed statistical analysis of the materials currently produced and generated the attached list of key word search terms which should be performed in order to properly identify relevant and discoverable documents. *See Exhibit 10* (Affidavit of Suzanne Smith); See also *Exhibit 11* (Plaintiffs' Recommended KWIC Search Terms). While this list certainly appears to be expansive at first blush, the method for determining the search terms included therein was intensively researched in order to insure a complete production of discoverable materials.

Plaintiffs' experts analyzed every word of every document in the Defendants' original production, and taking into account the term list the defendants used, they made qualitative and quantitative assessments to determine several additional significant terms and concepts within the collection. *See Exhibit 10* at 12. As would be expected, Plaintiffs' experts determined that 'ring' is a key concept in this collection. Id.

The next step in Plaintiffs' investigation involved looking at the context in which "ring" and "rings" occurred in the collection and looked for collocations of "ring" and "rings", or words that appeared on either the immediate left or immediate of right of the terms. This analysis identified 120 terms that regularly occur in close proximity to ring and rings. *See Exhibit 10* at 13. Next, Plaintiffs searched the collection for "ring" or "rings" within proximity of these 120 terms. The results indicated that the top 3 most frequent terms are: (1) ring breakage, (2) ring break, and (3) ring breaks, respectively. *See Exhibit 10* at ***14.***

Based on this analysis, it is reasonable and highly likely that documents containing language about ring breakage and ring breaks were not produced based on the Defendant's search term list. In order to provide a comprehensive assessment of documents that contain language comparable to 'ring breakage', Plaintiffs' experts next identified synonyms, near synonyms and variations, plus lemma of both the terms 'ring' and 'break'. *See Exhibit 10* at 15**.**

Terms referring to the device, as well as device parts, were captured as "ring synonyms" and language that refers to the manners in which the device failed were captured in "break synonyms."

Plaintiffs' experts then established the relevancy of these search terms through context, not only by word collocations, or when words routinely occur next to each other, but also by whether or not terms typically occur within close proximity to one another throughout a collection of documents. *See Exhibit 10* at 20. Therefore, including proximity variables is a necessary and practical tool to determine the relationship between terms or concepts within a collection and prevent Defendants from collecting documents which would likely be unresponsive. Plaintiffs recommended search terms have included a proximity variable that required a ring synonym must occur within ten words of a break synonym. This is the proximity that Plaintiffs have recommended to be used in their recommended KWIC searches in Exhibit 11 based on the findings below:

| | **SIDE BY SIDE** | **WITHIN 3** | **WITHIN 10** |
|---|---|---|---|
| **TOTALS** | 37,678 occurrences in 7237 files | 66,367 occurrences in 9298 files | 138,168 occurrences in 11,493 files |
| **TERM** | Ring break | Ring within 3 of break | Ring within 10 of break |
| **EXAMPLES** | we are now up to 32 "ring break" complaints | products implanted with an intact "ring will break" after placement | wip test method weak spot in "ring stock missed by final insp y n break" obviously |
| | received that a complainant reporting a "ring break" meant that the product had some defect regarding the ring but that the ring itself was not broken | unable to determine what caused the "ring to break" dr reported that recoil ring breakage did cause colonic and small intestine fistula | a normal "ring will tend to break" at the welded joint so it is possible that the ring saw either some type of unusual stress or was possibly exposed to a sharp object |

*See Exhibit 10* at 20.

**C. <u>The Keyword Search Terms Which Plaintiffs Have Proposed are Not Unreasonably Burdensome and Could be Completed in a Similar Time Frame as Defendants' Own Restrictive Eight Term Search</u>**

In anticipation of Defendants' argument that the inclusive nature of these terms will add a great amount of time (and thus cost) to the identification, collection, and production process, Plaintiffs previously provided Defendants the following time trials conducted by Plaintiffs' experts.

**Test #1 - Oracle Search**
Arête Legal Language Processing Specialists used Oracle 10g to index and search PDF documents that are currently live on the Kugel Document Kiosk.

| | |
|---|---|
| Document Count: | 34,245 |
| Time to Index: | 9 hours approx. |
| Search time for Plaintiffs' Recommended Terms: | 15 min 17 sec |
| Search time for current Defense Terms: | 6 sec approx |

**Test #2 - LinguaLex**
Areté Legal Language Processing Specialists analyzed the entire current production made to Plaintiffs using (a) Plaintiffs' complete list of recommended terms as listed on the included attachment and (b) the 8 terms used by the Defendants. The test was run against the text for the live documents on the Kugel Document Kiosk in the format which Defendants originally provided them.

| | |
|---|---|
| Document Count: | 34,424 |
| Time to Index: | None (No Index required) |
| Search time for Plaintiffs' Recommended Content: | 4 min 59 sec |
| Search time for current Defense Terms: | 8 min 14 sec |

*See Exhibit 10* at 23.

As these tests demonstrate, the additional time required to use Plaintiffs' expanded and more comprehensive search criteria is minimal and in no way burdensome on Defendants in comparison with the obviously restrictive nature of their current search terms and the notable omissions of discoverable documents which Defendants' searches are undeniably permitting. Additionally, having provided Exhibit 11 to Defendants prior to this Court's recent ruling on the scope of MDL -1842, the search terms listed could obviously be broadened to incorporate the

myriad other combinations which would reasonably and rightfully be included. However, in a continuing effort to meet and confer with Defendants and reach a potential compromise, Plaintiffs informed Defendants on January 18, 2008 that we would not seek to expand the search criteria at this time believing the current KWIC search could provide sufficient discoverable materials and we welcomed an alternative KWIC search alternative which parties could then discuss. Defendants responded on January 23, 2008 that Plaintiffs' request was unreasonable and offered no other alternative.

As such, having demonstrated its reasonableness and scientific justification along with the lack of burden which its use would entail, Plaintiffs now respectfully request the Court grant their motion and order Defendants to use the full list of KWIC search terms proposed by Plaintiffs and provided within Exhibit 11 to this motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter Plaintiffs' Proposed Order Detailing the Form and Format of Documents to be Produced by Defendants, attached as Exhibit 1.

DATED: January 30, 2008

Respectfully submitted,

By: /s/ Donald A. Migliori ___

Donald A. Migliori (#4936)
Vincent L. Greene (#5971)
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX

Ernest Cory
Jon C. Conlin
Stephen R. Hunt, Jr.
CORY WATSON CROWDER & DEGARS P.C.
2131 Magnolia Ave.
Birmingham, AL 35209
205-328-2200
205-326-7896 Fax

Teresa C. Toriseva
Nancy C. Wilkins
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Fred Thompson, III
Rhett D. Klok
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
55 Monroe Street, Suite 3300
Chicago, Illinois 60603
312-346-2222
312-346-0022 FAX