# EXHIBIT 3

CORY WATSON
CORY WATSON CROWDER & DEGARIS, P.C.
ATTORNEYS AT LAW

JON CONLIN
205-271-7147
FAX 205-324-7896
JCONLIN@CWCD.COM

2131 MAGNOLIA AVE.
BIRMINGHAM, AL 35205
205-328-2200
WWW.CWCD.COM

November 7, 2007

Kirby T. Griffis, Esq.
Spriggs & Hollingsworth
1350 1st Street N.W., 9th Floor
Washington, DC 20005

**Re: Hernia Mesh Litigation, MDL-1842**

Dear Kirby:

We are providing this writing in advance of our scheduled November 15, 2007 conference call regarding Defendants' electronic document production. The purpose of this call will be to seek answers to some questions we have concerning the source information which your clients have identified as potentially responsive and discoverable and to also identify the scope and manner of how these source materials were designated. By touching on these issues during the November 15th call, we will hopefully effectuate a smoother and more efficient Rule 26(f) meet and confer in the next several weeks.

We anticipate that the actual meet and confer should be an in person gathering and parties should make every effort to schedule this in advance of the December 6th hearing with the Court. To that end, PSC representatives will come to next week's conference call prepared to calendar the 26(f) meet and confer and we request that you do the same. I believe that after the 26(f) meet and confer, we can be proactive and draft a strong discovery plan outlining for the Court the areas in which the PSC and Defendants agree and also be able to put the Court on notice of the areas in which we disagree and foresee the need for Magistrate Almond's involvement.

Without getting into a full blown discussion here of the discovery parameters in this litigation, Plaintiffs reasonably understand the facts of the case are such that substantial discovery will be required into Bard's and Davol's inventory maintenance and oversight, manufacturing divisions, sales divisions, regulatory divisions, risk management departments, legal compliance and oversight, FDA compliance division, product placement and advertising, firm public relations, and company policy and management. For each of these divisions, Defendants will ultimately need to identify by name and position the relevant IT custodians. Additionally, Plaintiffs will require, and will seek in the form of either a mutual agreement or Court Order, specific assurances and documentation that adequate protection and preservation measures have been in place and are continuing to be implemented. This will detail specifically what these preservations have been and how, if at all, they have changed since they were first implemented.

For the call on November 15, Defendants should be prepared to disclose by type and category what areas of the company (IT or otherwise) have discoverable information and what they've done to collect and preserve such information. Plaintiffs would also expect you to be prepared to at least broach the issue of what your clients are already deeming "inaccessible" (even though we have not served discovery requests yet in the MDL) so that we can have a meaningful 26(f) discussion on these topics when we next meet. Specific agenda items about which you should be prepared discuss during the November 15th call are as follows:

1) What specifically is being done to preserve the data sources which you and your clients have identified as potentially discoverable materials?
2) The DVD's produced to date in the state cases include no metadata, no native formats, no OCR, are not text searchable, and have no index or summary identifying what was produced. Is this how Defendants intend to make production in the MDL as well?
3) How will Defendants establish authenticity of the documents since there is no metadata provided?
4) For production of certain sources (i.e. spreadsheets, access, proprietary databases), will Defendants be willing to provide these documents in the native electronic format?
5) How were manufacturing, risk management, design, and FDA compliance and complication reporting documents originally maintained produced and maintained in the ordinary course of business?
6) Was a search done by Defendants of the sales forces communications? (which included all sales rep e-mails, text messages, and other forms of electronic communication used by Bard and Davol representatives)
7) How does the sales force communicate electronically? Within the company? Within the sales force? With the client/physicians who they serve?
8) Was there any on-line forum/feedback communication system set up to communicate with physicians?
9) How was the Kugel inventory monitored electronically?
10) Were specific individuals personal or "hard" files pulled? How were these individuals initially identified? What has been done to preserve up to date e-mail and documents which these individuals may produce or receive?
11) Please be able to identify all sources from which the production materials have originated (i.e. specific servers, locations, firms, systems, categories)
12) How many different types of electronic document formats do you anticipate are at issue?
13) How, and by whom, were manufacturing issues in Puerto Rico electronically monitored?
14) How, and by whom, were sales and distribution electronically monitored?
15) What sort of testing, monitoring, and follow-up procedures and databases or other electronic or manual tracking methods were maintained by Defendants for any returned patches, rings, or injury reports?

16) What are the e-mail systems which have been used by Defendants since 1990 and how are/were they set-up. What are the current software version? If different e-mail systems are employed for various business units, please have IT staff available to describe current and past implementations.
17) How are back-up tapes or back-up servers maintained?
18) What is the current company retention policy for electronic data and company e-mails?
19) How far back have you gone to identify the production which you made in the state cases?
20) What forensic searching has been performed and what search terms were used?
21) For key personnel Defendants anticipate Plaintiffs will request custodial files, be prepared to specify electronic document retention systems and policies, e.g., local hard drive(s), central network storage, or off-line disks. Also, for these personnel, be prepared to outline the computer refresh policy for these computer or laptops and whether previous computers or component parts for these personnel are still available.

The above list of topics is not all inclusive and your responses could obviously lead to other lines of questions. Producing parties have an obligation to be able to disclose the specifics of the IT infrastructure in terms of all relevant ESI produced and answers to the above questions will help both sides better identify the topics and issues which will need to be addressed in the face to face 26(f) meet and confer.

Finally, since we will have multiple parties on the call, we shall use the following conference call-in number on November 15, 2007, 3:00 pm EST:

1. Dial 1-866-809-4014
2. Enter pass code - 2717111 #

Should you have any questions in advance of the call, please do not hesitate to contact me.

Sincerely,

Jon C. Conlin

cc: Edward Wallace, Esq.
Richard Hood, Esq.
Rhett Klok, Esq.
David Buchanan, Esq.
Robert Guinaugh