# EXHIBIT 8

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| In re KUGEL® HERNIA REPAIR PATCH LITIGATION | § § § | MDL Docket No. 07-1842-MDL |
| THIS DOCUMENT RELATES TO ALL ACTIONS | § § | JUDGE LISI |

**AFFIDAVIT OF ROBERT B. GUINAUGH**

I, Robert Guinaugh, being of age and duly sworn, hereby do depose and say as follows:

1. I am the assigned electronic discovery consultant (EDC) of CyberControls, LLC, a computer forensics firm with a place of business at 18-3 East Dundee Road, Suite 302, Barrington, Illinois. I have been engaged in the electronic discovery consulting industry for over six years, and have been involved numerous electronic document productions, and I have provided consulting services to requesting litigants as well as producing litigants in state and federal litigation matters.

2. I have reviewed the Defendant's second round of electronic document production submitted in October, 2007 in the form of four digital versatile disks (DVDs) and one compact disc (CD). The documents and e-mails contained on this storage media reflect a protocol used by Defendant, which involved the process of initially scanning certain electronic documents, e-mails, and attachments with a follow-up conversion of those scanned files into "TIFF" images, which were then copied onto the DVD media disks and then delivered to Plaintiffs. A "TIFF" image is a tagged image file format, which is electronic copy or scan of the original document in its printed state. A "TIFF" image of a printed document is limited to the letters, word characters, and other apparent images that would only be visible to an observer of

that same document if it had been printed on paper. Upon further review and consultation with Plaintiff's retained document management firm, Arête Legal, additional manipulation and conversion processes were required to be performed by Arête Legal to facilitate a manageable method for Plaintiffs' counsel to conduct a preliminary assessment of what had actually been produced by the Defendants. This distilling process resulted in reconstructing over 282,010 individual "TIFF" images into a document count of 34,424.

3. After Plaintiffs' document management firm, Arête Legal performed its distillation process, was readily apparent that the Defendant's production of the "TIFF" imaged documents and e-mails were devoid of any associated metadata. Other missing information of equal importance and relevance that was not provided with Defendant's electronic production includes summary information about each document. Summary information typically includes the owner of the document, a description of which device the document was collected from, and the location where the actual document was stored on the device that it was collected from with a Bates stamp for each distinct document. Without this vital descriptive information for each document, it is pure speculation as to its authenticity and whether a proper chain of custody has been followed by the producing party.

4. An electronic document is a rich source of information additional to the text or other content intentionally created by the author. Metadata can be characterized as data about data and includes information such as creation and edit dates, authorship, usage history, e-mail recipients including blind copy recipients (b.c.c.) and senders, keywords, location and spreadsheet calculations. The information which metadata represents is created simultaneously by the application software at the moment a new electronic document or e-mail starts to be created and is stored on the computer along with the document's own data as one data file. This

electronic metadata is dynamic throughout the stages of its initial creation and development, but is finalized once the user has saved the document or in the case of e-mails has sent the e-mail. This information is embedded in all electronically stored information (ESI) files including web pages and electronic documents and is generally hidden from the computer user. The relevance of metadata lies in the fact that a copy of an electronic document is not a 100% duplicate of the original without its metadata. Metadata may be particularly useful in the discovery process as it can be used to authenticate documents or establish facts such as when a file was accessed or who created it. Furthermore, by reviewing metadata, one may be able to uncover previously deleted text, comments inserted in a document, the identity of persons who have worked on or viewed a document and the dates and times when they did so.

5. It is my opinion that the form in which Defendant has produced their ESI, being "TIFF" images, is not in a form or forms in which Defendant ordinarily maintains its electronic word processing documents, e-mail communications, electronic spreadsheets and other transactional data files. Because metadata is no more than "other" data that is unique unto the document it was created with, then a producing party cannot without showing cause, scrub portions (metadata) of a data file (the document or e-mail). It is my understanding that the production of these "TIFF" image files preceded the initial e-discovery conference call with Defendant's counsel, Kirby T. Griffis, Esq., of Spriggs & Hollingsworth, in which I participated, along with Plaintiffs' attorneys, with the express purpose to discuss numerous aspects of electronic discovery and production details in preparation of the pending 26(f) meet and confer conference. Among other things covered in that November 15, 2007 e-discovery conference call was the Plaintiffs' insistence that the production of "TIFF" images which was completely devoid of any associated metadata was unacceptable and would continue to be so with all future

discussions of ESI production with the Defendant. As an alternative to the "TIFF" image only approach for production enlisted by Defendant, Plaintiffs' attorneys have specified that Defendant would need to incorporate other available methods for the production of ESI that would include the metadata associated with every electronic document and e-mail to be produced by the Defendant. The process of copying the metadata with the original documents for production purposes is no more labor intensive or monetarily expensive than the TIFF scanning routine Defendants have chosen to undertake.

6. Plaintiff is requesting that the metadata be produced in a comma delimited file containing the following metadata information for each document produced:

i. Doc # or Prod # - Doc # start and Doc # end
ii. Title/Subject
iii. Sent Date/Modified Date – email, or Created date for E-docs
iv. Received Date
v. Author
vi. Recipients' name
vii. Carbon Copies (c.c.)
viii. Blind copies (b.c.c.)
ix. Mentions
x. Source
xi. Description
xii. MD5 hash
xiii. Folder Path for E-docs, or PST/NSF path
xiv. Media Source
xv. Page Count – for tiff it will be 1
xvi. Original File Name
xvii. Doc extension
xviii. File Size
xix. Confidentiality {y/n}
xx. Redaction present {y/n}
xxi. Auto Date {y/n}
xxii. Macro {y/n}
xxiii. Auto file name {y/n}
xxiv. Auto file path {y/n}
xxv. Speaker Notes {y/n}
xxvi. Track changes {y/n}
xxvii. Password protected {y/n}
xxviii. Hidden data – cell formulas {y/n}

xxix. Foreign language doc?

xxx. complete or incomplete doc -- can have an explanation field here

7. For all remaining physical (non-electronic) documents, Plaintiff requests that they be scanned at no less than 300 dpi with Group IV compression.

Further your affiant sayeth not.

Signed under the penalties of perjury this twenty-eighth day of January, 2008.

Robert B. Guinaugh

SUBCRIBED and SWORN to before me this 28th day of January, 2008.

"OFFICIAL SEAL"
JEAN T MERZ
NOTARY PUBLIC STATE OF ILLINOIS
COMMISSION EXPIRES 04/12/08

Notary Public