**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO:** | § | **Chief Judge Mary M. Lisi** |
| Alford, No. 1:07-cv-01963-ML-LDA | § | |
| Edgar, No. 1:07-cv-01849-ML-LDA | § | |
| McNeir, No. 1:07-cv-01863-ML-LDA | § | |
| Tompkins, No. 1:07-cv-00191-ML-LDA | § | |
| Jones, No. 1:07-cv-00190-ML-LDA | § | |
| Collins, No. 1:07-cv-01912-ML-LDA | § | |
| Swallow, No. 1:07-cv-00426-ML-LDA | § | |
| Hyland, No. 1:07-cv-01851-ML-LDA | § | |
| Smith, No. 1:07-cv-01937-ML-LDA | § | |
| Wilkins, No. 1:07-cv-01870-ML-LDA | § | |

**DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S OBJECTION TO MAGISTRATE'S DENIAL OF MOTION SEEKING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendant Davol Inc. and Defendant C.R. Bard, Inc. respectfully submit this objection to the Magistrate Judge's January 22, 2008 order (Docket #245) denying Defendants' Motion Seeking *Ex Parte* Contacts with Plaintiffs' Treating Physicians (Docket #77).[1] The Magistrate Judge's order relied entirely upon Judge Fallon's decision in *In re Vioxx Products Liability Litigation*, 230 F.R.D. 473 (E.D. La. 2005), but this decision should not control the outcome of Defendants' motion here.

[1] In order to avoid needless duplication of many of their original arguments, Defendants incorporate and refer the Court to the arguments and authorities set out in their original motion (Docket #77). In addition, because the Magistrate Judge's order was issued without the benefit of Defendants' reply memorandum (which would have been due on January 29th; Magistrate Almond issued his order on the 22nd), this objection in part constitutes that reply, addressing points raised by plaintiffs in their opposition (Docket #171) to which Defendants have not yet had an opportunity to respond.

Whether to allow Defendants *ex parte* contacts with the plaintiffs' treating physicians is a procedural question committed to the discretion of this federal Court. *See Shots v. CSX Transp., Inc*., 887 F. Supp. 206, 207 (S.D. Ind. 1995) ("Under the federal rules, district court judges are given wide discretion to supervise the discovery process, and their decisions are subject to review only for abuse of discretion."); *id*. at 208 ("[T]he Federal Rules of Civil Procedure leave to the district court the discretion whether to allow *ex parte* conferences."). Indeed, plaintiffs' original opposition readily concedes that this Court has the discretion "to design [a] discovery process" that serves "the best interests of the litigation as a whole and can prohibit or allow discovery techniques and devices as it sees fit." (Pls.' Mem. in Opp. 2 (Docket #171).) The Court should exercise its discretion and allow *ex parte* contacts in the ten cases selected by plaintiffs for imminent alternative dispute resolution ("ADR"). To do so will streamline discovery in those cases without impinging upon any substantive state law privilege that the plaintiffs have not already waived with the institution of this litigation. For these reasons, the Magistrate Judge's order should be set aside, and Defendants' Motion Seeking *Ex Parte* Contacts With Plaintiffs' Treating Physicians should be granted.

## ARGUMENT

### I. The Sole Question Before This Court Is Whether Plaintiffs Have Effectively Waived Any Applicable Doctor-Patient Privilege By Filing Suit – And They Have.

Plaintiffs' opposition to Defendants' motion suggests that Defendants' request for *ex parte* contacts should be denied because it would be too just too difficult for the Court to give Defendants their rights to have such contacts. *See* Pls.' Mem. in Opp. 1 ("Given the complex nature of this case, the conflicts among the applicable substantive law of the States and the expedited discovery process already implemented by the Court, this request offers no benefit that would justify the privacy violations and numerous other procedural problems it will create.").

Contrary to plaintiffs' suggestion, the only question to be resolved is whether the relevant state law recognizes a doctor-patient privilege and, if so, whether the plaintiffs' choice to file a lawsuit has effectively waived that privilege. The answer to this question is relatively straightforward: In each of the eight states implicated by the present motion, Defendants' unchallenged analysis of state law suggests that, to the extent a doctor-patient privilege is recognized, that privilege is waived – in whole or in relevant part – by the plaintiffs' decision to file suit. (*See* Defs.' Mem. 5-6 (citing decisions finding waiver of doctor-patient privilege under Louisiana, Missouri, Nebraska, New York, North Carolina, Texas, Utah, and West Virginia law); *see also* Pls.' Mem. in Opp. 4 ("Plaintiffs are not disputing that they have put their physical condition at issue.").) Once any applicable privilege is waived, federal law presents no obstacle to Defendants' request for *ex parte* contacts with the plaintiffs' treating physicians. *See, e.g.*, *Weiss v. Astellas Pharma, U.S., Inc.*, No. 05-527-JMH, 2007 WL 2137782, at *5 (E.D. Ky. July 23, 2007) ("[A]bsent a privilege, no party is entitled to restrict an opponent's access to a witness, however partial or important to him." (quotation marks and citations omitted)).

