**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO:** | § | |
| *Montiel et al. v. Davol, Inc., et al.*, 1:07-cv-00064 | § | **Judge Mary M. Lisi** |
| *Horowitz et al. v. Davol, Inc. et al.*, 1:07-cv-01865 (E.D.N.Y. 1:07-cv-02392) | § | **Magistrate Judge Lincoln D. Almond** |
| *Horton v. C.R. Bard, Inc. et al.*, 1:07-cv-01945 ( 3:07-cv-00636) | § | |
| *Kane v. Davol, Inc. et al.*, 1:07-cv-01914 (W.D.Mo. 4:07-cv-00575) | § | |
| *Boggs v. Davol, Inc. et al.*, 1:07-cv-01934 (S.D.Ill. 3:07-cv-642) | § | |
| *Bost et al v. Davol, Inc. et al.*, 1:07-cv-01952 (E.D.Pa. 2:07-cv-03997) | § | |
| *Barrientos v. Davol, Inc. et al.*, 1:07-cv-01946 (M.D.Fla. 8:07-cv-01747) | § | |
| *Girton v. Davol, Inc. et al.*, 1:07-cv-01949 (D.N.J. 2:07-cv-4678) | § | |
| *Gayvont v. Davol, Inc. et al.*, 1:07-cv-01966 (N.D.W.Va. 5:07-cv-125) | § | |

## CONSOLIDATED CLASS ACTION COMPLAINT

Class Action Plaintiffs, by their attorneys, bring this action individually and on behalf of all others similarly situated, and for their Consolidated Class Action Complaint (hereinafter "Complaint"), allege the following upon information and belief:

## NATURE OF THE ACTION

1. Plaintiffs bring this action on behalf of themselves and the Classes defined herein against C.R. Bard, Inc. ("Bard") and its wholly owned subsidiary, Davol, Inc., ("Davol"), for their sale and distribution of defective Composix Kugel Mesh Patches. Defendants' defective product has been surgically implanted into the bodies of the Plaintiffs and the class members. The patches present, and will continue to present, substantial risk of injury or death to the

Plaintiffs and the Class Members. As a result, Plaintiffs and the class have been injured and will need continual and ongoing medical monitoring. Additionally, Plaintiffs bring a claim for economic damages incurred for the purchase of the relevant defective products.

**PURPOSE AND EFFECT OF CONSOLIDATED COMPLAINT**

2. This Consolidated Class Action Complaint is filed in accordance with the Court's November 9, 2007, Practice and Procedure Order Number 4. Defendants have refused to waive their rights, under *Lexecon, Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach*, 523 U.S. 26 (1998), to transfer these cases back to the district in which they were filed (or removed to). This Complaint is intended to coordinate the individual class action complaints currently part of this MDL solely for discovery purposes and incorporate additional named class representatives where appropriate. This is without waiver of the original complaints and the original complaints filed in each of the class actions listed in the caption of this Complaint, along with any class actions subsequently transferred to this MDL, shall remain operative and controlling in the event that any of these actions are transferred to their original jurisdiction for trial. For example, a couple of the class action complaints include a loss of consortium claim that is not included in this Complaint. While that cause of action is not included here, those claims will remain operative and plaintiffs do not waive any claims, including those, by filing this consolidated Complaint.

## PARTIES

3. Plaintiff Sonia Montiel ("Ms. Montiel") is an individual citizen and resident of the State of Illinois. During the relevant time period, Ms. Montiel had a hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into her body. That patch remains in her body to this day. Ms. Montiel's class action complaint was originally filed in this jurisdiction, the District Court for the District of Rhode Island. Ms. Montiel meets the definition of a class member set forth in this Complaint.

4. Plaintiff Carol Nunes-McNamara ("Ms. Nunes-McNamara") is an individual citizen and resident of the State of California. During the relevant time period, Ms. Nunes-McNamara had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into her body. That patch remains in her body to this day. Ms. Nunes-McNamara's class action complaint was originally filed in this jurisdiction, the District Court for the District of Rhode Island. Ms. Nunes-McNamara meets the definition of a class member set forth in this Complaint.

5. Plaintiff Jeff Boggs ("Mr. Boggs") is an individual citizen and resident of the State of Illinois. During the relevant time period, Mr. Boggs had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into his body. That patch remains in his body to date. Mr. Boggs' class action complaint was transferred to this MDL from the District Court for the Southern District of Illinois. Mr. Boggs meets the definition of a class member set forth in this Complaint.

6. Plaintiff Brenda Gayvont ("Ms. Gayvont") is an individual citizen and resident of the State of West Virginia. During the relevant time period, Ms. Gayvont had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into her body. That

patch remains in her body to date. Ms. Gayvont' class action complaint was transferred to this MDL from the District Court for the Northern District of West Virginia. Ms. Gayvont has filed a Motion to Remand her case to the Circuit Court for Marshall County, West Virginia. That motion is pending before the Court and will determine whether Ms. Gayvont's claims will continue to proceed in this MDL. As such, at this time Ms. Gayvont alleges only the causes of action contained in her original complaint and seeks medical monitoring on behalf of West Virginia residents (under West Virginia law). She does not seek to represent the national "economic class" defined below in ¶ 82. However, in any event, Ms. Gayvont meets the definition of a class member set forth in this Complaint.

7. Plaintiff Steven Bost ("Mr. Bost") is an individual citizen and resident of the State of Pennsylvania. During the relevant time period, Mr. Bost had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into his body. That patch remains in his body to date. Mr. Bost's class action complaint was transferred to this MDL from the District Court for the Eastern District of Pennsylvania. Mr. Bost meets the definition of a class member set forth in this Complaint.

8. Plaintiff Donna Byers ("Ms. Byers") is an individual citizen and resident of the State of Pennsylvania. During the relevant time period, Ms. Byers had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into her body. That patch remains in her body to date. Ms. Byers' class action complaint was transferred to this MDL from the District Court for the Eastern District of Pennsylvania. Ms. Byers meets the definition of a class member set forth in this Complaint.

9. Plaintiff Joseph Girton, Jr. ("Mr. Girton") is an individual citizen and resident of the State of New Jersey. During the relevant time period, Mr. Girton had hernia repair surgery

which included the implantation of a Composix Kugel Mesh Patch into his body. That patch remains in his body to date. Mr. Girton's class action complaint was transferred to this MDL from the District Court for the District of New Jersey. Mr. Girton meets the definition of a class member set forth in this Complaint.

10. Plaintiff Florence Horowitz ("Ms. Horowitz") is an individual citizen and resident of the State of New York. During the relevant time period, Ms. Horowitz had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into her body. That patch remains in her body to date. Ms. Horowitz's class action complaint was transferred to this MDL from the District Court for the Eastern District of New York. Ms. Horowitz meets the definition of a class member set forth in this Complaint.

11. Plaintiff Ruth Ann Babcock ("Ms. Babcock") is an individual citizen and resident of the State of Georgia. During the relevant time period, Ms. Babcock had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into her body. That patch remains in her body to date. Ms. Babcock's class action complaint was transferred to this MDL from the District Court for the Eastern District of New York. Ms. Babcock meets the definition of a class member set forth in this Complaint.

12. Plaintiff Robert Witt ("Mr. Witt") is an individual citizen and resident of the State of Texas. During the relevant time period, Mr. Witt had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into his body. That patch remains in his body to date. Mr. Witt's class action complaint was transferred to this MDL from the District Court for the Western District of Texas. Mr. Witt meets the definition of a class member set forth in this Complaint.

13. Plaintiff Sandra Barrientos ("Ms. Barrientos") is an individual citizen and resident of the State of Florida. During the relevant time period, Ms. Barrientos had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into her body. That patch remains in her body to date. Ms. Barrientos' class action complaint was transferred to this MDL from the District Court for the Middle District of Florida. Ms. Barrientos meets the definition of a class member set forth in this Complaint.

14. Plaintiff Wallis Kane ("Ms. Kane") is an individual citizen and resident of the State of Missouri. During the relevant time period, Ms. Kane had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into her body. That patch remains in her body to date. Ms. Kane's class action complaint was transferred to this MDL from the District Court for the Western District of Missouri. Ms. Kane meets the definition of a class member set forth in this Complaint.

15. Defendant Davol, Inc., (hereinafter "Davol") is and was a wholly owned subsidiary of Bard, with its principal place of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920. At all times relevant, Davol was a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business for manufacturing hernia surgical repair products in Cranston, Rhode Island.

16. Davol designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners, certain hernia surgical repair products, including the Composix Kugel Mesh Hernia Patch, to be surgically implanted in patients throughout the United States, including but not limited to Illinois, Missouri, Florida, California, West Virginia, New York, Georgia, New Jersey and Pennsylvania.

17. Defendant Bard is a New Jersey corporation with its principal office and place of business at 730 Central Avenue, Murray Hill, New Jersey, 07974, and at all times relevant designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners, certain hernia surgical repair products to be surgically implanted in patients throughout the United States, including but not limited to Illinois, Missouri, Florida, California, West Virginia, New York, Georgia, Rhode Island, New Jersey and Pennsylvania. Additionally, Bard manufactures and supplies Davol with material that forms part of the Composix Kugel Mesh Patch.

18. Upon information and belief, and at all times relevant, Bard sells the Composix Kugel Mesh Patch through its wholly-owned subsidiary, Davol.

19. Upon information and belief, Davol and Bard (hereinafter referred to collectively as "Defendants") transacted or conducted business in and have derived substantial revenue from goods and products used in every State or Territory in the United States.

**JURISDICTION AND VENUE**

20. This Court has diversity jurisdiction over the Class pursuant to 28 U.S.C. §§ 1332(d)(2) and/or (6) of the Class Action Fairness Act of 2005. Plaintiff and each member of the putative Class have suffered aggregate damages exceeding five million dollars ($5,000,000), exclusive of interest and costs. There are members of the Class who are citizens of a different State than Defendants.

21. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a) because Plaintiff resides in this District and both Defendants earn substantial compensation and profits from its sales of the product in question in this District.

22. On June 22, 2007, the Judicial Panel on Multidistrict Litigation transferred all related cases to this Court, the United States District Court for the District of Rhode Island, for coordinated or consolidate pretrial proceedings pursuant to 28 U.S.C. §1407.

**FACTUAL BACKGROUND**

23. This class action involves the Composix Kugel Mesh Patch manufactured by Defendants between 2001 and January 2007. These Composix Kugel Mesh Patches were sold by Defendants for implantation in patients in the course of hernia repair surgery.

24. Upon information and belief, from 2004-2006 alone, Defendants had sales from their Surgical Specialties segment of business, which includes the Composix Kugel Mesh Patch, of roughly one billion dollars ($1,000,000,000).

25. A hernia is a protrusion of an organ or tissue through an abnormal opening in the body. Hernias occur when a piece of intestine slips through a weakness in the abdominal wall, creating a bulge you can see and feel. Hernias can develop around the navel, in the groin or any place where you may have had a surgical incision.

26. The Composix Kugel Mesh Patch was designed to fix the hernia by placing the patch on the inside of the abdominal wall, and therefore, the pressures of the body help to hold the patch in place over the hernia defect.

27. The Kugel Mesh line of products, invented by Dr. Robert D. Kugel, was first manufactured by Surgical Sense, Inc., starting in or around 1996. In January of 2000, Bard acquired the Kugel line of hernia repair products from Surgical Sense, Inc.

28. Defendants submitted their 510K Application for approval of the Composix Kugel Mesh Patch to the Federal Drug Administration (the "FDA") on January 22, 2001. Following the 510K Application, the patch was authorized by the FDA as a Class II medical

device. Shortly thereafter, in 2001, Bard introduced the Composix Kugel Mesh Patch to the market through its wholly-owned subsidiary, Davol.

29. The Composix Kugel Mesh Patch is a two sided "dual mesh" prosthetic device developed to repair ventral (hernias of the abdominal region) and incisional hernias and was indicated by Defendants as an alternative to inguinal hernia repairs as well. The Composix Kugel Mesh Patch is inserted behind the hernia defect in the abdomen through a small incision. In order to fit through the small incision the mesh is folded in half. Once inside the abdomen the mesh re-deploys as a result of a hard "memory recoil ring" (or "PET coil ring") that surrounds the mesh.

30. The two sides of the Composix Kugel Mesh Patch are composed of two very different materials; with two very different purposes. Basically, the patch has a 'sticky' side and a 'slick' side. The sticky side is designed to face the abdominal wall and is composed of a double layer of Marlex™(monofilament polypropylene or PPM). This fabric has a very high tissue ingrowth factor - essentially making it like an adhesive. The 'slick' side of the patch is intended to face the bowels and is composed of expanded Teflon (ePTFE). This expanded Teflon fabric has a very low tissue ingrowth factor and is designed to shield the soft tissue of the bowels and other organs from the "sticky" Marlex™ side of the Patch.

31. The inherently adhesive qualities of the Marlex side of the Composix Kugel Mesh Patch make it imperative that it never comes in contact with the bowels and other organs.

32. Due to the design and/or manufacturing defects present, this can occur when the mesh folds over on itself, the mesh wrinkles during placement or the mesh pulls away from the abdominal wall allowing bowel to loop and adhere to the 'sticky' side.

33. As a result, the mesh can: adhere (through tissue ingrowth) to vital organs and intestines; twist around the bowels and organs and cause strangulation and/or serious obstructions; cause necrosis of the organ tissue; become impossible to remove without also removing large portions of the bowel; develop infections; and lead to peritonitis, sepsis, organ shutdown and even death.

34. The plastic ‘memory recoil’ ring in the Composix Kugel Mesh Patch was intended as a way to maintain integrity of the shape of the patch, and in doing so, keep the ‘sticky’ side (Marlex™/PPM side) away from the sensitive organs and intestines.

35. Due to the design and/or manufacturing defects the memory recoil ring is prone to failure in several ways, including: pulling apart at the weld; breaking away from the weld; kinking, bending and folding directly across from the weld; and separating or tearing from patch material.

36. On information and belief, these defects and/or others were caused by multiple design and manufacturing errors and oversights, including but not limited to: failing to properly test the weld strength of the rings; failing to run strength tests on the larger size rings; sewing lines damaging the ring during the manufacturing process and causing it to splinter or fracture; mesh shifting during sewing resulting in a ‘shrunken’ pocket causing the ring to buckle; the weld joint being placed at an incorrect location in the patch; and poor design and technique instruction by Defendants causing the physicians’ staples and/or sutures to damage the ring during placement.

37. When the memory recoil ring malfunctions, numerous serious problems can occur, including:

a. the sharp/fractured PET plastic of the memory recoil ring can pierce the bowels or organs;

b. the ring can force its way through the abdominal wall and skin;

c. the ring can bend or break within the patch, causing it to lose its shape and forcing the "sticky" side onto the bowels and organs;

d. the ring can kink opposite the weld, pulling the patch away from the abdominal walls allowing the bowel to loop up and onto the "sticky" side; and

e. the ring can slide upon itself within the patch, pulling the patch into a ball or causing it to pull away from the abdominal wall.

f. the ring and/or the patch can otherwise fail to perform as intended, represented and/or designed.

38. The resulting injuries and damages from this ring failure include: fistulae created by the perforation of the bowels and other organs; perforation of the abdominal wall and skin; internal bleeding and necrosis of tissue; strangulation and/or serious obstructions of the bowels and organs; recurrence of hernias and prolonged hospitalizations; the necessity of removing large portions of the bowel; infections; and can lead to peritonitis, sepsis, organ shutdown, and even death.

39. Immediately after the Composix Kugel Mesh Patches were placed on the market, Defendants began receiving actual notices of memory ring failures as well as injuries stemming from Composix Kugel Mesh Patch defects.

40. Defendants actively and intentionally concealed this notice of the defective and dangerous condition associated with the Composix Kugel Mesh Patches from Plaintiff, Plaintiff's physicians, the FDA, members of the Class and the general public.

41. No later than 2003, Defendants uncovered serious problems with the weld process involving the memory recoil ring.

42. Despite attempts to correct the problem at the plant, Defendants found the corrective measures to be ineffective and the process still not in control.

43. Defendants were aware that these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. Even the little information disclosed to date was intentionally withheld from Plaintiffs, Plaintiffs' physicians, members of the Class, the FDA, and all other individuals who had been implanted or would be implanted with Composix Kugel Mesh Patches using the memory recoil ring.

44. As early as 2002, but after the defective and dangerous patch was already placed on the market, Defendants conducted physician screenings and reviews.

45. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time.

46. Whether intentionally or negligently, Defendants failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results.

47. These complaints and concerns of the physician surveyors were actively concealed by Defendants from Plaintiffs, Plaintiffs' surgeons, the FDA, members of the Class and the public at large.

48. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increase in the number of complaints with the Composix Kugel Mesh Patch.

49. In spite of their knowledge of increasing complaints and complications, Defendants waited until August 30, 2005 to initiate a partial Composix Kugel Mesh Patch *distribution* hold.

50. Even though Defendants realized the need for this distribution hold, they actively and intentionally chose not to immediately inform Plaintiffs, Plaintiffs' physicians, members of the Class, the FDA, and all other individuals who had been implanted or would be implanted with Composix Kugel Mesh Patches of the problems and/or defects.

51. Defendants have since admitted that the product quality hold and release procedure was not applied on a timely basis.

52. As a result of this dangerous and defective condition, and the numerous serious injuries that have resulted, the FDA issued Class 1 recalls of the X-Large Oval, Large Oval and Large Circle varieties of the Composix Kugel Mesh Patch. A Class 1 recall is the highest level of recall available to the FDA. It is issued when the FDA believes a medical product is dangerous or defective and predictably could cause serious health problems or death.

53. On December 22, 2005 and January 13, 2006, Davol and Bard announced the recall of the Composix Kugel Mesh X-Large patch. Subsequently, in March of 2006, the Defendants announced the recall of the Composix Kugel Mesh Large Patch as well.

54. Under these FDA recalls, the following products were subject to recall:

| | | | |
|---|---|---|---|
| PC#0010206 | Bard Composix Kugel | Extra Large Oval | 8.7" x 10.7" |
| PC#0010207 | Bard Composix Kugel | Extra Large Oval | 10.8" x 13.7" |
| PC#0010208 | Bard Composix Kugel | Extra Large Oval | 7.7" x 9.7" |
| PC#0010209 | Bard Composix Kugel | Large Oval | 6.3" x 12.3" |
| PC#0010202 | Bard Composix Kugel | Large Oval | 5.4" x 7" |

PC#0010204 Bard Composix Kugel Large Circle 4.5”

55. Then, on January 10, 2007, Davol and Bard expanded the recall to include all Composix Kugel Mesh Large Oval and Large Circle Mesh patches, as well as all products manufactured from January 2004 to January 2006, that had the same component design as the recalled manufacturing lots.

56. Upon information and belief, it is possible that additional Composix Kugel Mesh Patches will experience the same defects as the currently recalled models and will need to be recalled as well.

57. The FDA conducted the aforementioned EIR investigations in January and February of 2006. Upon information and belief, the results of these investigations determined, among other things, that Defendants:

a. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;

b. misidentified numerous Composix Kugel Mesh Patch complication events;

c. failed to apply the product quality hold and release procedure on a timely basis;

d. failed to properly follow the procedures for conducting design validation review;

e. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Composix Kugel Mesh Patch complications; specifically, they provided no justification for including only the Extra Large Composix Kugel Mesh Patch sizes in the December 2005 recall;

f. failed to provide full information which they knew regarding numerous Composix Kugel Mesh Patch complaints;

g. failed to actually perform strength testing on memory recoil rings for all sizes of Composix Kugel Mesh Patch before putting them into the stream of commerce;

h. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Composix Kugel Mesh Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases;

i. failed to establish and implement procedures to ensure that the device history records for each batch, lot, or unit are maintained to demonstrate that the device is manufactured in accordance with the device master record and the Quality System regulation; and

j. failed to ensure that devices conform to defined user/patient needs and intended uses.

58. Additionally, upon information and belief, the ring break issue with the Composix Kugel Mesh Patch was not brought to the FDA's attention until over *20 months* after Defendants knew of the first death resulting from their products.

59. Despite the serious risk of injury (and even death) resulting from the Composix Kugel Mesh Patch, Defendants took woefully insufficient steps to notify Plaintiffs of the patches' defects.

60. Evidence shows that Defendants held back on implementing a full recall – and actively notifying patients of the recall – until over a year after the first recall was issued. In fact, evidence shows that for a period of time after the recall was issued Defendants informed doctors that because this was a "voluntary" recall, patients need not be notified at all.

61. Upon information and belief, Defendants claimed during their expanded recall that there had only been 28 reported ring breaks. Many of which were years before the first recall. In actuality, at least 85 ring breaks had been reported. Defendants only told the FDA about the ring breaks which they confirmed by getting the samples returned. Upon information and belief, if the sample was not returned, Defendants minimized the seriousness of the report

and intentionally chose not to include the complaint when providing their statistical analysis to the FDA.

62. Upon information and belief, as of January 2007, roughly 100,000 Composix Kugel Mesh Patches had been sold. Upon information and belief, the vast majority of the patches which have been implanted are currently still inside patients residing in the United States.

## GENERAL ALLEGATIONS

63. The Composix Kugel Mesh Patches present and constitute an unreasonable risk of danger and injury in the following respects:

a. the memory recoil ring of the Composix Kugel Mesh Patch is likely to malfunction during, or after, it is implanted;

b. the Composix Kugel Mesh Patch was not properly manufactured;

c. the Composix Kugel Mesh Patch was defectively designed;

d. the Composix Kugel Mesh Patch did not perform as safely as an ordinary consumer/patient would expect;

e. the Composix Kugel Mesh Patch was inadequate or insufficient to maintain its integrity during normal use after implantation in the consumer/patient; and/or

f. such further and additional defects as discovery and the evidence reveal.

64. At all times relevant, Defendants were engaged in the design, manufacturing, assembling, distributing, conveying and/or selling of the Composix Kugel Mesh Patch in their ordinary course of business. Defendants designed, manufactured, assembled and sold the devices to hospitals and physicians, knowing that they would be thereby sold to patients who needed hernia repair surgery, including Plaintiffs and all other members of the Class.

65. Defendants' Composix Kugel Mesh Patches are uniformly defective because they possess the same potential for breakage or malfunction of the memory recoil ring and, as a result, are subject to risk of resulting injury.

66. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid products were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, were not suitable for the purpose they were intended and were unreasonably likely to injure the products' users.

67. Defendants did not have adequate and appropriate systems in place, or did not apply those systems, to collect and analyze any of the complaints they received from doctors, hospitals, and/or patients concerning the Composix Kugel Mesh Hernia Patches, as required by the U.S. Food & Drug Administration ("FDA"), thus leading to inconsistencies and irregularities in the way Defendants kept track of complaints they received regarding the failure of the Composix Kugel Mesh Patches.

68. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, of the seriousness of the risk of using the Composix Kugel Mesh Patch based upon the state of knowledge of the patch as it existed at the time, and upon generally accepted medical and research standards and principles.

69. Upon information and belief, Defendants failed to send the necessary product failure reports to the FDA, indicating that the Composix Kugel Mesh Patch was causing serious and fatal injuries in persons who used the patch.

70. Upon information and belief, Defendants misrepresented the known risks inherent in the use of the Composix Kugel Mesh Patch.

71. Defendants did not timely apprise the Plaintiffs, members of the Class, the FDA, physicians and general public of the defect in their Composix Kugel Mesh Patches, despite Defendants' knowledge that memory recoil rings had failed due to the described defects. Defendants' concealment of a known defect from Plaintiffs and Class members equitably tolls any applicable statutes of limitation. No member of the Class could have discovered the existence of the defect in the implanted Composix Kugel Mesh Patches until at least December 27, 2005, when Defendants first began to provide notice of the recall.

72. Defendants' conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of the Plaintiffs and the members of the Class.

73. Upon information and belief, the purpose of Defendants' conduct, directed at patients, physicians and consumers, was to create demand for and sell the Composix Kugel Mesh Patches. Each aspect of Defendants' conduct combined to artificially create sales of the Composix Kugel Mesh Patches.

74. As a direct and proximate cause of cumulative and indivisible nature of Defendants' conduct and the recalled Composix Kugel Mesh Patches, Plaintiffs and the Class have suffered injuries and will require continual medical monitoring and care. Accordingly, Plaintiffs and the Class have incurred and will continue to incur damages related to the recalled Composix Kugel Mesh Patches.

**NAMED PLAINTIFFS' EXPERIENCE**

75. As stated further in their operative class action complaints, each of the named Plaintiffs underwent a hernia repair surgical procedure, and during the course thereof, their physician implanted a Composix Kugel Mesh Patch into their body.

76. The Composix Kugel Mesh Patches implanted into named Plaintiffs were designed, manufactured, sold and distributed by Defendants, and were intended to be used by surgeons for hernia repair surgeries. Defendants represented these Composix Kugel Mesh Patches to be appropriate and suitable products for such purposes.

77. The Composix Kugel Mesh Patches in Plaintiffs' bodies present serious ongoing health risks due to their defective design and/or manufacture.

78. As a direct and proximate result of Defendants' defective design, manufacture, function, misrepresentation and/or inadequate warnings regarding the Composix Kugel Mesh Patch, named Plaintiffs have sustained, and will continue to sustain, injuries and damages, including, but not limited to, medical monitoring by means of increased physician follow-ups, non-invasive medical imaging and screening (such as CT scans, sonograms, and/or ultrasounds), and potential future invasive surgical and exploratory treatments.

## CLASS ACTION ALLEGATIONS

79. This Consolidated Class Action Complaint is filed in accordance with the Court's November 9, 2007, Practice and Procedure Order Number 4. Subject to developments in this MDL, and additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded, narrowed or divided into sub-classes by amendment or amended complaint.

80. Plaintiffs bring this class action on behalf of themselves and on behalf of all others similarly situated, as members of a proposed class (the "Medical Monitoring Class") defined as follows:

> All citizens, residents or domiciliaries of jurisdictions that do not preclude certification of a class for medical monitoring or surveillance,[1] who have had a Composix Kugel Mesh Patch implanted into their person, which has not been explanted, and who have not previously filed a claim or lawsuit for personal injury, but will require medical monitoring.

81. Alternatively, Plaintiffs bring this class action on behalf of the following proposed medical monitoring class:

> All citizens, residents or domiciliaries of jurisdictions that expressly allow a class for medical monitoring or surveillance,[2] who have had a Composix Kugel Mesh Patch implanted into their person, which has not been explanted, and who have not previously filed a claim or lawsuit for personal injury, but will require medical monitoring.

82. Additionally, Plaintiffs bring this class action for monetary damages, equitable, injunctive and declaratory relief (including but not limited to the cost of purchasing the relevant

---

[1] Plaintiffs allege that these 35 jurisdictions are: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Guam, Hawaii, Idaho, Iowa, Illinois, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Pennsylvania, Puerto Rico, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wyoming.

[2] Plaintiffs allege that these 15 jurisdictions are: Arizona, California, Colorado, Connecticut, Florida, Guam, Illinois, Missouri, New Jersey, New York, Ohio, Pennsylvania, Montana, Utah, and West Virginia.

products) on behalf of themselves and on behalf of all others similarly situated, as members of a proposed class (the "Economic Class") defined as follows:

> All persons who purchased and/or paid, in whole or in part, for a Composix Kugel Mesh Patch.

83. This action is brought and may properly be maintained as a class action pursuant to the provisions of Fed. R. Civ. P., Rule 23(a)(1)-(4), 23(b)(2), and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

84. Specifically excluded from the proposed Classes are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

85. The Classes are so numerous that the individual joinder of all their members is impracticable. While the exact number and identification of Class members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery of Defendants. On information and belief, Defendants have sold roughly 100,000 defective units, and, as such, the Classes include tens of thousands of class members.

86. Common questions of fact and law exist as to all members of the Classes which predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

a. whether there are design and/or manufacturing defects in the Composix Kugel Mesh Patch;

b. whether Defendants failed to investigate the possible defects or safety concerns of the Composix Kugel Mesh Patch shown in reports and/or studies;

c. whether Defendants failed to follow FDA good manufacturing practices, failed to properly investigate manifestations of the Composix Kugel Mesh Patch over the past several years, failed to adequately document reports of the defect, and failed to exercise adequate quality control and testing;

d. whether Defendants' conduct in designing, manufacturing, marketing and monitoring the Composix Kugel Mesh Patch fell below the duty of care owed by Defendants to Plaintiffs and Class members;

e. whether Defendants intentionally, knowingly, carelessly, recklessly, or negligently concealed information regarding the existence of a defect or safety concern in the Composix Kugel Mesh Patch from the FDA, physicians, Plaintiffs and members of the Classes;

f. whether Composix Kugel Mesh Patches share a common and inherent design defect that causes them to break, creating a risk of injury or death to patients in whom they were implanted;

g. whether Defendants negligently, recklessly, or intentionally misrepresented the quality and usefulness of the Composix Kugel Mesh Patch;

h. whether Defendants are liable for selling a dangerously defective product;

i. whether the Classes have been injured by virtue of the Defendants' deceptive business practices and conduct;

j. whether Defendants are strictly liable in tort for selling a dangerously defective product;

k. whether Defendants' conduct is an unconscionable practice within the meaning of the applicable consumer protection statutes;

j. whether Defendants' conduct constitutes the knowing or intentional concealment, suppression, or omission of material information intended to be relied upon by others in connection with the sale of their medical devices within the meaning of the applicable consumer protection statutes;

l. whether the class had been injured by virtue of Defendants' violations of the applicable consumer protection statutes;

m. whether persons implanted with the Composix Kugel Mesh Patch are at increased risk of developing serious latent injury;

n. whether there exists monitoring and testing procedures which make early detection and treatment of serious injury caused by exposure to the Composix Kugel Mesh Patch possible and beneficial;

o. whether Defendants' actions support a cause of action for medical monitoring pursuant to any or all of the following statutory or common law bases:

1) products liability;

2) state consumer protection statutes;

3) negligence;

4) negligence per se;

5) breach of warranty;

6) consumer fraud; and

7) unjust enrichment.

p. whether the Classes are entitled to injunctive and other equitable relief including restitution and disgorgement and, if so, the nature of such relief;

q. whether the Classes are entitled to compensatory damages, and if so, the nature and extent of such damages;

r. whether the Class is entitled to medical monitoring and treatment, at Defendants' expense; and

s. whether Defendants are liable for punitive or exemplary damages, and if so, the amount necessary and appropriate to punish Defendants for their conduct, to deter others, and to fulfill the other policies and purposes of punitive and exemplary damages;

87. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the members of the Classes have suffered similar injury and are facing further damages

arising out of Defendants' common course of conduct, as alleged herein. The damages of each Class member were and are caused directly by Defendants' conduct, as alleged herein. Plaintiffs and the members of the Classes must prove the same facts in order to establish the same claims, as described herein, which apply to all Class members.

88. Plaintiffs are adequate representatives of the Classes because they have purchased and been implanted with a Composix Kugel Mesh Patch, have incurred medical costs relating to that device, and will continue to incur related medical expenses. Moreover, Plaintiffs' interests do not conflict with the interests of the members of the Classes they seek to represent. Plaintiffs have retained experienced and competent counsel, and together Plaintiffs and counsel intend to prosecute this action vigorously for the benefit of the Classes. The interests of the Class members will fairly and adequately be protected by Plaintiffs and their counsel.

89. A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse, and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all Composix Kugel Mesh Patch claims. By contrast, the Rule 23 class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

90. The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Fed. R. Civ. P., Rule 23(b)(1) and/or (b)(2) because:

a. the prosecution of separate actions by thousands of individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendants;

b. the prosecution of separate actions by individual Class members would also create the risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members who are not a party to such adjudications and would substantially impair or impede the ability of such non-party Class members to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

91. Plaintiffs and the Class members are consumers of the defective product and/or merchandise and were injured by Defendants' tortuous conduct.

92. Had Defendants not engaged in the conduct described above, Plaintiffs and the Class members would not have purchased a defective product, incurred related medical costs, and would not continue to incur these costs and require medical monitoring of their condition.

93. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiffs and Class members for the Composix Kugel Mesh Patches and/or for the costs of replacing the Composix Kugel Mesh Patches that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

## MEDICAL MONITORING ALLEGATIONS

94. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

95. Plaintiffs and the Class have been significantly exposed to a hazardous product through the tortuous conduct of Defendants. As a direct and proximate result of that exposure, Plaintiffs and the Class have suffered an increased risk of incurring serious latent injury relative to individuals who do not have Defendants' mesh product surgically implanted in their bodies. This increased risk of injury makes it reasonably necessary for Plaintiffs and the Class to undergo periodic diagnostic medical examinations different from what would be prescribed in absence of the exposure to Defendants' defective device. As such, medical monitoring is necessary and reasonably certain to be incurred as a proximate result of Defendants' conduct.

96. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class have incurred and will likely continue to incur medical costs relating to the Composix Kugel Mesh Patch, including medical monitoring and/or other hospital costs, in an amount to be proven at trial. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to injunctive relief in the form of a court supervised medical monitoring program.

97. Medical monitoring is medically reasonable and necessary in order to provide for the early detection and prevention of irreparable harm, sever and debilitating injuries and death. In the absence of such relief, Plaintiffs and the Class members might not receive prompt medical care that could prolong their productive lives, increase prospects for improvement and minimize disability.

98. Medical testing and monitoring procedures are currently available, including but not limited to CT Scans, to determine whether any problems have developed due to the implanted mesh patch. In fact, upon information and belief, doctors and hospitals have already

began creating an implementing their own medical monitoring programs – to address this real and dangerous problem.

**COUNT I**
**(Negligence and Negligence Per Se)**

99. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

100. At all times herein mentioned Defendants had a duty to exercise reasonable care in the course of its design, manufacture, sale, testing, marketing, advertising, promoting, distribution and warning about the Composix Kugel Mesh Patch. This duty included, among other things, to assure that the products did not cause users to suffer from unreasonable and dangerous side-effects and to warn Plaintiffs and Class members of the defective nature of Defendants' devices. Defendants breached their duty of reasonable care to Plaintiffs and Class members by incorporating a defect into the design of the devices, thereby causing injuries to Plaintiffs and Class members.

101. At all times herein mentioned Defendants had an obligation not to violate the law in the manufacture, design, testing, assembly, inspection, labeling, packaging, supplying, marketing, selling, advertising, preparing for use, warning of the risks and dangers of the recalled Composix Kugel Mesh Patch.

102. Defendants' actions were violations of statutes, ordinances and/or rules and regulations, constituting negligence per se.

103. At all times relevant, Defendants knew, or in the exercise of reasonable care should have known, that the Composix Kugel Mesh Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed,

examined, sold, supplied, prepared and/or provided with proper warnings, and were unreasonably likely to injure the products' users.

104. Defendants so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the aforesaid products, that they were dangerous and unsafe for the use and purpose for which they were intended.

105. Defendants knew, or should have known, that consumers such as Plaintiffs could foreseeably suffer injuries as a result of Defendants' failure to exercise ordinary care.

106. Defendants breached their duty of reasonable care to Plaintiffs and Class members, including but not limited to the following negligent acts and/or omissions:

a. manufacturing, producing, promoting, formulating, creating and/or designing the Composix Kugel Mesh Patch without thoroughly and adequately testing it;

b. failing to conduct sufficient testing programs to determine whether or not the aforesaid Composix Kugel Mesh Patch was safe for use; in that Defendants knew or should have known that the Composix Kugel Mesh Patch was unsafe and unfit for use by reason of the dangers to its users;

c. selling the Composix Kugel Mesh Patch without making proper and sufficient tests to determine the dangers to its users;

d. failing to adequately and correctly warn Plaintiffs and Class members, the public, the medical and healthcare profession, and the FDA of the dangers of the Composix Kugel Mesh Patch;

e. failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with and use the Composix Kugel Mesh Patch;

f. negligently advertising and recommending the use of the Composix Kugel Mesh Patch without sufficient knowledge as to its dangerous propensities;

g. negligently representing that the Composix Kugel Mesh Patch was safe for use for their intended purpose, when, in fact, it was unsafe;

h. negligently designing the Composix Kugel Mesh Patch in a manner which was dangerous to its users;

i. negligently manufacturing the Composix Kugel Mesh Patch in a manner which was dangerous to its users;

j. negligently producing the Composix Kugel Mesh Patch in a manner which was dangerous to its users;

k. negligently assembling the Composix Kugel Mesh Patch in a manner which was dangerous to its users;

l. improperly concealing information concerning FDA warnings from the Plaintiffs and Plaintiff Class members, healthcare professionals, and/or the FDA in knowing that the Composix Kugel Mesh Patch was unsafe, dangerous, and/or non-conforming with FDA regulations.

m. violating statutes, rules and ordinates concerning the manufacturing, marketing, and/or testing of their product.

107. Defendants were negligent in the designing, researching, supplying, manufacture, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the Composix Kugel Mesh Patch in that they:

a. failed to use due care in designing and manufacturing the Composix Kugel Mesh Patch so as to avoid the aforementioned risks to individuals when the Composix Kugel Mesh Patch was used to repair ventral and incisional hernias;

b. failed to accompany their product with proper and/or accurate warnings regarding all possible adverse risks and side effects associated with the use of the Composix Kugel Mesh Patch;

c. failed to accompany their product with proper warnings regarding all possible adverse risks and side effects concerning the failure and/or malfunction of the Composix Kugel Mesh Patch;

d. failed to warn Plaintiffs and Plaintiff Class members of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

e. failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Composix Kugel Mesh Patch;

f. failed to warn Plaintiffs and Plaintiff Class members prior to actively encouraging the sale of the Composix Kugel Mesh Patch, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and/or

g. were otherwise careless or negligent.

108. Defendants breached their duty of reasonable care to Plaintiffs and Class members by failing to exercise due care under the circumstances.

109. As a direct and proximate result of the carelessness and negligence of Defendants, as set forth in the preceding paragraphs, Plaintiffs and Class members have sustained and will continue to sustain damages, and are therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

110. As a direct and proximate result of Defendants' actions, Plaintiffs and members of the Class have already suffered damages – including the purchase and implantation of defective and dangerous medical devices – and the will be required to pay sums to ascertain the existence, nature and extent of their injuries in the future.

111. For the reasons stated above, Defendants are liable, jointly and severably, to Plaintiffs and every Class Member for injunctive and equitable relief including periodic medical monitoring.

**<u>COUNT II</u>**
**(Products Liability – Failure to Warn)**

112. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

113. Defendants are manufacturers and/or sellers of the Composix Kugel Mesh Patch.

114. The Composix Kugel Mesh Patches manufactured and/or supplied by Defendants were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have know of the risk of injury from the product, they failed to provide adequate warnings to users or consumers of the product and continued to promote the products aggressively.

115. The Composix Kugel Mesh Patches manufactured and/or supplied by Defendants were unaccompanied by proper warnings regarding all possible adverse side-effects or results associated with the design, manufacturing, implantation and/or use of the Composix Kugel Mesh Patch.

116. Defendants failed to warn the FDA of material facts regarding the safety and efficacy of the Composix Kugel Mesh Patch, such that this medical device would never have been approved, and no physician would have been able to use them as a hernia repair tool in the United States.

117. Defendants failed to warn consumers and physicians of material facts regarding the safety and efficacy of the Composix Kugel Mesh Patch

118. Defendants failed to perform adequate testing. Adequate testing would have shown that the Composix Kugel Mesh Patches possess design and manufacturing flaws resulting in serious potential side effects and health risks. Full and proper warnings with respect to these results should have been made.

119. As the producing cause and legal result of the defective condition of the Composix Kugel Mesh Patch as manufactured and/or supplied by Defendants, and as a direct and proximate result of the negligence, carelessness, other wrongdoing and action(s) of Defendants described herein:

a. Plaintiffs and the Class have suffered a significantly increased risk of contracting a serious latent injury;

b. Plaintiffs and the Class have sustained economic loss including purchase price, the cost of medical tests and services, hospital costs, and other costs incidental to the implantation and monitoring of a harmful and defective product into their bodies; and

c. Plaintiffs and the Class require reasonable and necessary health care, attention and services to test for and monitor the onset of serious injury resulting from Defendants' product.

## COUNT III
## (Products Liability – Defective Design and/or Defective Manufacture)

120. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

121. The Composix Kugel Mesh Patches manufactured and/or sold by Defendants were defective in design or manufacturing in that, when they left the hands of the manufacturer and/or supplier, they were unreasonably dangerous because they were more dangerous than an ordinary consumer would expect and more dangerous other methods of hernia repair.

122. Alternatively, the Composix Kugel Mesh Patches manufactured and/or sold by Defendants were defective in design or manufacturing in that, when they left the hands of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits associated with the design.

123. The Composix Kugel Mesh Patches manufactured and/or sold by Defendants were defective due to inadequate warning or instruction because Defendants knew or should have known that the product created a risk of harm to consumers and Defendants failed to adequately warn of those risks.

124. The Composix Kugel Mesh Patches manufactured and/or sold by Defendants were defective due to inadequate testing.

125. The Composix Kugel Mesh Patch manufactured and/or sold by Defendants were defective due to inadequate post-marketing warning or instruction because, after the manufacturer knew or should have known that the product created a risk of harm to consumers and Defendants failed to adequately warn of those risks and continued to promote the product.

126. As the producing cause and legal result of the defective condition of the Composix Kugel Mesh Patch as manufactured and/or supplied by Defendants, and as a direct and proximate result of the negligence, carelessness, other wrongdoing and action(s) of Defendants described herein:

a. Plaintiffs and the Class have suffered a significantly increased risk of contracting a serious latent injury;

b. Plaintiffs and the Class have sustained economic loss including purchase price, the cost of medical tests and services, hospital costs, and other costs incidental to the implantation and monitoring of a harmful and defective product into their bodies; and

c. Plaintiffs and the Class require reasonable and necessary health care, attention and services to test for and monitor the onset of serious injury resulting from Defendants' product.

## COUNT IV
## (Violation of Consumer Protection Statutes)

127. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

128. This consolidated Complaint is filed in accordance with the Court's November 9, 2007, Practice and Procedure Order Number 4. Defendants are liable for the recalled devices, under the state laws below, for the reasons set forth in this Count.

129. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below when they failed to adequately warn consumers and the medical community of the safety risks

associated with the Composix Kugel Mesh Patch. As a direct result of Defendants' deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiffs suffered and will continue to suffer personal injury, economic loss, pecuniary loss, loss of companionship and society, mental anguish and other compensable injuries.

130. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §45.50.471.

131. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. Ann. §§44-1521 et seq.

132. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Ann. § §4-8-1 01 et seq.

133. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code §§ 1770 et seq. and Cal. Bus. & Prof. Code §§ 17200 et seq.

134. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat. § §6-1-105 et seq.

135. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. Ann. §§42-11Oa et seq.

136. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Del. Code Ann. tit. 6 §§2511 et seq. and 2531 et seq.

137. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or has made false representations in violation of D.C. Code Ann. §§28-3901 et seq.

138. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. Ann. 501 §201 et seq.

139. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Code Ann. §§ 10-1-372 and 10-1-420.

140. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. §§480-1 et seq.

141. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § §48-601 et seq.

142. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. 505/1 et seq.

143. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. 24-5-0.5-3.

144. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code §714.16.

145. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. Ann. §§50-623 et seq.

146. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. Ann. §367.170.

147. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Me. Rev. Sta. Ann. tit. 5, §§205-A et seq.

148. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code Ann., Com. Law §§13-301 et seq.

149. Defendants have engaged in unfair competition or unfair or deceptive acts or

150. practices in violation of Mass. Gen. Laws Ch. 93A, §§ 1 et seq.

151. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. §§445.901 et seq.

152. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Ann. Stat. §§407.010 et seq.

153. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code Ann. §§30-14-101 et seq.

154. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §§59-1601 et seq.

155. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. Ann. §§598.0903 et seq.

156. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. §§358-A:1 et seq.

157. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. §§56:8-1 et seq., and have violated the New Jersey Products Liability Act N.J. Stat. Ann. 2A:58C-1 et seq.

158. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. §§57-12-1 et seq.

159. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§349 et seq. and 350-e et seq.

160. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. §§75-1 et seq.

161. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§51-12-01 et seq. and 51-15-01 et seq.

162. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Code Ann. §§1345.01 et seq.

163. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representation in violation of Okla. Stat. Ann. tit. 15, §§751 et seq. 208.

164. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. §§646.605 et seq.

165. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Cons. Stat. §§201-1 et seq.

166. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§39-5-10 et seq.

167. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws §§37-24-1 et seq.

168. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. §47-18-109(a)(1).

169. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code Ann. §§ 1 7.41 et seq.

170. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. §§13-l1-1 et seq.

171. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, §§2453 et seq.

172. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code Ann. §§59.1-196 et seq.

173. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code Ann. §§19.86.010 et seq.

174. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W.Va. Code 46A-6-l0l et seq.

175. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. Ann. § 100.18.

176. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. Ann. §§40-12-101 et seq.

177. The actions and failure to act of Defendants, including the false and misleading representations and omissions of material facts regarding the safety and potential risks of the Composix Kugel Mesh Patch and the above described course of fraudulent conduct and fraudu1ent concealment constitute acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission of material facts in connection with the sale of merchandise of Defendants in violation of the consumer protection statutes listed above.

178. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered and will continue to suffer personal injury, economic loss, pecuniary loss, loss of companionship and society, mental anguish and other compensable injuries.

179. By reason of the unlawful acts engaged in by Defendants, Plaintiffs have suffered ascertainable loss and damages.

**COUNT V**
**(Breach of Express Warranty)**

180. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

181. Defendants' concealment and failure to warn through promotional statements and product literature expressly warranted that the Composix Kugel Mesh Patch was safe and/or well accepted by users.

182. The Composix Kugel Mesh Patch does not conform to these express representations because the Composix Kugel Mesh Patch is not safe and have numerous serious risks and side effects.

183. Defendants breached the aforesaid express warranties, as their Composix Kugel Mesh Patches were defective.

184. Defendants expressly represented to the users, their physicians, healthcare providers, and the FDA that the Composix Kugel Mesh Patch was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

185. Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that the Composix Kugel Mesh Patch was not safe and fit for the use intended, and, in fact, produced serious injuries to the users.

186. As a direct and proximate result of the breach of said warranties, Plaintiffs and Plaintiff Class members suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

187. Defendants expected, or reasonably should have expected, members of the medical community, including physicians and/or other healthcare professionals, to rely upon the representations and warranties of the Defendants for use of the Composix Kugel Mesh Patch.

188. As a result of the defective nature of the Composix Kugel Mesh Patch, those persons who received the Composix Kugel Mesh Patch are at an increased risk of suffering serious and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, and such other side effects as serious infection. They also face the need for additional surgery to remove or replace the defective product, the need for subsequent surgery to repair perforations caused by the defective product, as well as other severe and permanent health consequences as a result of the defective, unsafe and recalled product they received.

189. As a result of the foregoing acts and omissions, the Plaintiffs and Plaintiff Class members have suffered damages and will require health care and services and will incur medical, health, incidental and related expenses now or in the future.

**COUNT VI**
**(Breach of Implied Warranty)**

190. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

191. At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold the Composix Kugel Mesh Patch, which is used for repairing ventral and incisional hernias.

192. At the time Defendants marketed, sold, and distributed the Composix Kugel Mesh Patch for use by Plaintiffs and Plaintiff Class members, Defendants knew of the use for which

the Composix Kugel Mesh Patch was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

193. Defendants impliedly represented and warranted to the users and their physicians, healthcare providers, and the FDA that the Composix Kugel Mesh Patch was safe and of merchantable quality, and fit for the ordinary purpose for which said product was to be used.

194. That said representations and warranties aforementioned were false, misleading, and inaccurate in that the Composix Kugel Mesh Patch was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

195. The Composix Kugel Mesh Patch was injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

196. Defendants breached the aforesaid implied warranties, as their Composix Kugel Mesh Patch were not fit for their intended purposes and uses. Plaintiffs are hernia repair surgery patients who had the Composix Kugel Mesh Patch surgically implanted in their bodies. As such, Defendants expected, or reasonably should have expected, Plaintiffs to use or be affected by the medical device.

197. As a result of the defective nature of the Composix Kugel Mesh Patch, those persons who received the Composix Kugel Mesh Patch are at an increased risk of suffering serious and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, and such other side effects as serious infection. They also face the need for additional surgery to remove or replace the defective product, the need for subsequent surgery to repair perforations caused by the defective product, as well as

other severe and permanent health consequences as a result of the defective, unsafe and recalled product they received.

198. As a result of the foregoing acts and omissions, the Plaintiffs and Plaintiff Class members have suffered damages and will require health care and services and will incur medical, health, incidental and related expenses now or in the future.

**COUNT VII**
**(Unjust Enrichment)**

199. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

200. Defendants have financially benefited and been enriched by the unlawful and inequitable conduct alleged herein. Defendants have reaped enormous benefits and profits from consumers as a result of the sale of these defective and unreasonably dangerous devices.

201. Defendants have knowledge of this benefit.

202. Defendants have voluntarily accepted and retained this benefit, to the economic detriment of Plaintiffs and the Classes.

203. The circumstances, described herein, are such that it would be inequitable for Defendants to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the Classes.

204. Plaintiffs and the Classes are entitled to the amount of Defendants' ill-gotten gains, including interest, resulting from its unlawful, unjust, unfair and inequitable conduct in manufacturing, marketing, promoting and selling its Composix Kugel Mesh Patch products.

**COUNT VIII**
**(Fraud and Deceit)**

205. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

206. Defendants conducted research and used the Composix Kugel Mesh Patch as part of their research.

207. As a result of Defendants' research and testing, or lack thereof, Defendants distributed blatantly and intentionally false information, including but not limited to assuring the public, the Plaintiffs and Plaintiff Class members, their doctors, hospitals, healthcare professionals, and/or the FDA that the Composix Kugel Mesh Patch was safe to use as a means of repairing ventral and incisional hernias.

208. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiffs and Plaintiff Class members.

209. Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiffs and Plaintiff Class members, as well as their respective healthcare providers and/or the FDA.

210. The information distributed to the public, the FDA and the Plaintiffs and Plaintiff Class members, by Defendants, including but not limited to reports and press releases, contained material representations of fact and/or admissions.

211. The information distributed to the public, the FDA, and the Plaintiffs and Plaintiff Class members, by Defendants intentionally included representations that Defendants' Composix Kugel Mesh Patch was safe for use in repairing ventral and incisional hernias.

212. The information distributed to the public, the FDA, and the Plaintiffs and Plaintiff Class members, by Defendants intentionally included false representations that the Composix Kugel Mesh Patch was not injurious to the health and/or safety of its intended users. These representations were false and misleading.

213. Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that the Composix Kugel Mesh Patch was not safe as a means of repairing ventral and incisional hernias.

214. Defendants intentionally made material representations to the FDA and the public, including the medical profession, the Plaintiffs and the Plaintiff Class members, regarding the safety of the Composix Kugel Mesh Patch, specifically but not limited to the Composix Kugel Mesh Patch not having dangerous and serious health and/or safety concerns.

215. That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and the Plaintiffs and Plaintiff Class members, to gain the confidence of the public, the FDA, and the Plaintiffs and Plaintiff Class members, to falsely ensure the quality and fitness for use of the Composix Kugel Mesh Patch and induce the public, and the Plaintiffs and Plaintiff Class members to use the Composix Kugel Mesh Patch.

216. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, the FDA, and the Plaintiffs and Plaintiff Class members, that Composix Kugel Mesh Patch was fit and safe for use in repairing ventral and incisional hernias.

217. That Defendants made claims and representations in the documents submitted to the FDA, to the public, and the Plaintiffs and Plaintiff Class members, that the Composix Kugel Mesh Patch did not present serious health and/or safety risks.

218. That these representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

219. That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiffs and Plaintiff Class members, and were made in order to induce the Plaintiffs and Plaintiff Class members to rely upon misrepresentations and caused the Plaintiffs and Plaintiff Class members to use and rely on the Composix Kugel Mesh Patch.

220. That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Composix Kugel Mesh Patch to the public at large, the Plaintiffs and Plaintiff Class members in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective.

221. That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of the Composix Kugel Mesh Patch by concealing the suppressing material facts regarding the dangerous and serious health and/or safety concerns of the Composix Kugel Mesh Patch.

222. That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiffs and Plaintiff Class members into a sense of security so that Plaintiffs and Plaintiff Class members would rely on the representations and purchase, use, and rely on the Composix Kugel Mesh Patch and/or that their respective healthcare providers would do the same.

223. Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiffs and Plaintiff Class members and/or their respective healthcare provider, would rely upon the information being disseminated.

224. That the Plaintiffs and Plaintiff Class members did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of hernia repair patches, and were thereby induced to purchase, use and rely on Defendants' Composix Kugel Mesh Patch.

225. That at the time the representations were made, the Plaintiffs and Plaintiff Class members did not know the truth with regard to the dangerous and serious health and/or safety concerns of the Composix Kugel Mesh Patch.

226. That the Plaintiffs and Plaintiff Class members did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Plaintiffs and Plaintiff Class members with reasonable diligence have discovered the true facts.

227. That had Plaintiffs and Plaintiff Class members known the true facts with respect to the dangerous and serious health and/or safety concerns of the Composix Kugel Mesh Patch, Plaintiffs and Plaintiff Class members would not have used and/or relied on Defendants' Composix Kugel Mesh Patch.

228. That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly, and/or purposefully on the Plaintiffs and Plaintiff Class members.

229. As a result of the defective nature of the Composix Kugel Mesh Patch, those persons who received and/or rely on the Composix Kugel Mesh Patch have suffered and/or are at an increased risk of suffering serious and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, and/or such other side effects as serious infection, the need for additional surgery to remove and/or replace the defective product, and/or the need for subsequent surgery to repair perforations caused by the defective product, as well as other severe and permanent health consequences and/or medical monitoring as a result of the defective, unsafe and recalled product they received.

230. As a result of the foregoing acts and omissions, the Plaintiffs and Plaintiff Class members have suffered damages and will require health care and services and will incur medical, health, incidental and related expenses now or in the future.

**COUNT IX**
**(Negligent Misrepresentation)**

231. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

232. Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiffs and Plaintiff Class members, the FDA and the public in general that said product, the Composix Kugel Mesh Patch, had been tested and found to be safe and effective for repairing ventral and incisional hernias. The representations made by Defendants were, in fact, false.

233. Defendants failed to exercise ordinary care in the representation of the Composix Kugel Mesh Patch, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce, in that Defendants negligently misrepresented the Composix Kugel Mesh Patch's high risk of unreasonable, dangerous side effects.

234. Defendants breached their duty in representing the Composix Kugel Mesh Patch's serious side effects to the medical and healthcare community, to the Plaintiffs and Plaintiff Class members, the FDA and/or the public in general.

235. As a result of the defective nature of the Composix Kugel Mesh Patch, those persons who received and/or rely on the Composix Kugel Mesh Patch have suffered and/or are at an increased risk of suffering serious and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, and/or such other side effects as serious infection, the need for additional surgery to remove and/or replace the defective product, and/or the need for subsequent surgery to repair perforations caused by the defective product, as well as other severe and permanent health consequences and/or medical monitoring as a result of the defective, unsafe and recalled product they received.

236. As a result of the foregoing acts and omissions, the Plaintiffs and Plaintiff Class members have suffered damages and will require health care and services and will incur medical, health, incidental and related expenses now or in the future.

**COUNT X**
**(Fraudulent Misrepresentation)**

237. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

238. The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiffs and Plaintiff Class members, the FDA, and the public in general, that said product, the Composix Kugel Mesh Patch, had been tested and found to be safe and effective for its intended use in repairing ventral and incisional hernias. The representations made by Defendants were, in fact, false.

239. When said representations were made by Defendants, it knew the representations to be false, and it willfully, wantonly and recklessly disregarded whether the representations were true.

240. These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiffs and Plaintiff Class members, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend and use said product, the Composix Kugel Mesh Patch, in repairing ventral and incisional hernias, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs and Plaintiff Class members herein.

241. At the time the aforesaid representations were made by the Defendants and, at the time that the Plaintiffs and Plaintiff Class members used the Composix Kugel Mesh Patch, the Plaintiffs and Plaintiff Class members were unaware of the falsity of said representations and reasonably believed them to be true.

242. In reliance upon said representations, the Plaintiffs and Plaintiff Class members were induced to and did use the Composix Kugel Mesh Patch, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

243. Defendants knew and were aware or should have known that the Composix Kugel Mesh Patch had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

244. Defendants knew or should have known that the Composix Kugel Mesh Patch had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous.

245. Defendants brought the Composix Kugel Mesh Patch to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs and Plaintiff Class members.

246. As a result of the defective nature of the Composix Kugel Mesh Patch, those persons who received and/or rely on the Composix Kugel Mesh Patch have suffered and/or are at an increased risk of suffering serious and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, and/or such other side effects as serious infection, the need for additional surgery to remove and/or replace the defective product, and/or the need for subsequent surgery to repair perforations caused by the defective product, as well as other severe and permanent health consequences and/or medical monitoring as a result of the defective, unsafe and recalled product they received.

247. As a result of the foregoing acts and omissions, the Plaintiffs and Plaintiff Class members have suffered damages and will require health care and services and will incur medical, health, incidental and related expenses now or in the future.

**COUNT XI**
**(Fraudulent Concealment)**

248. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

249. At all times during the course of dealing between Defendants and Plaintiffs and Plaintiff Class members, Defendants misrepresented that the Composix Kugel Mesh Patch was safe for its intended use.

250. Defendants knew or were reckless in not knowing that its representations were false.

251. In representations to Plaintiffs and Plaintiff Class members, the FDA and/or healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

a. that the Composix Kugel Mesh Patch was not safe for repairing ventral and incisional hernias;

b. that the risk of serious injury and side effects with the Composix Kugel Mesh Patch were not adequately tested by Defendants;

c. that Defendants were aware of dangers with the Composix Kugel Mesh Patch;

d. that the Composix Kugel Mesh Patch was defective, and that it caused dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death and/or serious infections, as well as other severe and permanent health consequences;

e. that patients needed to be monitored more regularly than normal while using the Composix Kugel Mesh Patch;

f. that the Composix Kugel Mesh Patch was manufactured negligently and defectively;

g. that the Composix Kugel Mesh Patch was manufactured improperly; and

h. that the Composix Kugel Mesh Patch was designed negligently, defectively and improperly

252. Defendants were under a duty to disclose to Plaintiffs and Plaintiff Class members and their physicians, hospitals, healthcare providers, and/or the FDA the defective nature of the Composix Kugel Mesh Patch.

253. Defendants had sole access to material facts concerning the defective nature of the Composix Kugel Mesh Patch and its propensity to cause serious and dangerous side effects, and

hence, cause damage to persons who used the Composix Kugel Mesh Patch, including the Plaintiffs and Plaintiff Class members.

254. Defendants' concealment and omissions of material facts concerning, inter alia, the safety of the Composix Kugel Mesh Patch was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiffs and Plaintiff Class members, and their physicians, hospitals and/or healthcare providers into reliance on and use of the Composix Kugel Mesh Patch.

255. Defendants knew that Plaintiffs and Plaintiff Class members, and their physicians, hospitals, healthcare providers, and the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the Composix Kugel Mesh Patch, as set forth herein.

256. Plaintiffs and Plaintiff Class members, as well as their doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposely did not include facts that were concealed and/or omitted by Defendants.

257. As a result of the defective nature of the Composix Kugel Mesh Patch, those persons who received and/or rely on the Composix Kugel Mesh Patch have suffered and/or are at an increased risk of suffering serious and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, and/or such other side effects as serious infection, the need for additional surgery to remove and/or replace the defective product, and/or the need for subsequent surgery to repair perforations caused by the defective product, as well as other severe and permanent health consequences and/or medical monitoring as a result of the defective, unsafe and recalled product they received.

258. As a result of the foregoing acts and omissions, the Plaintiffs and Plaintiff Class members have suffered damages and will require health care and services and will incur medical, health, incidental and related expenses now or in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

1. For an Order certifying the Classes and any appropriate subclasses thereof under the appropriate provisions of Rule 23, and appointing Plaintiff and his counsel to represent the Classes;

2. For an Order establishing a medical monitoring program with a trust fund that is funded by Defendants, to provide medical testing, screening, services, research and education and a medical/legal registry to ensure that the Class members receive prompt and proper medical treatment;

3. For compensatory damages for the Economic Class;

4. For punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing;

5. For all applicable statutory damages under the consumer protection legislation;

6. For an award of treble damages where available;

7. For an award of attorneys' fees and costs;

8. For prejudgment interest and the costs of suit; and

9. For such other and further relief as this court may deem just and proper.

## JURY DEMAND

Plaintiffs on behalf of themselves and all others similarly situated, hereby demands a trial by jury in this case on all counts so triable.

Dated: February 7, 2008

/s/Donald A. Migliori
Donald A. Migliori (#4936)
Vincent L. Greene (#5971)
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX

Teresa C. Toriseva
Nancy C. Wilkins
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Ernest Cory
Jon C. Conlin
Stephen R. Hunt, Jr.
CORY WATSON CROWDER & DEGARS P.C.
2131 Magnolia Ave.
Birmingham, AL 35209
205-328-2200
205-326-7896 Fax

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602
312-346-2222
312-346-0022 FAX

Fred Thompson, III
Rhett D. Klok
Carmen Scott
MOTLEY RICE LLC
28 Bridgeside Blvd.

P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

Michael A. London
Mark T. Sadaka
DOUGLAS & LONDON, P.C.
111 John Street, Suite 1400
New York, NY 10038
212-566-7500
212-566-7501

Jerold S. Parker
Andrew Alonso
David Krangle
PARKER WAICHMAN ALONSO LLP
111 Great Neck Road, 1st Floor
Great Neck, NY 11021

Thomas P. Cartmell
Jeffrey M. Kuntz
Thomas J. Preuss
WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100
816-531-2372 FAX

Derek Potts
Timothy Sifers
THE POTTS LAW FIRM
715 May Street, Suite 100
Kansas City, MO 64105
816-931-2230
816-931-7030 FAX

Christopher M. Placitella
COHEN, PLACITELLA & ROTH, PC
115 Maple Avenue
Red Bank, NJ 07701
732 747 9003
215-567-6019 FAX

## CERTIFICATION

I hereby certify that on this 7th day of February, 2008, that a true copy of the foregoing Consolidated Medical Monitoring Complaint has been filed electronically and that it is available for viewing and downloading from the ECF system. I also certify that a true copy of this document was also mailed or electronically mailed to the following:

**Ernest Cory** ecory@cwcd.com

**Kirby T. Griffis** kgriffis@spriggs.com

**Mark T. Nugent** mnugent@morrisonmahoney.com

**Thomas M. Robinson** trobinson@morrisonmahoney.com

**Teresa C Toriseva** tct@wtwlaw.us

**Samuel J. Abate, Jr**
Pepper Hamilton LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405

**Andrew L. Colocotronis**
Baker, Donelson, Bearman, Caldwell & Berkowitz
900 South Gay Street
2200 Riverview Tower
Knoxville, TN 37902

**Kathleen Ann DeLaney**
Delaney & Delaney LLC
3640 North Washington Blvd.
Indianapolis, IN 46205

**John A. Fagg, Jr**
Moore & Van Allen
100 N. Tryon Street
Suite 4700
Charlotte, NC 28202-4003

**Gary D. Hermann**
Hermann, Cahn & Schneider
Suite 500
1301 East Ninth Street
Cleveland, OH 44114

**James B. Irwin**
Irwin Fritchie
400 Poydras Street
Suite 2700
New Orleans, LA 70130

**D. Mitchell McFarland**
Harrison Bettis Staff McFarland & Weems
500 Dallas Street
Suite 2600
Houston, TX 77002

**Robert H. Pedersen**
Watkins & Eager
P.O. Box 650
Jackson, MS 39205-0650

**Michelle R. Schwarz**
Mandelbaum & Schwarz
2012 Hamilton Lane
Suite 303
Las Vegas, NV 89106

**Lesley Stine**
Saieva, Rousselle & Stine
601 W. Swann Ave., Suite B
Tampa, FL 33606

**Kara T. Stubbs**
Baker Sterchi Cowden & Rice
2400 Pershing Road
Suite 500
Kansas City, MO 64108

**Kevin K. Trout**
Heron Sweet Fox & Trout
2601 NW Expressway
Suite 707 W
Oklahoma City, OK 73112

**Danene J. Tushar**
Fraser Stryker Law Firm
409 South 17th Street
Suite 500 Energy Plaza
Omaha, NE 68102

**David Bowman White**
Gallivan White and Boyd
PO Box 1505
Greenville, SC 29603

**Dennie M. Zankel**
Baker and Sterchi
1010 Market Street
Suite 950
St. Louis, MO 63101

**Peter J. Brodhead**
Spangenberg, Shibley & Liber
2400 National City Center
Cleveland, OH 44114-3400

**Nicholas A. DiCello**
Spangenberg, Shibley & Liber
2400 National City Center
1900 East Ninth Street
Cleveland, OH 44114

**Gary D. Hermann**
Hermann, Cahn & Schneider
Suite 500
1301 East Ninth Street
Cleveland, OH 44114

**Jeffrey S. Moeller**
Hermann, Cahn & Schneider
Suite 500
1301 East Ninth Street
Cleveland, OH 44114

/s/ Donald A. Migliori
Donald A. Migliori
RI Bar#4936
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940
Telephone: 401-457-7700
Fax: 401-457-7708