**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | § § § | **JUDGE LISI** |

# MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR THE ENTRY OF AN ORDER DETAILING THE FORM AND FORMAT OF DOCUMENTS TO BE PRODUCED

Nine months after Defendants explained the methodology they were employing to identify and produce responsive documents, plaintiffs move to require Defendants to (1) apply a completely different, and incompatible, methodology involving running over 18,000 search terms through all of Bard and Davol's active file servers to identify responsive documents; and (2) to produce a slew of what they call "metadata" which is mostly either information that has already been provided to them or that Bard has already agreed to provide, or is not metadata at all and does not exist to be produced. Because the relief requested by plaintiffs is unjustifiable, dramatically burdensome, and would slow and hinder discovery, their motion should be denied.

## I. The Federal Rules Of Civil Procedure 26 And 34 Allow For The Production of Electronically Stored Information Limited By The Proportionality Principle.

Under Federal Rule of Civil Procedure 34, a party may serve a request to another party "to produce . . . (A) any designated documents or electronically stored information." Fed. R. Civ. P. 34(a)(1)(A). Furthermore, the request: "(A) must describe with reasonable particularity each item or category of items . . . ; and (C) may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1).

Fed. R. Civ. P. 26 provides limits to Rule 34's potentially boundless discovery requirements by instituting a "proportionality" principle that "specifically curtail[s] overuse, whether intentional or thoughtless, of broad discovery."[1] Wright & Miller, 8 Fed. Prac. & Proc. Civ. 2d § 2008.1. Pursuant to Rule 26(b)(2)(C), the court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule" when certain situations are present. *Id.* The court must limit discovery when it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The court must also limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(ii); *City of Waltham v. U.S. Postal Serv.*, 11 F.3d 235, 243 (1st Cir. 1993) (recognizing trial court's broad responsibility to "weigh discovery burdens against the likelihood of finding relevant material").

## II. Plaintiffs' Demand For A Completely New Methodology For Document Production Is Unwarranted And Unreasonable.

During Rule 26(f) discussions in November of last year, Defendants explained in detail how they had identified potentially responsive documents for production: **first**, they gathered the specific paper and electronic files and folders where employees kept responsive documents, and **second**, as a failsafe measure, ran a string of search terms in other electronic files and folders which had been gathered as part of a broad sweep. Plaintiffs now muster all of their arguments against the *secondary* measure as if were the sole or primary method used by Bard to identify responsive documents. (*See* Pls.' Mem. 7 ("Defendants stated they had relied on the presence of only eight (8) search terms to determine the relevance of material to

[1] The 2000 Amendments added a "redundant cross-reference" in Rule 26(b)(1) to "emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery." Committee Notes on Rules -- 2000 Amendment; *see also* Wright & Miller, 8 Fed. Prac. & Proc. Civ. 2d § 2008.1.

be produced"); Smith Aff. at ¶ 10 (Ex. 10 to Mem.) ("Defendants relied on the presence of 8 terms to determine the relevance of material.").) They explain in detail, with a supporting affidavit, why they believe that a search methodology that did no more than search for the eight terms used by Defendants may miss responsive documents. Nowhere do they address that what they attack was a secondary measure, and nowhere do they challenge Bard's primary methodology for identifying responsive documents.

The result of plaintiffs' flawed analysis is that they now demand that Bard return to its hard drives, shared drives, and servers, and run 395 pages of search requests totaling 18,158 separate key word searches. Viewed in the light of what Bard has in fact already done, plaintiffs have made no showing that their demand is reasonably likely to lead to the discovery of additional admissible evidence warranting the burden that they would impose. And plaintiffs' estimation of that burden – based on a very artificial test – is grossly understated. Compliance with the demand would bring Bard's operations to a grinding halt, and is far beyond what the Federal Rules of Civil Procedure contemplate.

### A. Defendants Have Employed A Reasonable And Appropriate Methodology To Determine Responsive Material.

Moving counsel has been on notice of Defendants' search strategies since April 3, 2007, when Defendants responded to discovery requests made by the same counsel in a state court case and advised that documents would be produced from the files of relevant employees and departmental files. (Defs.' Resp. to Pl.'s Req. for Produc., *Warren v. C.R. Bard*, No. 06-6620, (D.R.I. Apr. 3, 2007) (Ex. 1.)) Defendants further explained four months ago that:

> [d]ocuments were identified for production through interviews with persons involved in the design, production, manufacture, testing, regulatory compliance, and sale of the Composix® Kugel® Patch. Relevant documents in their possession, hard-

> copy and electronic, were retrieved from them. For the electronic documents, employees identified the files that contained documents related to the Composix® Kugel® Patch, and these were copied for production processing. *In addition*, searches were run outside of those identified folders to identify any documents that may not have been in such folders.

(Letter from Kirby Griffis to Donald A. Migliori 2 (Sept. 20, 2007), Ex. 2 to Pls. Mem. (emphasis added) (Ex. 2.)) As the letter states, at the end of the employee-by-employee search process, Defendants chose to perform an additional, back-up search of certain file paths as a failsafe measure.

There is no genuine dispute about the effectiveness of Bard's methodology, and that methodology is squarely endorsed by the Federal Rules of Civil Procedure, which allows for the search and production of documents as kept in the ordinary course of business. *See* Fed. R. Civ. Pro. 34(b)(2)(E)(i). Additionally, the Sedona Principles recognize, the responding parties "are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." Jonathan M. Redgrave, Ed., *The Sedona Principles (Second Edition) Addressing Electronic Document Production*, The Sedona Conference, Principle 6, at ii (June 2007), available at http://www.thesedonaconference.org/content/miscFiles/TSC_PRINCP_2nd_ed_607.pdf. The District Court for the Southern District of New York recognized and approved of the first part of Defendants' search strategy:

> [Defendants] must conduct a diligent search, which involves developing a reasonably comprehensive search strategy. Such a strategy might, for example, include identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation.

*Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (citing *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003)); *see also McPeek v. Ashcroft*, 202

F.R.D. 31, 32-33 (D.D.C. 2001) ("In a traditional 'paper' case, the producing party searches where she thinks appropriate for the documents requested under Fed. R. Civ. P. 34. She is aided by the fact that files are traditionally organized by subject or chronology ('chron' files), such as all the files of a particular person, independent of subject."). As to whether Defendants' strategy was effective, plaintiffs have identified no documents or groups of documents that appear to be missing from the production. All of plaintiffs' examples of documents "found" by their proposed searches are from documents actually produced by Bard using its methodology.

Plaintiffs' proposed alternative entails a blind, context-deprived search of documents that may or may not be relevant, based on a consultants' analysis of search terms and based on a misunderstanding of how search terms were used by Bard in the first place. Plaintiffs cite a few cases in which a very limited number of terms were run in certain defined and limited data stores, but cite nothing resembling what they ask here – that all servers and hard drives be searched for over 18,000 terms. *See Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 570-71 (N.D. Ill. 2004) (8 search terms); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 52 Fed. R. Serv. 3d 1420, at *4 (D. Del. 2002); *Alexander v. FBI*, 194 F.R.D. 316, 338 (D.D.C. 2000) (20 search terms).[2] The few cases they do cite feature orders that have

[2] The other cases cited by Plaintiffs are equally inapposite. In *Alexander,* the court ordered defendants to perform a global search of certain individuals' emails, but using only 20 search terms. 194 F.R.D. at 338. In that case, the defendants had admitted that they had not performed the relevant searches of certain individuals. They then offered to plaintiffs to do one global search of certain individuals' emails with agreed-upon search terms, but the parties could not agree on the individuals or the search terms. In the patent infringement case involving two highly sophisticated computer companies, *Tulip Computers*, the court did order the search and production of emails of certain individuals, which had never been searched or produced. 52 Fed. R. Serv. 3d 1420, at *1. That order was influenced by Defendant's poor compliance with discovery and potentially by the nature of Defendant's computer business. Additionally, the search terms requested involved limited, one-word searches, such as "STINGER" OR "Tulip." *Id.* at *4.

required several key word searches in certain defined and confined databases, rather than the tens of thousands of searches requested by Plaintiffs in all of Defendants' electronic data storage units.

### B. Plaintiffs' Proposed Alternative Methodology Is Unduly Burdensome And Expensive.

Plaintiffs attempt to characterize their request as reasonable by providing time estimates for running the searches. These estimates were generated by using advanced search engines to search the text files provided by Defendants with their document production. They did *not* involve, as would the actual search they demand:

- Searches in multiple hard drives and servers;
- Searches of many times the volume of documents actually produced in this litigation;
- Searches of multiple different native file formats, rather than the homogenous text files provided to Plaintiffs by Defendants to make document review easy; and
- Searches in the live environment of active systems being used for corporate operations.

As detailed in the attached affidavit of technology consultant Brian Schrader, these differences render the time estimates provided meaningless both as absolute measures of the burden of running the searches and as relative measures of how much harder it would be to run 18,000 searches than 8. As Mr. Schrader states in his affidavit, plaintiffs ignore "the crippling impact of conducting such a search on all of Defendants' digital storage media across their entire enterprise without any reasonable limits or other such considerations." (Schrader Aff. ¶ 14 (Ex. 3.))

According to the First Circuit, parties are to act reasonably in requesting and producing documents and adhere to the principle of proportionality: "[Parties] ought not to

be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989) (upholding denial of motion to compel interrogatory answers and referencing purpose of Amendments to Federal Rules "to deal with problems of over-discovery"); *see also Aponte-Torres v. Univ. Of P.R.*, 445 F.3d 50, 59 (1st Cir. 2006) (upholding dismissal and holding that district court did not abuse its discretion in denying leave to file second amended complaint because "[t]he discovery rules are not intended as a broad license to mount serial fishing expeditions"); *Santiago v. Fenton*, 891 F.2d 373, 379 (1st Cir. 1989) ("Relevancy . . . does not automatically entitle a plaintiff to discovery."); *Linder v. Calero-Portocarrero*, 183 F.R.D. 314, 319-320 (D.D.C. 1998) (denying additional search for documents after first production and noting that while search could produce relevant documents, "a search as broad as that proposed by plaintiffs would also generate mountains of irrelevant documents"); *Brandt v. Wand Partners*, 242 F.3d 6, 20 (1st Cir. 2001) (holding lower court acted within its discretion by denying requested discovery when "[f]aced only with a bland and belated statement that the papers were needed").

When confronted with a difference in opinion as to a full and complete search and production of documents, the District Court for the District of Massachusetts used Rule 26(b)(2) to deny plaintiffs' request to search nine years' worth of defendants' back-up tapes. *Cognex Corp. v. Electro Scientific Indus., Inc.*, No. Civ. A. 01CV10287RCL, 2002 WL 32309413, at *4-6 (D. Mass. July 2, 2002). The court acknowledged that, due to its function, the 820 back-up tapes containing 4 terabytes of data likely had some relevant material. The cost, both in time and money, of reviewing the material without a great need for the

information given the previous searches, however, tilted the burden-benefit balance towards denial of the motion to compel. *Id.* The court noted defendants' "extensive search for relevant documents" and, in reaching its holding, stated that "[a]t some point, the adversary system needs to say 'enough is enough' and recognize that the costs of seeking *every* relevant piece of discovery is not reasonable." *Id.* at *5.

Plaintiffs here are asking to use a broadsword when Defendants have already used a scalpel to retrieve relevant documents. Rather than using broad-based search terms and gathering too much irrelevant information, Defendants have collected documents from the individuals and from the paper and electronic files concerning the issues at hand. Plaintiffs do not show any deficiency in results under Defendants' targeted search, and, based on the principal of proportionality, courts in similar situations have refused the requested "over-discovery." Thus, this Court should deny Plaintiffs' motion for an order detailing the form and format of the production because it is simply not needed here.

**III. Plaintiffs' Demand For "Metadata" Is Almost Entirely Moot and Seeks Information That Is Unreliable And Should Not Be Produced..**

Plaintiffs' second demand is for the production of a list of what they call "metadata." For the most part, they misuse the term to request information that is not metadata at all, and also request information that has already been provided or promised or which does not exist.

**A. The Majority Of The "Metadata" Requested Has Already Been Produced, Will Be Produced, Or Does Not Exist.**

In their Proposed Order, Plaintiffs demand the following "metadata":

- BegBates; EndBates
- BegAttach; EndAttach
- DocDate
- DocType
- Document Title
- AuthorName

- To
- cc
- bcc
- Custodian
- Source
- Importance
- Sensitivity
- Marginalia
- Redacted (yes or no)
- Confidential (yes or no)
- Foreign Language (yes or no)
- Complete or Incomplete doc

(Proposed Order (Ex. 1 to Pls.' Mem.).)[3] In their document production, Defendants have already provided the "BegBates/EndBates," "Custodian," and "Source" information in their load files, and have provided logs and additional information which informs plaintiffs which documents are redacted ("Redacted (yes or no)") and which have confidentiality designations ("Confidential (yes or no)"). Defendants have also already agreed to produce To, From, CC, and BCC information with regard to e-mails (these fields do not apply to other types of documents). Deleting these entries for information already provided or – regarding e-mail – to be provided from the list leaves the following:

- BegAttach; EndAttach
- DocDate
- DocType
- Document Title
- AuthorName
- Importance
- Sensitivity
- Marginalia
- Foreign Language (yes or no)
- Complete or Incomplete doc

[3] Plaintiffs have provided an affidavit from Robert Guinaugh, whose list of requested metadata differs from that contained in the Proposed Order. (Guinaugh Aff., Ex. 8 to Pls.' Mem. ¶ 6.) So as to not waste the Court's time, Defendants are only responding to what Plaintiffs have asked for in their proposed Order.

The last three items on the list are not metadata at all, but are (like Redacted and Confidential) "subjective coding," meaning information that may be generated by a producing party in the course of document review. (*See* Schrader Aff. ¶ 30 (Ex. 3.)) Of course, no rule of discovery requires a party to *create* information, and Bard in fact did not, in reviewing documents, identify whether marginalia existed, whether the document was a foreign-language document, or whether it was or was not "complete." Since that which does not exist cannot properly be requested in discovery, these three requests must be denied.[4]

The remaining items on the list are as follows:

- BegAttach; EndAttach
- DocDate
- DocType
- Document Title
- AuthorName
- Importance
- Sensitivity

These are all subjective coding (BegAttach/EndAttach) or metadata (DocDate) of very questionable value in litigation as detailed below, and Plaintiffs have offered no justification for why the value to them of such information outweighs the cost and expense of reviewing it for privilege and producing it. With regard to two of the fields, Document Title and AuthorName, the data is completely unreliable and of such low evidentiary value as to not warrant production. With regard to the remaining fields, to the extent the information exists and with the caveats given below regarding its meaning and utility, it will be produced.

---

[4] For example, Plaintiffs describe "marginalia" as metadata, but the explanation of "marginalia" states, "for *hard-copy documents*, [provide] yes or no indication of whether the document at issue contains handwritten notations, notes, or marginalia." (Ex. 1 to Pls.' Mem. 2 (emphasis added).) It is impossible for hard-copy documents to have metadata attached to them. (Schrader Aff. ¶ 29 (Ex. 3.)) Defendants have not collected this information, and so Plaintiffs request amounts to asking Defendants to perform data analysis for them.

BegAttach/EndAttach: This is subjective coding, reflecting the judgment of document reviewers as to which documents are attachments to which. To the extent Bard has this information, it will be produced.

DocDate: For e-mails this has already been agreed to be produced. Per the Proposed Order, with regard to electronic documents, plaintiffs request the last date on which the document was saved. To the extent that Bard has this information (it does not exist for all types of documents), it will be produced.

DocType: There is no such thing as "DocType" metadata, but Bard has and can provide the file extensions for documents, from which the type of document can be determined. (*I.e.*, an .xls extension denotes an Excel file.)

Importance/Sensitivity: These are flags that can be used in Outlook e-mail systems, either set automatically or by the user. They have little evidentiary value – for example, the Important flag is often used to prompt the recipient to read the message quickly rather than because the message is important. As flags set by users, their meaning is very idiosyncratic. The evidentiary value of such metadata is minimal. To the extent Bard has this information, it will be produced.

**B. Unreliable "Metadata" Should Not Be Produced.**

Bard objects to the production of Document Title and AuthorName "metadata" for electronic documents other than e-mail. These are the only two types of "metadata" sought in Plaintiffs' Proposed Order which actually exist and which Bard has not already provided or agreed to provide.

Document Title and AuthorName: For e-mails this corresponds to the Subject and From lines, and will be produced. For electronic documents, the "title" is a very unreliable

piece of metadata which, depending on the programming of the machines involved, can be the first line of the document, a filename, or something else. It is neither official nor unofficial corporate information, but an artifact of the computer programs that the company happens to use. AuthorName is equally unreliable and generally reflects the programming of various applications rather than any decision made by any corporate employee. AuthorName may or may not reflect who created a document and ordinarily is automatically filled in by a program.

The problem of metadata's unreliability is widely recognized. *See Mich. First Credit Union v. Cumis Ins. Soc'y, Inc.*, No. Civ. A. 05-74423, 2007 WL 4098213, at *3 (E.D. Mich. Nov. 16, 2007) (denying motion for sanctions when "substantive information contained in . . . documents . . . speaks for itself" and when "production of this metadata would be overly burdensome with no corresponding evidentiary value"); *Wyeth v. Impax Labs., Inc.*, No. Civ. A. 06-222-JJF, 2006 WL 3091331, at *2 (D. Del. Oct. 26, 2006) ("Most metadata is of limited evidentiary value, and reviewing it can waste litigation resources."); *Kentucky Speedway, LLC v. NASCAR, Inc.*, No. Civ. A. 05-138-WOB, 2006 WL 5097354, at *8 (E.D. Ky. Dec. 18, 2006) ("In most cases and for most documents, metadata does not provide relevant information."). Plaintiffs have offered no justification for the production of these fields, and in particular have not addressed how they would – despite being inherently unreliable – serve to simplify or clarify rather than confuse and obfuscate discovery.

## IV. Plaintiffs Offer No Justification For Their Demand For Native-Format Document Production Or For An Order Concerning Redaction And Privilege Logs.

In an abundance of caution, Defendants will briefly address two issues which appear in the Proposed Order and nowhere else. Plaintiffs do not make any argument for the production of documents in native format, but include it in ¶ 1 of their Proposed Order. And

they make no argument for why any order is needed regarding redaction or privilege logs (both of which have been provided to them), but they include proposed language on these subjects in ¶ 7 of their Proposed Order.

First, of course, this Court should decline to enter a discovery Order for which plaintiffs have offered no justification and no argument and have made no previous broad request. *Raghavan v. Bayer USA, Inc.*, No. 3:05-cv-682 (CFD), 2007 WL 2099637, at *4 (D. Conn. July 17, 2007) ("The court will not compel discovery that has not been sought."). Plaintiffs have made no showing that native-format production is warranted, and none that anything is wrong with the redaction or privilege logs provided. Should they have such an argument to make, they should file a motion on the subject and the Defendants should be given the opportunity to respond.

The Proposed Order regarding native-format production is particularly troubling. Defendants advised Plaintiffs nine months ago, in their responses to Requests for Production, that documents would be produced in TIFF format, with accompanying text files, and Plaintiffs have accepted production of the TIFF images and have been using them in depositions.[5] Their current demand – if an unsupported paragraph in a Proposed Order constitutes a demand - that the production be redone in native format would mean that Bard would have to provide, for each document that did not originate in a paper image, the actual

[5] Defendants produced documents in TIFF format in a state-court action, *Woodard v. Davol*, No. 2006 CA 07689 M (D.C. Super. Ct.), without any objection from opposing counsel, and then on April 3, 2007, advised these counsel that Defendants would produce documents in TIFF format in the RI state litigation. Plaintiffs' requests for production in this action were made in the context of this history of acquiescence in the TIFF production, and their characterization of Defendants as having "unilaterally" and over their protests produced documents in TIFF format is at best misleading. Plaintiffs call the TIFF production "sterile" because it does not include metadata; but the issue of whether metadata should be provided is wholly distinct from whether the underlying documents are properly produced in TIFF format. Defendants have already agreed to provide metadata linked to documents produced in TIFF format.

electronic file corresponding to that document. This would require that the extensive production that has already been completed be withdrawn and redone, and would patently delay and complicate discovery. Bard's selection of TIFF format for the document production was appropriate. (*See* Schrader Aff. ¶¶ 39-40, 43-44 (detailing why production in TIFF format is frequently chosen).) Plaintiffs offer no argument to the contrary, and none regarding redaction or privilege logs. Paragraphs 1 and 7 of the Proposed Order should be disregarded entirely.

## V. Conclusion

For all of the above reasons, this Court should deny Plaintiffs' Motion for Entry of an Order Detailing the Form and Format of Documents to be Produced.

Dated: February 21, 2008

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

/s/ Kirby T. Griffis

Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
1350 I St., N.W.
Washington, DC 20005
Phone: (202) 898-5800
Fax: (202) 682-1639
Email: kgriffis@spriggs.com

**ATTORNEYS FOR DEFENDANT DAVOL INC. AND DEFENDANT C.R. BARD, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2008, the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR THE ENTRY OF AN ORDER DETAILING THE FORM AND FORMAT OF DOCUMENTS TO BE PRODUCED was electronically filed with the Clerk of Court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon Plaintiffs' liaison counsel in the manner indicated below:

Donald Migliori
MOTLEY RICE, LLC.
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
*(electronic notice)*

/s/ Kirby T. Griffis