IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * * C.A. NO. 07-190ML
*
LYNN JONES *
*
VS. *
*
DAVOL, INC., et al *
*
------------------------------*
* C.A. NO. 07-191ML
BONNIE THOMPKINS *
*
VS. * JULY 3, 2007
*
DAVOL, INC., et al *
*
* * * * * * * * * * * * * * * * PROVIDENCE, RI

BEFORE THE HONORABLE MARY M. LISI,
CHIEF JUDGE
(Plaintiffs' Emergency Motions to Remand)

APPEARANCES:

FOR THE PLAINTIFFS: DONALD A. MIGLIORI, ESQ.
Motley Rice LLC
321 South Main Street, 2nd Floor
Providence, RI 02903

RHETT D. KLOK, ESQ.
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

TERESA C. TORISEVA, ESQ.
EDWARD A. WALLACE, ESQ.
Wexler Toriseva Wallace LLP
1446 National Road
Wheeling, WV 26003

JON C. CONLIN, ESQ.
Cory, Watson, Crowder & DeGaris PC
2131 Magnolia Avenue
Birmingham, AL 35205

FOR THE DEFENDANTS: MARK T. NUGENT, ESQ.
THOMAS M. ROBINSON, ESQ.
Morrison Mahoney LLP
121 South Main Street, Suite 600
Providence, RI 02903

KIRBY T. GRIFFIS, ESQ.
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005

Court Reporter: Karen M. Wischnowsky, RPR-RMR-CRR
One Exchange Terrace
Providence, RI 02903

3 JULY 2007 -- 10:00 A.M.

THE COURT: There are two matters before the Court this morning on identical motions to remand. The first is Lynn Jones versus Davol, et al. The second is the Thompkins versus Davol, et al. The matters, as I say, are before the Court this morning on Plaintiffs' styled as an emergency motion to remand.

Before we begin, since I have so many attorneys here on a relatively simple motion, I'll ask you all to please identify yourselves, I'm hoping I'm only going to hear from one of you for each side, and then we'll proceed with a hearing on the motion and response.

And before we do that, let me also tell counsel that I've read all the papers. So what I don't want is a rehash. So why don't we start over on this side, tell me who you are and which of you is going to argue.

MR. NUGENT: Mark Nugent from Morrison Mahoney representing Davol and C.R. Bard.

MR. GRIFFIS: Kirby Griffis also representing C.R. Bard and Davol from Spriggs & Hollingsworth in Washington, D.C. I'll be doing the arguing.

THE COURT: Okay. Mr. Griffis?

MR. GRIFFIS: Yes.

MR. ROBINSON: Tom Robinson for the defense, your Honor.

MR. MIGLIORI: Good morning, your Honor. My name is Don Migliori from the law firm of Motley Rice here in Providence, Rhode Island.

MR. CONLIN: Your Honor, my name is John Conlin from the law firm of Cory, Watson, Crowder & DeGaris in Birmingham, Alabama.

THE COURT: Who is going to argue on that side?

MR. CONLIN: I'll be arguing for the Plaintiffs.

THE COURT: Well, Mr. Conlin, you did not sign the pleading. Is that because you hadn't been admitted yet?

MR. CONLIN: In state court at that time, yes, your Honor.

THE COURT: I'm going to be asking, and I will tell you this now, some very pointed questions about this pleading. So decide amongst the two of you, since Mr. Migliori's name is on it, I want to know who the author is.

MR. MIGLIORI: Your Honor, the -- I'm not sure which pleading we're talking about. The actual pleading in federal court?

THE COURT: The so-called emergency motion for remand.

MR. CONLIN: Yes, your Honor. You can address those towards myself.

THE COURT: You wrote it?

MR. CONLIN: Yes, ma'am.

THE COURT: Okay. And your name again is Conlin?

MR. CONLIN: Conlin, C-O-N-L-I-N.

THE COURT: C-O-N-L-I-N. Thank you.

MS. TORISEVA: Good morning, your Honor. My name is Teresa Toriseva. I'm with the law firm of Waxler Toriseva Wallace, and I'm from the Wheeling, West Virginia, office from that firm.

THE COURT: Why did you come here from West Virginia?

MS. TORISEVA: Your Honor, I represent a number of Plaintiffs in class actions filed in both federal and state courts here in Rhode Island in this litigation. Thank you.

THE COURT: Okay. Just to let you know for future reference, if it's a simple motion, don't be wasting your client's money traveling if you don't need to.

MS. TORISEVA: Yes, your Honor. We had actually other things in conjunction with this.

THE COURT: Okay. Good.

MS. TORISEVA: Thank you.

MR. KLOK: Good morning, your Honor. Rhett Klok

from Motley Rice out of the Charleston, South Carolina, office.

THE COURT: You came here for the weather?

MR. KLOK: In part, yes, your Honor, some reprieve from the humidity.

MR. WALLACE: Good morning, your Honor. Ed Wallace also on behalf of Plaintiffs.

THE COURT: All right, Mr. Conlin. And, Mr. Migliori, since your name is on this, I want you to listen very carefully to some of the questions I'm going to ask co-counsel.

MR. MIGLIORI: I will, your Honor.

THE COURT: Mr. Conlin, why is this an emergency?

MR. CONLIN: At the time that we filed the motion, there was a motion in front of the judicial panel for removal of the cases and remand ultimately for consolidation of these cases before --

THE COURT: Actually, your firm filed that motion.

MR. CONLIN: Yes.

THE COURT: Or Mr. Migliori's firm filed a motion for consolidation before the MDL.

MR. CONLIN: Requesting this Court, and my firm filed a motion in support of that in front of this

Court. At the time that we filed this motion, however, the Defendants had filed a motion asking there be no consolidation or, in the alternative, for it to be taken away from Rhode Island.

And so the reason for the emergency nature of the motion was hopefully to get it in front of this Court before a decision was made on the panel so that we could keep this case in Rhode Island in the forum that was chosen by the Plaintiffs.

THE COURT: You don't address any of that in the motion papers. It is unclear to me. And, frankly, when I read it, I had no clue as to why anyone would think it's of an emergency nature.

So for future reference, particularly if you're going to practice in this court, you need to be mindful of the fact that we're good, but we're not mind-readers, and you need to set forth the bases for asking for emergency relief.

Ordinarily, the Court doesn't grant emergency relief unless there's a true emergency. So that's the first question I have for you.

MR. CONLIN: Yes, your Honor. I apologize for that. You're right. I couldn't have and shouldn't have expected you to be a mind-reader on that point.

THE COURT: I want to ask you another question.

MR. CONLIN: Yes, your Honor.

THE COURT: In about six pages of text, you use the words "bad faith" eight times. Tell me what factual basis you have, what evidence you have that there's bad faith in this case.

MR. CONLIN: First off, your Honor --

THE COURT: Because those are strong words, Mr. Conlin, and it disturbs me greatly when I read a pleading that accuses another attorney of engaging in bad faith.

So tell me, please, what factual basis you have to say that the other side is engaged in bad faith, that it has attempted to swindle the Court. I just don't see it.

Is it gamesmanship? It may well be. Is it within the rules? It certainly is, and you seem to concede that. Tell me where you have any factual support for an allegation that the other side engaged in bad faith.

MR. CONLIN: Yes, your Honor.

THE COURT: And this, Mr. Migliori, is for your benefit as well since it is your signature that appears on this paper.

MR. MIGLIORI: I appreciate the magnitude of that, your Honor.

MR. CONLIN: And, again, I agree with my co-counsel, I do appreciate the magnitude of it. In discussing this and in writing this brief, I was looking at the totality of our experiences in the state court with the Defendants at present.

And I may be a simple guy from Alabama and gamesmanship may be something that's -- that they take lightly, but gamesmanship on our part, or in my eyes anyway, is something I look at with a bit of distaste sometimes.

THE COURT: It's not bad faith, though, Mr. Conlin, if an attorney takes advantage of your failure to make service. Have you made service yet?

MR. CONLIN: No, your Honor. And part of that goes to the procedural black hole that occurs once removal is made. Once they remove the case to federal court, service of any sort in state court would be like serving 18 pages of blank copy paper.

THE COURT: But, Mr. Conlin, you are no neophyte to these matters. Now, you've indicated in your papers that the only way that you could serve the resident Defendant in this case was by making service, and I want to make sure I'm not misquoting you, the only way to make service on Davol is by using Bard's registered agent. And then you refer to cases in the states of

Nebraska, North Carolina, Ohio, Kentucky and Texas. Is that true?

MR. CONLIN: In those situation, in those cases --

THE COURT: What about in Rhode Island because that's where you are?

MR. CONLIN: Yes, ma'am, your Honor. I was pointing that out to show how intertwined the two companies are in terms of the service that was made on Bard. The prime example of that would be in North Carolina where service on --

THE COURT: But you're not in North Carolina now, you're in Rhode Island, and they have a registered agent about two blocks from here.

MR. CONLIN: Yes, ma'am, your Honor. And I agree with you, and I concede that service was not made on Davol here in Rhode Island.

THE COURT: And you have five other cases over in state superior court, do you not?

MR. CONLIN: Yes, ma'am, your Honor.

MR. MIGLIORI: If I may, your Honor, there are now 18 with these two.

THE COURT: In state court?

MR. MIGLIORI: In state court, specially assigned to Judge Gibney.

MR. CONLIN: There were five others between the two of us, 18 in total.

THE COURT: And I'm assuming -- are these all out-of-state Plaintiffs?

MR. MIGLIORI: They are at this stage, your Honor.

THE COURT: So there could have been diversity; but if you properly served Davol, then the resident Defendant rule kicks in and removal is impossible. But in these two, you missed it.

MR. CONLIN: In these two, Bard got served before Davol.

THE COURT: And who controls that?

MR. CONLIN: Yes, ma'am, your Honor, and that was on the Plaintiffs, and I would concede that.

THE COURT: You see, Mr. Conlin, as I say, I'm deeply disturbed by the tone and tenor of this pleading. It is simply not our way of practice.

This is a small court, a small bar; and before you pull out of your hip pocket words like bad faith and accuse somebody of swindling, you damn well better have some facts to support it, and I just don't see it here.

What I see, and you correct me if I'm wrong, I think you've just conceded, that in making service, you

served the nonresident Defendant first. In the interim, before you got a chance to serve the in-state Defendant, there was a removal. And you're a good lawyer. Mr. Migliori is a good lawyer. You can all read 1441(b), and you know the case law. If they're not served, they're not served, and removal is proper.

You may not like it, but that doesn't make it bad faith, that doesn't make it an egregious slap in the face, that doesn't make it a swindling of this Court, that doesn't make it subverting the fundamental, and you may want to do some proofreading, you say tenants, as in somebody who's renting an apartment.

MR. CONLIN: As opposed to tenets, yes, ma'am.

THE COURT: You say there's no objectively reasonable basis for federal jurisdiction. You say it's a bad faith hypertechnicality employed simply to skirt its responsibilities in the Supreme Court. I think you meant superior court. You say it's a waste of the resources of this Court and your client. That's what troubles me deeply about this pleading.

Is there anything else you'd like to say?

MR. CONLIN: I would, your Honor, and if it pleases the Court. And, again, I want to state again that I understand and I absorbed everything you've said so far. And in all future dealings with you, I'm going

to make sure that that is something that is taken account of.

THE COURT: I sincerely hope you will, Mr. Conlin. As I say, we pride ourselves on running an efficient court, but I think Mr. Migliori and Mr. Nugent will agree it's also a very congenial court.

Rhode Island is a nice place to practice. We don't call people names. We don't stab people in the back. We all recognize that from whatever perspective we sit, we have a job to do.

Does that mean that we're always going to agree? Of course not. That's the nature of the adversary system. But do we say things like this when we have absolutely no basis to do so? Absolutely not. Frankly, all it does is erode your reputation because it reflects on you, the author, and on Mr. Migliori, the signatory to this pleading.

So I hope that my words today hit home because you're going to be here.

MR. CONLIN: I pledge to you, your Honor, that your impression of that will not become a reality, and you'll find that -- I think you'll find that I'm as congenial and as good-natured and up-front as anyone. Again, I'm going to take all of this into consideration.

THE COURT: Well, I wanted to make sure you understood that I won't tolerate it.

MR. CONLIN: And I do not expect you to tolerate it.

THE COURT: And as you now know, since you asked for it, you're here as a result of MDL. So we're going to be in this for a good long time until the entire matter is resolved.

So I would ask that you do one other thing. I'm going to deny your motion, obviously, because I don't think there's a legal or factual basis to grant it. I'm going to deny your request for a counsel fee because if anyone is entitled to request a counsel fee, I think it's the other side for wasting their time and my time.

But I am going to ask you to do one more thing, and that is to apologize to counsel for the other side for the improvident use of strong language where it was not at all supported by what you had in the record. You can do that right now on the record.

MR. CONLIN: I'd like to apologize to you, Kirby, and to you, Mark, who I assume are the primary authors of the brief, for using such strong language and claiming that there was bad faith on your part; and I hope that doesn't interfere with our relationship in

this litigation or in front of this Court.

THE COURT: Thank you, Mr. Conlin. You can have a seat unless you want to say something else. You may want to quit while you're ahead.

MR. CONLIN: Or behind.

MR. MIGLIORI: If I may, your Honor.

THE COURT: You may, Mr. Migliori. Why don't you come up to the podium. It's hard to pick you up from back there. It's a beautiful courtroom. For those of you from out of state, just take a look around. They don't make them like this anymore, but one of the drawbacks is that we can't hear a blessed thing if you're back there.

MR. MIGLIORI: Good morning, your Honor. As the gatekeeper of our pleadings and as the attorney who is assigned the special duty of making sure that our team who did come here because of the MDL and our other meetings, I apologize to both the Court, to Mark Nugent, my brother here in Rhode Island, and all counsel.

I should have edited it, and my problem of being on trial away when all this happened is not an excuse. So I apologize to the Court.

THE COURT: I appreciate your coming forward and taking the lead on that, Mr. Migliori. You are

absolutely right. As you know, under our local rule, as local counsel, you're not merely a potted plant or a bag carrier. You are an integral part of this litigation, and the Court will look to local counsel to ensure that everybody who's admitted is playing by the rules, both those that are written and those that are unwritten.

MR. MIGLIORI: I appreciate that, your Honor. And Motley Rice will be playing that role in the litigation, and it's completely my fault to have not nipped this before it happened.

THE COURT: Okay.

MR. MIGLIORI: Thank you, your Honor.

THE COURT: Mr. Griffis, do you want to quit while you're ahead?

MR. GRIFFIS: I was going to say that, your Honor.

THE COURT: You can go back a winner. You're going to look like a genius because you didn't have to say anything.

MR. GRIFFIS: I have two additional cases that if your Honor would like me to hand them up, I've shown them to the other side, they support what we've said in our pleadings; but it does seem superfluous to bring them to your attention.

THE COURT: It is. One thing you're going to find, as I say, we're very efficient. So we try to move cases along. All right. Thank you very much for coming. Tell me again, you came from Washington?

MR. GRIFFIS: Washington, D.C.

THE COURT: So you're going to have to go back, I'm afraid.

MR. GRIFFIS: And the weather is nicer here today.

THE COURT: Yes, it is. The motion to remand in each case is denied. In each case the matter was properly removed pursuant to Section 28 U.S.C. 1441(b) in that the resident Defendant at the time of removal had not yet been served.

And so since the -- in the interim that that motion was filed, all counsel in this case now know, because you're all involved in the matter that was before the MDL, you all know that the MDL has transferred a number of cases that were filed in federal courts across the country to this court.

I might tell you, since you may not know this, you all are making history. Rhode Island has never been a transferee court, and so we're delighted that Plaintiffs saw fit to file the motion to bring the matter here.

I can't understand why, Mr. Nugent and Mr. Griffis, you would fight it; but you're here now, and we will endeavor to try to manage all of the cases that come here. And it should be no surprise to counsel that these two will be incorporated as tag-alongs, and so I'll be issuing an order later today that will address the next step.

Counsel may also want to think about, since you now tell me you have how many over in state court?

MR. MIGLIORI: Your Honor, we presently have 18. Well, now 16 filed in the state court with many more.

THE COURT: And you have many more, and they're all with Judge Gibney?

MR. MIGLIORI: They are. They've been specially assigned just for the trial purpose, not consolidated.

THE COURT: What I would suggest you do, since you're all here, you may as well use your time, is to talk to each other about how you want to address the fact that you have so many in state court in this state.

I know that there are probably some hanging out there in other states across the country; but to give you a heads-up, one of the things I think I'd like to address is how we might be able to be a bit more proactive, particularly now with the MDL matter here,

in trying to coordinate not only those matters that are officially transferred here via the MDL but also, I think particularly because there are so many of the same law firms involved on Plaintiffs' side and it's all the same law firms on defense side, to try to coordinate all of these.

From what I've read, it sounds like we have a finite number of potential actions out there; and you're all smart, and you're all good lawyers. So I'll leave it to you to try to figure out how we might be able to coordinate not only the MDL matters here but perhaps those that are in state courts around the country as well.

MR. MIGLIORI: If I may remind the Court, on August 1st the Court has scheduled a conference in a class action that we, in fact, did file here.

THE COURT: That's going to be vacated.

MR. MIGLIORI: Okay. I was going to suggest that that may be a time for us to get back on the MDL issue as a status matter.

THE COURT: I'm going to vacate that, and I'll do that, John, now because in the interim that was scheduled before the MDL matter was transferred, and I think the first conference is going to be in September in order to give everybody enough time to prepare for

it. So that it won't be a surprise to you, you'll get an order to that effect today.

MR. MIGLIORI: In that it's the first MDL before this Court, I don't know if you've had any time to think about the structuring, that you pretty much see the structure for the national litigation on the Plaintiffs' side before you.

We have thoughts on how to organize ourselves, but often Courts want to establish their own way of setting up structures.

THE COURT: What you'll see in my order, and it shouldn't be a surprise order, it's the boilerplate one that the MDL sends out, I invite you to provide me with just that sort of information. And the more cooperation there can be, the better we all are.

So I would encourage you, particularly where you're all here, to utilize your time effectively before we put everybody back on planes and send them away, is to try to conference this together. There's a beautiful attorney lounge, our local people know about it, and we actually -- don't sit in the new chairs, though, because you're going to fall asleep in those. Sit around the counsel table and maybe try to start working on an outline of at least those areas where you have some agreement.

MR. MIGLIORI: Thank you, your Honor.

THE COURT: And I'll look forward to seeing you all in September.

(Adjourned)

* * * * * * * *

C E R T I F I C A T I O N

I, Karen M. Wischnowsky, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Karen M. Wischnowsky, RPR-RMR-CRR

______________________________________

Date