**STATE OF RHODE ISLAND**
**PROVIDENCE, SC**

**SUPERIOR COURT**

Leah Thomas,

Plaintiff,

vs.

DAVOL, INC., and C.R. BARD, INC.,
Defendants.

§ § § § § § § §

Civil Action No. 08-0364

Jury Trial Demanded

## COMPLAINT

### I.

### PARTIES

1.1 Leah Thomas is a citizen of the state of Washington.

1.2 Defendant, Davol, Inc. ("Davol") is a corporation that is incorporated under the laws of the State of Rhode Island. Davol has its principal place of business in the State of Rhode Island. It manufactures the Kugel Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. Davol has a registered agent in Rhode Island at CT Corporation Systems, 10 Weybosset St., Providence, Rhode Island, 02903. Davol focuses its business on promoting products in key surgical specialties, including hernia repair, homeostasis, orthopedics and laparoscopy.

1.3 Defendant, C.R. Bard, Inc. ("Bard"), is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of Davol and participates in the manufacture and distribution of Kugel Patches. It also manufactures and supplies Davol with materials that form part of the Kugel Patches. Bard at all times relevant did substantial and continuous business in the State of Rhode Island.

## II.
## JURISDICTION AND VENUE

2.1 This Court has subject matter jurisdiction because this is a civil action in which the amount in controversy exceeds $10,000.

2.2 Plaintiff's complaint raises no federal question. Plaintiff asserts no claim arising under the laws, treaties, or Constitution of the United States.

## III
## BACKGROUND FACTS

Plaintiff, by and through her attorneys, allege upon information and belief, as follows:

3.1 Defendant Davol designed, manufactured and distributed the Kugel Patch that was inserted into Plaintiff. Defendant Davol, through its agents, servants and employees, participated in the manufacture and delivery of these Kugel Patches.

3.2 Defendants submitted their 510(k) application to the Federal Drug Administration ("FDA") on January 22, 2001. Following this 510(k) application, the FDA approved the Kugel Patches as a Class II medical device.

3.3 Plaintiff had hernia repair performed on November 23, 2004, by Dr. Biehl, at which time a Large Oval 5.4 x 7, Lot No. 43FOD292, Product No. 0010202 Kugel Patch was inserted in Plaintiff's body.

3.4 The Kugel Patch product implanted in the Plaintiff was designed, manufactured, sold, and distributed by Davol to be used by surgeons for hernia repair surgeries and was further represented by Davol to be an appropriate, cost-effective and suitable product for such purpose.

3.5 The FDA issued a Class I recall due to problems related with these medical devices that are potentially life threatening or could cause a serious risk to the health of the patients implanted with the devices.

3.6 On December 22, 2005, Davol and/or C.R. Bard recalled many sizes of Kugel Patches under a Class I recall notice.

3.7 The Kugel Patches were recalled due to a faulty "memory coil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

3.8 On March 24, 2006, the initial Class I recall on the Kugel Patches was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh patches.

3.9 On January 10, 2007, the existing recall on the Kugel Patches were again expanded to encompass further production lots of the defective hernia mesh products.

3.10 Davol and Bard withdrew a large number of Kugel Patches as a result of the high complication and failure rates of the product.

3.11 Davol and Bard failed to comply with the FDA application and reporting requirements.

3.12 Davol and Bard were aware of the high degree of complication and failure rates associated with their Kugel Patches before they were recalled.

3.13 Davol and Bard were aware of the defect in manufacture and design prior to the recall of their Kugel Patches.

3.14 The complications and failures associated with the Kugel Patches are not limited to the sizes that Davol and Bard have already recalled.

3.15 Davol and Bard were aware of the defect in manufacture and design of the non-recalled Kugel Patches sizes and chose not to issue a recall on all Kugel Patches in the face of the high degree of complication and failure rates.

3.16 As a result of the Kugel Patches being implanted in the Plaintiff, she has suffered and will continue to suffer physical pain and mental suffering.

3.17 As a result of the Kugel Patches being implanted in the Plaintiff, she has incurred and will continue to incur substantial medical treatment and expenses; decreased enjoyment and quality of life; scarring and disfigurements; lost wages and a loss of earning capacity; and Plaintiff otherwise and is permanently injured.

## CAUSES OF ACTION AGAINST DEFENDANTS

### IV.
### NEGLIGENCE

4.1 Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

4.2 Defendants Davol and Bard committed acts of commissions and omissions that constituted negligence, and that negligence proximately caused Plaintiff's injuries and damages.

4.3 Davol and Bard, at all relevant times, had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patches.

4.4 Davol and Bard at all times mentioned knew, or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and were, accordingly, likely to injure the Kugel Patches' users.

4.5 Davol and Bard so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended,

displayed, sold, examined, failed to examine and supplied the Kugel Patches, that they were dangerous and unsafe for the use and purpose for which they were intended.

4.6 Davol and Bard were aware of the probable consequences of the Kugel Patches. Davol and Bard knew or should have known the Kugel Patches would cause serious injury; Davol and Bard failed to disclose the known or knowable risks associated with the Kugel Patches. Davol and Bard willfully and deliberately failed to avoid those consequences, and in doing do, Davol and Bard acted in conscious disregard for the safety of the Plaintiff.

4.7 Defendants Davol and Bard owed a duty to the Plaintiff and her physicians to adequately warn of the risk of breakage, separation, tearing and splitting associated with the Kugel Patches and the resulting harm and risk it would cause Plaintiff.

4.8 Defendants Davol and Bard breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patches.

4.9 As a direct and proximate result of the duties breached, the Kugel Patches used in the Plaintiff's hernia repair surgery failed, resulting in suffering, pain and harm.

4.10 As a direct and proximate result of Davol and Bard's negligence, Plaintiff has suffered injuries and damages.

4.11 Davol's and Bard's conduct in continuing to market, sell and distribute the Kugel Patches after obtaining knowledge they were failing and not performing as represented and intended, showed a complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

## V.
## RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT

5.1 Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

5.2 Defendants Davol and Bard engaged in unfair and deceptive trading practices in violation of G.L. § 6-13.1-1.1(6)(v), (vii), (xii), (xiii), (xiv), (xvii) and which resulted in injuries and damages to the Plaintiff.

5.3 Defendants Davol and Bard are merchants who study, test, design, develop, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Kugel Patches for hernia repair surgery.

5.4 Defendants Davol and Bard knowingly committed unfair and deceptive practices in their study, test, design, development, manufacture, inspection, production, marketing, promotion, advertising, distribution and/or sale of the Kugel Patches for hernia repair surgery.

5.5 Defendants Davol and Bard knowingly committed unfair and deceptive practices when they failed to safely design and construct effective Kugel Patches for hernia repair surgery.

5.6 While Defendants Davol and Bard knew or reasonably should have known that some Kugel Patches were at risk while they were engaged in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing and/or selling of the Kugel Patches for hernia repair surgery, including that the "memory coil ring", upon being subjected to stress after placement the intra-abdominal space, posed a significant risk of breakage, separation, migration, tearing and splitting that posed the danger of severe harm and death to patients.

5.7 Davol and Bard did not inform the FDA prior to December 2005, of its knowledge concerning the dangers posed to patients of its Kugel Patches which were susceptible to failure and subject to the Class I recall.

5.8 Davol and Bard did not inform the public at large prior to December 2005, of its knowledge concerning the dangers posed to patients of its Kugel Patches which were susceptible to failure and subject to the Class I recall.

5.9 Davol and Bard failed to give adequate warnings regarding the use and potential problems with use for hernia repair.

5.10 Davol and Bard's actions occurred while they were engaged in trade and commerce, and all of the conduct occurred during the course of their business.

5.11 Davol's and Bard's conduct in continuing to market, sell and distribute Kugel Patches after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

## VI.
## STRICT PRODUCTS LIABILITY

6.1 Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

6.2 Davol and Bard designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patches for hernia repair surgery.

6.3 Defendants Davol and Bard are strictly liable to Plaintiff for defects in the design, manufacture, and marketing of the Kugel Patches that were rendered unreasonably dangerous for their intended use and proximately caused Plaintiff's injuries and damages.

6.4 The defects in the Kugel Patches, which existed when they left Defendants' control, created a strong likelihood of injury not contemplated by users or consumers.

6.5 The Kugel Patches were defective because they failed to perform safely and effectively for the purpose they were originally designed. Plaintiff's Kugel Patches failed while in her body, causing or potentially causing serious physical complications.

6.6 At all times mentioned, the Kugel Patches were substantially in the same condition as when they left the possession of Davol.

6.7 The Kugel Patches implanted into the Plaintiff were being used in the manner reasonably anticipated at the time they were implanted.

6.8 The Kugel Patches, like the ones found in the Plaintiff, at the time they left the possession of Davol and/or Bard, were unreasonably dangerous for their intended use, and were unreasonably dangerous products that presented and constituted an unreasonable risk of danger and injury to the Plaintiff as follows:

a. The Kugel Patches were sold in a defective condition by design and manufacture;

b. The Kugel Patches, as designed and manufactured, were unsafe to the Plaintiff;

c. The Kugel Patches, as designed and manufactured, were unreasonably dangerous to the Plaintiff;

d. The Kugel Patches did not perform safely as ordinary consumers/patients, like the Plaintiff, would expect;

e. The Kugel Patches, as designed and manufactured, were unsafe for their intended use;

f. Davol and Bard failed to warn the end users about the dangers and risks of the products;

g. Davol and Bard knew the component parts of the Kugel Patches, as implemented through design and/or manufacture, could cause injury to the end users;

h. Davol and Bard failed to implement an adequate, safe and effective "memory coil ring" and/or its interaction with the mesh of the Kugel Patches to withstand the foreseeable stresses they would be subjected to within the intra-abdominal space;

i. Davol and Bard failed to avoid migration of the Kugel Patches and/or their components from the initial sites of the hernia repair surgeries; and

j. Any other acts or failures to act by Davol and Bard regarding their studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgeries as will be learned during discovery.

6.9 Davol's and Bard's conduct in continuing to market, sell and distribute the Kugel Patches after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

## VII.
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

7.1 Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

7.2 Defendant Davol and Bard are liable to the Plaintiff for the negligent infliction of emotional distress in the following respects:

7.3 Plaintiff suffered severe emotional distress, which was a result of Defendants' negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patches for hernia repair surgery.

7.4 Therefore, Davol and Bard are liable to the Plaintiff.

7.5 Davol's and Bard's conduct in continuing to market, sell and distribute the Kugel Patches after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

## VIII.
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

8.1 Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

8.2 Defendants Davol and Bard are liable to the Plaintiff for the intentional infliction of emotional distress.

8.3 Plaintiff suffered severe emotional distress, which was as a result of Davol's and Bard's extreme, outrageous, intentional, willful and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing and/or sale of the Kugel Patches for hernia repair surgery.

8.4 Plaintiff suffered severe emotional distress, which was as a result of Davol's and Bard's extreme outrageous, intentional, willful and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patches for hernia repair surgery, in complete and reckless disregard for the safety of the Plaintiff.

8.5 Davol's and Bard's conduct in continuing to market, sell and distribute the Kugel Patches after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

## IX.
## BREACH OF IMPLIED WARRANTY

9.1 Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

9.2 Defendants Davol and Bard's breach of implied warranty proximately caused all of the Plaintiff's injuries and damages.

9.3 Davol and Bard sold the Kugel Patches which were implanted in the Plaintiff. Davol and Bard impliedly warranted to Plaintiff, physicians and health care providers, that the Kugel Patches were of merchantable quality and safe for the use for which they were intended.

9.4 Davol and Bard knew or should have known that the Kugel Patches, at the time of sales, were intended to be used for the purpose of surgically implanting them into the bodies of consumers for hernia repair.

9.5 Plaintiff, physicians and health care providers reasonably relied on Davol's and Bard's judgment, indications and statements that the Kugel Patches were fit for such use.

9.6 When the Kugel Patches were distributed into the stream of commerce and sold by Davol and Bard, they were unsafe for their intended use, and not of merchantable quality, as warranted by Davol and Bard in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury, harm or death to the patient.

## X. FAILURE TO WARN

10.1 Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

10.2 In the course of business, Davol and Bard designed, manufactured and sold the Kugel Patches to Plaintiff for her hernia repair surgery.

10.3 At the time of the design, manufacture and sale of the Kugel Patches, and more specifically at the time the Plaintiff received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patches.

10.4 Bard and Davol failed to provide any warnings, labels or instructions of the Kugel Patches' dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary users of the products. Bard and Davol failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patches, including, but not limited to rupture of the Kugel Patches and severe peritonitis and infections which would require subsequent surgical procedures and could result in severe injuries.

10.5 The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time all of the Plaintiff had hernia repair surgery, the Kugel Patches were in the same condition as when manufactured, distributed and sold.

10.6 Plaintiff did not know at the time of use of the Kugel Patch, and not any time prior thereto, of the existence of the defects in the Patches.

10.7 Plaintiff suffered the aforementioned injuries and damages as a direct result of Davol and Bard's failure to warn.

10.8 The conduct of Bard and Davol in continuing to market, promote, sell and distribute the Kugel Patches after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others, justifying an award in such sum which will serve to deter Bard, Davol and others from similar conduct.

## DAMAGES

### XI.
### ACTUAL DAMAGES

11.1 As a proximate result of Defendants' conduct, Plaintiff suffered in the past and will likely suffer in the future, damages including medical expenses, physical pain and mental anguish, disfigurement, impairment, and loss wages and lost earning capacity.

### XII.

### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

12.1 Plaintiff seeks pre-judgment and post-judgment interest at the maximum legal rate.

## XIII.
## EXEMPLARY DAMAGES

13.1 As a result of Defendants' conduct, Plaintiff is entitled to recover exemplary or punitive damages from Defendants.

## XIV.
## JURY DEMAND

14.1 Plaintiff requests a jury trial.

## XV.
## CONDITIONS PRECEDENT

15.1 All conditions precedent to Plaintiff's right to recover and to Defendants' liability have been performed or have occurred.

## XVI.
## PRAYER

16.1 WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, that this cause be set for trial before a jury, and that Plaintiff recovers a judgment of and from Defendants for her actual and exemplary damages in such an amount as the evidence may show and the jury may determine to be proper, together with all pre-judgment interest, post-judgment interest, costs of suit, and such other and further relief to which she may show herself to be justly entitled, whether at law or in equity.

Respectfully submitted,

David Morowitz
SBN: 3892
The Law Office of David Morowitz, Ltd.
155 South Main Street
Providence, RI 02903
(401) 274-5556 [telephone]

(401) 273-8543 [facsimile]
e-mail: david@morowitzlaw.com
**ATTORNEY FOR THE PLAINTIFF**