**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | § § § § | **Judge Mary M. Lisi** |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**<u>FOR THE ENTRY OF A PRESERVATION ORDER</u>**

Plaintiffs filed their Motion for the Entry of a Preservation Order January 28, 2008, requesting an order defining Defendant's duties and preserving potentially relevant evidence. Defendants' filed their Opposition to that Motion on February 19, 2008, asserting that a preservation order is not necessary. Plaintiffs submit this reply memorandum of law in further support of their Motion. For the reasons set forth below, the entry of a preservation order is appropriate and necessary in this case.

## I. INTRODUCTION

To say the least, discovery thus far has shown that the potential exists for the destruction (or loss) of relevant information without a directive, issued by this Court, defining the scope and nature of Defendants' preservation duties. The methods implemented by Defendants have been overly narrow and severely lacking in execution. Deposition testimony of Defendants' information technology ("IT") and management information systems ("MIS") personnel – in addition to the testimony cited in Plaintiffs' opening memorandum – continues to demonstrate that Defendants are not doing what is necessary to preserve and protect vital information from destruction or loss. Moreover, Defendants have not made a sufficient effort to identify relevant documents to be preserved. Plaintiffs seek an order providing shape and substance to the general

Federal Rules governing any defendant's duty to preserve this relevant evidence. Plaintiffs seek a definition of *these* Defendants' duties; in light of the facts of the case, the nature of the evidence and – most importantly – the preservation issues that have arisen thus far. Plaintiffs' counsel have repeatedly tried to negotiate such an order with defense counsel. Defense counsel has time and again refused to do so. While they will not 'come to the table' to negotiate a preservation order that both parties can live with, Defendants have voiced their objection to Paragraph A of Plaintiffs' proposed order.[1] In response to that objection, Plaintiffs have amended Paragraph A of the proposed preservation order, attached hereto as Exhibit A, to alleviate those concerns. However, in the absence of Defendants' cooperation, Plaintiffs must continue to ask the Court to intercede.

## II. ARGUMENT

### A. Standard of Law for the Issuance of a Preservation Order

In *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133 (2004)("*Pueblo*"),[2] the court of Federal Claims held that a request for a preservation order must satisfy a two prong test in demonstrating that the order is both necessary and not unduly burdensome. *Id.* at 138. To demonstrate necessity, the moving party must merely show that absent a preservation order, there would be "significant risk" that the evidence would be "lost or destroyed." *Id*. In order to meet that burden, the moving party must demonstrate that the opposing party has "lost or destroyed evidence in the past *or has inadequate retention procedures in place*." *Id*. (emphasis added). In *Pueblo*, the plaintiff met that burden by relying on the past handling of tribal records

[1] At the end of their response brief, Defendants claim that they have "never refused to negotiate about what preservation steps should be taken." Defs' Brief, p. 6. Certainly, Defendants have never refused to tell Plaintiffs what preservation steps they are not willing to take – but to call that negotiating the preservation measures being implemented is a stretch of the imagination.

[2] In *Pueblo of Laguna v. United States*, the court granted the Pueblo tribe's motion for an order ensuring the preservation of all documents, including those in electronic format, that were potentially related to its claims against the government. *Pueblo*, at 140-143.

in a similar action. In this case, as explained below, Plaintiffs have demonstrated that Defendants have inadequate (and seemingly unenforced) procedures in place for the preservation of evidence.

Contrary to Defendants' assertions, the two prong test from *Pueblo* has been adopted by at least one court in the First Circuit. In *Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144 (D. Mass. 2005), the District of Massachusetts chose to adopt the two prong test from *Pueblo* as opposed to the three prong test proposed by Defendants in this case.[3] *Id.* at 146-147 (citing *Pueblo*, 60 Fed. Cl. At 138) ("The court, however, will order Defendants to preserve all documents, hard drives and e-mail boxes which were searched by their forensic expert in response to Plaintiff's motion. Such an order, in the court's estimation, is not unduly burdensome and is necessary, at a minimum, to preserve Plaintiff's appellate rights.").[4]

Moreover, and as previously stated, preservation orders are appropriate and routinely entered in MDL proceedings. *See In re Guidant Litigation*, MDL No. 1708 (D. Minn. Sept. 16, 2005)(issuing order); *In re Propulsid Products Liability Litigation*, MDL No. 1355 (E.D. La., Apr. 19, 2001)(issuing order*); In re Baycol Products Litigation*, MDL No. 1431 (D. Minn. Mar. 4, 2002) (issuing order); *see also In re Celexa & Lexapro Prods. Liab. Litig*., MDL No. 1736,

---

[3] Of the four cases cited by Defendants in support of this three pronged test, only one, *Capricorn Power Co. v. Siemans Westinghouse power Corp*;, 220 F.R.D. 429 (W.D. Pa. 2004)("*Capricorn Power*"), has ever been cited by a court in the First Circuit. In fact, the District of Massachusetts in *Williams* cited to – and chose not to follow - the three prong test from *Capricorn Power*. *Williams*, 226 F.R.D. at 147. However, even if this Court were to adopt the three-prong test proffered by Defendants (balancing: (1) the court's concern for the continued integrity of evidence; (2) the amount of irreparable harm likely to result from a lack of a preservation order; and (3) the defendants' capability to maintain the information and the burden that maintenance will create), Plaintiffs' arguments satisfy this test because it is clear that Defendants' overly narrow and insufficiently enforced preservation efforts require the issuance of a preservation order.

[4] Without explanation or discussion, Defendants cite to *Matos v. Clinton*, 367 F. 3d 68 (1st Cir. 2004), to support their claim that *Capricorn Power's* three prong test is "in accordance with what little First Circuit precedence exists in this area." Defs' Brief, p. 2. *Matos* involved a motion for a preliminary injunction relating to a student's suspension from high school. *Id*. at 72. Moreover, the case did not involve a corporation or a large production of documents, but centered around one computer that Matos had used to create the document at the root of the case. *See id*. Nowhere in *Matos* is a balancing test similar to *Capricorn Power's* discussed, and the facts of *Matos* make its association with the issue currently before the Court illogical.

2006 U.S. Dist. LEXIS 91590 (E.D. Mo. Nov. 13, 2006); *In re Prempro Prods. Liab. Litig.*, MDL No. 1507 (E.D. Ark., Nov. 17,2006)(issuing order); *In Re Bridgestone/Firestone Inc.*, MDL No. 1373, 2001 U.S. Dist. LEXIS 2536 (S.D. Ind. March 6, 2001)(preservation order requiring good faith negotiation regarding preservation and production including information relating to non-recalled products). This is because "complex litigation" can require additional and separate concerns regarding the preservation of evidence. *See Pueblo*, 60 Fed. Cl. at 137-38.

Therefore, and as further demonstrated below, because there is a significant risk that evidence will be lost or destroyed due to Defendants' inadequate preservation procedures, and because the preservation techniques requested are not unduly burdensome, a preservation order is appropriate in this case.

**B. The Proposed Preservation Order is Necessary because there is a Significant Risk that Evidence will be Lost or Destroyed.**

The discovery taken thus far has proven Defendants' self-imposed preservation procedures to be overly narrow and insufficiently enforced. Defendants' restricted view of the scope of their discovery requirements, and their lack of diligence in implementing and enforcing sufficient preservation techniques, has become readily apparent even at these early stages of discovery. Defendants' refer to the loss of evidence as a mere "theoretical possibility." Defs' Brief, p. 3. Not so; Plaintiffs have already uncovered the results of Defendants' preservation failures.

*i. Deposition testimony*

Defendants assert that no documents have been destroyed, and therefore, there is no need for a preservation order. The few depositions taken thus far tell a different story. As indicated in Plaintiffs' initial memorandum, Paul Bissett, a sales representative, stated that no efforts were made to retrieve any information stored on his personal computer that he used for work purposes.

Paul Bissett Dep., p. 231-234.[5] While Defendants try to draw a distinction between preservation and production, it only stands to reason that if no efforts were taken to identify and retrieve this information, then Defendants could not take adequate steps to preserve that material.

Additionally, in a recent deposition of Davol's Network Administrator, [redacted], Plaintiffs have uncovered additional evidence that Defendants have taken (and continue to take) inadequate preservation measures. [redacted]

[redacted][6] [redacted]

[redacted]

---

[5] Pertinent pages of the transcript of Paul Bissett's deposition have been attached as Group Exhibit B.
[6] Pertinent pages of the transcript of [redacted] deposition have been attached as Group Exhibit C.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

*ii. Document searches*

As explained in detail in Plaintiffs' initial memorandum in support of this motion, Defendants only used 8 search terms when searching for electronic information. These eight terms did not include many of the most commonly used terms when referring to the products, problems and injuries at issue in this litigation. Indeed, the relevant search criteria imposed for documents ignored numerous vital terms; it did not even include words such as "failure," "migration" or "injure." Moreover, Defendants' failed to include even basic variations of these terms. Plaintiffs have tried to remedy this situation by providing defense counsel with a list of relevant terms to be searched. Defendants have not explained why these additional search terms are not relevant to the litigation – they simply refuse to expand their search. Again, it only stands to reason that if documents and information are not identified, then Defendants cannot be certain that they are not being destroyed.

[7] Pertinent Sections of the Davol Management Information Systems Procedure are attached as Group Exhibit D.

**C. The Proposed Preservation Order is Not Unduly Burdensome**

Although Defendants object to the proposed preservation order, they have offered very little to demonstrate that the Order would impose any undue burden or cost. On the contrary, to the extent a preservation order approved by this Court imposes additional burdens on Defendants, that does not mean the preservation order is unduly burdensome – it merely signifies that the preservation procedures currently employed are inadequate and need to be expanded or enforced.

Defendants claim that the proposed preservation order is overly broad, yet they fail to provide Plaintiffs with information with which they could narrow its scope - like the custodians' names, departments and job titles. Additionally, despite repeated requests, Defendants have failed to designate what they deem to be "accessible" and "inaccessible" electronically stored information. Similarly, in *In re Nat'l Century Fin. Enters*., 347 F. Supp. 2d 538 (D. Ohio 2004), the lead plaintiffs requested a subpoena *duces tecum*, seeking preservation of evidence. The defendants in that case argued that the language was overbroad, but the court held that the record was "too sparse to determine the likely burdens caused by the preservation order," and granted Plaintiffs motion. *Id.* at 541. Here, Defendants do little to explain the burden, if any, imposed by the proposed order.

*i. Methods exist for the preservation of evidence without undue burden*

There are many ways to collect the so-far-unpreserved evidence which Plaintiffs are concerned about. For example, corporate users can save their hard drives to the network. This would add very little burden or costs to Defendants' preservation efforts. In fact, Defendants could have ordered this to begin with and then just copied that day's/month's tape and would have had, on one tape, all the information for all these hard drives as of the moment of the copy.

Defendants' hold letter did not accomplish that and their current preservation procedure does not address it. Without a preservation order in place – without a clear directive from the Court – it is doubtful that information such as this will ever be preserved.

*ii. Plaintiffs have voluntarily amended the proposed preservation order*

The bulk of Defendants' arguments relating to the proposed order being "overbroad and unworkable" relate to Paragraph A of that proposed order. Defs' Brief, pp. 4-5. Plaintiffs have amended that Paragraph to alleviate the problems to which Defendants refer. Defendants claim that "[t]he entire paragraph reflects a lack of understanding of how computers and memory storage devices work, because any operation of any computer or file server continually involves the altering, changing, modifying, and erasing of memory and data, simply by virtue of the machine's own automatic data management and storage operations." Defs' Brief, p. 5. While it is not entirely clear from their arguments, it appears that Defendants refer to the "erase memory" portion of Paragraph A. Plaintiffs agree that the provision for memory in the preservation order includes volatile memory, typically referred to as random access memory ("RAM"), which is lost during the normal course of operating a computer. Plaintiffs recognize that it would be unworkable for Defendants to preserve this type of "memory and data." As such, Plaintiffs have revised the proposed order to eliminate that problem.

**D. An Edict from the Court has become Necessary**

The facts and testimony referenced above are not meant to allege that Defendants have intentionally destroyed relevant evidence. Plaintiffs do not claim to have seen evidence of that. However, it does demonstrate that Defendants have not taken adequate steps – on their own – to preserve evidence in this case. The preservation methods that they have employed (and continue to employ) are insufficient and poorly implemented. What has been seen is not the intentional

destruction of evidence, but a lack of adequate concern for its preservation. For example, if Anthony Tella, Davol's Network Administrator and the person in charge of overseeing the companies' electronic data storage, was not adequately informed of the litigation hold – what reason do we have to believe that anyone else was. For well over a year, Defendants have been obligated to take adequate steps to preserve relevant information. They have failed to take that obligation seriously on their own. It is now necessary for the Court to direct them to do so by the entry of a preservation order.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion For The Entry Of A Preservation Order and enter Plaintiffs' Proposed Order For the Preservation Of Evidentiary Documents And Certain Discoverable Materials.

DATED: March 6, 2008

Respectfully submitted,

By _/s/Donald A. Migliori
Donald A. Migliori (#4936)
Vincent L. Greene (#5971)
Leah J. Donaldson (#7711)
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX

Teresa C. Toriseva
Nancy C. Wilkins
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Ernest Cory
Jon C. Conlin
Stephen R. Hunt, Jr.
CORY WATSON CROWDER & DEGARS P.C.
2131 Magnolia Ave.
Birmingham, AL 35209
205-328-2200
205-326-7896 Fax

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
55 Monroe Street, Suite 3300
Chicago, Illinois 60603
312-346-2222
312-346-0022 FAX

Fred Thompson, III
Rhett D. Klok
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

**CERTIFICATE OF SERVICE**

I, Donald A. Migliori, hereby certify that a copy of the foregoing **Reply Memorandum in Support of Plaintiffs' Motion For A Preservation Order** was electronically filed. Those attorneys who are registered with the Electronic Filing System may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's Electronic Filing System.

Dated: March 6, 2008

By: /s/ Donald A. Migliori

Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX