UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | § § § | **JUDGE LISI** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF TAX RECORDS AUTHORIZATIONS AS A PART OF THE PLAINTIFF FACT SHEET PRODUCTION**

Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), Defendants, Davol Inc. and C.R. Bard, Inc. (collectively "Defendants"), move this Court to compel Plaintiffs to produce completed tax records authorization forms for all plaintiffs, as previously agreed to and memorialized in the Court's Case Management Order ("CMO"). For the reasons set forth more fully below, this Court should order Plaintiffs to produce these tax records authorizations.

**Introduction**

In November 2007, the parties began to negotiate over the possible use of a "Plaintiff Fact Sheet" ("PFS"). Given their previous MDL experience, the parties were of the opinion that the use of a PFS in lieu of more formal Interrogatories and Requests for Production would allow for a more efficient and streamlined discovery process across hundreds or thousands of plaintiffs. Rather than answer hundreds of individualized discovery requests, plaintiffs' attorneys would be able to assist their clients in filling out a single standardized form, agreed to in advance by both parties. Additionally, rather than attempting to gather all of the relevant documentation themselves, the plaintiffs would submit specific authorizations, and defendants would assume the burden of obtaining all of the relevant medical, employment, insurance, and other records.

As the Court is aware, the parties negotiated over a period of several months, with the Court's assistance at several points. Ultimately, the parties reached an agreement over a final PFS form and eight records authorizations which would be included. The Plaintiffs then memorialized this agreement by drafting, with Defendants' approval, the Case Management Order, which Judge Lisi entered on December 6, 2007.

## I. The Parties Have Conferred in Good Faith in an Effort to Obtain the Authorizations Without Court Action

The parties have conferred on several occasions in an attempt to reach an agreement on this issue. Pursuant to the CMO, counsel for Defendants have been sending PFS deficiency letters to individual plaintiffs since the end of January. Each of these letters has noted the failure to submit the tax records authorization, which is included in the PFS as Section X, Ex. G. Thereafter, as responses to these deficiency letters came due, counsel for Plaintiffs and Defendants have engaged in a series of meet and confers on the subject, the first one occurring on February 28, 2008. [Attachment A – March 11, 2008 letter from D. Thomas to M. Dobbs]

These discussions continued throughout the next two weeks. Unfortunately, following a lengthy discussion on March 17, 2008, the parties find themselves at an impasse. [Attachment B – March 17 email from J. Conlin to D. Thomas]

## II. The Amended Case Management Order, which Plaintiffs Drafted, Requires the Production of All Requested Records Authorizations

Section VI.D of the Case Management Order directly addresses the Plaintiff Fact Sheets. Subparagraph iii provides:

> Every Plaintiff is required to provide Defendants with a PFS that is substantially complete in all respects. 'Substantially complete in all respects' requires: . . .
>
> 2. that a plaintiff provide the *requested* records authorizations.

(emphasis added). Neither the CMO nor the Plaintiff Fact Sheets negotiated by counsel contain a provision for the withholding of records based on plaintiffs' unilateral decision that they are not relevant.

Of particular importance is the use of *requested*, as opposed to relevant. The purpose of the PFS was to agree on a document that could be used by all plaintiffs without alteration or addition. In this way, the PFS would allow for more ordered and efficient discovery. Allowing plaintiffs to negotiate, or withhold, portions of the PFS would defeat this purpose.[1] Having drafted and agreed to the language of the CMO, and that language having been adopted by the Court, Plaintiffs are bound by its specific language.

## III. Reasonably Calculated to Lead to Discoverable Evidence

### A. Federal Rule of Civil Procedure 26(b)(1)

That Plaintiffs have previously agreed to produce all of the requested authorizations in the PFS is by itself dispositive; this Court should enforce agreed discovery terms in order to ensure the orderly and efficient progress of this litigation.

Furthermore, the information sought is "relevant to. . . the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). As Defendants noted in their March 11, 2008 letter, plaintiffs' tax returns are likely to reveal information that was inadvertently omitted from the PFS. [Att. A, pg. 2] Tax returns are likely to reveal, among other things, employers and sources of income omitted from the Plaintiff Fact

[1] As both parties note, defendants have not required Veteran's Administration or military records authorizations from plaintiffs who have not previously served. This is due to the fact that these records would not exist. Defendants are similarly willing to forgo tax record authorizations from any plaintiffs who represent that they have not filed a tax return in the past 10 years.

Sheet,[2] and may tend to refute claims of total or partial disability resulting from the plaintiffs' exposure to the Composix® Kugel® Patch. Tax records, by leading to the discovery of undisclosed employers at the time of prior surgeries (which many of the plaintiffs had) may lead to the discovery of important evidence regarding how much time the plaintiff took off from work following each surgery and what claims were made regarding disability in connection with those surgeries that may be duplicative of the claims made now. In short, Plaintiffs' tax records contain the most complete picture of their previous 10 years of employment available, are directly relevant in all cases, and are likely to lead to the discovery of additional relevant information.[3]

Any of these reasons alone is more than sufficient, given that courts liberally construe pretrial discovery. *See, e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Taken together, and given plaintiffs' previous drafting of, and agreement to the Court's CMO, defendants have more than met their burden to show that the requested tax records authorizations are "relevant to any claim or defense." Fed. R. Civ. P. 26(b)(1).

**B. Confidential Information**

Plaintiffs' counsel has also stated their desire to withhold these tax records to protect their clients' confidential information. Given the possibility that its own trade secrets could be

---

[2] Such omissions are not necessarily deliberate, but they certainly happen. As noted in the letter, Defendants have reviewed the records received from plaintiffs' authorizations and have discovered a number of doctors who were not initially listed in the PFS, and who were not later added in those supplemental PFS which have been received. *Id.* A review of plaintiffs' insurance records has revealed similar omissions, and tax records would surely reveal the same with regard to former employers and sources of income.

[3] Plaintiffs' counsel has represented that it would only seek to withhold tax authorizations for those plaintiffs who are not putting their past/present/future income at issue. But even if plaintiffs were willing to be bound by that representation, employment history and income is relevant to more than just a lost income claim; it is relevant to the plaintiffs' claim that (s)he was substantially impaired by the Composix® Kugel® Patch at all.

accidentally exposed in other areas of discovery, Defendants are sympathetic to this concern. Indeed, it was these types of concerns that lead to the entry of the Protective and Confidentiality Order. Given the protective order and possible sanctions under the Federal Rules, and the fact that much of this confidential information (social security number, current employer, home address, etc.) has already been provided in other forums, plaintiffs need not fear that discovery of their tax records will lead to the disclosure of confidential information, and Defendants will of course respect the Confidentiality and Protective Order in their handling of the tax records received.

## IV. Conclusion

For the reasons articulated above, this Court should require that plaintiffs abide by the terms of the Amended Case Management Order, and compel the production of the previously agreed upon tax records authorizations.

Dated: March 19, 2008

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

/s/ Kirby T. Griffis

Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
1350 I St., N.W.
Washington, DC 20005
Phone: (202) 898-5800
Fax: (202) 682-1639
Email: kgriffis@spriggs.com

**ATTORNEYS FOR DEFENDANT DAVOL INC. AND DEFENDANT C.R. BARD, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2008, the foregoing MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO SEAL AND REQUEST FOR LEAVE TO FILE UNSEALED DOCUMENTS VIA ECA was electronically filed with the Clerk of Court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon Plaintiffs' Liaison Counsel and counsel of record for plaintiff in the manner indicated below:

Donald Migliori
MOTLEY RICE, LLC.
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
*(electronic notice)*

/s/ Kirby T. Griffis