**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO: MC CONATHY, C. A. NO. 1:08-cv-02351** | § § | |
| **JOYCE MC CONATHY,** | § § § | |
| **Plaintiff** | § § | |
| **VS.** | § § | |
| **DAVOL, INC., and C.R. BARD, INC.,** | § § | **JURY TRIAL DEMANDED** |
| **Defendants** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, Joyce Mc Conathy, by and through plaintiff's attorneys, brings this action alleging the following, upon information and belief:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against C.R. BARD, INC. (hereinafter "BARD") and its wholly owned subsidiary, DAVOL, INC., (hereinafter "DAVOL"), for their sale and distribution of defective Composix® Kugel® Mesh Patches, (hereinafter "Kugel Patch"). The Defendants' defective product has been surgically implanted into the body of the Plaintiff. Plaintiff has been injured and subjected to a substantial risk of injury or death as a result.

## PARTIES

2. Plaintiff, Joyce Mc Conathy (hereinafter "Plaintiff") is an individual citizen and resident of the County of Escambia, State of Florida. During the relevant time period, Plaintiff had hernia repair surgery, which included the implantation of the Kugel Patch into plaintiff's body.
3. Defendant, DAVOL, INC., (hereinafter "DAVOL") is and was a wholly owned subsidiary of C.R. BARD, INC., with its principal place of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920, County of Providence. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset Street, Providence, Rhode Island 02903. At all times relevant, DAVOL was a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business for manufacturing hernia surgical repair products in Cranston, Rhode Island.
4. Defendant, C.R. BARD, INC., (hereinafter "BARD") is a New Jersey corporation with its principal office and place of business at 730 Central Avenue, Murray Hill, New Jersey, 07974, County of Union.
5. Defendants designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners, certain hernia surgical repair products to be surgically implanted in patients throughout the United States, including the States of Florida, Rhode Island and Texas, at all times relevant to this complaint.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332(a). No Defendant is a citizen of the same state as Plaintiff and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(c) because Defendants are corporations. A corporation is deemed to reside in any judicial district where its contacts would be sufficient to subject it to personal jurisdiction at the time the action is commenced. Defendants distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners at all times relevant and including the day this action is commenced, certain hernia surgical repair products to be surgically implanted in patients in the State of Texas, and more particularly within the jurisdiction boundaries of the United States District Court of the Southern District Of Texas.

## GENERAL ALLEGATIONS

8. Plaintiff's action involves the Kugel Patch manufactured by Defendants between 2001 and March 2006. Defendants sold these Kugel Patches for implantation in patients in the course of hernia repair surgery.

9. The Kugel Patch, invented by Robert D. Kugel, M.D., is a polypropylene mesh prosthetic device developed to repair ventral hernias, or hernias of the abdominal region. The Kugel Patch is inserted behind the hernia defect in the abdomen through a small incision. In order to fit through the small incision the mesh is folded in half. Once inside the abdomen the mesh re-deploys as a result of a hard "memory recoil ring" (or "PET coil ring") that surrounds that mesh.

10. Due to defects in the design and manufacturing of the Kugel Patch, the "memory recoil ring" that opens the patch can break under the stress of placement of the product in the intra-abdominal space. Once the memory recoil ring has broken, it can later come loose and cause serious injuries as it travels through the body. These injuries include: intestinal perforations; ring migration through the abdominal wall; abscesses; bowel obstruction and sepsis; and chronic intestinal fistulae (abnormal connections or passageways between the intestines and other organs).

11. The Kugel Patch presents and constitutes an unreasonable risk of danger and injury in the following respects:

    a. the memory recoil ring of the Kugel Patch may malfunction after being implanted;

    b. the Kugel Patch was not properly manufactured;

    c. the Kugel Patch was defectively designed;

    d. the Kugel Patch did not perform as safely as an ordinary consumer/patient would expect;

    e. the Kugel Patch was inadequate or insufficient to maintain its integrity during normal use after implantation in the consumer/patient; and

    f. such further and additional defects as discovery and the evidence reveal.

12. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the Kugel Patch was not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold,

supplied, prepared and/or provided with proper warnings, was not suitable for the purpose it was intended and was unreasonably likely to injure the products' users.

13. Defendants' Kugel Patches are defective because they possess the potential for breakage or malfunction of the memory recoil ring and, as a result, are subject to risk of resulting injury.

14. Defendants did not timely or adequately apprise the public and physicians of the defect in their Kugel Patches, despite Defendants' knowledge that memory recoil rings had failed due to the described defects. Defendants' concealment of a known defect from Plaintiff tolls the applicable statute of limitation.

15. Defendants' conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiff.

16. As a direct and proximate cause of Defendants' conduct and the Kugel Patches, Plaintiff has suffered injuries and will require continual monitoring and care. Accordingly, Plaintiff will incur future medical costs related to the recalled Kugel Patches.

**PLAINTIFF'S EXPERIENCE**

17. Plaintiff underwent hernia repair surgical procedures, and during the course thereof the Kugel Patch was implanted into plaintiff.

18. The Kugel Patches implanted in Plaintiff were designed, manufactured, sold and distributed by Defendants, and were intended to be used by surgeons for hernia

repair surgeries. Defendants represented the Kugel Patch to be appropriate and suitable products for such purposes.

19. As a direct and proximate result of Defendants' defective design, manufacture, function and/or inadequate warnings regarding the Kugel Patch, Plaintiff sustained, and will continue to sustain, injuries and damages.

**<u>COUNT I</u>**

**(Unfair And Deceptive Trade Practices Under Rhode Island State Law)**

20. Plaintiff alleges and incorporates by reference each and every allegation contained in this Complaint as through fully set forth herein.

21. At all times relevant, Defendants were engaged in the design, manufacturing, assembling, distributing, conveying and or/or selling of the Kugel Patch in their ordinary course of business. Defendants designed, manufactured, assembled and sold the devices to hospitals and physicians, knowing that they would be thereby sold to patients who needed hernia repair surgery, including Plaintiff.

22. Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of Kugel Patches.

23. Plaintiff is a consumer of the defective product and was injured by Defendants' deceptive and unfair acts.

24. Had the Defendants not engaged in the deceptive conduct described above, Plaintiff would not have purchased and/or paid for the Kugel Patch, would not have incurred related medical costs and would not continue to incur these costs.

25. Defendants' representations and material omissions to patients, physicians and consumers, including, constituted unfair and deceptive acts or practices in violation of the consumer protection statues of one or more of the States of Rhode Island, Texas, the States where the Kugel Mesh was implanted or removed, or the States of residence of the Plaintiff and Defendants.

26. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff for the Kugel Patch and/or for the costs or removing and/or replacing the Kugel Patch that plaintiff would not have paid had Defendants not engaged in unfair and deceptive conduct.

27. Plaintiff was injured by the cumulative and indivisible nature of Defendants' conduct. The purpose of that conduct, directed at patients, physicians and consumers, was to create demand for and to sell the Kugel Patches. Each aspect of Defendants' conduct combined to artificially create sales of the Kugel Patches.

28. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has incurred and will likely continue to incur medical costs relating to the Kugel Patch, including medical monitoring and/or other hospital costs, in an amount to be proven at trial.

29. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief in the form of a court supervised medical monitoring program, punitive damages, attorneys fees, and costs of suit.

30. Medical monitoring is medically reasonable and necessary in order to provide for the early detection and prevention of irreparable harm, severe and debilitating injuries and death. In the absence of such relief, Plaintiff might not receive

prompt medical care that could prolong plaintiff's productive life, increase prospects of improvement and to minimize disability.

**<u>COUNT II</u>**

**Negligence**

31. Plaintiff alleges and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.
32. Defendants were negligent to Plaintiff in the following respects:
33. Defendants at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.
34. Defendants at all times mentioned knew or in the exercise of reasonable care should have known that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch's users.
35. Defendants so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.
36. Defendants were aware of the probable consequences of the Kugel Patch. Defendants knew or should have known that the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the

Kugel Patch. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted in conscious disregard for the safety of Plaintiff.

37. Defendants owed a duty to Plaintiff to adequately warn Plaintiff and Plaintiff's treating physicians of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

38. Defendants breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, properly reporting of adverse events to the FDA, and/or sale of the Kugel Patch.

39. As a direct and proximate result of the duties breached, the Kugel Patch was used in the Plaintiff's hernia repair surgery, resulting in Plaintiff's suffering pain and harm.

40. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered injuries and damages.

41. Defendants conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge that the devices were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendants and others form similar conduct in the future.

**COUNT III**

**Strict Liability**

42. Plaintiff alleges and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.
43. Defendants are strictly liable to Plaintiff in the following respects:
44. Defendants designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.
45. The Kugel Patches were defective because they failed to perform safely and effectively for the purpose they were originally designed.
46. At all times mentioned, the Kugel Patch was substantially in the same conditions as when it left the possession of Defendants.
47. The Kugel Patch implanted into Plaintiff was being used in a manner reasonably anticipated at the time it was implanted in Plaintiff.
48. The Kugel Patches, like the one found in Plaintiff, at the time they left the possession of Defendants were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:
    a. The Kugel Patch was sold in a defective condition by design and manufacture;
    b. The Kugel Patch as designed and manufactured was unsafe to Plaintiff;
    c. The Kugel Patch as designed and manufactured was unreasonably dangerous to Plaintiff;
    d. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;

e. The Kugel Patch as designed and manufactured was unsafe for its intended use;

f. Defendants failed to warn the end user about the dangers and risks of the product;

g. Defendants knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

h. Defendants failed to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to during the foreseeable use of the device;

i. The Kugel Patch and/or its components failed to remain affixed to and avoid migration from the initial location the device was affixed during the hernia repair surgery;

j. Any other acts or failures to act by Defendants regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

53. Defendants' conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying a n award or additional damages for aggravating circumstances in such a sum which will serve to deter Defendants and others form similar conduct in the future.

## COUNT IV

### Intentional Infliction of Emotional Distress

54. Plaintiff alleges and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.

55. Defendants are liable to Plaintiff for the intentional infliction of emotional distress in the following respects:

56. Plaintiff suffered severe emotional distress, which was a result of Defendants' extreme, outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

57. Plaintiff suffered severe emotional distress, which was as a result of Defendants' extreme, outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete and reckless disregard for the safety of Plaintiff.

58. Therefore, Defendants are liable to Plaintiff.

59. Defendants conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendants and others from similar conduct in the future.

## COUNT V

### Breach of Implied Warranty

60. Plaintiff alleges and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.

61. Defendants are liable to Plaintiff for their breach of implied warranty in the following respects:

62. Defendants sold the Kugel Patch, which was implanted in the Plaintiff. Defendants impliedly warranted to Plaintiff, Plaintiff's physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which it was intended.

63. Defendants knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

64. Plaintiff, Plaintiff's physicians and health care providers reasonably relied on Defendants' judgment, indications and statements that the Kugel Patch was fit for such use.

65. When the Kugel Patch was distributed into the stream of commerce and sold by Defendants, it was unsafe for its intended use, and not of merchantable quality, as warranted by Defendants, in that it had very dangerous propensities when used as intended and implanted into a patient's body where it could cause serious injury of harm or death to the end user.

66. Plaintiff suffered such injuries and damages as a result of Defendants' conduct and actions.

## COUNT VI

### Failure to Warn

67. Plaintiff alleges and incorporates by reference each and every allegation contained in this Complaint as though fully set forth herein.

68. In the course of business, Defendants designed, manufactured and sold the Kugel Patch for hernia surgeries to the hospital where plaintiff's implantation surgery took place.

69. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Plaintiff received the Kugel Patch, the patches were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

70. Defendants failed to provide warnings, labels or instructions of the Kugel Patch's dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. Defendants failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch.

71. The dangerous and defective conditions in the Kugel Patch existed at the time they were delivered by the manufacturer to the distributor. At the time Plaintiff had hernia repair surgery, the Kugel Patch was in the same condition as when manufactured, distributed and sold.

72. Plaintiff did not know at the time of use of the Kugel Patch, nor at any time prior thereto, of the existence of the defects in the Kugel Patches.

73. Plaintiff suffered the aforementioned injuries and damages as a direct result of Defendants failure to warn.

74. The conduct of Defendants in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of the others justifying an award in such sum which will serve to deter Defendants and others from similar conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a. For all damages available to Plaintiff under the law, including, but not limited to, past and future medical, lost wages in the past, loss of wage-earning capacity in the future, pain and suffering in the past and future, mental anguish, and disfigurement;

b. For an Order establishing a medical monitoring program, funded by Defendants, to provide medical testing, screening, services, research and education and a medical/legal registry to ensure that plaintiff receives prompt and proper medical treatment;

c. For punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others form similar wrongdoing;

d. For all applicable statutory damages under the consumer protection statutes of one or more of the States of Rhode Island, Texas, the States where the Kugel Mesh

was implanted or removed, or the States of residence of the Plaintiff and Defendants;

e. For an award of attorneys' fees and costs;

f. For prejudgment interest and costs of suit; and

g. For such other relief as this court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial jury in this case.

Dated: 3/21/2008

/s/ Donald A. Migliori
Donald A. Migliori RI Bar
No. 4936
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6167
Providence, RI 02940
Telephone: (401) 457-7700
Facsimile: (401) 457-7748

/s/ Steven M. Johnson
Steven M. Johnson
Texas Bar No. 10794040
USDC SDTX BAR CARD # 870862
THE JOHNSON LAW FIRM
3437 West Seventh Street #258
Fort Worth, TX 76107
Telephone: (817) 339-8878
Facsimile: (214) 853-4151

CERTIFICATION

I hereby certify that on this 21st day of March, 2008, that a true copy of the foregoing Plaintiffs First Amended Complaint has been filed electronically and that it is available for viewing and downloading from the ECF system. I also certify that a true copy of this document was also mailed or electronically mailed to the following:

**Ernest Cory** ecory@cwcd.com

**Kirby T. Griffis** kgriffis@spriggs.com

**Mark T. Nugent** mnugent@morrisonmahoney.com

**Thomas M. Robinson** trobinson@morrisonmahoney.com

**Teresa C Toriseva** tct@wtwlaw.us

**Samuel J. Abate, Jr.**
Pepper Hamilton LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405

**Andrew L. Colocotronis**
Baker, Donelson, Bearman, Caldwell & Berkowitz
900 South Gay Street
2200 Riverview Tower
Knoxville, TN 37902

**Kathleen Ann DeLaney**
Delaney & Delaney LLC
3640 North Washington Blvd.
Indianapolis, IN 46205

**John A. Fagg, Jr.**
Moore & Van Allen
100 N. Tryon Street
Suite 4700
Charlotte, NC 28202-4003

**Gary D. Hermann**
Hermann, Cahn & Schneider
Suite 500
1301 East Ninth Street
Cleveland, OH 44114

**James B. Irwin**
Irwin Fritchie
400 Poydras Street
Suite 2700
New Orleans, LA 70130

**D. Mitchell McFarland**
Harrison Bettis Staff McFarland & Weems
500 Dallas Street
Suite 2600
Houston, TX 77002

**Michelle R. Schwarz**
Mandelbaum & Schwarz
2012 Hamilton Lane
Suite 303
Las Vegas, NV 89106

**Lesley Stine**
Saieva, Rousselle & Stine
601 W. Swann Ave., Suite B
Tampa, FL 33606

**Kara T. Stubbs**
Baker Sterchi Cowden & Rice
2400 Pershing Road
Suite 500
Kansas City, MO 64108

**Kevin K. Trout**
Heron Sweet Fox & Trout
2601 NW Expressway
Suite 707 W
Oklahoma City, OK 73112

**Danene J. Tushar**
Fraser Stryker Law Firm
409 South 17th Street
Suite 500 Energy Plaza
Omaha, NE 68102

**David Bowman White**
Gallivan White and Boyd
PO Box 1505
Greenville, SC 29603

**Dennie M. Zandel**
Baker and Sterchi
1010 Market Street
Suite 950
St. Louis, MO 63101

/s/ Donald A. Migliori

Donald A. Migliori
RI Bar#4936
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940
Telephone: 401-457-7700
Fax: 401-457-7708