**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § | **MDL Docket No. 07-1842-ML** |
| | § | |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | § § | **Judge Mary M. Lisi**<br>**Magistrate Judge Lincoln D. Almond** |
| | § § | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF TAX RECORDS AUTHORIZATIONS AS A PART OF THE PLAINTIFF FACT SHEET PRODUCTION**

Plaintiffs, by their attorneys, move this Honorable Court for the entry of an order denying Defendants' Motion to Compel the production of tax records authorizations and prohibiting the discovery of tax records in cases where the Plaintiff has not brought a claim for lost wages, lost income or other economic damages[1]. For their memorandum in support thereof, Plaintiffs state as follows:

## INTRODUCTION

Plaintiffs' counsel has never – and would never – voluntarily agree to provide tax record authorizations for every individual in this litigation.[2] In an effort to promote cooperation and efficiency in the discovery process, Plaintiffs' counsel previously agreed to provide defense counsel with the requested tax records authorizations *for any individual Plaintiff alleging a claim for lost wages.* Plaintiffs' counsel have every intention of keeping that promise; however, this Motion is not about those Plaintiffs. By their Motion, Defendants seek confidential and private tax records from every single Plaintiff who has filed a claim that is part of this Multi-district Litigation ("MDL"); regardless of whether or not that information is at issue in an individual

[1] For the sake of brevity and readability, all such claims will be referred to generally as claims for "lost wages."
[2] See Affidavit of Jon Conlin, attached as Exhibit A.

case, regardless of the sufficiency of the information already provided by the Plaintiff Fact Sheet, and regardless of the (lack of) relevance of those private records. Plaintiffs' counsel objects to Defendants' blanket demand for tax records where they are wholly irrelevant to any claim or defense at issue in the case. Defendants have not demonstrated that this information is relevant nor have they demonstrated a compelling need for its production.

Before she has completed the first page of a Form 1040, a taxpayer has revealed the skeletal outline of her personal and financial life. Included in a typical tax return is information relating to the taxpayer's marital status, dependents, business dealings, investments, religious affiliations, charitable inclinations, property holdings, debt obligations (and the sources of her borrowed money), union membership, political leanings, and many other facets of her personal and private life. Additionally, a close reading of Schedule B in conjunction with proper financial publications may reveal an individual's entire investment portfolio – not just its general content, but the taxpayer's precise holdings. Moreover, as many of the Plaintiffs in this litigation may have filed jointly with their spouses, the private information of hundreds of individuals who have absolutely no claims in this litigation will be disclosed for no reason whatsoever. Defendants seek to impose such a level of intrusion into the personal and private lives of *all* Plaintiffs in this litigation, even where the Plaintiff is *not* claiming lost income or wages in their case. Therefore, the Court should deny their motion.[3]

[3] Defendants' only concession is that they will "forgo tax record authorizations from any plaintiffs who represent that they have not filed a tax return in the *past 10 years*." Defs' Brief, p. 3, n. 1 (emphasis added). Defendants do not even attempt to argue the relevance of tax returns from as far back as 1997, but would require their production nonetheless.

## STANDARD OF LAW

**1. Public Policy and Privacy Interests Generally Prevent Production of Tax Records.**

While a party's income tax return is not protected by an absolute privilege, courts have recognized that privacy interests call for a measure of extra protection. Committee Comments to Fed. R. Civ. P. 26 (*citing Wiesenberger v W. E. Hutton & Co.,* 35 F.R.D. 556 (S.D.N.Y. 1964). Due to the sensitive information tax returns contain, and the public interest to encourage complete and accurate returns, their production should not be routinely required. *Mitsui & Co. v. Puerto Rico Water Resources Authority*, 79 F.R.D. 72, 80 (D.P.R. 1978) (requiring production only because plaintiff had "clearly put at stake its income").[4] As such, many courts recognize a "qualified" privilege that disfavors the disclosure of income tax returns as a matter of general federal policy. *Premium Service Corp. v. Sperry & Hutchinson Co*., 511 F.2d 225 (9th Cir. 1975).[5]

"[T]he public policy against disclosure cannot be ignored." *Cooper v Hallgarten & Co*., 34 FRD 482, 483 (S.D.N.Y 1964); *see also Malanka v. Data Gen. Corp.*, No. 85-2154-Mc, 1986 U.S. Dist. LEXIS 23277 (D. Mass. July 2,1986). Unless clearly required in the interests of justice, litigants ought not be required to submit tax returns as the price for bringing or defending a lawsuit. *Wiesenberger*, 35 F.R.D. at 557. The requirement of "good cause" applies when one party seeks the production of his adversary's income tax returns under Rule 34 of the Federal Rules of Civil Procedure. *See Rubenstein v Kleven* 21 F.R.D. 183 (D. Mass. 1957) (Requiring

[4] *Troglione v. McIntyre Aviation, Inc*., 60 F.R.D. 511 (W.D. Pa. 1973); *Premium Service Corp. v. Sperry & Hutchinson Co*., 511 F.2d 225, 229 (9th Cir. 1975).

[5] *See also, Credit Life Insurance Co. v. Uniworld Ins. Co.,* 94 F.R.D. 113, 120 (S.D. Ohio 1982); *Tele-Radio Systems, Ltd. v. DeForest Electronics, Inc*., 92 F.R.D. 371 (D.N.J. 1981); *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y. 1979); *Maldonado v. St. Croix Discount, Inc.*, 77 F.R.D. 501 (D.V.I. 1978); *Payne v. Howard*, 75 F.R.D. 465 (D.D.C. 1977); *Federal Savings and Loan Insurance Corp. v. Krueger*, 55 F.R.D. 512 (N.D. Ill. 1972).

'good cause' but allowing production of tax returns because plaintiff's income was directly at issue).[6]

Generally, courts have concluded that income tax returns should be ordered produced 'where a litigant himself tenders an issue as to the amount of his income" (for example, loss of wages from personal injury, loss of income from violation by defendants of the anti-trust laws, etc.) and not otherwise. *E.g., Kingsley v. Delaware, L. & W. Ry. Co.*, 20 F.R.D. 156, 158 (S.D.N.Y.1957); *Sanderson v. Winner*, 507 F.2d 477, 480 (10th Cir. 1974).[7] Here, Plaintiffs have agreed to provide tax records authorizations where lost wages or income is alleged as part of the lawsuit – just not where the tax records are completely irrelevant.

**2. Courts Apply a Two Part Test to Determine Discoverability.**

Courts in the First Circuit apply a two-prong test regarding the discoverability of tax returns. *Buntzman v. Springfield Redevelopment Auth.*, 146 F.R.D. 30, 32 (D. Mass. 1993); *Pogharian v. Croce*, C.A. 81-1307-F, 1985 U.S. Dist. LEXIS 17411 (D. Mass. July 29, 1985); *Pedraza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 43 (D. Mass. 2001). Pursuant to that test, before tax returns are discoverable:

(1) they must be relevant to the action; and

(2) the information contained therein must be otherwise unobtainable.

[6] *See also, Garrett v. Faust*, 8 F.R.D. 556 (E.D. Pa. 1949); *Baim & Blank, Inc. v. Bruno-New York, Inc.*, 17 FRD 346 (S.D.N.Y., 1955); *Karlsson v. Wolfson*, 18 FRD 474 (D. Minn. 1956); *Blanchet v. Colonial Trust Co.*, 23 FRD 118 (D. Del. 1958).

[7] Even where a party's income is directly at issue in the case, it is not an abuse of discretion for a court to deny the production of income tax returns. *Fulenwider v. Wheeler*, 262 F.2d 97 (5th Cir. 1958). As explained herein, plaintiffs' counsel have agreed to provide defense counsel with authorizations for the tax returns of any Plaintiff who is bringing a lost wages claim. Therefore, Plaintiffs do not ask the Court to reach such a position.

*See Buntzman*, 146 F.R.D at 32 (*citing United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625 (E.D.N.Y. 1988).[8] Additionally, the party seeking discovery must demonstrate a compelling need for the tax returns. *See Ellis*, 243 F.R.D. 109. Finally, the burden of showing relevancy lies on the party seeking the returns. *Bonanno*, 119 F.R.D. at 627. Defendants have failed to satisfy this burden.[9]

## ARGUMENT

### 1. Plaintiffs Counsel Never Agreed to Provide Tax Record Authorizations for All Plaintiffs, but Agreed to Provide Authorizations where they are Relevant to the Claims at Issue.

Plaintiffs' counsel takes issue with Defendants' characterization of the negotiations (and agreement arrived at) regarding the production of tax records. As stated in the Affidavit of Donald A. Migliori, Ex. A., plaintiffs' counsel agreed to provide tax records authorizations for Plaintiffs bringing a claim for lost wages – nothing more. Moreover, when Defendants initially provided plaintiffs' counsel with the various authorizations to be executed in connection with completing the PFS, Defendants did not include tax records authorizations. Due to Defendants failure to timely request the execution of these authorizations for tax records, the parties' apparent misunderstanding (relating to the production of tax records) went undiscovered while

---

[8] Numerous other courts have adopted this same two-prong test to guide them in their determination of the appropriate circumstances in which the qualified privilege of tax returns is overcome. *United Motion Theatre Co. v. Ealand*, 199 F.2d 371 (6th Cir. 1952) (*per curiam*); *Tele-Radio Systems, Ltd. v. DeForest Electronics, Inc*., 92 F.R.D. 371 (D.N.J. 1981); *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y. 1979); *Maldonado v. St. Croix Discount, Inc.*, 77 F.R.D. 501 (D.V.I. 1978); *Payne v. Howard*, 75 F.R.D. 465 (D.D.C. 1977); *Federal Savings and Loan Insurance Corp. v. Krueger*, 55 F.R.D. 512, 515 (N.D. Ill. 1972).; *Richland Wholesale Liquors, Inc. v. Joseph E. Seagram & Sons, Inc*., 40 F.R.D. 480 (D.S.C. 1966);. *Eastern Auto Distributors, Inc. v. Peugeot Motors of America, Inc*., 96 F.R.D. 147, 148-149 (E.D. Va. 1982).

[9] Defendants cite only one case in their Motion; namely, *Seattle Times Co. v. Rhinehart,* 467 U.S. 20 (1984), for the general principal that courts should liberally construe pretrial discovery. In *Seattle Times*, the Supreme Court held that the protective order issued by a Washington state court did not offend the First Amendment. That case is inapposite to the issue currently before the Court and, as such, provides no guidance.

plaintiffs' counsel circulated the PFS packet and worked with the individual Plaintiffs to complete and sign the necessary authorizations. Now, months later, Defendants have provided plaintiffs' counsel with tax records authorizations and demanded their execution by each and every Plaintiff in the MDL. To validate this tardy request, Defendants claim an agreement that never existed.

Defendants' semantic argument that the Case Management Order ("CMO") provides proof of such an agreement (to universally provide tax record authorizations) is flat out wrong. According to Defendants' argument, the CMO requires Plaintiffs to provide Defendants with authorizations for any and all information that is "requested" – regardless of relevance, burden or privilege. Defs' Brief, pp. 2-3. Essentially, Defendants contend that Plaintiffs have waived all relevance objections, simply because the CMO uses the word "requested" and not "relevant." Taking this argument to its logical conclusion, Defendants could "request" that Plaintiffs authorize the release of all privileged and confidential information, including attorney-client communications, simply because the sentence does not include the word "non-privileged." That cannot be right.

Plaintiffs have no objection to the production of tax returns in any case where they are relevant; namely, in the cases where the Plaintiff is claiming lost wages. However, Plaintiffs strenuously object (and always have objected) to their production in all cases. The only understanding ever arrived at was that Defendants would be provided with tax records authorizations for the Plaintiffs putting the information they contain at issue. For the reasons explained below, that is the only production necessary.

**2. Tax Records are Not Relevant to this Litigation where a Plaintiff Does Not Claim Lost Wages.**

The initial question that must be asked when determining whether the production of tax records is appropriate is: are they relevant? *Malanka v. Data Gen. Corp.*, No. 85-2154-Mc, 1986 U.S. Dist. LEXIS 23277 (D. Mass. 1986); *Cooper v Hallgarten & Co*., 34 FRD 482, 483-84 (S.D.N.Y 1964) ("plaintiff is entitled to a protective order excluding from production his income tax returns…since sources and amount of his income have no bearing on the case…"). In the cases affected by this Motion, where the Plaintiffs are not claiming that Defendants' product caused them damages in the form of lost wages, the Plaintiffs' earnings, employment, tax records are simply not relevant.

A First Circuit court presiding over an MDL recently dealt with a similar request in *In re Lupron Mktg. & Sales Practices Litig*., MDL No. 1430, 2004 U.S. Dist. LEXIS 10224 (D. Mass., March 2, 2004). There, the court held that the individual plaintiffs' tax returns were irrelevant and subject to protection, and as such, were not discoverable. *Id.* at *3 ("[t]he request for plaintiffs' individual tax returns seeks largely irrelevant and quasi-privileged information.) (*citing Pedraza v. Holiday Housewares, Inc*., 203 F.R.D. 40, 43 (D. Mass. 2001).[10]

Likewise, the Southern District of New York recently held that a party's tax returns are not relevant where the party is not claiming lost wages or other losses related to his income. *Ellis v City of New York*, 243 F.R.D. 109 (S.D.N.Y. 2007). In that case, the defendant argued that the tax returns would be "useful" for purposes of impeachment because the plaintiff had used

[10] In *Pedraza*, the plaintiff sought tax returns to gain information regarding the individual defendants' net worth so as to inform the jury's consideration of punitive damages. *Pedraza*, 203 F.R.D. at 43. The District of Massachusetts denied the motion to compel because "[t]he incursion into the defendants' privacy that would stem from the production of their tax returns is unjustified given (1) the tenuous link between the returns and the purpose to which [plaintiff] would put them and (2) the availability of similar information through alternative means (such as credit reporting agencies). *Id*.

different aliases and dates of birth. *Id*. at 112. The court held that such arguments do not make the tax returns relevant to the subject matter of the action and that the defendant did not offer any evidence that his tax returns will support this allegation – it had simply suggested that all information disclosed had become "suspect" in light of the plaintiff's criminal history. *Id*. Finally, the court held that the defendant failed to establish a compelling need for the information because it did "not assert that it needs the financial information contained in the returns, but instead that it wants to investigate whether [plaintiff] used aliases or alternate dates of birth on his tax returns." *Id.* Here, the issues before the Court have even less of a connection to the information that could be obtained by the production of Plaintiffs' tax records. However, like in *Ellis*, the Defendants only claim that some of the Plaintiffs *might* have provided incomplete or inaccurate information in their PFS. That is not enough to compel production.

Defendants' brief relevancy argument is premised on their statement that Plaintiffs' "[t]ax returns are likely to reveal…*employers and sources of income* omitted from the Plaintiff Fact Sheet (PFS)…" and will "lead to the discovery of *undisclosed employers*". Defs' Brief, pp. 3-4 (emphasis added). However, only where a Plaintiff is claiming monetary damages as a result of having to take time off of work (or being prevented from returning to work) are those absences and employment records relevant. Quite simply, the cases at issue in this Motion have absolutely nothing to do with where or how much the Plaintiff worked (or did not work) over the 'last 10 years' and Defendants' unwarranted suspicions about the information provided so far do not cause Plaintiffs' tax returns to become relevant.

Defendants would invade Plaintiffs' privacy merely to double check the accuracy of the information they have already been provided. However, as one court held, "the theory of [defendant] that the tax returns will provide a check of the accuracy of the books of account of

plaintiff is not strong enough at this stage to justify the demand…." *Wiesenberger*, 35 F.R.D. at 557. Here, like in *Wiesenberger*, a claim that Plaintiffs' have failed to disclose employers is unsupported by fact or reason. There is no evidence indicating that *any* Plaintiff – let alone *all* of the Plaintiffs – provided incomplete or inaccurate employment information. And as they do not seek lost wages, there is no reason or motivation for any of them to do so. In any event, if at some time in the future Defendants produce evidence of an inconsistency in an individual Plaintiff's employment information, that issue should be dealt with on a case by case basis – not by treading on the privacy interests of every Plaintiff in the MDL.

Remarkably, Defendants assert that a Plaintiff's tax records will provide them with information relating to whether the Plaintiff's injuries and disabilities were caused by the Kugel Mesh Patch. Defendants' only argument in support of this theory is that the tax records will allow them to determining the number of days "plaintiff took off work after each surgery." This is simply wrong - a Plaintiff's tax returns will not contain this information. At best, the tax returns would only show a change in the amount of income that a Plaintiff received over the course of the year (which is only relevant if a lost income claim has been brought), but would not show the specific days or hours taken off of work.[11] The cause and extent of an individual Plaintiff's injuries, and any resulting disabilities, will be established by evidence and testimony already available to Defendants, such as the Plaintiff's medical records and the testimony of the treating physicians – it will not be established by the Plaintiff's tax records. Defendants have not demonstrated that the tax records are relevant, and therefore, ordering their production where lost wages are not claimed is inappropriate.

[11] Moreover, Defendants' argument is wrong because, if the Plaintiff received a raise, changed jobs, was unemployed, was subject to a pay-cut, or worked extra hours to make up for lost time, there is no way that Defendants could determine from the Plaintiff's tax records whether or not any time was lost as a result of the injury.

**3. Even if the Tax Records were Relevant, there is No Compelling Need for their Production because the Information is Otherwise Available.**

Defendants must demonstrate a compelling need for the tax returns. *See, e.g., Ellis,* 243 F.R.D. 109; *Barkley v. Olympia Mortg. Co.,* No. 04 CV-875, 2007 U.S. Dist. LEXIS 13308 *7 (E.D.N.Y. Feb. 27, 2007). Where the information for which a party seeks tax returns is otherwise available, this compelling need is absent, and it is not proper to require its disclosure. *Eastern Auto Distributors, Inc. v. Peugeot Motors of America, Inc*., 96 F.R.D. 147, 149 (E.D. Va. 1982). Additionally, if the facts on which the income tax returns will have a bearing have already been proved in a satisfactory manner, "good cause" for their disclosure no longer exists and the court should not order the discovery of the returns. *Garrett v. Faust*, 8 F.R.D. 556, 557 (E.D. Pa. 1949).

The information that Defendants claim to seek has been (or will be) provided in the PFS filled out by each Plaintiff. Specifically, the PFS requires each Plaintiff to provide Defendants with the information sought relating to his or her employment history over the last ten years and any extended absences relating to a health condition. See PFS, pp. 5-6. For each health related absence, a Plaintiff is required to provide the dates, employer's name and address, and a description of the condition causing the absence.[12] *Id.*

Finally, courts have held that where sufficient information may be obtained through a plaintiff's deposition testimony, the disclosure of financial documents may not be necessary. *Malanka*, 1986 U.S. Dist. LEXIS 23277 at *8-9.[13] As such, to the extent Defendants believe that

[12] Additionally, as stated above, if Defendants truly seek the tax returns to gain information relating to the cause and effect of Plaintiff's injuries, as their Motion contends, this information is more properly obtained through a review of their medical records and the depositions of their treating physicians.

[13] *See, e.g., EEOC v. First Wireless Group, Inc*., 225 F.R.D. 404 (E.D.N.Y. 2004); *Raba v. Suozzi*, No. CV 06-1109, 2007 U.S. Dist. LEXIS 1567 at *2 (E.D.N.Y. Jan. 9, 2007) (refusing to compel tax returns when plaintiff had yet to be deposed concerning lost earnings); *Sabatelli*, 2006 U.S. Dist. LEXIS 65355 at *1 (E.D.N.Y. Sept. 13, 2006) (denying motion to compel tax returns when a deposition testimony would

there may be gaps in a Plaintiff's employment records, they are able to test that (so far unsupported) assertion at that Plaintiff's deposition. Between the information provided in the PFS and the opportunity to depose the Plaintiff, Defendants will be provided with information far beyond what is relevant to these Plaintiffs' claims.

**4. Production of Tax Records is Not Appropriate for *All* Plaintiffs in this MDL**

Even if Defendants assertions were valid, even if a Plaintiff's tax records could lead to the discovery of "employers and sources of income omitted from the Plaintiff Fact Sheet", and even if that information was somehow relevant to a Plaintiff's personal injuries – Defendants' request is still extremely overbroad. Defendants seek tax records from every single Plaintiff who has filed a case in this MDL, without limiting their requests to situations where they have a reasonable belief that employment history information is missing or incomplete.

It only stands to reason that the public policy and privacy interests behind preventing the production of tax records – which has been repeatedly recognized by the courts – is magnified by the fact that this is an MDL and Defendants have requested this information from all of the Plaintiffs. If Defendants request is granted, hundreds of individuals (and their spouses and dependants) will have their private financial life examined and questioned by Defendants.[14] As such, Defendants should be held to their burden of demonstrating the relevance of *each* individual Plaintiff's tax records. They have not done so.

---

provide an adequate picture of defendant's financial status); *Carmody v. Vill. of Rockville Ctr.*, CV-05-4907, 2007 U.S. Dist. LEXIS 50933 (E.D.N.Y. July 13, 2007).

[14] Defendants claim that the protective order issued in this case should alleviate Plaintiffs' privacy concerns. That protective order was negotiated in relation to trade and production secrets claimed by Defendants. Those interests stand in stark contrast to an individual's right to privacy and the non-disclosure of personal and potentially embarrassing information.

**CONCLUSION**

Based on the foregoing, this Court should deny Defendants' Motion to Compel the production of tax records authorizations and enter an Order prohibiting the discovery of tax records in cases where the Plaintiff has not brought a claim for lost wages.

Dated: April 9, 2008

/s/ Donald A. Migliori

Donald A. Migliori (#4936)
Vincent L. Greene (#5971)
Leah J. Donaldson (#7711)
MOTLEY RICE LLC
321 South Main Street
Providence, RI 02940
401-457-7700
401-457-7708 Fax

Teresa E. Toriseva
Nancy Wilkins
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 Fax

Ernest Cory
Jon C. Conlin
Stephen R. Hunt, Jr.
CORY WATSON CROWDER & DEGARS P.C.
2131 Magnolia Ave.
Birmingham, AL 35209
205-328-2200
205-326-7896 Fax

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
55 West Monroe, Suite 3300
Chicago, IL 60603
312-346-2222
312-346-0022 Fax

Fred Thompson, III
Rhett D. Klok
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

## CERTIFICATE OF SERVICE

I, Donald A. Migliori, hereby certify that a copy of the foregoing Plaintiff's ***Memorandum in Opposition to Defendants' Motion to Compel the Production of Tax Record Authorizations as Part of the Plaintiff Fact Sheet Production*** was electronically filed. Those attorneys who are registered with the Electronic Filing System may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's Electronic Filing System.

Dated: April 8, 2008

/s/ Donald A. Migliori
Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX