**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § | |
| | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO:** | § | |
| **Smith v. C.R. Bard, Inc. et al** | § | **JUDGE LISI** |
| **No. 1:07-cv-1937** | § | |

## FIRST AMENDED COMPLAINT

## NATURE OF CASE

1. Plaintiff Darlene "Dolly" Percy is the mother of Hadley Scott Smith and the Administrator of his Estate. Hadley Scott Smith developed serious and potentially life-threatening medical conditions caused by the insertion of a defective medical product manufactured by Defendants - a Bard Composix Kugel Hernia Patch. These injuries and conditions caused by the defective medical product were a significant contributing factor in the death of Hadley Scott Smith. Plaintiff seeks relief for Hadley Scott Smith's injuries and death and for Plaintiff's own injuries flowing from the death of her son under claims of negligence, strict liability for failure to warn, strict liability for design defect, strict liability for manufacturing defect, and breach of warranty, fraud in violation of General Business Law § 349.

## PARTIES

2. Plaintiff is a citizen and resident of East Baton Rouge Parish, Louisiana. The relevant surgeries on Hadley Smith were performed at Saint Vincent's Hospital in New York, New York.

3. Defendant, Davol Inc. ("Davol") is a corporation that is incorporated under the laws of the State of Rhode Island. Davol has its principal place of business in the State of Rhode Island. It

manufactures the Composix® Kugel Mesh Patches ("Kugel Patch"). Davol focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

4. Defendant, C. R. Bard Inc. ("Bard") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of Davol and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies Davol with material that forms part of the Kugel Patch.

5. This case was originally filed in New York state court and removed to federal court and transferred to this Court. Jurisdiction exists in this Court based on diversity of citizenship between the plaintiff and defendants.

**FACTUAL ALLEGATIONS**

6. Defendant Davol designed, manufactured and distributed the Kugel Patch, a hernia mesh patch that was inserted into Mr. Smith's body.

7. Defendant Davol, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into Mr. Smith's body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

9. Defendants participated in the marketing, distribution and sale of the Kugel Patch as safe for its intended purpose, fully and properly tested for safety and potential risks, and free from the kinds of risks and hazards that the Kugel Patch actually posed to the public, including Plaintiff.

10. On or about August 18, 2004, Mr. Hadley Scott Smith underwent surgery at Saint

Vincent's Hospital in New York County to repair a recurrent incisional hernia. A Bard Composix Kugel Hernia Patch, Medium Oval, Product Code 0010205 and Lot Number 43DOD285. ("Kugel Patch") was implanted along with a Davol Bard Prefix Plug, Medium, Monofolomanet Knitted Polypropylene.

11. The Kugel Patch hernia repair product implanted in Mr. Smith was designed, manufactured, sold and distributed by Davol to be used by surgeons for hernia repair surgeries and was further represented by Davol to be an appropriate, cost-effective and suitable product for such purpose.

12. A Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to health.

13. The recall was due to a faulty "memory recoil ring" that can break under pressure, causing the kind of injury suffered by Mr. Smith. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

14. In the months that followed the surgery, Mr. Smith's condition worsened. Mr. Smith suffered under extreme fever, pain and discomfort. Despite an aggressive pain control regimen, neither the pain nor discomfort were abated.

15. On or about October 6, 2004, Mr. Smith was re-admitted to Saint Vincent's Hospital in an effort to stabilize his condition, which had significantly worsened. Surgery found that a portion of the Kugel Hernia Patch had broken free and perforated Mr. Smith's colon.

16. Mr. Smith was left to begin months of recovery, requiring re-routing his digestive system, on-going pain maintenance, with substantial medical complications requiring expensive, painful and emotionally harmful medical intervention and care, all in New York County.

17. Mr. Smith has incurred substantial medical bills and has lost earning capacity and lost quality of life as a result ofthe Kugel Patch, and continued to suffer physical pain and mental anguish up until the time of his death.

18. Hadley Scott Smith continued to suffer significant pain as a result of the injuries and conditions caused by the defective product. This significant pain and suffering and its sequelae were a significant contributing factor in his ultimate death which occurred on January 28, 2008.

19. Davol and Bard withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

20. Upon information and belief, Davol and Bard failed to comply with the FDA application and reporting requirements.

21. Upon information and belief, Davol and Bard were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

22. Upon information and belief, Davol and Bard were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

## FRAUDULENT CONCEALMENT

23. Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by defendants when they had a duty to disclose those facts. They have kept plaintiff and others ignorant of vital information essential to his pursuit of these claims, without any fault or lack of diligence on plaintiff's part, for the purpose of obtaining delay on plaintiff's part in filing a complaint on his causes of action. Their fraudulent concealment did result in such delay.

24. Plaintiff could not reasonably have discovered the claims made herein until shortly before

filing this complaint.

25. The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch that was implanted in Plaintiff, but instead they concealed them. As a result, Defendants are estopped from relying on any statute of limitations defenses.

## CLAIMS FOR RELIEF

### Count I - Negligence

26. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

27. Defendants at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

28. Defendants at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch's users.

29. Defendants so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

30. Defendants were aware of the probable consequences of the Kugel Patch. Defendants knew or should have known the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Kugel Patch. Defendants willfully and deliberately

failed to avoid those consequences, and in doing so, Defendants acted in conscious disregard of the safety of Hadley Scott Smith.

31. Defendants owed a duty to Hadley Scott Smith to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

32. Defendants breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

33. As a direct and proximate result of the duties breached, the Kugel Patch used in Mr. Smith's hernia repair surgery failed, resulting in Mr. Smith suffering pain and harm.

34. As a direct and proximate result of Davol's and Bard's negligence, Mr. Smith has suffered injuries and damages.

35. Defendants' conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

**Count II - Strict Liability: Failure to Warn**

36. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

37. In the course of business, Defendants Davol and Bard designed, manufactured and sold the Kugel Patch used in Hadley Scott Smith.

38. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Hadley Scott Smith received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

39. Defendants Bard and Davol failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. Defendants failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

40. The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Mr. Smith had his hernia repair surgery the Kugel Patch was in the same condition as when manufactured, distributed and sold.

41. Mr. Smith did not know at the time of use of the Kugel Patch, nor at any time prior thereto, of the existence of the defects in the Patches.

42. Mr. Smith suffered the aforementioned injuries and damages as a direct result of Defendants' failure to warn.

43. The conduct of Defendants in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying

an award in such sum which will serve to deter Bard, Davol and others from similar conduct.

**Count III - Strict Liability: Design Defect**

44. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

45. Defendants Davol and Bard designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

46. The Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. Although Mr. Smith's Kugel Patch was not a Class I recalled device, it failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Kugel Patch for the same reasons that gave rise to the Class I recall.

47. At all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of Davol.

48. The Kugel Patch implanted into Mr. Smith was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

49. The Kugel Patches, like the one found in Mr. Smith, at the time they left the possession of Defendants were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mr. Smith as follows:

I. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to Mr. Smith;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Mr. Smith;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Mr. Smith, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. Defendants failed to warn the end user about the dangers and risks of the product;

vii. Defendants knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Defendants failed to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Defendants failed to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery;

x. Any other acts or failures to act by Davol or Bard regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

50. Defendants' conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed

complete indifference to or a conscious disregard for the safety of others justifying an award ofadditional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

**Count IV- Breach of Implied Warranty**

51. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

52. Defendants Davol and Bard sold the Kugel Patch which was implanted in Mr. Smith. Defendants impliedly warranted to Mr. Smith, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

53. Defendants knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

54. Mr. Smith, his physicians and health care providers reasonably relied on Defendants' judgment, indications and statements that the Kugel Patch was fit for such use.

55. When the Kugel Patches were distributed into the stream of commerce and sold by Defendants Davol and Bard, they were unsafe for their intended use, and not of merchantable quality, as warranted by Defendants in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury ofharm or death to the end user.

56. Mr. Smith suffered such injuries and damages and death as a result of Defendants' conduct and actions.

**Count V - Breach of Express Warranty**

57. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

58. In the manufacturing, design, distribution, advertising, marketing, labeling and promotion of the Kugel Patch, Defendants Davol and Bard expressly warranted them to be safe and effective for consumers like Plaintiff.

59. At the time of making these express warranties, Defendants had knowledge of the purpose for which the product was to be used and warranted same in all respects to be safe and proper for such purpose.

60. The Kugel Patch did not conform to these express warranties and representations because they are not safe and pose severe and serious risks of injury.

61. The implantation and use ofthe Kugel Patch in Plaintiffs case was proper and pursuant to the intended and foreseeable use.

62. Plaintiff, by use ofreasonable care, would not and could not have discovered the breach and realized its danger.

63. Defendants' breach of warranty was a substantial factor in causing Plaintiff’s injuries and death.

**Count VI - Fraud**

64. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

65. Defendants Davol and Bard falsely and fraudulently represented to the medical community and to plaintiff the qualities of the Kugel Patch.

66. Defendants Davol and Bard fraudulently omitted, concealed and suppressed material information regarding the risks and dangers in their medical product, the Kugel Patch.

67. Defendants knew or, but for reckless disregard, should have known the true risk and

danger posed by their medical product, the Kugel Patch.

68. Having undertaken the manufacturing, marketing, distribution and promotion of the Kugel Patch, Defendants were under a duty to provide to plaintiff, his physicians, regulators and other consumers and persons with relevant responsibility accurate and complete information regarding the Kugel Patch.

69. Defendants committed their fraud with the intent of deceiving the public in general and the medical community in particular, with the intent that their product be purchased and implanted in persons like Plaintiff.

70. The public in general, and the medical community in particular, were unaware of Defendants' fraud, and reasonably relied upon Defendants.

71. Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless disregard when committing these acts of consumer fraud.

72. As a result of Defendants' fraud, Plaintiff sustained injury and damages.

**Count VII - Negligent Misrepresentation and Omission**

73. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

74. Defendants Davol and Bard, having undertaken the manufacturing, marketing, dispensing, distribution, sale and promotion of the Kugel Patch, created and were in a special relationship if trust, confidence and privity with the public, consumers, Plaintiff, and his medical care providers and were thus under a duty to provide accurate and complete information and warnings regarding the quality and safety of the Kugel Patch.

75. Defendants misrepresented and/or omitted material facts about the quality and safety of

the Kugel Patch to the public, consumers, Plaintiff, and his medical care providers, among others. Defendants misrepresented, among other things, that the Kugel Patch was safe and effective for the purposes for which they were intended. The representations were false since the product was not safe for this purpose and was dangerous to the health of Plaintiff.

76. The aforementioned misrepresentations and/or omissions were made by Pfizer with the intent to induce Mr. Smith or his physician to use the product, to his detriment.

77. At the time of the misrepresentations, Smith and all those responsible for his care were ignorant of the falsity of the statements, and reasonably relied on them and believed them to be true when selecting, purchasing and utilizing the product.

78. Defendants breached their duties to Smith and his physicians by providing false, incomplete and/or misleading information regarding their product.

79. As a direct a proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff suffered injury and damage and death.

**Count VIII - Violation of Gen. Bus. L. § 349**

80. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

81. Plaintiff is a "person" within the meaning of New York General Business Law § 349(h).

82. Section 349(a) of New York's General Business Law provides: "Deceptive acts or practices in the conduct of any business, trade of commerce or in the furnishing of any service in this state are hereby declared unlawful."

83. Section 349(h) of New York's General Business Law empowers "[a]ny person who has been injured by reason of any violation of this section" to bring an action.

84. At all relevant times Defendants were in the business of designing, manufacturing, marketing, distributing, advertising, promoting and selling their medical product, the Kugel Patch, to medical practitioners and consumers in the State of New York.

85. Defendants' deceptive acts and practices took place in the context of designing, marketing, distributing and selling their medical product, the Kugel Patch to the public and to consumers, including plaintiff and to the medical profession and scientific community, and therefore those deceptive acts and that conduct is consumer-oriented and affects the public interest.

86. Defendants made untrue, materially deceptive or misleading representations of material facts and omitted and/or concealed material facts in the marketing, packaging, advertisement and sale regarding the safety of the Kugel Patch.

87. Defendants made untrue, materially deceptive or misleading representations of material facts and omitted and/or concealed material facts in the marketing, packaging, advertisement and sale to the effect that the Kugel Patch was fit for the purpose for which it was intended, when Defendants knew it was defective and dangerous.

88. Defendants' conduct thereby and otherwise constituted deceptive acts or practices in the conduct of business, trade or commerce.

89. Defendants' conduct thereby and otherwise constituted unfair acts of practices that have the capacity and did deceive consumers.

90. Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless disregard when committing these acts of consumer fraud.

91. As a proximate result of these acts of consumer fraud, Plaintiff was injured and sustained actual damages and injuries. In addition, the injuries and conditions caused by the defective product

or a significant contributing factor in the death of Hadley Scott Smith.

**DAMAGES**

92. Plaintiff Darlene "Dolly" Percy, individually and as the Administrator of the Estate of Hadley Scott Smith is entitled to and prays for the following items of damage from defendants, *in solido*:

A. Medical and related expenses incurred by Hadley Smith;

B. Loss of earning capacity of Hadley Smith;

C. Loss of estate;

D. Physical pain and suffering of Hadley Smith prior to death;

E. Mental anguish and distress of Hadley Smith prior to death;

F. Loss of love, affection and companionship suffered by plaintiff Darlene "Dolly" Percy as a result of the loss of her son Hadley Scott Smith;

G. Mental grief and anguish of Darlene "Dolly" Percy as a result of the loss of her son Hadley Scott Smith;

H. Other items of damage which may be shown through discovery or at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against the Defendants, jointly and severally, for economic and non-economic damages in an amount as provided by law and to be determined by a jury; an award of attorney's fees and costs of suit as allowed by law; and such other legal and equitable relief as this Court my deem just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury.

Respectfully Submitted,

Dated: April 24, 2008

By: /s/ Donald A. Migliori
Donald A. Migliori
Motley Rice LLC
321 South Main Street
Providence, RI 02903
Telephone (401)457-7700
Facsimile (401)457-7709

*MDL 1842 Plaintiffs Liaison Counsel*

David Buchanan
Seeger Weiss LLP
One William Street
New York, New York 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

John W. deGravelles
deGravelles, Palmintier, Holthaus & Frugé, L.L.P.
618 Main Street
Baton Rouge, LA 70801-1910
Telephone: (225) 344-3735
Facsimile: (225) 336-1146

Daniel A. Claitor
7520 Perkins Road, Suite 170
Baton Rouge, LA 70808
Telephone: (225) 757-0159
Facsimile: (225) 757-0169

***Attorneys for Plaintiffs***

## CERTIFICATION

I hereby certify that on this 24th day of April, 2008, that a true copy of the foregoing Plaintiff's First Amended Complaint has been filed electronically and that it is available for viewing and downloading from the ECF system. I also certify that a true copy of this document was also mailed or electronically mailed to the following:

**Ernest Cory** ecory@cwcd.com

**Kirby T. Griffis** kgriffis@spriggs.com

**Mark T. Nugent** mnugent@morrisonmahoney.com

**Thomas M. Robinson** trobinson@morrisonmahoney.com

**Teresa C Toriseva** tct@wtwlaw.us

**Samuel J. Abate, Jr**
Pepper Hamilton LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405

**Andrew L. Colocotronis**
Baker, Donelson, Bearman, Caldwell & Berkowitz
900 South Gay Street
2200 Riverview Tower
Knoxville, TN 37902

**Kathleen Ann DeLaney**
Delaney & Delaney LLC
3640 North Washington Blvd.
Indianapolis, IN 46205

**John A. Fagg, Jr**
Moore & Van Allen
100 N. Tryon Street
Suite 4700
Charlotte, NC 28202-4003

**Gary D. Hermann**
Hermann, Cahn & Schneider
Suite 500
1301 East Ninth Street
Cleveland, OH 44114

**James B. Irwin**
Irwin Fritchie
400 Poydras Street
Suite 2700
New Orleans, LA 70130

**D. Mitchell McFarland**
Harrison Bettis Staff McFarland & Weems
500 Dallas Street
Suite 2600
Houston, TX 77002

**Michelle R. Schwarz**
Mandelbaum & Schwarz
2012 Hamilton Lane
Suite 303
Las Vegas, NV 89106

**Lesley Stine**
Saieva, Rousselle & Stine
601 W. Swann Ave., Suite B
Tampa, FL 33606

**Kara T. Stubbs**
Baker Sterchi Cowden & Rice
2400 Pershing Road
Suite 500
Kansas City, MO 64108

**Kevin K. Trout**
Heron Sweet Fox & Trout
2601 NW Expressway
Suite 707 W
Oklahoma City, OK 73112

**Danene J. Tushar**
Fraser Stryker Law Firm
409 South 17th Street
Suite 500 Energy Plaza
Omaha, NE 68102

**David Bowman White**
Gallivan White and Boyd
PO Box 1505
Greenville, SC 29603

**Dennie M. Zankel**
Baker and Sterchi
1010 Market Street
Suite 950
St. Louis, MO 63101

/s/ Donald A. Migliori

Donald A. Migliori
RI Bar#4936
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940
Telephone: 401-457-7700
Fax: 401-457-7708