**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § | **MDL Docket No. 07-1842-ML** |
| | § | |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | § § | **Judge Mary M. Lisi** **Magistrate Judge Lincoln D. Almond** |
| | § § | |

**MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE PLAINTIFF FACT SHEET AND FOR PROTECTION FROM FURTHER PRODUCTION OF TAX AUTHORIZATIONS WHERE NO LOST WAGES CLAIM IS BROUGHT**

Plaintiffs, by their attorneys, move this Honorable Court for the entry of an order granting them leave to amend the Plaintiff Fact Sheet ("PFS") to explicitly exclude the production of tax records authorizations and prohibiting the discovery of tax records in cases where the Plaintiff has *not* brought a claim for lost wages, lost income or other economic damages.[1] For their memorandum in support thereof, Plaintiffs state as follows:

## I. INTRODUCTION

Defendants are seeking tax records from every single Plaintiff who has filed a case in this MDL, without limiting their requests to situations where that information is of any relevance to the claims being brought, or even where they have a reasonable belief that employment history information is missing or incomplete.[2] Plaintiffs seek an order amending the PFS to only require the production of tax authorizations where the Plaintiff is seeking lost wages and prohibiting the discovery of tax records in cases where the

---

[1] For the sake of brevity and readability, all such claims will be referred to generally as claims for "lost wages."

[2] Should Defendants produce evidence of an inconsistency in an individual Plaintiff's employment information, that issue should be dealt with by the parties on a case by case basis – not by treading on the privacy interests of every Plaintiff in the MDL.

Plaintiff has not brought a lost wages claim but tax records authorizations have already been produced. Alternatively, should the Court reject this request, Plaintiffs request that the Court enter an order requiring all tax records to be produced to Plaintiffs' Liaison Counsel, who can redact irrelevant and private information such as the social security numbers of individuals not involved in this litigation prior to production to Defendants.

The public policy and privacy interest behind preventing the production of tax records – which has been repeatedly recognized by the courts (as well as the committee notes to Federal Rule of Civil Procedure 26) – is magnified by the fact that this is an MDL and Defendants have requested this information from all of the Plaintiffs. *See In re Lupron Mktg. & Sales Practices Litig.*, MDL No. 1430, 2004 U.S. Dist. LEXIS 10224 (D. Mass., March 2, 2004) ("[t]he request for plaintiffs' individual tax returns seeks largely irrelevant and quasi-privileged information.").

If the current PFS is not amended, literally thousands of individuals (including Plaintiffs' spouses and dependants) will have their private financial life examined and questioned by Defendants without reason. This type of information, including the private information of individuals only tangent to this litigation, is not implicated by the claims or defenses of the case. Indeed, just as it would be objectionable for Plaintiffs to demand tax record authorizations from Davol and Bard employees (under the guise of confirming employment records), it is equally objectionable for Defendants to demand such information from Plaintiffs without lost wages claims.

As such, the PFS should be amended to require the production of tax records authorizations only where the Plaintiff has put his or her income at issue or Defendants

have met their burden of demonstrating the relevance of *each* individual Plaintiff's tax records.

## II. BACKGROUND

On March 19, 2008, Defendants filed a motion to compel the production of tax records authorizations pursuant to their interpretation of the language of the PFS which had been agreed to by the parties (and approved by this Court). [Docket No. 673]. On May 2, 2008, the honorable Magistrate Judge Lincoln D. Almond granted Defendants' motion to compel. In Magistrate Judge Almond's text order, he states: "Plaintiffs' arguments as to the lack of relevance of income tax records for those not claiming lost wages may well have merit." Magistrate Judge Almond did not rule on the relevancy of the private tax information that Defendants seek. As he concluded that the language of the court-approved PFS indicated an agreement between the parties, Judge Almond held that – even if irrelevant – the tax records authorizations must be produced under the current PFS. In his text order, Magistrate Judge Almond seems to imply that revision of the PFS is a more appropriate way to address this issue; stating: "[i]f Plaintiffs wish to revise the PFS that they agreed to, and that was adopted and approved by the Court, then unilaterally refusing to execute the required authorizations for certain Plaintiffs and triggering a motion to compel is not the appropriate route." While Plaintiffs maintain that it was never their intention to agree to produce authorizations for the release of irrelevant quasi-privileged information,[3] Plaintiffs agree that a revision of the PFS is

[3] While Plaintiffs maintain that there was never any agreement between the parties to provide tax records authorizations – where a Plaintiff has not brought a loss wages claim – and points to the arguments in its opposition brief to Defendants' motion to compel [Docket No. 786] along with the affidavit of counsel attached thereto as Exhibit A, Plaintiffs respect the Magistrate Judge's report and recommendation, did not file an objection to that recommendation, and do not rehash those arguments here.

necessary in order to protect this private information where it is of no relevance or justifiable use to Defendants. As such, Plaintiffs bring this Motion to amend the PFS – only to exclude any requirement to provide tax records authorizations in cases where the Plaintiff does not bring a claim for lost wages.

## III. ARGUMENT

### A. The Tax Records' Irrelevance Warrants Amending the PFS

Federal Rule of Civil Procedure 26(b)(1), provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). Notwithstanding, a party "ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989); *see also Public Service Enterprise v. Philadelphia Electric*, 130 F.R.D. 543, 551 (D.N.J. 1990).

A district court has substantial leeway in managing pretrial matters, particularly decisions pertaining to the scope of discovery and the entry of orders governing pre-trial disclosures. *See Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926, 930 (1st Cir. 1991). As such, this Court is empowered to enter and amend pre-trial orders and discovery documents to guard against the production of irrelevant and embarrassing information such as the tax records at issue, which is only likely to multiply these proceedings for no

---

Similarly, Plaintiffs did not understand the agreed-upon PFS to require production of a Department of Veterans Affairs medical records authorization form for plaintiffs who never served in the military. Once it became obvious there was a discrepancy between Plaintiffs' and Defense counsels' understanding regarding these forms, counsel met and conferred on the issue. Counsel have since come to agree that Plaintiffs shall only produce VA authorization forms for plaintiffs for whom that form is relevant.

real reason. As explained below, the tax records that Defendants seek are wholly irrelevant to the claims brought by the Plaintiffs at issue. It was never contemplated that the PFS which was agreed to by the parties – and approved by the Court – would be used as a tool to force the production of these irrelevant tax records. As such, the scope of Rule 26(b) and the inherent powers of this Court to shape and direct discovery warrant an amendment of the PFS to limit the production of tax records authorizations to cases in which they are relevant.

**B. Tax Records are Not Discoverable Where Irrelevant**

While a party's income tax return is not protected by an absolute privilege, courts have recognized that privacy interests call for a measure of extra protection. Committee Comments to Fed. R. Civ. P. 26 (*citing Wiesenberger v W. E. Hutton & Co.*, 35 F.R.D. 556 (S.D.N.Y. 1964). Due to the sensitive information tax returns contain, and the public interest to encourage complete and accurate returns, their production should not be routinely required. *Mitsui & Co. v. Puerto Rico Water Resources Authority*, 79 F.R.D. 72, 80 (D.P.R. 1978) (requiring production only because plaintiff had “clearly put at stake its income”).[4] Unless clearly required in the interests of justice, litigants ought not be required to submit tax returns as the price for bringing or defending a lawsuit. *Wiesenberger*, 35 F.R.D. at 557. The requirement of "good cause" applies when one party seeks the production of his adversary's income tax returns under Rule 34 of the Federal Rules of Civil Procedure. *See Rubenstein v Kleven* 21 F.R.D. 183 (D. Mass. 1957) (Requiring ‘good cause’ but allowing production of tax returns because plaintiff’s income was directly at issue).[5]

Generally, courts have concluded that income tax returns should be ordered produced ‘where a litigant himself tenders an issue as to the amount of his income” (for example, loss of wages from personal injury, loss of income from violation by defendants of the anti-trust laws, etc.) and not otherwise. *E.g., Kingsley v. Delaware, L. & W. Ry. Co*., 20 F.R.D. 156, 158 (S.D.N.Y.1957); *Sanderson v. Winner*, 507 F.2d 477, 480 (10th

---

[4] *Troglione v. McIntyre Aviation, Inc.*, 60 F.R.D. 511 (W.D. Pa. 1973); *Premium Service Corp. v. Sperry & Hutchinson Co*., 511 F.2d 225, 229 (9th Cir. 1975).

[5] *See also, Garrett v. Faust*, 8 F.R.D. 556 (E.D. Pa. 1949); *Baim & Blank, Inc. v. Bruno-New York, Inc*., 17 FRD 346 (S.D.N.Y., 1955); *Karlsson v. Wolfson*, 18 FRD 474 (D. Minn. 1956); *Blanchet v. Colonial Trust Co*., 23 FRD 118 (D. Del. 1958).

Cir. 1974).[6] Here, Plaintiffs have always recognized their obligation to provide tax records authorizations where lost wages or income is alleged as part of the lawsuit – just not where the tax records are completely irrelevant. As such, amending the PFS to specifically exclude the production of tax records authorizations is warranted.

**C. Applicable Test for Relevancy of Tax Records**

The initial question that must be asked when determining whether the production of tax records is appropriate is: are they relevant? *Malanka v. Data Gen. Corp.*, No. 85-2154-Mc, 1986 U.S. Dist. LEXIS 23277 (D. Mass. 1986); *Cooper v Hallgarten & Co.*, 34 FRD 482, 483-84 (S.D.N.Y 1964) ("plaintiff is entitled to a protective order excluding from production his income tax returns…since sources and amount of his income have no bearing on the case…"). Courts in the First Circuit apply a two-prong test regarding the discoverability of tax returns. *Buntzman v. Springfield Redevelopment Auth.*, 146 F.R.D. 30, 32 (D. Mass. 1993); *Pogharian v. Croce*, C.A. 81-1307-F, 1985 U.S. Dist. LEXIS 17411 (D. Mass. July 29, 1985); *Pedraza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 43 (D. Mass. 2001). Pursuant to that test, before tax returns are discoverable:

(1) they must be relevant to the action; and

(2) the information contained therein must be otherwise unobtainable.

*See Buntzman*, 146 F.R.D at 32 (*citing United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625 (E.D.N.Y. 1988). Additionally, the party seeking discovery must demonstrate a compelling need for the tax returns. *See Ellis*, 243

[6] Even where a party's income is directly at issue in the case, it is not an abuse of discretion for a court to deny the production of income tax returns. *Fulenwider v. Wheeler*, 262 F.2d 97 (5th Cir. 1958). As explained herein, plaintiffs' counsel have agreed to provide defense counsel with authorizations for the tax returns of any Plaintiff who is bringing a lost wages claim. Therefore, Plaintiffs do not ask the Court to reach such a position.

F.R.D. 109. Finally, the burden of showing relevancy lies on the party seeking the returns. *Bonanno*, 119 F.R.D. at 627.

In the cases affected by the proposed amendment to the PFS (where there is no claim that Defendants' product caused them damages in the form of lost wages), the Plaintiffs' earnings, employment, and tax records are simply not relevant. A First Circuit court presiding over an MDL recently dealt with a similar request in *In re Lupron Mktg. & Sales Practices Litig*., MDL No. 1430, 2004 U.S. Dist. LEXIS 10224 (D. Mass., March 2, 2004). There, the court held that the individual plaintiffs' tax returns were irrelevant and subject to protection, and as such, were not discoverable. *Id.* at *3 ("[t]he request for plaintiffs' individual tax returns seeks largely irrelevant and quasi-privileged information.") (*citing Pedraza v. Holiday Housewares, Inc*., 203 F.R.D. 40, 43 (D. Mass. 2001).

Also, in *Pedraza*, the plaintiff sought tax returns to gain information regarding the individual defendants' net worth so as to inform the jury's consideration of punitive damages. *Pedraza*, 203 F.R.D. at 43. The District of Massachusetts denied the motion to compel because "[t]he incursion into the defendants' privacy that would stem from the production of their tax returns is unjustified given (1) the tenuous link between the returns and the purpose to which [plaintiff] would put them and (2) the availability of similar information through alternative means (such as credit reporting agencies). *Id*

Likewise, the Southern District of New York recently held that a party's tax returns are not relevant where the party is not claiming lost wages or other losses related to his income. *Ellis v City of New York*, 243 F.R.D. 109 (S.D.N.Y. 2007). In that case, the defendant argued that the tax returns would be "useful" for purposes of impeachment

because the plaintiff had used different aliases and dates of birth. *Id*. at 112. The court held that such arguments do not make the tax returns relevant to the subject matter of the action and that the defendant did not offer any evidence that his tax returns will support this allegation – it had simply suggested that all information disclosed had become "suspect" in light of the plaintiff's criminal history. *Id*. Finally, the court held that the defendant failed to establish a compelling need for the information because it did "not assert that it needs the financial information contained in the returns, but instead that it wants to investigate whether [plaintiff] used aliases or alternate dates of birth on his tax returns." *Id.* Here, as there is no evidence that the tax records would be useful for purposes of impeachment, the issues before the Court have even less of a connection to the information that could be obtained by the production of Plaintiffs' tax records.

Moreover, the cause and extent of these Plaintiff's injuries, and any resulting disabilities, will be established by evidence and testimony already available to Defendants, such as the Plaintiff's medical records and the testimony of the treating physicians – it will not be established by the Plaintiff's tax records. Defendants have not demonstrated that the tax records are relevant, and therefore, a PFS requiring their production in cases where lost wages are not claimed is inappropriate.

**D. No Compelling Need Exists for *These* Plaintiffs' Tax Records**

Defendants have failed to satisfy their burden of demonstrating a compelling need for the tax returns. *See, e.g., Ellis*, 243 F.R.D. 109; *Barkley v. Olympia Mortg. Co.*, No. 04 CV-875, 2007 U.S. Dist. LEXIS 13308 *7 (E.D.N.Y. Feb. 27, 2007). Where the information for which a party seeks tax returns is otherwise available, this compelling need is absent, and it is not proper to require its disclosure. *Eastern Auto Distributors,*

*Inc. v. Peugeot Motors of America, Inc.*, 96 F.R.D. 147, 149 (E.D. Va. 1982). Additionally, if the facts on which the income tax returns will have a bearing have already been proved in a satisfactory manner, "good cause" for their disclosure no longer exists and the court should not order the discovery of the returns. *Garrett v. Faust*, 8 F.R.D. 556, 557 (E.D. Pa. 1949). Finally, courts have held that where sufficient information may be obtained through a plaintiff's deposition testimony, the disclosure of financial documents may not be necessary. *Malanka*, 1986 U.S. Dist. LEXIS 23277 at *8-9.[7]

Any relevant information that Defendants seek will continue to be provided in the *extensive* PFS filled out by each Plaintiff.[8] Specifically, the PFS will continue to require each Plaintiff to provide Defendants comprehensive information relating to his or her employment history over the last ten years and any extended absences relating to a health condition. See PFS, pp. 5-6. Between the information provided in the PFS and the opportunity to depose the Plaintiff, Defendants will be provided with information far beyond what is relevant to these Plaintiffs' claims. Indeed, Defendants have taken extensive discovery from Plaintiffs and never once have Defendants argued that the PFS (combined with a Plaintiff's deposition testimony) did not afford Defendants enough

---

[7] *See also, EEOC v. First Wireless Group, Inc.*, 225 F.R.D. 404 (E.D.N.Y. 2004); *Raba v. Suozzi*, No. CV 06-1109, 2007 U.S. Dist. LEXIS 1567 at *2 (E.D.N.Y. Jan. 9, 2007) (refusing to compel tax returns when plaintiff had yet to be deposed concerning lost earnings); *Sabatelli*, 2006 U.S. Dist. LEXIS 65355 at *1 (E.D.N.Y. Sept. 13, 2006) (denying motion to compel tax returns when a deposition testimony would provide an adequate picture of defendant's financial status); *Carmody v. Vill. of Rockville Ctr.*, CV-05-4907, 2007 U.S. Dist. LEXIS 50933 (E.D.N.Y. July 13, 2007).

[8] There is no evidence indicating that *any* Plaintiff – let alone *all* of the Plaintiffs – provided incomplete or inaccurate employment information. And as they do not seek lost wages, there is no reason or motivation for any of them to do so.

information about Plaintiffs and their claims. As such, Plaintiffs merely request that the PFS be amended to protect Plaintiffs who are not claiming lost wages.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court grant their Motion and enter an Order allowing them leave to amend the Plaintiff Fact Sheet to explicitly exclude the production of tax records authorizations and prohibiting the discovery of tax records in cases where the Plaintiff has not brought a claim for lost wages, lost income or other economic damages.

Dated: May 30, 2008

/s/ Donald A. Migliori

Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
Providence, RI 02903
401-457-7700
401-457-7708 Fax

***MDL 1842 Plaintiffs' Liaison Counsel***