**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | § | **Chief Judge Mary M. Lisi** |

# DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S MEMORANDUM IN SUPPORT OF MOTION SEEKING CLARIFICATION OF ORDER PROHIBITING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS

Defendants previously sought an order allowing *substantive*, *ex parte* contact with Plaintiffs' treating physicians. (*See* Mem. of Law in Support of Mot. Seeking *Ex Parte* Contacts with Pltfs.' Treating Physicians (Doc. 77) at 1 ("Defendants . . . ask the Court to recognize Bard and Davol's right to engage in substantive *ex parte* contacts with plaintiffs' past and/or present treating physicians. . . .").) Judge Almond recognized that Defendants sought "to engage in *substantive ex parte* contacts with [Plaintiffs'] past and/or present treating physicians." (Mem. & Order, Jan. 22, 2008 (Doc. 245) at 1 (emphasis added).) And, when Magistrate Judge Almond denied the motion, he did so because he concluded that *substantive* contact with Plaintiffs' treating physicians could adversely impact the doctor-patient relationship. (*See* Mem. & Order at 2 (citing Judge Fallon's reasoning in *Vioxx* that "'the just option . . . is to protect the relationship between a doctor and patient'").)[1]

Despite the clear import of Judge Almond's ruling, Plaintiffs now construe that order as precluding Defendants from initiating *any* contact with any treating physician, no matter the form or purpose of the communication. For example, Plaintiffs point to Judge Almond's ruling

[1] The Court affirmed Judge Almond's order on February 25, 2008. (*See* Doc. 418.)

to say that Defendants cannot send simple notices of deposition to the doctors – even though Plaintiffs themselves were not providing the doctors with notice of the deposition and Defendants' accompanying document requests. Plaintiffs will next argue that Defendants cannot consult with their retained medical experts because some of those experts may have treated some plaintiff at some point in time. Surely Judge Almond's order denying *ex parte* contacts does not reach so far. Defendants respectfully submit that – based upon both the stated intent behind Defendants' original motion and the language of Judge Almond's order – it was meant to preclude *substantive* communications with physicians about issues related to the care and treatment of a particular plaintiff. For these reasons, and for the reasons stated more fully below, Defendants request that the Court clarify the scope of its prior order denying *ex parte* contacts with Plaintiffs' treating physicians.

## ARGUMENT

### I. Only Substantive Communications With A Physician, About A Particular Plaintiff, Could Betray The Doctor-Patient Relationship That Judge Almond's Order Intends To Preserve.

Judge Almond's order precluding *ex parte* contacts was meant to prevent the informal and arguably unauthorized disclosure of medical information about a given plaintiff. Defendants explicitly sought substantive *ex parte* contacts as an informal discovery mechanism and a means to obtain relevant information about the care and treatment rendered to a plaintiff. (*See* Mem. of Law in Support of Mot. Seeking *Ex Parte* Contacts with Pltfs.' Treating Physicians (Doc. 77) at 6-7 (describing how substantive *ex parte* contacts would expedite the discovery process).) Judge Almond denied this request, noting "the various [other] mechanisms for [a] defendant to access treatment information" (Mem. & Order at 2) that would "protect the relationship between a doctor and patient." (*Id.*) Thus, it is clear from both Defendants' sought-after relief and the

language of Judge Almond's order itself that Defendants were precluded from engaging in *ex parte* communications meant to discover information about the medical care and conditions of a plaintiff in this litigation.

Only substantive contacts with a physician would violate the letter and intent of Judge Almond's order, for only a substantive, two-way communication could convey any real information about a plaintiff. Simply forwarding a notice of deposition to a physician – as Defendants have done – neither seeks nor reveals confidential information about a plaintiff.[2] Communications like this harmlessly inform the doctors of the time and place for their pending deposition. They also ensure that the doctors have received the accompanying request for documents and had an opportunity to respond to that request.[3] Yet, Plaintiffs argue that Judge Almond's order prohibits even this superficial communication.[4] This cannot be the case, for Defendants could very well serve a subpoena upon any third-party physician consistent with Rule 45 of the Federal Rules of Civil Procedure and consistent with this Court's order. What Defendants have done goes no further.

Plaintiffs can assert no prejudice from any of Defendants' limited communications with treating physicians. Instead, their opposition rests upon nothing more than speculation about possible outcomes and Defendants' motives, and it serves only to place another obstacle in the path of discovery.

[2] On several occasions Defendants have provided surgeons with a copy of the Notice of Deposition relevant to their upcoming depositions. One such notice, directed to Dr. William Daniel, is attached as Exhibit 1.

[3] On more than one occasion Plaintiffs failed to deliver Defendants' request for documents to the surgeon, or it was delivered so late that the surgeon had no opportunity to gather and produce the requested documents. Examples are attached as Exhibit 2.

[4] Plaintiffs' position is illustrated by the e-mail sent by Mr. Migliori to Mr. Griffis on May 14, 2008, and attached to this Motion as Exhibit 3.

## II. Defendants Are Aware Of No Authority Supporting The Absolute Ban Sought By Plaintiffs, And Plaintiffs Have Provided None.

Defendants know of no authority supporting Plaintiffs' interpretation of the Court's *ex parte* order. To the contrary, the authority that does exist suggests only that Defendants' contacts are perfectly appropriate. *See Metzger v. Francis W. Parker School*, No. 00 C 5200, 2001 WL 910443, at *3 (N.D. Ill. Aug. 10, 2001) (refusing to bar discovery from treating physician when plaintiff conceded that discussions with the treating physician "did not involve matters of substance"); *MacDonald v. United States*, 767 F. Supp. 1295, 1298-99 n.4 (M.D. Pa. 1991) (finding telephone call to determine treating physician's availability to testify and a review of the facts before his deposition did not amount to "overreaching" demonstrated in prior cases banning *ex parte* contacts). Because the privilege created by the doctor-patient relationship extends only to substantive, confidential information acquired during the course of treatment or diagnosis, *see Huzjak v. United States*, 118 F.R.D. 61, 63 (N.D. Ohio 1987), it is difficult to imagine how any prohibition against *ex parte* contacts could preclude non-substantive communications such as those incident to noticing a deposition.

## III. If Carried To Its Logical Extreme, Plaintiffs' Interpretation Of Judge Almond's Order Would Deny Defendants The Services Of Their Retained Experts.

Given the sheer number of lawsuits, it is inevitable that one of Defendants' consulting or testifying expert witnesses will have treated a named plaintiff in this litigation. If Plaintiffs' interpretation of Judge Almond's order were to become the rule, it would prevent Defendants from contacting and consulting with their own retained experts on any topic – even where the communication had nothing to do with the care and treatment of a specific patient/plaintiff. Because Defendants unquestionably are entitled to retain and consult with medical experts throughout the course of this litigation, Plaintiffs' reading of Judge Almond's *ex parte* order

plainly goes too far. Plaintiffs should not be permitted to use the *ex parte* order to impair Defendants' defense of the many cases in this litigation. *See, e.g*., *In Re Seroquel Prods. Liab. Litig*., No. 6:06-md-1769-Orl-22DAB, 2008 WL 821889, at *4 (M.D. Fla. Mar. 21, 2008) (ordering – despite ban on *ex parte* contacts – that "[defendant] will not be prohibited from retaining a physician as an expert witness who is identified on a Plaintiff's Fact Sheet or otherwise as being a treater for a plaintiff in this litigation," because to enforce such a "prohibition on [defendant's] contacting and retaining physicians has the potential to deprive [defendant] of a fair opportunity to present its defense").

**Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court clarify its prior order regarding *ex parte* contacts to permit Defendants limited contact with treating physicians (and their offices) for purposes of arranging depositions and facilitating the production of documents in conjunction with those depositions.

Dated: June 12, 2008

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

s/ Kirby T. Griffis
Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J. Cople, III
1350 I Street NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendant C.R. Bard, Inc. and Defendant Davol Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2008, the foregoing DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC'S MEMORANDUM IN SUPPORT OF MOTION SEEKING CLARIFICATION OF ORDER PROHIBITING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS was electronically filed with the clerk of court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon the Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
Motley Rice LLC
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
Fax: (401) 457-7708
Email: dmigliori@motleyrice.com
*via electronic mail*

s/ Kirby T. Griffis

# EXHIBIT 1

Spriggs 25 YEARS Hollingsworth

Spriggs & Hollingsworth
1350 I Street, NW
Washington, DC 20005

tel. 202.898.5800
fax 202.682.1639
www.spriggs.com

Michael L. Junk
202.898.5876
mjunk@spriggs.com

May 13, 2008

**VIA FACSIMILE (240) 783-0459**

Dr. William Daniel
Graves-Gilbert Clinic
Medical Arts Building
350 Park Street, Suite 101
Bowling Green, KY 42101

Re: J.W. Collins v. Davol Inc., et al.

Dr. Daniel:

In advance of your upcoming deposition in this matter, I enclose a copy of the Notice of Deposition served upon plaintiff's counsel. The Notice of Deposition sets the time and location for your deposition, and it directs you to bring certain documents relevant to your care and treatment of Mr. Collins.

I look forward to meeting you at the deposition.

Sincerely,

Michael L. Junk

cc: Don Migliori (by electronic mail)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § | **MDL Docket No. 07-1842-ML** |
| THIS DOCUMENT RELATES TO: J.W. Collins v. Davol Inc. et al., CA No. 1:07-cv-1858-ML-LDA | § | **Chief Judge Mary M. Lisi** |

**NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE that in accordance with the Federal Rules of Civil Procedure and specifically pursuant to Rule 30, testimony will be taken upon oral examination from **Dr. William Daniel** before a person authorized to administer oaths pursuant to Federal Rule of Civil Procedure 28 on **May 15, 2008,** at **7:00 a.m.** at a conference room at the **law offices of Hughes and Coleman, 1256 Campbell Lane, Suite 201, Bowling Green, Kentucky 42104**, with respect to all matters relevant to the subject matter involved in this action. The deposition will continue from day to day until completed.

Pursuant to Rule 30(b)(2), the deponent shall produce the items described on Attachment "A" for inspection and/or copying at the time of the deposition.

Dated: May 9, 2008

/s/ Kirby T. Griffis

Kirby T. Griffis
Spriggs & Hollingsworth
1350 I Street NW
Washington, DC 20005
Phone: (202) 898-5800
Fax: (202) 862-1639

*COUNSEL FOR DEFENDANT DAVOL INC. AND DEFENDANT C.R. BARD, INC.*

**Attachment A**

Pursuant to Rule 30(b)(2), the deponent shall produce the items described below.

1. Your most recent curriculum vitae or resume.

2. All notes, electronic, handwritten, or otherwise, that you have taken concerning this case, including notes of conversations with or concerning the plaintiff(s).

3. All medical records and other documents regarding your treatment, consultation and evaluation of the plaintiff in this case.

4. All medical records that you have reviewed concerning the plaintiff.

5. All documents which you have reviewed or upon which you intend or expect to rely in connection with this case.

6. All documents you reviewed in preparation for this deposition.

7. All other documents not requested above related in any way to your involvement or the involvement of your office with the counseling, treatment, or evaluation of the plaintiff.

8. All documents to which you have contributed in any way, including but not limited to authoring, co-authoring, editing, or reviewing, which reference the Composix® Kugel® hernia patch specifically, or which generally concern complications following hernia repair and/or its causes or treatments.

9. All documents to which you have contributed in any way, including but not limited to authoring, co-authoring, editing, or reviewing, which reference the surgical management of any health problem, disease, or other condition requiring treatment which you have observed or diagnosed in plaintiff.

# EXHIBIT 2

Deposition of Dr. David Voigt, conducted May 7, 2008.
Notice of Deposition delivered to Motley Rice on April 8 and April 23, 2008.
Pages 11:21 – 12:10

Q. Let me show you what's been marked Exhibit 1. It's two pages. Have you ever seen this before?
A. No.
Q. Doctor, this is the notice of deposition, and it gave the time and location for your deposition. If you'll turn to page 2, you'll see there's a list of materials on there or a list of requests. Have you ever seen that list before today?
A. No.
Q. Was that list ever provided to you by Mr. Friedman or Mr. Conlin?
A. Not to my knowledge.
Q. Were you aware that you were supposed to bring materials to this deposition?
A. No.

* * * *

Deposition of Dr. Sharon Bachman, conducted on May 14, 2008.
Notice of Deposition delivered to Motley Rice on April 25, 2008.
Pages 15:17 – 17:24

MS. HAGAN: So I'm introducing here Exhibit 1.
(Exhibit 1 marked.)
Q. BY MS. HAGAN: Have you seen this document before?
A. No, I have not.
Q. Okay. This is the notice of deposition for your appearance today. And attachment A lists nine groups of materials that we've asked you to bring with you today. Have you seen this list before?
A. No.
Q. I don't notice any documents with you; so I don't think you brought any documents. Is that correct?
A. I did not. I did not receive this list ahead of time.
MR. MIGLIORI: No. We did not provide it to her.
MS. HAGAN: Why did you not provide it to her?
MR. MIGLIORI: We can put on the record now we've talked about it a million times. There was a lot of confusion about the scheduling of today's deposition, and it was on and off again several times. Through the course of yesterday alone. We did not get a chance to actually communicate directly with the doctor until late in the afternoon yesterday, and we simply exchanged documents with Kirby yesterday that related to what we thought were relevant in terms of her role in the medical records for this patient. All the other -- in terms of the actual care of this particular patient, outside the consent form and the clinic note, which Kirby and I exchanged yesterday, all the other information in this file is really more appropriately that of Dr. Ramshaw and others in her group. So it wasn't to be -- as you know, we weren't sure we were going to be here. It wasn't to be obstreperous, but we just simply identified and exchanged documents yesterday with Kirby that were the only documents that we considered to be relevant.

Everything else on that broad boilerplate exhibit A for this witness we didn't think existed. We do have some articles of herself. You can certainly inquire of her on the various points raised in there, but we did everything we could in the short amount of time that we had to exchange those materials with Kirby yesterday and before we got started on today's deposition, I asked you if you had everything that Kirby and I exchanged. If something comes up that appears from that list that she might have in her possession that Kirby and I failed to share with each other, then I'd be more than happy to arrange for it at a break and get it in front of you, but this witness simply is not either the implanting or the primary physician for this patient; so we did everything we could yesterday to make the appropriate exchanges under this deposition notice.

MS. HAGAN: Okay. For the record. We noticed this deposition on April 25th, and we discussed this deposition the past couple of days. And the attachment A could have been sent set, but it hadn't been sent. That's fine. We'll proceed from here.

* * * *

Deposition of Dr. Kevin Mahoney, conducted May 27, 2005
Notice of Deposition delivered to Motley Rice on May 21, 2008
Page 11:4-10

Q. (By Mr. Gausepohl) I will show you what's been marked Exhibit No. 1 to this deposition. It's an amended notice of deposition. It's sort of your invitation to come here today and answer our questions. Have you seen this document before today?

A. No.

# EXHIBIT 3

**Junk, Michael L.**

**From:** Griffis, Kirby T.

**Sent:** Wednesday, May 14, 2008 12:41 PM

**To:** Junk, Michael L.; Gausepohl, Dana; Thomas, David; Hagan, Jennifer; Winslow, Arvette; Murchison, Chad; Snyder, Drew; Farukhi, Omer; Sacco, Kathryn; Latimer, Kate R.

**Subject:** FW: Letter from defendants to Dr. Daniel

----------

**From:** Migliori, Don[SMTP:DMIGLIORI@MOTLEYRICE.COM]
**Sent:** Wednesday, May 14, 2008 12:40:30 PM
**To:** Griffis, Kirby T.
**Cc:** DL - Kugel Lead Counsel
**Subject:** RE: Letter from defendants to Dr. Daniel
**Auto forwarded by a Rule**

Thank you. We will file our motion.

**Donald A. Migliori** | Attorney at Law | Motley Rice LLC
321 South Main Street | Providence, RI 02903-7108 | dmigliori@motleyrice.com
**o.** 401.457.7709 | **c.** 401.862.4260 | **f.** 401.457.7708

---

**From:** Griffis, Kirby T. [mailto:kgriffis@spriggs.com]
**Sent:** Wednesday, May 14, 2008 12:36 PM
**To:** Migliori, Don
**Cc:** DL - Kugel Lead Counsel
**Subject:** RE: Letter from defendants to Dr. Daniel

Don: The motion the Judge Almond denied and his order pertain to substantive ex parte contacts. Our letters are not ex parte contacts at all within the meaning of the case law, much less "substantive" ones. We thus have the same authority to issue notices of deposition that any litigant has in any litigation with regard to any witness.

The "repeated contacts" you are referring to are notices of deposition, with terse cover letters explaining what is enclosed. I don't know of any authority anywhere forbidding that.

Kirby

---

**From:** Migliori, Don [mailto:dmigliori@motleyrice.com]
**Sent:** Wednesday, May 14, 2008 12:25 PM
**To:** Griffis, Kirby T.
**Cc:** DL - Kugel Lead Counsel
**Subject:** FW: Letter from defendants to Dr. Daniel

As a follow up to my attempt to meet and confer on represted contacts between your office and plaintiffs' treating doctors or their lawyers, I attach the Magistrate Judge's Order and Judge Lisi's Order denying your motion to communicate with Plaintiffs' doctors. Please advise where you have the authority to send any correspondence to

the doctors?

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

This electronic message contains information from the law firm of Spriggs & Hollings

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.