**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| In re: KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENTS RELATES TO:<br><br>ALL ACTIONS | )<br>)<br>)<br>)<br>)<br>)<br>) | MDL Docket No. 07-1842-ML<br><br>JUDGE LISI |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION SEEKING CLARIFICATION OF ORDER PROHIBITING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS**

Plaintiffs, by their attorneys, hereby respond to Defendants' Motion Seeking Clarification of Order Prohibiting *Ex Parte* Contacts With Plaintiffs' Treating Physicians ("Motion") as follows:

## I. INTRODUCTION

### A. Nature of the Dispute

Plaintiffs do not object to Defendants issuing third party discovery requests and taking the depositions of their treating physicians; however, they object to the manner in which this discovery is being conducted. On January 22, 2008, Judge Lincoln D. Almond denied Defendants' Motion Seeking *Ex Parte* Contacts With Plaintiffs' Treating Physicians. (Docket No. 245). Displeased with this ruling and their inability to have such communications with Plaintiffs' treating physicians, Defendants filed their objection to this ruling on February 5, 2008 - claiming that Judge Almond's ruling was "clearly erroneous and should be set aside." (Docket No. 290, p. 8). On February 25, 2008, Chief Judge Mary M. Lisi denied Defendants' objection to Judge Almond's Memorandum and Order. As such, Defendants are, and have been, explicitly prohibited from engaging in *ex parte* communications with Plaintiffs' treating physicians.

In violation of the intent and spirit (if not the explicit language) of this Court's January 22, 2008 Memorandum and Order, Defendants have had direct *ex parte* contact with Plaintiffs' treating physicians in the course of serving notices of deposition (with an attached cover letter). Plaintiffs asked that Defendants serve their subpoenas on treating physicians through Plaintiffs' Liaison Counsel – Defendants have outright refused this request. Plaintiffs then proposed that, until the issue is resolved by the Court, if Defendants were going to continue to contact the treating physicians directly, they would at least include language in the cover letter to advise the doctors that an order prohibiting *ex parte* contacts exists, so the doctors or their lawyers do not unknowingly engage in direct and prohibited communication with defense counsel. Once again, Defendants refused this request.

Now, nearly five (5) months after the Court first issued its Memorandum and Order prohibiting *ex parte* contacts with Plaintiffs' treating physicians, Defendants move for "clarification" of the Court's already clear order. Defendants claim they need to be allowed to contact Plaintiffs' treating physicians in order to schedule depositions, but still provide no legitimate reason why the depositions cannot be scheduled through Plaintiffs' Liaison Counsel.

**B. Defendants Are Serving Deficient Subpoenas – Inviting *Ex Parte* Contacts with Plaintiffs' Treating Physicians**

As explained below, Defendants are all but soliciting Plaintiffs' treating physicians (or their counsel) to engage in *ex parte* communications with defense counsel. Defendants began sending notices of deposition directly to Plaintiffs' treating physicians – without informing them of their rights as required by Rule 45. These patently deficient subpoenas (labeled "notices of deposition") not only contain document requests to the physicians, but are accompanied by a cover letter from Defendants. (See Ex. 1 to Defs' Brief.). The only contact information on either of these documents is that of defense counsel. Moreover, there is no warning to the

physician (or her counsel) that the Court has issued an order prohibiting *ex parte* contacts with defense counsel. As such, the natural reaction of a recipient of the notice of deposition and cover letter is to contact the law firm that served the documents. Despite Plaintiffs' counsel objection and suggestion that the notices of deposition be served through Plaintiffs' Liaison Counsel, Defendants have refused to alter their conduct in any way or even take simple precautions to lessen the likelihood of improper *ex parte* contacts – such as including a warning that *ex parte* communications are prohibited in the cover letter.

**C. Defendants' Conduct has Already Resulted in *Ex Parte* Communications with Plaintiffs' Treating Physicians**

Indeed, the notices of deposition and cover letters from defense counsel have already resulted in improper *ex parte* communications between (at least) one treating physician and defense counsel. There are serious risks involved with these *ex parte* communications – as acknowledged in the Court's Memorandum and Order. Whether improper disclosures are intentional or inadvertent, they damage the personal privacy and public policy interests underlying the physician-patient privilege.

**D. A Failure to Identify Plaintiffs' Treating Physicians Acting as Defendants' Consultants is a Violation of the *Ex Parte* Order and can Create a Conflict of Interest**

As explained more fully below, in order to protect the rights and privacy of their clients, Plaintiffs' counsel is entitled to know the identity of any treating physician who has consulted with Defendants regarding this litigation, and the circumstances surrounding those consultations. A treating physician is a Plaintiff's fiduciary; and may create a conflict of interest by aligning with Defendants in this litigation. Moreover, it is nearly impossible for treating physicians to act as a consultant for Defendants without providing substantive information relating to their patients' cases, thus violating the terms of the *ex parte* order. Additionally, this information is relevant, as it goes to the treating physicians' bias in the cases brought by their patients. Finally,

Plaintiffs and their counsel are entitled to take part in *ex parte* communications with their treating physicians – which might be compromised (or even subject Plaintiffs' counsel to disciplinary action) should those treating physicians be acting as consultants for Defendants. Therefore, necessity entitles Plaintiff to know which treating physicians have been consulted and the circumstances surrounding those consultations.

In their Motion, Defendants ask the Court to "clarify" its prohibition of *ex parte* contacts. Clarification is not necessary. Defendants should cease *all ex parte* contact with Plaintiffs' treating physicians – as they were ordered to do – and simply allow Plaintiffs' Liaison Counsel to serve any necessary notices of deposition.[1] Moreover, Defendants should be required to provide Plaintiffs with the name of each one of Plaintiffs' treating physicians who has consulted with defense counsel; the date of each initial consultation; and a list of all documents that the treating physicians provided to Defendants (or where otherwise exchanged between the treating physician and Defendants) and when those documents were exchanged or produced. To do otherwise is to invite unnecessary problems and endanger the physician-patient privilege.

## II. <u>ARGUMENT</u>

### A. Defendants are Sending Treating Physicians Deficient Subpoenas Which do Not Inform Them of Their Rights or Comply with the Federal Rules of Civil Procedure

Defendants assert that they are entitled to serve notices of deposition on Plaintiffs' treating physicians because they would be entitled to serve third party subpoenas under Rule 45 of the Federal Rules of Civil Procedure. Defs' Brief, p. 3. However, as evidenced by Exhibit 1 to Defendants' Brief, the notices of deposition that are being issued to Plaintiffs' treating

[1] Alternatively, Defendants should be required to insure that their notices of deposition comply with the requirements of the Federal Rules of Civil Procedure, inform the treating physicians in writing of the Court's prohibition of ex parte contact with defense counsel, and Defendants should be instructed to abstain from any *ex parte* contact with treating physicians subsequent to serving the notices of deposition.

physicians are incomplete and patently deficient under Federal Rule of Civil Procedure 45. Fed. R. Civ. P. 45. Specifically, Rule 45 requires that any subpoena served upon a third-party "set out the text of Rule 45(c) and (d)." *Id*. This requirement is vital because sections (c) and (d) to the Rule inform the subpoenaed party of their rights and privileges under the Rule. *Id*. Defendants make no such disclosures; therefore, Defendants are intentionally sending deficient subpoenas to Plaintiffs' treating physicians – demanding the production of documents – without so much as informing the treating physicians of their rights under the law. Defendants now seek to hide behind the very Rules of Civil Procedure that they ignore. Defendants' disregard for their obligation to inform the treating physicians of their rights under the Rules of Civil Procedure parallels their cavalier attitude toward the Court's prohibition of *ex parte* contacts.

**B. Defendants' Notices of Deposition and Cover Letters Elicit *Ex Parte* Communications between Defense Counsel and Plaintiffs' Treating Physicians**

Here, direct contact and *ex parte* communications (substantive and non-substantive) with defense counsel are likely to result when treating physicians receive Defendants' notices of deposition and cover letters. While Defendants claim that only a "two-way communication could convey any real information about a plaintiff," they ignore the fact that the notices of deposition and cover letters are likely to – and already have – resulted in "two-way communication." Indeed, the only contact information contained in these documents is that of defense counsel. As such, if the doctors or their counsel have any questions or comments about the deposition – or even the nature of the case and the plaintiff's treatment – they have no choice but to contact defense counsel. Therefore, it is almost certain that *ex parte* correspondence and discussion will result.

In fact, Plaintiffs are already aware of at least one instance where a Plaintiff's treating physician has engaged in a letter writing exchange with defense counsel. As explained below, these *ex parte* communications not only put the relationship between the doctor and the patient at risk, but

potentially and unfairly expose the physicians to liability. These "unintended consequences" of *ex parte* communications are what the Court's order sought to prevent. To allow defense counsel to knowingly pursue a course of conduct that has already elicited *ex parte* communications from Plaintiffs' treating physicians, is to diminish the practical effect of the Court' prior order on *ex parte* contacts.

### C. Defendants' *Ex Parte* Contacts May Result in Disclosure of Protected Information – Even if Unintentionally

This Court correctly pointed out in its January 22, 2008, Memorandum and Order that:

> [T]he practical effect [of allowing *ex parte* contacts between defense counsel and treating physicians is to] create unintended consequences that can cause more problems than it sought to solve.

[Docket No. 245, p. 2 (quoting Judge Fallon's opinion in the Vioxx MDL)].

There is a real concern that HIPAA and the physician-patient privilege could be violated by the treating physician or defense counsel during some *ex parte* contact, even if only unintentionally. Indeed, even if Defendants have every intention of complying with HIPAA (and plaintiffs are not suggesting otherwise), a doctor or his representative might unknowingly disclose protected information to defense counsel. During an *ex parte* communication, a violation of a plaintiff's privacy interests and a breach of a physician's fiduciary duty does not require nefarious intentions. Without knowing the nature of the confidential information beforehand, defense counsel may unknowingly elicit a response to its notice of deposition containing substantive information about the plaintiff's treatment.[2] As such, the physician should not be required to decide what ought to be disclosed and these communications should be conducted through Plaintiffs' Liaison Counsel. As

[2] Courts have also warned that the use of *ex parte* interviews could encourage improper discussions or collusion between doctors and the attorneys defending their colleagues. *See Horner*, 153 F.RD. 597 (noting that an *ex parte* interview could develop into a "discussion of the impact of a jury's award upon a physician's professional reputation, [or] the rising cost of malpractice insurance premiums .... ").

one court put it: "[a]sking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician." *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986); *accord*, *Harlan v. Lewis,* 141 F.R.D. 107, 109 (E.D.Ark. 1992) ("The physician, largely unschooled in legal matters, cannot be expected to make the sometimes difficult determination of what matters are relevant to the plaintiff's claims."); *see also*, *Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597 (S.D. Tex. 1994).

Indeed, it is not difficult to imagine a situation where the communications between defense counsel and a physician results in a discussion of substantive issues or the creation of a conflict of interest. There is no reason to subject the physician – or defense counsel – to this balancing act, when all discovery can be efficiently taken without risking violation of this Court's order. Moreover, situations such as this would undoubtedly require the parties to bring the dispute before the Court for resolution. This is a recipe for contention and unnecessary motion practice.[3]

### D. Defendants Should Be Prohibited from Engaging in *Ex Parte* Communications – in *All* Circumstances

The Federal Rules of Civil Procedure, and particularly Rule 16, give the court wide discretion in matters of case management. *E.g.*, *Ayala-Gerena v. Bristol Myers-Squibb Co*., 95 F.3d 86, 91 (1st Cir. 1996) ("It is well settled that the trial judge has broad discretion in ruling on pre-trial management matters…"). This Court has already determined that discovery can be sufficiently and efficiently completed without *ex parte* communications between Plaintiffs' treating physicians and defense counsel.[4] Moreover, this Court has recognized that situations can arise

---

[3] Tellingly, Defendants make no argument that allowing Plaintiffs' Liaison Counsel to serve the notices of deposition would be, in any way, less efficient.

[4] Moreover, Defendants' issuing of subpoenas directly to Plaintiffs' treating physicians does nothing but detract from an efficient discovery process. Plaintiffs counsel has worked hard to arrange and schedule the depositions of these treating physicians. When the treating physicians receive Defendants' (deficient) subpoena, it only undermines Plaintiffs' counsels' hard work and makes the process more complicated and disordered.

where allowing *ex parte* communication "can cause more problems than it sought to solve." [Docket No. 245, p. 2 (quoting Judge Fallon's opinion in the Vioxx MDL)]. The best way to accomplish an efficient discovery process, while still "protect[ing] the relationship between doctor and patient," *id*., is to enter an Order prohibiting Defendants from taking part in *any ex parte* communications with Plaintiffs' treating physicians – regardless of whether they seek to classify the communication as "substantive" or not – and requiring all subpoenas be served through Plaintiffs' Liaison Counsel.

**E. Alternatively, Defendants Should Be Required to Inform Treating Physicians of *Ex Parte* Order and Refrain from Any Subsequent Communications After Serving Subpoenas**

In the alternative, Plaintiffs ask that in all cover letters, notices of deposition, or any other *ex parte* communication, Defendants be required to inform treating physicians and their counsel, in writing, of the order prohibiting *ex parte* communication between Plaintiffs' treating physicians and defense counsel, and warn them of their potential liability resulting from such communications. Moreover, Plaintiff requests an Order instructing Defendants to refrain from *any ex parte* contact with Plaintiffs' treating Physicians subsequent to serving a subpoena.

**F. Plaintiffs Do Not Seek to "Ban" or Exclude Testimony – But Merely Seek a Fair Process in Which All Subpoenas to Treating Physicians are Served by Plaintiffs' Liaison Counsel.**

The cases cited by Defendants in support of their arguments, that the *ex parte* contacts they seek (to continue) to have with Plaintiffs' treating physicians are appropriate, are wholly inapplicable. In fact, all three of the cases cited in Section II of Defendants' brief deal squarely with the issue of whether a physician's testimony should be barred due to improper *ex parte* contacts with a party – Plaintiffs have never made that argument.

In *Metzger*, where plaintiff argued that defendant should be barred from taking any discovery from treating physicians with whom defense counsel had improper *ex parte* contacts, but conceded that the communications did not involve matters of substance, the court refused to bar testimony. *Metzger v. Francis W. Parker Sch.*, No. 00 C 5200, 2001 U.S. Dist. LEXIS 12492 at *7-8 (N.D. Ill. Aug. 9, 2001). Likewise, in *MacDonald*, the Court denied plaintiff's request to strike the testimony of plaintiff's treating physician due to minimal *ex parte* contacts. *MacDonald v. United States*, 767 F. Supp. 1295, 1300 (M.D. Pa. 1991)("defense counsel's *ex parte* contact was minimal and does not justify precluding [physician] from testifying as an expert."). Finally, in *Huzjak*, where the plaintiff requested that defendant be barred from taking discovery from one of plaintiff's treating physician, the court simply held that defendant was not barred from taking discovery from plaintiff's doctor prior to trial. *Huzjak v. United States*, 118 F.R.D. 61, 66 (N.D. Ohio 1987) ("a litigant may proceed with the discovery of privileged material prior to trial, subject to a protective order prohibiting the use of this material or any material derived therefrom, until such time as the privilege has actually been waived.").

In all of these cases, the court was asked to determine whether to *bar* all testimony from the doctors[5] – plaintiffs have never asked the court to take such a drastic step. In fact, Plaintiffs seek to *prevent* such a situation (and needless motion practice) from arising. Only if Defendants position is accepted by the Court, and defense counsel is permitted to attempt to walk a tight-rope of substantive/non-substantive discussions, could the parties be put in the position of arguing whether one of the treating physicians' testimony should be excluded due to improper *ex parte* communications. Simply put, the cases cited deal with an issue that has not yet arisen in this case; and if Defendants stop contacting Plaintiffs' treating physicians, it never will.

As stated in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion Seeking *Ex Parte* Contacts with Plaintiffs' Treating Physicians: "Plaintiffs [] do not dispute that, by putting their physical condition at issue, the relevant medical information in the hands of their treating physicians may be discovered." [Docket No. 171-2]. The issue is not whether discovery may be taken from Plaintiffs' treating physicians – but instead whether Defendants can continue with conduct that has already resulted in improper *ex parte* communications between Defendants and treating physicians. Plaintiffs do not seek to bar Defendants from taking discovery, but merely asks that the Court advise defense counsel that (pursuant to the prior order) their current course of conduct must cease.

The most reasonable way to accomplish Defendants' goal (to take discovery from Plaintiffs' treating physicians) and to conform to the purpose of the Court's *ex parte* order (to protect Plaintiffs' privacy interests and the physician-patient relationship) is to have all notices of deposition and other discovery served upon the treating physicians by Plaintiffs' Liaison

[5] Furthermore, in none of these cases had the defendant been specifically instructed by the court not to take part in *ex parte* communications.

Counsel. In fact, treating physician depositions are typically scheduled by Plaintiffs' counsel, and Plaintiffs' Liaison Counsel is more than willing to take on this burden in an effort to avoid any future problems.

**G. Plaintiffs Are Entitled to Know if Their Treating Physicians are Retained as Consultants or Experts by Defense Counsel**

In a few sentences at the end of their brief, Defendants make the argument that "if carried to its logical extreme, Plaintiffs' interpretation of Judge Almond's order would deny Defendants the services of their retained experts." Defs' Brief, p. 4. Moreover, during the open session status hearing held on June 17, 2008, Defendants again referenced retaining unidentified Plaintiffs' treating physicians as consultants and experts. Defendants do not explicitly state that they have retained any of Plaintiffs' treating physicians as consultants or experts. However, from their inclusion of this argument – both in their brief and before the Court – it might be inferred that Defendants have done just that, or intend to do so in the near future.

*i. Plaintiffs need to be made aware if a potential conflict of interest exists*

Plaintiffs' counsel are entitled to the names of any Plaintiffs' treating physicians who have been retained or contacted as consultants or experts for Defendants. Several courts have noted that *ex parte* interviews between defense counsel and physicians create the potential for doctors to be exposed to tort liability for breach of the patient's right to privacy or to professional discipline for unprofessional conduct. *See, e.g., Alexander v. Knight*, 177 A.2d 142, 146 (Pa. 1962) (a physician's fiduciary duties include "a duty to refuse affirmative assistance to the patient's antagonist in litigation"); *Hammonds v. Aetna Cas. & Sur. Co.*, 243 F.Supp. 793, 799 (N.D.Ohio 1965) ("during the course of [litigation], in addition to the duty of secrecy, there arises the duty of undivided loyalty."); *Miles v. Farrell*, 549 F.Supp. 82, 84 (N.D. Ill. 1982); *Perkins v. U.S.*, 877 F. Supp. 330, 333-334 (E.D. Tex. 1995); s*ee also*, *Wenninge v. Muesingr*, 240 N.W.2d 333 (Minn. 1976).

Therefore, a conflict of interest may exist and a treating physician may be breaching her fiduciary duty to a Plaintiff by acting as a paid consultant for Defendants in this litigation.[6]

*ii.* *Treating physicians acting as consultants to Defendants effectively violate the Court's* ex parte *order*

From a practical standpoint, it is impossible for a treating physician to act as a consultant for Defendants without taking part in substantive *ex parte* communications that are related to a patient's case. Even if Defendants and a treating physician talk in general terms about their experiences and techniques with the Kugel Patch, they are divulging information directly related to their patient's case. Simply because a treating physician does not use a Plaintiff's name when discussing procedures and experiences – a name that is already known by defense counsel – does not mean that the treating physician is not taking part in substantive *ex parte* discussions relating to a Plaintiff's case in violation of the Court's order. As such, in order to protect the rights of their clients, Plaintiffs' counsel is entitled to know which treating physicians are taking part in *ex parte* interviews and communications with defense counsel.

*iii.* *This information is relevant and discoverable*

The names (and the circumstances surrounding the retaining) of the treating physicians acting as consultants are relevant and discoverable by Plaintiffs, as the consulting arrangement may demonstrate bias when providing testimony in the Plaintiff's case. Any argument that Plaintiffs are not entitled to the names of these treating physicians because they are merely "consultants" and have not been retained as expert witnesses who will testify at trial is unfounded. This is not a situation where Defendants have retained industry consultants merely

---

[6] Plaintiffs do not waive the right to contest or challenge the admissibility of any treating physician's testimony at trial. Moreover, Plaintiffs do not waive any recourse they may have under state law against a treating physician for breach of fiduciary duty. However, at this point, Plaintiffs (at the very least) are entitled to know whether their physicians are being paid by Defendants to provide testimony or evidence against them, and the circumstances of the consultations.

to gather information and develop their case, but who will never provide testimony in any respect in the case. These treating physicians *will* be fact witnesses in this litigation, and their biases are directly relevant and discoverable.

*iv.* *Plaintiffs' treating physicians acting as consultants compromises the Court's* ex parte *order and must be disclosed*

Indeed, if Defendants are allowed to pursue this course of conduct, theoretically, nothing prevents them from retaining the entire population of Plaintiffs' treating physicians as "consultants," conducting *ex parte* interviews with them, and potentially hiring and paying them as Defendants' expert witnesses. This tactic would destroy both the Plaintiffs' rights as patients, entitling them to place their trust in their doctors, as well as the rights of Plaintiffs to a fair trial of their claims against wrongdoers.

Finally, if Defendants have retained Plaintiffs' treating physicians as experts to assist in their defense of the litigation, any *ex parte* communications with those treating physicians by Plaintiffs' counsel could be prohibited, and could theoretically subject Plaintiffs' counsel to disciplinary action. Such a result is contrary to reason and this Court's prior order. However, for this reason alone, it is necessary for Plaintiffs' counsel to be provided with the identities of the treating physicians who are acting as consultants for Defendants.

For these reasons, Plaintiffs request that the Court require Defendants to provide Plaintiffs with the name of each one of Plaintiffs' treating physicians who has consulted with defense counsel; the date of each initial consultation; and a list of all documents that the treating physicians provided to Defendants (or where otherwise exchanged between the treating physician and Defendants) and when those documents were exchanged or produced.

## III. CONCLUSION

The purpose of the Court's order prohibiting *ex parte* communications between defense counsel and Plaintiffs' treating physicians was to prevent the very circumstances from arising where "unintended consequences" result in the disclosure of protected information. [Docket No. 245, p. 2 (quoting Judge Fallon's opinion in the Vioxx MDL)]. The only way "to protect the relationship between the doctor and patient" is to prevent Defendants from, in effect, soliciting contact from the treating physicians and their counsel. *Id.* This can only be accomplished by affirming the prohibiting of *all ex parte* communication between defense counsel and Plaintiffs' treating physicians and requiring that Defense counsel serve their subpoenas on treating physicians through Plaintiffs' Liaison Counsel.

DATED: June 20, 2008

Respectfully submitted,

/s/ Donald A. Migliori_

Donald A. Migliori (#4936)
Vincent L. Green (#5971)
Leah J. Donaldson (#7711)
MOTLEY RICE LLC
321 South Main Street
Suite 200
Providence, RI 02903
401-457-7700
401-457-7708 FAX

Ernest Cory
Jon C. Conlin
Stephen R. Hunt, Jr.
CORY WATSON CROWDER & DEGARS P.C.
2131 Magnolia Ave.
Birmingham, AL 35209
205-328-2200
205-326-7896 Fax

Teresa C. Toriseva
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
55 Monroe Street, Suite 3300
Chicago, Illinois 60603
312-346-2222
312-346-0022 FAX

Fred Thompson, III
Rhett D. Klok
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

**CERTIFICATE OF SERVICE**

I, Donald A. Migliori, hereby certify that a copy of the foregoing Plaintiff's ***Response in Opposition to Defendants' Motion Seeking Clarification of Order Prohibiting Ex Parte Contacts with Plaintiffs' Treating Physicians*** was electronically filed. Those attorneys who are registered with the Electronic Filing System may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's Electronic Filing System.

Dated: June 20, 2008

/s/ Donald A. Migliori
Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
Suite 200
Providence, RI 02903
401-457-7700
401-457-7708 FAX