**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § § § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | § § § § | **Chief Judge Mary M. Lisi** |

**DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION SEEKING CLARIFICATION OF ORDER PROHIBITING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS**

Defendants filed their motion seeking clarification of the Court's *ex parte* contacts order after being surprised by Plaintiffs' counsel's interpretation of the order – which plainly bars "substantive *ex parte* contacts" with treating physicians – as also precluding the issuance of ordinary discovery papers such as notices of deposition and subpoenas. Defendants also sought to ensure, in the light of Plaintiffs' extreme interpretation of the order, that their communications with consulting experts regarding general causation issues would not be later challenged as violating the *ex parte* order. Plaintiffs' opposition mischaracterizes the issues before the Court in important ways.

With regard to the first matter, the issue before the Court is not how treating physician depositions have been scheduled to date (the Plaintiffs' Steering Committee can and should continue to schedule the depositions),[1] nor with whether notices of deposition issued by the Defendants are technically correct or not, but *whether the Defendants are entitled to issue*

[1] The intent of the instant motion to clarify the scope of the Court's *ex parte* order is not, as Plaintiffs argue, to allow Defendants "to contact Plaintiffs' treating physicians in order to schedule depositions." (Pls.' Resp. at 2.) The Plaintiffs' Steering Committee may continue to schedule such depositions. Defendants filed their motion because of Plaintiffs' position that Defendants were absolutely barred from transmitting routine papers associated with depositions (such as notices of deposition and subpoenas) to treating physicians.

*deposition notices and subpoenas* to treating physicians at all once deposition dates have been arranged by Plaintiffs. On that issue, Plaintiffs have identified no authority justifying their extraordinary position, and Defendants' right to do so – exercised here following Plaintiffs' repeated failure to provide Defendants' notices to physicians in a timely fashion – is clear.

With regard to the retention of consulting experts, Plaintiffs' position would effectively debar Defendants from retaining any qualified expert whatsoever, and it would severely hamper Defendants' ability to defend this litigation in violation of their due process rights. Plaintiffs argue that Defendants' retention of any expert who has treated a plaintiff automatically violates the plaintiffs' rights as well as the *ex parte* order. Since Defendants do not discuss plaintiff-specific information with any expert who is also a treating physician of that plaintiff, Plaintiffs' entire argument on this issue misses the target.

To preserve the fair and efficient administration of these proceedings, and to preserve Defendants' due process rights, the Court should clarify its prior order holding that Defendants could not engage in "substantive *ex parte* contacts" regardless of the law of the applicable state to make clear that Defendants may (1) issue notices of deposition and subpoenas to treating physicians, and (2) retain and communicate with consulting experts even if they have treated a plaintiff in Composix® Kugel® Patch litigation.

Defendants request oral argument on their motion, and believe that one hour will suffice for both sides to be heard.

## ARGUMENT

### I. Plaintiffs Still Do Not Provide A Single Authority In Support Of Their Broad Interpretation Of The *Ex Parte* Order.

Defendants' motion challenged Plaintiffs to set forth a single authority in support of their view that the Court's *ex parte* order barred *all* communications with treating physicians, and not

all substantive communications about a plaintiffs' care and treatment. Plaintiffs have utterly failed to do so, and their attempts to distinguish the cases cited by Defendants as "wholly inapplicable" (Pls.' Resp. at 9) fails a reading of the cases themselves. Each of the cases cited by Defendants demonstrates that a ban on *ex parte* contacts generally applies only to *substantive* communications that infringe the doctor-patient relationship. *Cf.* Magistrate Almond's Mem. & Order, Jan. 22, 2008 [Doc. 245] at 1 (denying Defendants' request "to engage in *substantive ex parte* contacts with [Plaintiffs'] past and/or present treating physicians" (emphasis added)).

## II. Plaintiffs' Opposition Is Premised Upon Unfounded Speculation About The Consequences Of Permitting Deposition Notices And Subpoenas From Being Issued to Physicians By Defendants.

Plaintiffs' request for a wholesale ban on even the issuance of notices of deposition and subpoenas rests on nothing but a chain of speculation about what *might* happen *if* a physician were to contact Defendants in response to a standard notice of deposition issued by counsel for Defendants. Were that to happen – and it has not happened[2] – Defendants would simply refuse to communicate with the doctor about the plaintiffs' care and treatment in any way.

## III. Defendants' Deposition Notices, Issued Directly To Treating Physicians, Aid The Orderly And Efficient Administration Of Discovery.

Plaintiffs are wrong when they argue that Defendants' actions "do[ ] nothing but detract from an efficient discovery process." (Pls.' Resp. at 7 n.4.) To the contrary, Defendants' notices

[2] Plaintiffs say that it has happened, but the incident they allude to does not bear them out. On a single occasion, after receiving Defendants' notice of deposition, an *attorney* for one treating physician contacted Spriggs & Hollingsworth to discuss scheduling concerns and ask for copies of some medical records that had been produced in the litigation. As a courtesy, Defendants agreed to delay the deposition date and provided the attorney with a copy of the requested records. Plaintiffs repeatedly characterize this event as an improper *ex parte* contact, but that is far from the case. (*See* Pls.' Resp. at 5 ("Plaintiffs are already aware of at least one instance where a . . . treating physician has engaged in a letter writing exchange with defense counsel.").) Defendants never had any contact with the physician, and the brief exchange with the attorney did not solicit any confidential information about the plaintiff, nor was it designed to do so. Defendants simply accommodated the attorney's requests in order to facilitate discovery in the case.

are meant to secure discovery in the most efficient way possible, and they undoubtedly forward that goal. The deposition of Dr. William Daniel is a case in point. Prior to Dr. Daniel's deposition, Defendants issued the simple notice attached as Exhibit 1 to the memorandum [Doc. 1111-2] supporting their original motion. Having received the notice, Dr. Daniel appeared at the deposition fully prepared, bringing with him the requested documents.

> Q. . . . . I've marked as Exhibit Number 1 a short letter that I sent to your office just the other day. It's dated May 13th, 2008, and it actually attaches a copy of the notice of deposition --
> A. Yes.
> Q. -- for this deposition.
> [WHEREUPON, document referred to is marked Exhibit 1 for identification.]
> BY MR. JUNK:
> Q. Did you receive this letter?
> A. I did. I believe I have it here with the notice of deposition, yes, sir.
> Q. Okay. Great. I'm going to hang on to this copy. Do you --
> A. Go ahead.
> Q. -- happen to have the notice with you there?
> A. I do.
> Q. Could you take a look at that? Attached to it on the second page it's called Attachment A --
> A. M-hm.
> Q. -- and it requests you to bring certain documents. And some of them are rather broad requests. There you go.
> A. M-hm.
> Q. The first one is fairly specific. It asks you to bring a CV or a resume; did you happen to bring one of those?
> A. Yes, sir.
>
> *        *        *
>
> Q. Doctor, did you bring any other documents in response to what's requested in Attachment A?
> A. I did. I brought my records regarding Mr. Collins.
> Q. Okay. And it looks to me like you've got about a half inch stack of records there?
> A. Yes, sir.

(Dep. of Dr. William Daniel, May 15, 2008 at 7:16-9:15.) The deposition thus proceeded in an orderly fashion.[3]

Plaintiffs' compromise proposal that "all notices of deposition and other discovery served upon the treating physicians [be served] by Plaintiffs' Liaison Counsel" (Pls.' Resp. at 10) offers no solution. Defendants began sending notices of deposition directly to physicians only after it became apparent that Plaintiffs were not doing so in a timely manner, if at all. In fact, the notice sent to Dr. Daniel (mentioned above) was the first issued by Defendants, followed quickly by several notices prepared in advance of other upcoming depositions. Upon receiving courtesy copies of these notices, Plaintiffs immediately accused Defendants of engaging in improper *ex parte* contacts for having delivered the deposition notices themselves (contemporaneously copying Plaintiffs' counsel). Even after this, however, Plaintiffs continued to fail to deliver Defendants' deposition notices and requests for documents, as later deposition testimony shows. *See* Defs.' Mem. in Support of Mot. [Doc. 1111-2] at 3 n.3, Ex. 2 (deposition excerpts before and after Defendants' issuance of notices of deposition demonstrating failure of Plaintiffs to timely transmit deposition notices). Thus, past experience has already proven unworkable Plaintiffs' position that only they should communicate with doctors. Nor, of course, could Plaintiffs issue on Defendants' behalf Rule 45 subpoenas, as Defendants are entitled to do.

## IV. Plaintiffs Must Not Be Allowed To Wield The *Ex Parte* Order To Debar Defendants From Retaining Experts And Defending These Cases.

As anticipated by Defendants' Motion, Plaintiffs now seek to thwart Defendants' efforts to retain consulting and testifying experts. Plaintiffs seem to suggest that it is a *per se* violation

[3] Plaintiffs criticize Defendants for sending a "deficient" request for documents upon Dr. Daniel because the notice on that occasion was not accompanied by a formal subpoena. (*See* Pls.' Resp. at 2-3.) This criticism is beside the point, given that Plaintiffs' stance on *ex parte* contacts makes it clear they would oppose Defendants' attempt to transmit a subpoena properly issued under Rule 45 as well.

of the Court's *ex parte* contacts order for any treating physician to act as a consulting expert for Defendants. (*See* Pls.' Resp. at 12, 13.) If they are correct, then the *ex parte* order eviscerates Defendants' fundamental due process rights, including the right to identify and call witnesses vital to the defense of these cases. *See, e.g., In re Oliver*, 333 U.S. 257, 275 (1948) ("[D]ue process of law . . . requires that one . . . be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation."); *cf. Lee v. Winston*, 717 F.2d 888, 898 (4th Cir. 1983) ( finding violation of due process where party was denied time to adequately prepare its case, stating that "[t]o deny [a party] the right to consult with and present suitable independent expert witnesses deprived him of a fundamental resource for adequate representation in the adversarial proceeding he faced").

Finding consulting experts who have not treated one or more plaintiffs is not a viable option. There are nearly 1,800 cases on file to date, with more filed every week in either the MDL or state courts around the country. Excluding the thousands of potential claimants in Plaintiffs' purported class action (a nationwide class purporting to include everyone who received a Composix® Kugel® Patch who has not suffered injury sufficient to bring a personal injury lawsuit), the current case count includes personal injury claims brought on behalf of approximately 2,000 patients – representing approximately 1 out of every 50 persons in the United States who ever received a Composix® Kugel® Patch.[4] It is almost inevitable that any surgeon with a substantial hernia repair practice – *i.e.*, any surgeon whose expertise recommends them as a potential consulting expert witness – will have one or more patients who have actually

[4] Plaintiffs and Defendants have both represented to the Court during tutorial and other hearing sessions that the evidence suggests that approximately 100,000 patients received Composix® Kugel® Patches.

filed a lawsuit, much less one or more patients who may do so in the future. A blanket bar on speaking to such physicians because doing so could theoretically lead to the disclosure of patient confidences – despite Defendants' instructions to its surgeon consultants *not* to disclose such information – would effectively take all viable consulting expert candidates off the table and tie Defendants' hands in the defense of this litigation.

Such an interpretation of a ban on substantive *ex parte* contacts would be utterly untenable, and it would deny Defendants their due process rights. Overruling arguments nearly identical to those urged by Plaintiffs here, the federal magistrate judge in *In re Seroquel Products Liability Litigation* held that a "[defendant] will not be prohibited from retaining a physician as an expert witness who is identified on a Plaintiff's Fact Sheet or otherwise as being a treater for a plaintiff in this litigation," because to enforce such a "prohibition on [defendant's] contacting and retaining physicians has the potential to deprive [defendant] of a fair opportunity to present its defense"). *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 821889, at *4 (M.D. Fla. Mar. 21, 2008). A similar order explicitly acknowledging Defendants' rights to retain and consult with experts even if they have treated plaintiffs in this litigation is particularly important in this case given that Plaintiffs have now threatened Defendants' consulting physicians with possible lawsuits and disciplinary action for merely speaking to the Defendants about their general expertise regarding hernia repair, the Composix® Kugel® Patch, and other non-patient-specific issues. *See* Pls.' Resp. at 12 n.6 (warning that Plaintiffs *reserve the right to file suit* against consulting physicians who allegedly breach fiduciary duties to patients/plaintiffs). The Court must reject Plaintiffs' threat for what it is: an attempt to chill Defendants' right to defend these cases.

In any event, there will be no clash between particular plaintiffs and their treating physicians in particular cases, because Defendants *will not* retain a treating physician to consult or testify concerning the specific medical facts of a case in which they were a treating physician. It would be meaningless to do so because Defendants could not engage in the patient-specific discussion and analysis required of an expert without violating the Court's *ex parte* contacts order. As a further safeguard, Defendants inform physician-consultants at each initial visit that, for a number of reasons, the physicians should not reveal the names or discuss the care and treatment of a specific patient. Under these guidelines, physician-consultants can easily reflect upon their medical training and experience and provide valuable opinions and information untethered to a particular patient.[5] Given these circumstances, there is nothing improper about Defendants' conduct with its consulting experts, as a number of courts have confirmed. *See In re Seroquel*, 2008 WL 821889, at *4 (rejecting identical arguments raised here to allow retention of treating physicians as consulting experts, citing decisions allowing retention of treating-physician-consultants in *In re Prempro Prods. Liab. Litig*., MDL No. 4:03-CV-1507 (E.D. Ark. Dec. 7, 2005), and *In re AMS Litig*., No. 87-11183 (Minn. Dist. Ct. May 8, 1998)).

## V. The *Ex Parte* Contacts Order Does Not Open The Door To Information Otherwise Shielded From Discovery.

Although Plaintiffs proclaim an entitlement to the identities of Defendants' consulting experts, they cannot cite a single instance where a court has granted similar relief. To Defendants' knowledge, no court has done so. And Rule 26 of the Federal Rules of Civil

[5] Plaintiffs flatly assert that "it is impossible for a treating physician to act as a consultant for Defendants without taking part in substantive *ex parte* communications that are related to a patient's case." (Pls.' Resp. at 12.) If that were true, then HIPAA would prevent every physician from acting as an expert witness, irrespective of any court-ordered bar on *ex parte* contacts. *See generally* 42 U.S.C. § 1320d–6 ("Wrongful disclosure of individually identifiable health information"). Of course Plaintiffs' statement is far from true. For but one example, doctors and surgeons can provide general-causation testimony that has nothing to do with a particular patient or plaintiff.

Procedure and the cases following it dictate that Plaintiffs are *not* entitled to discover the identities of Defendants' consulting experts. *See* Fed. R. Civ. P. 26(b)(4) (permitting discovery of testifying experts); *Ager v. Stormont Hosp. and Training School for Nurses*, 622 F.2d 496, 503 (10th Cir.1980) (holding that identity of consulting expert is not discoverable absent exceptional circumstances); *Brown v. Ringstad*, 142 F.R.D. 461, 464 (S.D. Iowa 1992) (same); *see also Kuster v. Harner*, 109 F.R.D. 372, 374 (D. Minn. 1986) ("[I]t is clear that the view expressed in *Ager* has become the prevailing one in the years since *Ager* was decided.").

Plaintiffs try to sidestep this prohibition, arguing that Defendants must disclose their consulting experts so Plaintiffs can identify (1) a potential conflict of interest between the physician and patient (*see* Pls.' Resp. at 11-12), or (2) "bias when [the physician is] providing testimony in the [p]laintiff's case." (Pls.' Resp. at 12.) Since Defendants will *not* retain any physician to testify or to consult concerning case-specific matters in a case involving his or her own patient, these arguments are irrelevant. Any supposed bias on the part of the physician – who would be only a fact witness in any deposition regarding a plaintiff whom they treated – could be explored at the witness' deposition without provision of a list of Defendants' consultants in contravention of Rule 26.

Defendants should not be required to publish a list of their retained consulting experts. Plaintiffs are under no reciprocal obligation. And the fact that Defendants will not engage any expert to consult or testify regarding case-specific issues in a case in which they were a treating physician nullifies Plaintiffs' basis to request an across-the-board disclosure of all consulting experts who have not been – and may never be – disclosed in this litigation.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' original motion, the Court should clarify its prior *ex parte* contacts order to allow Defendants to issue notices of deposition and subpoenas to treating physicians.

Dated: June 25, 2008

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

s/ Kirby T. Griffis
Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J. Cople, III
1350 I Street NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendant C.R. Bard, Inc. and Defendant Davol Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2008, the foregoing DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC'S REPLY MEMORANDUM IN SUPPORT OF MOTION SEEKING CLARIFICATION OF ORDER PROHIBITING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS was electronically filed with the clerk of court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon the Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
Motley Rice LLC
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
Fax: (401) 457-7708
Email: dmigliori@motleyrice.com
*via electronic mail*

s/ Kirby T. Griffis