# Exhibit A

Ramon R. Lopez, Bar No. 86361
Christina Anne Fountain, Bar No. 111220
Troy A. Brenes, Bar No. 249776
**LOPEZ McHUGH LLP**
100 Bayview Circle,
Suite 5600, North Tower
Newport Beach, CA 92660
Telephone: (949) 737-1501
Facsimile: (949) 737-1504
rlopez@lopeamchugh.com
cfountain@lopezmchugh.com
tbrenes@lopezmchugh.com

Attorneys for Plaintiffs
LARRY PALMER and LORETTA PALMER

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 25 2008

ALAN SLATER, Clerk of the Court

BY: R. LUCEY, DEPUTY

**SUPERIOR COURT OF CALIFORNIA**

**FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

| | |
|---|---|
| LARRY PALMER, an individual, and LORETTA PALMER, an individual, and as husband and wife,<br><br>*Plaintiff,*<br><br>vs.<br><br>DAVOL, INC., a corporation, BARD DEVICES, INC., a corporation, and C.R. BARD, Inc., a corporation, COLLEEN L. COLEMAN, M.D., an individual, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, a corporation, and DOES 1 through 300, inclusive,<br><br>*Defendants.* | Case No. ~~30-2007-001114-CU-PO-CJC~~ 00100114<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:**<br><br>**1. NEGLIGENCE**<br>**2. STRICT PRODUCTS LIABILITY- FAILURE TO WARN**<br>**3. STRICT PRODUCTS LIABILITY – DESIGN DEFECT**<br>**4. STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**<br>**5. BREACH OF EXPRESS WARRANTY**<br>**6. BREACH OF IMPLIED WARRANTY**<br>**7. DECEIT BY CONCEALMENT**<br>**8. DECEIT BY INTENTIONAL MISREPRESENTATION**<br>**9. FRAUD AND DECEIT**<br>**10. NEGLIGENT MISREPRESENTATION**<br>**11. VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17200, ET SEQ.**<br>**12. VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§17500**<br>**13. VIOLATION OF *CIVIL CODE* §§ 1750 ET SEQ.**<br>**14. MEDICAL NEGLIGENCE**<br>**15. LOSS OF CONSORTIUM**<br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, LARRY PALMER and LORETTA PALMER, individually and as husband and wife, make the following allegations against Defendants DAVOL, INC, BARD DEVICES, INC., and C.R. BARD, INC., COLLEEN L. COLEMAN, M.D., an individual, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, a corporation, and DOES 1 through 300, inclusive.

**NATURE OF THE CASE**

1. Plaintiff LARRY PALMER suffered serious and potentially life threatening injuries resulting from his implantation with a defective and unreasonably dangerous product known as the Bard® Composix® Kugel® Mesh Hernia Patch, and from the negligent medical care he received during that surgery.

**PARTIES**

**Plaintiffs**

2. Plaintiff LARRY PALMER is, and at all times relevant was, a citizen and resident of the city of Norco, county of Riverside, state of California. Plaintiff brings this action against Defendants for the personal injuries he suffered as a result of being implanted with the Kugel Patch, and as a result of receiving negligent medical care. Plaintiff believes and alleges that the Patch is and was designed, manufactured, fabricated, marketed, tested for safety, advertised, distributed, labeled, and sold by Defendants identified in this Complaint.

3. Plaintiff LORETTA PALMER is an individual and at all times relevant is and was a citizen of California residing in Riverside County, California. Plaintiffs LORETTA PALMER and LARRY PALMER were and are, at all times relevant to this action, legally married as husband and wife. LORETTA PALMER brings this action for, *inter alia*, the loss of consortium, comfort, and society she has suffered due to the personal injuries suffered by her husband LARRY PALMER.

**Defendants**

4. Upon information and belief, Defendant DAVOL, INC. (hereinafter "DAVOL") is, and at all times relevant to this action was a wholly owned subsidiary of BARD DEVICES, INC, which is a wholly owned subsidiary of C.R. BARD, INC. At all times relevant times, Davol is and was a corporation duly organized and existing under the laws of the state of Delaware, with its principal place

of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920. DAVOL, at all times relevant to this action, through its officers, directors, agents, servants, employees, and representatives, designed, manufactured, tested, analyzed, distributed, recommended, merchandized, advertised, promoted, supplied and sold to distributors, physicians, hospitals, and medical practitioners, the Kugel® Patch to be surgically implanted in patients throughout the United States, including the state of California.

5. Defendant BARD DEVICES, INC. is, and at all times relevant was, a wholly owned subsidiary of C.R. BARD, INC., and is the corporate parent/stockholder of DAVOL. BARD DEVICES is a corporation duly organized and existing under the laws of the state of Delaware. BARD DEVICES, through the officers, directors, agents, servants, employees, and representatives of its subsidiary, DAVOL, at all times relevant to this action, designed, manufactured, fabricated tested, marketed, advertised, promoted, distributed and sold to distributors, physicians, hospitals, and medical practitioners, the Kugel® Patch to be surgically implanted in patients throughout the United States, including the state of California.

6. C.R. BARD, INC. is the corporate parent/stockholder of DAVOL and BARD DEVICES. C.R. BARD is a corporation duly organized and existing under the laws of the state of Delaware. C.R. BARD, through its and its subsidiary officers, directors, agents, servants, employees, and representatives, at all times relevant, designed, manufactured, tested, fabricated, marketed, advertised, promoted, distributed, and sold to distributors, physicians, hospitals, and medical practitioners, the Kugel® Patch to be surgically implanted in patients throughout the United States, including the state of California.

7. Defendant, COLLEEN L. COLEMAN, M.D., is a general surgeon with her principal place of business at 1401 Avocado Avenue, Suite 303, Newport Beach California. Defendant, COLLEEN L. COLEMAN, M.D., is licensed to perform surgery, treatment and care and prescribe medications in the state of California. COLLEEN L. COLEMAN, M.D., performed the ventral incisional hernia repair surgery on October 29, 2003, in which a Kugel® Patch was implanted into Plaintiff LARRY PALMER.

8. Defendant, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, a corporation, is a corporation with its principal place of business at One Hoag Drive, Newport Beach California. Defendant, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, is a licensed healthcare provider, licensed in the state of California to perform surgeries, administer care and treatment, and prepare, distribute, combine, formulate, and administer medications to Plaintiff, LARRY PALMER, by way of medical procedure and prescription. Defendant, HOAG MEMORIAL HOSPITAL PRESBYTERIAN, through its officers, directors, agents, servants, employees, and representatives performed the ventral incisional hernia repair surgery on October 29, 2003, in which a Kugel® Patch was implanted into Plaintiff LARRY PALMER.

9. The true names and capacities, whether individual, corporate, associate or otherwise, of other certain developers, formulators, manufacturers, validators, advertisers, promoters, distributors, and/or sellers and/or their alter egos are sued herein as DOES 1 through 150, inclusive, in that the identity of said defendants are presently unknown to Plaintiffs who therefore sue these Defendants by said fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to show the true names and capacities of said DOE defendants when their identities have been ascertained.

10. Plaintiffs are informed and believe, and thereupon allege, that Defendants DOES 1 through 150 were authorized to and did, conduct business in the County of Newport and/or the State of California. Plaintiffs are further informed and believe, and thereupon allege, that Defendants DOES 1 through 150 were and/or are, in some way or manner, responsible for and liable to Plaintiffs for the events, happenings, and damages alleged in this Complaint.

11. The true names and capacities, whether individual, corporate, associate or otherwise, of other certain hospitals, doctors, nurses, or other healthcare providers sued herein as DOES 151 through 300, inclusive, in that the identity of said Defendants are presently unknown to Plaintiffs, who therefore sue these Defendants by said fictitious names. Plaintiffs will seek leave of Court to amend this Complaint, to show the true names and capacities of said DOE Defendants when their identities have been ascertained. Plaintiffs are informed and believe, and thereupon allege, that Defendants DOES 151 through 300 were licensed healthcare providers, licensed to practice medicine in the State of California. Plaintiffs are further informed and believe, and thereupon allege, that Defendants DOES 151 through

300 were and/or are, in some way or manner, responsible for and liable to Plaintiffs for the events, happenings, and damages alleged in this Complaint.

12. Defendants COLLEEN L. COLEMAN, M.D., HOAG MEMORIAL HOSPITAL PRESBYTERIAN, and DOES 151 through 300 are healthcare providers.

13. Plaintiffs are informed and believe, and thereupon allege, that at all times relevant to this action, each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, predecessor in-interest, alter ego, joint venturer, and/or other representative of each of the remaining Defendants and was acting in such capacity in undertaking the acts, conduct, and omissions alleged in this Complaint.

14. Plaintiffs allege that the corporate form of Defendants, including Does 1 through 300, was a sham and should be disregarded because there exists and, at all times herein mentioned, there existed a unity of interest in ownership between and among these Defendants such that any individuality and separateness between theses Defendants has ceased and/or never existed; in that these Defendants, and each of them are the alter-egos of one another and exerted direction and control over each other. Adherence to the fiction of a separate and independent existence of Defendants, as separate entities distinct from one another will permit an abuse of the corporate privilege, sanction a fraud upon plaintiff and other recipients of the Kugel® Patch, and promote injustice. Defendants, and each of them, encouraged, directed, condoned and ratified the negligent, willful, intentional, and wrongful acts, omissions, and conduct of each and all Defendants.

15. The following facts regarding the operations of the corporate Defendants support disregard of the corporate fiction: (1) corporate formalities for all of the wholly-owned subsidiaries were ignored and were not observed; (2) property was not kept separate and apart between the parent corporations and the wholly-owned subsidiaries; (3) direct deposits were made into bank accounts of subsidiaries which were controlled by the parent corporation and consolidated into the parent's deposit accounts; (4) the parent corporation at all times maintained 100% financial interest in all subsidiaries and maintained control over the subsidiaries on an operational basis both by appointing the chief operation officer of each subsidiary and by top down management; (5) the subsidiaries are used or established for the business purposes of the parent, and are the means by which the parent corporation

conducted its business; and (6) the subsidiary facilities were not reasonably capitalized in light of the nature and risk of their business.

16. Additionally, Plaintiffs allege that at all relevant times, the corporate Defendants have operated as a single business enterprise to achieve a common business purpose. Parent corporations and any wholly-owned subsidiaries were not operated as separate and individual entities, but rather integrated and commingled their resources to achieve a common business purpose and conducted their operations as follows: (1) a single and common board of directors and the same members existed between the parent and subsidiaries; (2) the same centralized and consolidated accounting and financial reporting was used by both the parent and the subsidiaries for both internal purposes and external purposes such as for the Internal Revenue Services and annual financial reports; (3) parent corporations paid the wages of all employees, agents, and representatives of the subsidiary corporation; (4) common business names are and were used by the parent and subsidiaries and the parent corporations' capital and credit lines are and were used to fund and operate the subsidiaries.

17. All of the subsidiaries of Defendant parent corporations were established simply as shells, instrumentalities, and conduits through which the parent conducted its business, and therefore, the corporate fiction must be disregarded to prevent fraud or injustice. Each constituent corporation may be held liable for the obligations incurred by the other component entities since these Defendants operated as a single business enterprise to achieve a common business purpose.

18. The Defendant parent corporations have intentionally operated all subsidiaries in a manner that left the subsidiaries without assets sufficient to satisfy the claims of the plaintiff and other claimants by taking complete control and possession of the subsidiaries' revenues and receivables. All monies received as proceeds in the sales of products by the subsidiary corporations were maintained and received by the defendant parent corporations to fund their own operations and were not maintained at the subsidiary level.

19. At all times herein mentioned the Defendants, and each of them, were engaged in the business of or were successors in interest to, entities engaged in the business of researching, designing, manufacturing, fabricating, inspecting, distributing, marketing, labeling, promoting, packaging, and/or

advertising for sale, and selling the Kugel® Patch, which was implanted into Plaintiff LARRY PALMER.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over all causes of action alleged in this Complaint pursuant to the California Constitution, Article VI, § 10.

21. Venue is proper in this Court, pursuant to *Code of Civil Procedure* § 395, as Defendants COLLEEN L. COLEMAN, M.D., and HOAG MEMORIAL HOSPITAL PRESBYTERIAN have their principal places of business in the city of Newport, county of Orange, state of California.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

22. Plaintiff LARRY PALMER suffered serious and potentially life threatening injuries resulting from his surgical implantation with a defective and unreasonably dangerous product known as the Bard® Composix® Kugel® Mesh Hernia Patch, and from the negligent medical care he received during that surgery.

23. On October 29, 2003, Plaintiff LARRY PALMER underwent a ventral incisional hernia repair procedure at HOAG MEMORIAL HOSPITAL PRESBYTERIAN, during which a Bard® Composix® Kugel® Hernia Patch was implanted into his abdomen. Defendants COLLEEN L. COLEMAN, M.D., HOAG MEMORIAL HOSPITAL PRESBYTERIAN, and DOES 151 through 300, inclusive, and each of them, performed the procedure.

24. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, through their officers, directors, agents, servants, employees, representatives, and/or parent or subsidiary corporations, designed, manufactured, fabricated, tested, distributed, marketed, advertised, sold, and distributed, and placed into the stream of commerce the above-mentioned Kugel® Patch. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, designed, manufactured, fabricated, tested, distributed, recommended, advertised, promoted, supplied, sold, and placed the Kugel® Patch into the stream of commerce to be used by surgeons for

hernia repair surgeries and was further represented by same to be an appropriate, safe, suitable product for such purposes.

25. The Kugel® Patch is a prosthetic device used primarily to repair ventral and inguinal hernias. The Patch is composed of two sides. One side is constructed of a double layer of *monofilament polypropylene* (mesh). This double layer creates a positioning pocket, in which a *polymer "memory recoil ring"* is placed. On the other side is a barrier of expanded polytetrafluoroethylene (ePTFE). The memory recoil ring allows the Patch to swing open and maintain its shape during placement.

26. In October 2000, Defendants, C.R. BARD and BARD DEVICES through their DAVOL subsidiary submitted a 510(k) notification of intent to market the Kugel® Patch. The Federal Drug Administration (hereinafter the "FDA") approved the Kugel® Patch for marketing as a Class II medical device in January 2001.

27. Immediately after the Kugel® Patch was placed on the market, Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, became aware and obtained knowledge that said product was defective and causing serious injury to those persons in whom it had been implanted. Said Defendants knowingly, willfully, and intentionally concealed and/or misrepresented their knowledge of the defective and unreasonably dangerous condition of the Kugel® Patch from Plaintiff, the healthcare industry, and other American consumers.

28. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, were required to conduct post market surveys as part of the device validation process. On or about January 2006, the FDA inspected a Kugel® Patch manufacturing facility belonging to Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them. This inspection resulted in the FDA issuing an Establishment Inspection Report ("EIR") in 2006. The 2006 EIR found that the post market survey validation process of the device was incomplete and failed to include all data from physicians surveyed during this time, including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of physician surveyors were actively concealed by Defendants from Plaintiff, the healthcare community, and other American consumers.

29. No later than September 2004, Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, became aware and obtained knowledge of serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the manufacturing plant, said Defendants found the corrective measures to be ineffective and the process still not in control. These Defendants were aware that these weld issues had existed from the time the Kugel® Patch was placed on the market and all current sizes and lots suffered from this dangerous defect. This information was intentionally withheld at this time from Plaintiff, the healthcare community, the FDA, and other American consumers.

30. According to the 2006 EIR, DAVOL corporate executives informed the FDA that the spring and summer period of 2005 showed a marked increase in the number of adverse event complaints regarding the Kugel® Patch and the memory recoil ring. In fact, FDA records indicate that as of August 2005, Defendants had received at least the following adverse event reports: 17 instances of ring breaks, at least one of which resulted in death; two unexplained bowel perforations; four ring breaks during implant procedures; five cases of device deformity; and eight instances of bowel adhesions to the Patch. Notwithstanding their knowledge of increasing complaints and complications associated with the Kugel® Patch, Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to cease distribution or notify American consumers of the severity of complications associated with the unreasonably dangerous and defective Kugel® Patch until December 2005.

31. Even then, Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, limited the December 2005 distribution hold and recall to "Extra Large" sized Kugel® Patches, despite being aware of substantial numbers of similar serious adverse events associated with nonrecalled Kugel® Patch sizes; and that all Kugel® Patch sizes were manufactured, designed, fabricated, marketed, advertised, and intended for use in a similar fashion, and therefore, subject to the same above-mentioned health risks and defects, as the recalled Kugel® Patch sizes. Defendants, further, admittedly violated federal law by not timely notifying the FDA of the December 2005 recall.

32. The FDA classified the December 2005 recall as a Class 1 recall. Class I recalls are the most serious type of recalls and involve situations in which the FDA believes there is a reasonable probability that use of the product will cause serious injury or death.

33. The basis for the recall is that the memory recoil ring that opens the Kugel® Patch can break under stress or pressure, including the stress of implantation. The Kugel® Patch is also known to become deformed and migrate within the body. These defects are known to cause severe injuries including, *inter alia*, perforation of the bowel, ring migration through the abdominal wall, abnormal chronic enteric fistulae, infection, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, and adhesions between the bowel and the Patch. The following conditions are symptomatic of the injuries herein mentioned: fever, unexplained or persistent abdominal tenderness, vomiting, abnormal bowel movements, tenderness at implant site, abdominal distention, or other unusual symptoms.

34. As previously mentioned, the FDA conducted investigations of a Cranston, Rhode Island, Kugel® Patch manufacturing facility owned, managed, and operated by Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them. The subsequently issued 2006 EIR, determined, among other things, that said Defendants:

a. had excluded memory recoil ring failure events their complication database, reports, and recall notices, which should have been included;

b. misidentified numerous Kugel® Patch complication events;

c. failed to apply product quality hold and release procedures on a timely basis;

d. failed to properly follow procedures for conducting design validation review;

e. failed to identify all actions necessary to correct and prevent recurrence of further ring break and Kugel® Patch complications; specifically, Defendant failed to provide justification for including only Extra Large Kugel® Patch sizes in the December 2005 recall;

f. failed to provide all reasonably known information regarding numerous Kugel® Patch complaints, specifically noting that company officials had "understated" in several reports to the FDA the potential severity of device-related injuries,

including three reports involving injuries and one report involving a possible device-related death;

g. failed to perform strength testing on memory recoil rings for all sizes of Kugel® Patches before putting them into the stream of commerce;

h. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for memory recoil ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data, actual complaints, and electronic databases.

35. On March 24, 2006, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, expanded the recall to include the following Kugel® Patches: 1) "Oval" Patches, 2) "Large Circle" Patches, and 3) "Large Oval" Patches.

36. On January 10, 2007, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, each of them, expanded the recall for the second time, to include further production lots of the defective and unreasonably dangerous Kugel® Patch.

37. The FDA inspected the Cranston, Rhode Island, Kugel® Patch manufacturing facility owned, managed, and operated by Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, for the second time, from January 23 through March 13, 2007. On April 24, 2007, the FDA issued a "Warning Letter" to Defendants, notifying them that the inspection had *again* uncovered "serious violations of the law" in regards to the quality assurance program used in manufacture of Kugel® Patches. These violations were of such a degree and nature that the FDA determined the Kugel® Patches to be "adulterated" under section 501(h) of the Federal Food, Drug and Cosmetic Act. The warning letter specifically mentions, *inter alia*, the following violations:

a. Failure to establish and maintain adequate corrective and preventative action procedures which ensure identification of actions needed to correct and

prevent the recurrence of nonconforming product and other quality problems;

b. Failure to establish adequate management controls to ensure that an effective quality system has been established and maintained;

c. Failure to document the implementation of corrective and preventative actions;

d. Failure to validate your device's design to ensure that the device conforms to defined user needs and intended uses;

e. Failure of your firm to establish procedures to completely address the identification, documentation, evaluation, segregation, disposition and investigation of non-conforming product.

The Letter notes that as an example of the fifth enumerated violation, Defendant's "quality system failures" resulted in the delayed recall of the defective Kugel® Patches.

38. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, continue to fail to recall some sizes of the Kugel® Patch, despite being aware of substantial numbers of serious adverse health events associated with nonrecalled Kugel® Patch sizes, and that all Kugel® Patch sizes are manufactured, designed, fabricated, marketed, advertised, and intended for use in a similar fashion, and therefore, subject to the same above-mentioned health risks and defects.

39. Neither Plaintiff LARRY PALMER nor his healthcare providers were aware of the defective and unreasonably dangerous condition of the Kugel® Patch prior to its implantation.

40. Sometime after the 2003 hernia repair surgery, Plaintiff LARRY PALMER began experiencing severe abdominal pain, nausea, fever, and sepsis symptoms. His condition worsened progressively, and by September 13, 2006, hospitalization and surgery were necessary. The surgery was performed at Riverside Community Hospital in Riverside, California. Physicians performed an emergency exploratory laparotomy and found that, *inter alia*, the Kugel® Patch had become deformed, perforated LARRY PALMER'S bowel, and caused infection, intestinal fistulae, sepsis, dense scarring,

and his bowel in this area to become "matted together". Physicians removed the infected Kugel® Patch, attempted to free the "matted bowel," but were unable to do so, and performed multiple surgical procedures to repair and/or treat his perforated bowel, fistulae, and sepsis.

41. Plaintiff is informed and believes, and thereupon alleges, that his injuries were a proximate result of his being implanted with the defective and unreasonably dangerous Kugel® Patch designed, manufactured, fabricated, tested, distributed, marketed, advertised, sold, and distributed by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, and/or by the negligent medical care he received from Defendants COLLEEN L. COLEMAN, M.D., HOAG MEMORIAL HOSPITAL PRESBYTERIAN, and DOES 151 through 300, inclusive, and each of them. The physical injuries suffered by Plaintiff LARRY PALMER were of the same nature and extent as the serious adverse events Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew to be associated with the Kugel® Patch.

42. Plaintiff LARRY PALMER'S medical condition was and has been continuously monitored by his physicians and other healthcare providers to observe and screen for exacerbation of his injured bowels and other health risks associated with Plaintiff's implantation with a Kugel® Patch.

43. Plaintiff LARRY PALMER will require continuous monitoring of his Kugel® Patch related injuries for the remainder of his life. His physical injuries, proximately caused by his implantation with a Kugel® Patch, are severe, life threatening, and permanent, and have adversely impacted the quality of his life and the life of his family.

44. Plaintiff has unnecessarily, but for the implantation of the defective Kugel® Patch and/or the negligent medical care he received, suffered serious and life threatening physical injuries, severe emotional and mental injuries in coping with his physical injuries, and has incurred and expended significant amounts for the medical care, hospitalizations, and medications, required to treat and care for his Kugel® Patch related injuries and will continue to do so long into the future.

45. As a direct and proximate cause of Defendants' conduct and the defective Kugel® Patch, Plaintiff LORETTA PALMER has suffered, and will continue to suffer, loss of consortium.

46. At all times relevant, Plaintiff LORETTA PALMER was and continues to be married to LARRY PALMER.

47. Plaintiffs are informed and believe, and thereupon allege that Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, failed to comply with FDA 510(k) application and reporting requirements.

48. Plaintiffs are informed and believe, and thereupon allege that Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew, or in the exercise of reasonable care should have known, prior to the recalls of the Kugel® Patch and prior to its implantation into Plaintiff, that the aforesaid products were of such a nature that they were not properly designed, manufactured, fabricated, tested, labeled, marketed, sold, distributed, monitored, provided with proper warnings, were not suitable for the purpose they were intended, and were unreasonably likely to injure users of the products.

49. Plaintiffs are informed and believe, and thereupon allege that Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, did not timely apprise Plaintiffs, the healthcare industry, or other American consumers of the defective and unreasonably dangerous condition of the Kugel® Patch, despite Defendant's knowledge of said condition.

50. Plaintiffs are informed and believe, and thereupon allege that Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, were aware that the non-recalled Kugel® Patch sizes were uniformly subject to the same complications, risks of failure, and defects as the recalled Kugel® Patch sizes.

51. Plaintiff LARRY PALMER is informed and believes, and thereupon alleges that he did not suffer an appreciable and/or significant manifestation of injury until September 2006. Plaintiff LARRY PALMER is informed and believes, and thereupon alleges that he did not, and should not reasonably have become aware of facts making him suspicious that his injury was caused by wrongdoing until sometime in 2007 when he became aware of the recall, which prompted him to order and review his medical records.

52. Defendants' conduct, as described in the preceding paragraphs, amounts to conduct purposefully committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety Plaintiffs.

## FRAUDULENT CONCEALMENT

53. Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by Defendants when they had a duty to disclose those facts. They have kept Plaintiffs ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on Plaintiffs' part, for the purpose of obtaining delay on plaintiffs' part in filing on their causes of action. Defendants' fraudulent concealment did result in such delay.

54. Plaintiffs could not reasonably have discovered the claims made herein until shortly before filing this complaint.

55. The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the Patch that was implanted in Plaintiff LARRY PALMER, but instead they concealed them. As a result, Defendants are estopped from relying on any statute of limitations defenses.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

**(By Plaintiff LARRY PALMER Against Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

56. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

57. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, had a duty to exercise reasonable and prudent care in the design, manufacture, fabrication, testing, application for FDA approval, marketing, advertisement, promotion,, sale and distribution, including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

58. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, were negligent in that they designed, manufactured, fabricated, and sold and distributed a defective product known as the Kugel® Patch, knew and were aware of the

defects inherent in the product, failed to act in a reasonably prudent manner in marketing the product, and failed to provide adequate warnings of the product's defects.

59. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, breached their duty of reasonable care and failed to exercise ordinary care in the design, development, manufacture, fabrication, marketing, distribution, packaging, and sale, of the Kugel® Patch into interstate commerce, in that Defendants knew and had reason to know that implantation of the Kugel® Patch into a consumer created a significant risk of his or her suffering unreasonably dangerous health related side effects, including, but not limited to: perforation of the intestines, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowels and the Patch, and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the Kugel® Patch, the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

60. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, acted negligently, *inter alia*, in the following acts and omissions:

a. Designing, manufacturing, fabricating, promoting, marketing, creating, selling, and distributing the Kugel® Patch without thorough and adequate pre and post-market testing of the product;

b. Designing, manufacturing, fabricating, promoting, marketing, creating, selling, and distributing the Kugel® Patch while negligently and intentionally concealing and failing to disclose evidence regarding use of the Kugel® Patch, which demonstrated the risk of serious harm associated with the use of said product;

c. Failure to undertake sufficient tests to determine whether or not Kugel®

Patch was safe for its intended use,

d. Failure to disclose and warn regulatory agencies, the medical community, and consumers that Defendants knew and had reason to know that Kugel® Patch was indeed unreasonably unsafe and unfit for use by reason of product's defect and risk of harm as discussed herein;

e. Failing to warn plaintiff, the healthcare community, and consumers that the product's risk of harm was unreasonable and that there were safer and effective alternative hernia repair treatments available to plaintiff and other consumers.

f. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Kugel® Patch;

g. Advertising, marketing and recommending the use of the Kugel® Patch, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Kugel® Patch;

h. Representing that the Kugel® Patch was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i. Failing to disclose to and inform the medical community and consumers that other forms of safer and effective treatments were available for use to treat the conditions for which Kugel® Patch was manufactured;

j. Continuing manufacture and sale of the Kugel® Patch with the knowledge

that said product was dangerous and not reasonably safe, and failing to comply with FDA regulations and policy;

k. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Kugel® Patch so as to avoid the risk of serious harm associated with the use of the Kugel® Patch as a hernia repair device.

l. Advertising, marketing, promoting and selling the Kugel® Patch for uses other than as approved and indicated in the product's label;

m. Failing to design and manufacture the Kugel® Patch so as to ensure the device was at least as safe and effective as other hernia repair devices on the market;

n. Failing to ensure the product was accompanied by proper and accurate warnings about possible adverse side effects associated with the use of the Kugel® Patch and that the Kugel® Patch had a known high risk of suffering a memory recoil ring break and the associated injuries described in this Complaint, which could be life-threatening and permanent;

o. Failing to conduct adequate testing, including post-marketing surveillance to determine the safety of the Kugel® Patch; and

p. Failing to establish an adequate quality assurance program used in manufacture of the Kugel® Patch.

61. Defendants knew and should have known that it was foreseeable that consumers such as plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacture, marketing, labeling, and sale of the Kugel® Patch.

62. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, negligence was the proximate cause of the injuries, harm, and economic loss that Plaintiffs have suffered and will continue to suffer into the future.

63. As a result of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, negligence and Plaintiff's implantation with the defective and unreasonably dangerous Kugel® Patch, Plaintiff suffered severe physical injuries, including without limitation, bowel perforation, infection, recurrent hernia, other bowel injury, major surgery to remove said Patch, physical disfigurement, and severe and permanent injury.

64. As a further result of the foregoing defects in the Product, Plaintiff suffered other consequential damages.

65. As a further proximate result of the defective and unreasonably dangerous condition of the Kugel® Patch, Plaintiff was required to employ the services of numerous healthcare professionals and incurred associated substantial costs and expenses of former and ongoing medical treatments.

66. Plaintiff is informed and believes, and thereon alleges, that he will require the further services of these and other healthcare professionals in the future, all as a result of the injuries he sustained due to the defects in the Product, which will entail additional associated costs.

67. As a further result of the defects in the Product, Plaintiff has been unable to engage in his professional activities and, as a result, has lost substantial income and wages. Additionally, Plaintiff is informed and believes, and thereon alleges, that he has lost her ability to earn wages and will be unable to engage in her professional activities in the same capacity in the future and, as a result, will lose substantial income and wages in the future.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY - FAILURE TO WARN

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

68. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

69. Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, designed, tested, applied for FDA approval, conducted clinical studies, manufactured, fabricated, marketed, sold and distributed the Kugel® Patch into the stream of commerce and in the course of same, directly advertised and marketed the Kugel® Patch to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the Kugel® Patch.

70. At the time the Kugel® Patch was designed, submitted for FDA approval, clinically studied, manufactured, fabricated, marketed, sold and distributed into the stream of commerce, and more specifically at the time Plaintiff LARRY PALMER received the product, said Patches were defective and unreasonably dangerous when put to their intended and reasonably anticipated use, namely for hernia repair surgery. Defendants failed to adequately warn of the Kugel® Patch's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the Product.

71. Prior to the manufacture, distribution into the stream of commerce, and any recall of the Kugel® Patch, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew or should have known of the risk of substantial and potentially life threatening danger associated with the intended and reasonably foreseeable use of the Kugel® Patch. This known and knowable danger consisted of, a high rate of malfunction of the Kugel® Patch, leading to, *inter alia*, bowel perforation, chronic intestinal fistula, severe abdominal pain, fever, sepsis, infection, dense internal scarring, recurrent hernia, and surgical repair procedures. Yet, Defendants negligently, knowingly, willfully, intentionally, and wrongfully failed to provide adequate warnings to Plaintiff, the healthcare community, the FDA, or other American consumers, of this known and reasonably scientifically knowable danger.

72. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to provide any warning, labels, or instructions regarding the dangerous propensities of the Kugel® Patch mentioned herein that were known or reasonably knowable at the time of distribution. Said Defendants also failed to provide timely updated warnings, labels, or instructions regarding the dangerous propensities of the Kugel® Patch as they became known or

knowable after distribution. In violation of their duty to warn of adverse side effects, these Defendants continue to fail to provide any warnings regarding the non-recalled variety of Kugel® Patches and continue to fail to provide true and accurate warnings regarding the health risks associated with the recalled Kugel® Patches.

73. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to timely and reasonably warn of material facts regarding the safety and efficacy of the Kugel® Patch; no medical care provider would have used — and no consumer would have accepted implantation with — the Kugel® Patch, had those facts been made known to the prescribing healthcare providers and/or the consumers of the Kugel® Patch.

74. The Kugel® Patch warnings, labels, and instructions provided by Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, at all time relevant to this action, are and were inaccurate, intentionally misleading, and misinform and misrepresent the risks and benefits and lack of safety and efficacy associated with the Kugel® Patch.

75. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, failed to perform, establish or otherwise facilitate adequate testing and/or quality assurance programs; either of which would have shown that the Kugel® Patch posed serious and potential life threatening adverse effects and complications.

76. The health risks associated with the Kugel® Patch as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

77. The Kugel® Patch, which was designed, manufactured, fabricated, marketed, sold and distributed the into the stream of commerce by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

78. On October 29, 2003 when Plaintiff LARRY PALMER was implanted with the Kugel® Patch, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to provide any warnings, instructions, or labels regarding the severity and extent of health risks posed by the Kugel® Patch, as discussed herein.

79. Plaintiff LARRY PALMER did not know of the risk of substantial danger associated with the intended and foreseeable use of the Kugel® Patch as described herein until the year 2007.

80. Plaintiff LARRY PALMER used the Kugel® Patch in a normal, customary, intended, and foreseeable manner, namely for a hernia repair surgery.

81. The defective and dangerous condition of the Kugel® Patches, including the one implanted into Plaintiff, existed at the time the Kugel® Patches were designed, manufactured, fabricated, distributed, and delivered by Defendants to distributors and/or healthcare professionals or organizations. At the time Plaintiff had his hernia repair surgery in which the Kugel® Patch was implanted, the Kugel® Patch was in the same condition as when it was manufactured, fabricated, inspected, distributed, labeled, and marketed by Defendants.

82. As a proximate result of foregoing defects in the Product and failure to warn of said defects, Plaintiff suffered and will continue to suffer, the injuries and damages set forth in this Complaint.

**THIRD CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY --DESIGN DEFECT**

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

83. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

84. At all times relevant to this action, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, designed, tested, applied for FDA approval, conducted clinical studies, manufactured, fabricated, marketed, sold and distributed into the stream of commerce the Kugel® Patch, which was recommended and implanted into Plaintiff LARRY PALMER.

85. The Kugel® Patch was expected to, and did, reach the intended consumers, handlers, and persons coming in contact with the product without substantial change in the condition in which the product was designed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by Defendants DAVOL, BARD DEVICES,

C.R. BARD, and DOES 1 through 150, inclusive, and each of them.

86. At all times relevant to this action, the Kugel® Patch was designed, manufactured, fabricated, tested, labeled, advertised, promoted, marketed, sold, and distributed into the stream of commerce marketed in a defective and unreasonably dangerous condition, for use by Plaintiff and all other American consumers.

87. The Kugel® Patch, as designed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by Defendants was inherently defective in design manufacture and fabrication, in that when it left the hands of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, the foreseeable risks of harm caused by said product exceeded its claimed benefits.

88. The Kugel® Patch, as designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, was defective in design and formulation, because when it left the hands of said Defendants, the product was unreasonably dangerous and was also more dangerous than expected by the ordinary consumer.

89. At all times relevant to this action, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew and had reason to know that the Kugel® Patch was inherently defective and unreasonably dangerous as designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by them and when used by Plaintiff the healthcare community, and other American consumers in the intended and reasonably foreseeable manner.

90. Plaintiff used the product for the purpose intended by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, and in a manner normally intended to be used , namely for hernia repair surgery. Defendants had a duty to design, create, manufacture, and fabricate a product that was not unreasonably dangerous for its normal, common, intended use.

91. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce a defective product that created an unreasonable risk of serious harm to the health, safety, and well being of Plaintiff and other American consumers. Defendants are therefore strictly liable for the injuries and damages sustained by Plaintiff proximately caused by his use of the Kugel® Patch.

92. Neither Plaintiff, nor his healthcare providers could have, by the exercise of reasonable care, discovered the Kugel® Patch's defective condition or perceived its unreasonable dangers prior to his ingestion of the product.

93. The Kugel® Patch, as designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, was defective due to the product's inadequate warnings and instructions. Said Defendants knew, and should have known and adequately warned that the Kugel® Patch created a risk of serious and dangerous side effects, including, but not limited to, perforation of the intestines, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowel and the Patch, and other serious and severe personal injuries, including death, some of which are permanent in nature.

94. Notwithstanding their knowledge of the inherently defective and unreasonably dangerous condition of the product, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to adequately warn the Plaintiff, the healthcare community, and other American consumers of the dangers and risk of harm associated with the use of the Kugel® Patch.

95. Defendants were aware at the time the Kugel® Patch was developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce that implantation of the Kugel® Patch would result in an unreasonably high risk of Kugel® Patch malfunction and risk of injury as discussed herein, which resulted in the product lacking in safety and efficacy when compared to other comparable and less dangerous surgically implanted hernia repair devices on the market.

96. The Kugel® Patch as designed, developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, was defective due to inadequate post-marketing surveillance and warnings. Said Defendants knew and should have known of the existence of risks of serious side effects associated with use of the product, including, but not limited to,

Patch failure leading to perforation of the bowel, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowel and the Patch, and other serious and severe personal injuries, including death.

97. Defendants continue to fail to adequately warn of the risks of harm associated with use of the Kugel® Patch and instead continue to advertise, market, label, and promote it to the public and the medical community as safe and effective for treatment of the medical conditions described herein.

98. By reason of the foregoing, Defendants are strictly liable in tort to plaintiff.

99. As a proximate result of foregoing defects in the Product and failure to warn of said defects, Plaintiff suffered and will continue to suffer, the injuries and damages set forth in this Complaint.

**FOURTH CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

100. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

101. The Kugel® Patch contained a manufacturing defect when it left the possession of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them. The Patch differs from said Defendants' intended result and/or from other ostensibly identical units of the same product line.

102. Plaintiff LARRY PALMER used the product in a way that was reasonably foreseeable to Defendants.

103. As a proximate result of foregoing defects in the Product and failure to warn of said defects, Plaintiff suffered and will continue to suffer, the injuries and damages set forth in this Complaint.

**FIFTH CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

104. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

105. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the Kugel® Patch was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use.

106. At the time of making such express warranties, Defendants knew and should have known that the Kugel® Patch did not conform to the express warranties and representations and that, in fact, the Kugel® Patch is not safe and poses serious health risks, of which Defendants did not accurately warn.

107. As a foreseeable, direct, and proximate result of the breach of the express warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, harm, and economic loss.

108. Plaintiff, the healthcare community, and other American consumers relied on the express warranties made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, regarding the safety and efficacy of the Kugel® Patch and were reasonable in doing so.

109. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, breached their express warranties because the Kugel® Patch was and continues to be defective and not reasonably safe for its intended purpose.

110. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, expressly represented and warranted to the medical community and consumers, including Plaintiff and his healthcare providers that the Kugel® Patch was safe and fit for the purposes intended, that it was of merchantable quality, that it did not pose dangerous health risks in excess of those risks associated with use of other similar hernia repair devices, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

111. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew and should have known that the representations and express warranties were false, misleading, and untrue in that said Defendants knew the Kugel® Patch was not safe and fit for its intended use, and that the Kugel® Patch caused its users serious injuries that were not adequately warned of, identified, or represented by these Defendants.

112. As a proximate result of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, breaching their express warranties, Plaintiff was caused to suffer the injuries and damages described in this complaint.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

113. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

114. At all times relevant to this action, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, and their predecessors and their successors, and each of them, designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Kugel® Patch, for use as a

surgically implanted hernia repair device and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

115. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, knew of the intended use of the Kugel® Patch, at the time they marketed, sold, and distributed the product for use by plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

116. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, impliedly represented and warranted to the healthcare community, the regulatory agencies, and American consumers, including Plaintiff, and his healthcare providers, that the Kugel® Patch was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

117. The representations and implied warranties made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, were false, misleading, and inaccurate because the Kugel® Patch was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used as it was marketed and intended to be used.

118. Plaintiff, the healthcare community, and other American consumers reasonably relied on the superior skill and judgment of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, as the designers, researchers, developers, manufacturers, fabricators, testers, labelers, inspectors, advertisers, promoters, marketers, sellers, and distributors of the product, as to whether Kugel® Patch was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Kugel® Patch was manufactured and sold.

119. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, placed the Kugel® Patch into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Kugel® Patch was manufactured and sold.

120. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, breached their implied warranty because their Kugel® Patch was not fit for

its intended use and purpose.

121. As a proximate result of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, breaching their implied warranties, Plaintiff was caused to suffer the injuries and damages described in this complaint.

## SEVENTH CAUSE OF ACTION

## DECEIT BY CONCEALMENT – *CAL. CIV. CODE* §§ 1709 -1710

**(By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

122. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

123. Plaintiff brings this cause of action pursuant to *Civil Code* §§ 1709 – 1710 *et seq.* which states:

> One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers. A deceit, within the meaning of § 1709 is either: 1. The suggestion, as a fact, of that which is not true, by one who has does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise, made without any intention of performing it.

124. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, from the time the Kugel® Patch was first manufactured, fabricated, tested,

marketed, distributed, and sold and up to the present, willfully deceived Plaintiff by concealing from him, the healthcare community, the FDA, and the American public the true facts concerning the Kugel® Patch, which said Defendants, as manufacturers, fabricators, and distributors of the Product, had a duty to disclose. As set forth above, these Defendants, in advance of Plaintiff's use of the Kugel® Patch, were aware of the dangerous and defective condition of the Patch and intentionally withheld this information from Plaintiff, the healthcare community, the FDA, and other American consumers even though these significant dangers were not readily obvious to the ordinary user of the products.

125. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, intentionally and fraudulently concealed the following material information:

a. Defendants knew and should have known that the Kugel® Patch line of products, at all times relevant, were subject to high degree of risk of memory recoil ring failure resulting in, *inter alia*, bowel perforation, chronic intestinal fistula, severe abdominal pain, fever, sepsis, infection, dense internal scarring, and abdominal disfiguration.

b. Limited testing and adverse event reports revealed the Kugel® Patch had an unreasonably high risk of adverse complications given its intended use(s) and higher risk of adverse complications, in addition to, and above and beyond those associated with other similar surgically implanted hernia repair devices.

c. Implantation of the Kugel® Patch would not result in a safe and more effective method of hernia repair treatment than other available treatments;

d. Risk of adverse events with the Kugel® Patch was not adequately tested prior to marketing of the product, nor sufficiently monitored post-market introduction.

e. Defendant's quality assurance program used in the manufacture of the Kugel® Patch violated federal law.

f. Failed to disclose testing as early as early as September 2004 that revealed serious problems with the weld process involving the

Case 1:08-cv-02499-ML-LDA Document 7-2 Filed 03/28/2008 Page 32 of 70

memory recoil ring.

g. Defendants intentionally and knowingly failed to disclose and intentionally concealed numerous complaints of memory recoil ring failure and other device malfunctions.

h. The Kugel® Patch was defective, and caused dangerous and adverse side effects, including, but not limited to the specific injuries specifically described elsewhere in this Complaint.

i. Patients using the Patch would likely suffer bowel injury and recurrent hernia and would require monitoring of these conditions while treating with the Kugel® Patch;

j. That complications and failures associated with the Kugel® Patch are not limited to the sizes which Defendants have recalled;

k. The Kugel® Patch was negligently and defectively manufactured.

l. The Kugel® Patch was negligently and defectively designed.

m. Defendants were under a duty to disclose to plaintiff and his physicians, the defective design and manufacture of the Kugel® Patch, which design and manufacture heightened the risk of suffering the injuries specifically described in this Complaint and suffered by Plaintiff LARRY PALMER.

126. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, fraudulently concealed the above-mentioned information with willful, wanton, and reckless disregard and depraved indifference for the safety and well being of the users of the Kugel® Patch, such as Plaintiff.

127. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, intentionally concealed and suppressed the true facts concerning the Kugel® Patch, although said Defendants were bound to disclose the true facts, with the intent to defraud and mislead Plaintiff, in that these Defendants knew that Plaintiff would not have used the subject product, if he was aware of the true facts concerning the dangers of said product.

128. At all times relevant to this action and herein mentioned, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, conducted a sales and marketing campaign to promote the sale of the Kugel® Patch and willfully deceived Plaintiff, the healthcare community, and the American consumers as to the health risks and harmful consequences associated with the use of the aforementioned Product. Said Defendants, and each of them, knew and were aware of the foregoing, and that the Patch was not safe, fit, and effective for its intended use, that the use of said Product is hazardous to human health, and that said Product has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as described in this Complaint.

129. In reliance upon the false and fraudulent misrepresentations and omissions of Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, Plaintiff was induced to, and did use the Kugel® Patch, thereby sustaining severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff, the healthcare community, and other American consumers did not have the ability to determine the true facts intentionally concealed by said Defendants in prescribing and implanting the Kugel® Patch, and would not have, respectively, prescribed and implanted same, if the true facts regarding the Patch had not been concealed by these Defendants.

130. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Patch.

131. At the time Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, failed to disclose the foregoing facts, and at the time Plaintiff used the Kugel® Patch, he was unaware of Defendants' failure to disclose the above mentioned facts.

132. Plaintiff reasonably relied upon misrepresentations made by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, where knowledge of the concealed facts was critical to understanding the true dangers inherent in the use of the Kugel® Patch.

133. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, conduct was wrongful and constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and purposefully.

134. As a proximate result of Defendants' deceit by concealment, Plaintiff suffered the injuries and damages described in this complaint.

**EIGHTH CAUSE OF ACTION**

**DECEIT BY INTENTIONAL MISREPRESENTATION *CAL. CIV. CODE §§1709 – 1710***

**((By Plaintiff LARRY PALMER Against DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

135. Plaintiff LARRY PALMER re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

136. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, negligently, knowingly, willfully, wrongfully, and intentionally made false misrepresentations, as previously set forth herein, to Plaintiff LARRY PALMER , Plaintiff's healthcare providers, the medical community, the general public, and the FDA including without limitation, the following: (1) the Kugel® Patch had been adequately tested prior to marketing; (2) the Kugel® Patch did not have dangerous and/or serious adverse health effects and safety concerns; (3) the Patch was as safe, fit, and effective for its intended use; (4) an adequate quality assurance program was in place to monitor the Kugel® Patch for adverse complications; and (5) multiple reports to the FDA underreporting the severity of device-related injuries.

137. The information distributed by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, to the public, the medical community, the FDA, and plaintiff was in the form of reports, press releases, advertising campaigns, print advertisements, commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Kugel® Patch. Defendants made the foregoing misrepresentations knowing that they were false. These representations were made

directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public, with the intention of inducing Plaintiffs' and other consumers' reliance, purchase, and use of the Product.

138. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, made the foregoing representations knowing that they were false. These representations were made directly by Defendants, their agents, and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase and use of the Patch.

139. Defendants' DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, intent and purpose in making these misrepresentations was to deceive and defraud the public, the FDA, the medical community, including Plaintiff and his healthcare providers; to gain the confidence of the public, the medical community, including Plaintiff and his healthcare providers; to falsely assure them of the quality of the Kugel® Patch and its fitness for use; and to induce plaintiff, his healthcare providers, the public, and the medical community to request, recommend, prescribe, implant, purchase, and continue to use the Kugel® Patch.

140. Defendant's DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, misrepresentations were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and egregiously without regard to the true facts.

141. In reliance on Defendants' DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, misrepresentations, Plaintiff was induced to purchase and use the Product. If Plaintiff had known of the true facts and the facts that Defendants had concealed falsity of Defendants' representation, the Plaintiff would not have purchased or used the Product.

142. Plaintiff's reliance on Defendants' DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, misrepresentations was justified and reasonable because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

143. Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150,