Much of plaintiffs' argument against Defendants' request for *ex parte* contacts is a red herring. There is little doubt that state *procedural* law will govern – and may preclude – *ex parte* contacts in state court proceedings. This principle accounts for the vast majority of the case law that the plaintiffs muster in support of their opposition. But the fact that state court procedural law may dictate such a result in cases litigated before a state court does not prevent this Court from reaching a contrary result. *See, e.g.*, *Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 207 (S.D. Ind. 1995) (allowing *ex parte* contacts despite apparent state law prohibition on same, finding that federal procedure governed *ex parte* contacts "even though the federal rule differs from Indiana's state rule"); *Felder v. Wyman*, 139 F.R.D. 85, 91 (D.S.C. 1991) ("[T]he Federal

Rules of Civil Procedure govern the discovery conducted in this case. Nothing in those Rules prohibits informal [*ex parte*] interviews of the type which plaintiff seeks to prohibit."); *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) (allowing *ex parte* contacts, noting that "while the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a [physician] witness who is willing to speak."). Plaintiffs cannot and apparently do not dispute that numerous federal courts faced with the very question before this Court have looked beyond state procedural law to allow *ex parte* contacts.[2] *See, e.g.*, *Patton v. Novartis Consumer Health, Inc.*, No. 4:02-CV-0047, 2005 WL 1799509, at *3 (S.D. Ind. July 25, 2005) (overruling magistrate judge's recommendation barring *ex parte* contacts, finding that "the magistrate judge's reasoning erroneously defers to the state courts on matters of procedure in this federal civil case"); *see also Weiss v. Astellas Pharma, U.S., Inc.*, No. 05-527-JMH, 2007 WL 2137782, at *4 (E.D. Ky. July 23, 2007) ("Numerous federal courts have held that a defendant is entitled to conduct *ex parte* interviews with a plaintiff's treating physicians.").

## II. *Ex Parte* Contacts Are An Efficient, Effective, And Essential Discovery Tool In This Complex Litigation.

Although plaintiffs decry the use of *ex parte* contacts because of the burgeoning size of this litigation, it is the very scale of this litigation that necessitates informal interviews with plaintiffs' treating physicians. The efficiency of *ex parte* contacts is particularly critical to the ten cases selected by plaintiffs' counsel for imminent ADR. It is true, as plaintiffs point out, that

[2] After lengthy argument, plaintiffs' opposition concedes that numerous courts have in fact allowed *ex parte* contacts with treating physicians based upon some of the very same principles set out in Defendants' motion. (*See* Pls.' Mem. in Opp. 10 n.14 (admitting that another District Court's decision to allow *ex parte* contacts in similar circumstances "is merely another example of the lack of consensus among the courts addressing this matter").)

much of the information Defendants seek to obtain through *ex parte* interviews can be obtained through formal written or deposition discovery. What plaintiffs fail to recognize, however, is that the formal discovery "alternatives" they propose are costly, time-consuming, and perhaps unnecessary endeavors that the current ADR schedule will not accommodate. As the *Doe* court recognized more than 20 years ago, *ex parte* contacts make discovery "less costly and less likely to entail logistical or scheduling problems; [they are] conducive to spontaneity and candor in a way depositions can never be; and [they are] a cost-efficient means of eliminating non-essential witnesses from the list completely." *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 127 (D.D.C. 1983). These many practical considerations are the impetus behind Defendants' request for *ex parte* contacts here. Defendants should not be alone in seeking ways to reduce the burdens of this litigation. Rather, it should be the goal of the Court and the parties alike to streamline these MDL proceedings as other courts have done.[3]

## III. Plaintiffs' "Public Policy" Arguments Against *Ex Parte* Contacts Are Speculative And For This Reason Have Been Rejected Time And Again In View Of The Demonstrable Benefits Of *Ex Parte* Contacts.

Plaintiffs' hypothetical "public policy" arguments pale in view of the inherent efficiencies presented by the use of *ex parte* contacts. Plaintiffs postulate that *ex parte* contacts have the potential to subvert crucial witnesses, subject doctors to civil liability, and generally bring the downfall of the medical profession. Each of these arguments has been rejected by every federal court that has allowed *ex parte* contacts. *See, e.g.*, *Felder v. Wyman*, 139 F.R.D.

---

[3] For the reasons advanced by Defendants here, other MDL courts have allowed *ex parte* contacts in analogous circumstances. *See*, *e.g.*, Order, *In re Aredia & Zometa Prods. Liab. Litig*., No. 3:06-MDL-1760 (M.D. Tenn. May 10, 2007) (Ex. A); *In re Orthopedic Bone Screw Prods. Liab. Litig*., MDL No. 1014, 1996 WL 530107, at *2 (E.D. Pa. Sept. 16, 1996) (lifting ban on *ex parte* contacts as need for case-specific preparation progresses, noting that such "restrictions on a defendant 'hinders ... trial preparation by restricting the gathering of relevant evidence in an informal fashion, thus requiring the more expensive and time-consuming procedures of a formal deposition'" (quoting *Williams v. Rene*, 72 F.3d 1096, 1103 (3d Cir. 1995)).

85, 88-89 (D.S.C. 1991) (rejecting policy arguments in favor of restricting defendant's access to treating physicians and allowing *ex parte* contacts); *see also Weiss v. Astellas Pharma, U.S., Inc.*, No. 05-527-JMH, 2007 WL 2137782, at *5 (E.D. Ky. July 23, 2007) ("While it is true that plaintiff has a fiduciary relationship with his treating physicians and that plaintiff's medical records are confidential, with the filing of this lawsuit, plaintiff has placed his medical condition at issue."); *Shots v. CSX Transp., Inc*., 887 F. Supp. 206, 208 (S.D. Ind. 1995) ("Where the plaintiff does not suggest that any other medical condition exists which merits protection from disclosure, the policy considerations which protect the physician-patient relationship can safely be subverted to those policy considerations which expedite the discovery process."). Furthermore, plaintiffs point to no evidence that any of the horrible results posited by the plaintiffs in each of these prior cases have come to pass, nor is there any indication that they would here.[4]

## IV. Fundamental Fairness Dictates That Defendants Be Allowed To Conduct *Ex Parte* Interviews With Plaintiffs' Treating Physicians, Who Are Important Fact Witnesses.

Plaintiffs assert that "the only ruling that may be uniformly applied to all of the cases in this MDL is to prohibit *ex parte* communications between Defendants and Plaintiff's treating physicians in all of the cases." (Pls.' Mem. in Opp. 2.) Of course, if uniformity were the only goal, then the alternate relief requested in Defendants' motion[5] would be far more acceptable because it would at least treat the parties equally.

---

[4] Of course, it is just as easy to postulate ways in which plaintiffs' counsel could improperly manipulate doctors – most notably by threatening them with litigation if they do not cooperate and give favorable testimony. The rules of professional responsibility, not a blanket ban on *ex parte* contacts, is the proper answer to the supposed problem of witness intimidation.

[5] Defendants' motion requested leave of court to engage in *ex parte* communications or, in the alternative, that attorneys for *both* parties be prohibited from engaging in *ex parte* contacts with the plaintiffs' treating physicians. (*See* Defs.' Mem. 9, n.3.)

Plaintiffs' suggested "uniform" approach only highlights the basic inequity in plaintiffs' opposition to Defendants' request for *ex parte* contacts. Plaintiffs hope to perpetuate their exclusive, informal access to treating physicians. Yet each party should have equal access to the plaintiffs' treating physicians – to speak to them, if they are willing, and to efficiently and effectively prepare these cases for ADR. After all, "no party to litigation has anything resembling a proprietary right to any witness's evidence." *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.D.C. 1983); *see also Weis*, 2007 WL 2137782, at *5 ("Treating physicians are percipient fact witnesses, and as such, the information and opinions they possess should be freely accessible to both parties ... as would be the case with any other ordinary fact witness." (quoting *Sipes v. United States*, 111 F.R.D. 59, 61 (S.D. Cal. 1986)). And, despite plaintiffs' position, "[t]he [doctor-patient] privilege was never intended . . . to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time." *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.D.C. 1983).

**V. Judge Fallon's Decision In *Vioxx* Should Not Control The Outcome Here.**

The Magistrate Judge improperly deferred to Judge Fallon's decision in *In re Vioxx Products Liability Litigation*, 230 F.R.D. 470 (E.D. La. 2005), to conclude that Defendants' motion should be denied. In the *Vioxx* decision, Judge Fallon was not asked to rule on the substantive law of eight states, but was asked to craft a rule that implicated the "separate laws of fifty states." *Id*. at 477. For this reason, Judge Fallon's decision placed heavy emphasis on the general principles behind the doctor-patient privilege without delving into the nature or extent of any waiver of that privilege. Here, the substantive laws of only eight states are involved, and in each case the doctor-patient privilege is undoubtedly waived by the plaintiff's decision to file

suit. For this additional reason, the Magistrate Judge's reliance on the *Vioxx* decision is misplaced, and the broad order derived from *Vioxx* denying all *ex parte* contacts – when Defendants request only *ex parte* contacts in each of the eight cases currently set for ADR – is clearly erroneous and should be set aside.

Here, Plaintiffs concede that even under *their* (incorrect) analysis Defendants would be permitted unilateral *ex parte* interviews in three states at issue. (*See* Pls.' Mem. in Opp. 6-8 (conceding that even from plaintiffs' perspective *ex parte* contacts are *not* prohibited in Missouri, Nebraska, and New York).) Given this concession, the Magistrate Judge's order denying all *ex parte* contacts plainly goes too far, and it should be set aside for this reason alone.

**CONCLUSION**

For these reasons, and for the additional reasons set out in Defendants' original Memorandum of Law, Defendants' Motion Seeking *Ex Parte* Contacts With Plaintiffs' Treating Physicians should be granted and Defendants should be allowed to engage in *ex parte* contacts with the treating physicians implicated in the ten cases currently set for ADR.

Dated: February 5, 2008

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

s/ Kirby T. Griffis
Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J. Cople, III
1350 I Street NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendant C.R. Bard, Inc. and Defendant Davol Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2008, the foregoing DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC'S OBJECTION TO MAGISTRATE'S DENIAL OF MOTION SEEKING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS was electronically filed with the clerk of court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon the Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
Motley Rice LLC
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
Fax: (401) 457-7708
Email: dmigliori@motleyrice.com
*via facsimile and electronic mail*

s/ Kirby T. Griffis

# Exhibit A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| AREDIA and ZOMETA PRODUCTS LIABILITY LITIGATION (MDL No. 1760) | ) | No. 3:06-MDL-01760 Judge Campbell/Brown |
| | ) | |
| This Document Relates to All Cases | ) | |

**O R D E R**

A telephone conference was held with the parties to discuss Norvatis' request for *ex parte* communication with medical witnesses (Docket Entry 407). After discussion with counsel, the Magistrate Judge is of the opinion that Norvatis should be entitled to contact various medical providers and, accordingly, the motion is **GRANTED.**

Norvatis has attached to their request a sample authorization to allow review of medical records and to discuss the records with providers (Docket Entry 407, p. 9 of 46). That authorization should be modified in one respect. Following the sentence, "Although this authorization permits you to speak voluntarily to the Records Requester as described above, you are not required to do so and may refuse, in which case the Records Requester may only speak to you concerning my care, treatment, and records through a deposition." The following should be added: "If you wish you may also request that an attorney representing the patient (Plaintiff) in this matter be present on any telephone call or meeting."

Norvatis should, insofar as practicable, advise the

Plaintiff Steering Committee when they will be making these contacts so the Steering Committee can have someone standing by if there is a request. Of course, it is possible that Norvatis will receive a return call outside the anticipated hours. If someone from the Steering Committee is not available, Norvatis may proceed.

Following the *ex parte* communications, Norvatis should promptly notify the Plaintiff's Steering Committee of which individuals they have talked to.

The Plaintiff's Steering Committee brought up the issue of the scheduling of the deposition of their expert in Miami. They advised that at the present time he is out of the country and will be back in the country and available May 15, 2007, but will be leaving shortly thereafter to go on a long-planned vacation out of the country. They state that they have tried to schedule his availability for two consecutive days, but given his travel and surgery schedule, they have been unable to clear a day except for May 15, 2007. The parties should go ahead and book May 15th. The Magistrate Judge will not limit the length of the deposition on that day to seven hours, but will allow the deposition to continue as long as the parties and the witness can reasonable proceed.

In the event the deposition cannot be completed despite extended hours on May 15th, the parties should schedule a firm date as soon as practicable thereafter.

It is so **ORDERED**.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge