**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO Smith v. C.R. Bard, Inc., et al. No. 1:07-cv-1937** | § § § § | **JUDGE LISI** |

## SUPPLEMENTAL COMPLAINT

## NATURE OF CASE

1. Plaintiff Darlene "Dolly" Percy is the mother of Hadley Scott Smith and the Administrator of his Estate. Hadley Scott Smith developed serious and potentially life-threatening medical conditions caused by the insertion of a defective medical product manufactured by Defendants - a Bard Composix Kugel Hernia Patch. These injuries and conditions caused by the defective medical product were a significant contributing factor in the death of Hadley Scott Smith. Plaintiff seeks relief for Hadley Scott Smith's injuries and death under claims of negligence, strict liability for failure to warn, strict liability for design and manufacturing defect, breach of warranty, fraud, violation of New York General Business Law § 349, negligent infliction of emotional distress, intentional infliction of emotional distress, and wrongful death.

## PARTIES

2. Plaintiff Hadley Smith was at all times relevant a citizen and resident of East Baton Rouge Parish, Louisiana. The relevant surgeries on Hadley Smith were performed at Saint Vincent's Hospital in New York, New York.

3. Defendant, Davol Inc. ("Davol") is a corporation that is incorporated under the laws of the State of Rhode Island. Davol has its principal place of business in the State of Rhode

Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch"). Davol focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

4. Defendant, C. R. Bard Inc. ("Bard") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of Davol and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies Davol with material that forms part of the Kugel Patch.

5. This case was originally filed in New York state court and removed to federal court and transferred to this Court. Jurisdiction exists in this Court based on diversity of citizenship between the plaintiff and defendants.

## FACTUAL ALLEGATIONS

6. Defendant Davol designed, manufactured and distributed the Kugel Patch, a hernia mesh patch that was inserted into Mr. Smith's body.

7. Defendant Davol, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into Mr. Smith's body.

8. Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

9. Defendants participated in the marketing, distribution and sale of the Kugel Patch as safe for its intended purpose, fully and properly tested for safety and potential risks, and free from the kinds of risks and hazards that the Kugel Patch actually posed to the public, including Plaintiff.

10. Immediately after the Kugel Patches were placed on the market, defendants began receiving actual notices of memory ring failures and Kugel Patch defects. Defendants actively

and intentionally concealed this notice of the defective and dangerous condition associated with the Kugel Patches from Mr. Smith, Plaintiff's physicians, and the general public.

11. After the defective and dangerous Kugel Patch was already placed on the market, Defendants conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, Defendants failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of the physician surveyors were actively concealed by Defendants from Mr. Smith, Plaintiff's surgeons, and the public at large.

12. Defendants uncovered serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the plant, defendants found the corrective measures to be ineffective and the process still not in control. Defendants were aware these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from Mr. Smith, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

13. On December 22, 2005, Defendants recalled many sizes of Composix Kugel Patches under a Class I recall notice.

14. A Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to health.

15. The recall was due to a faulty "memory recoil ring" that can break under pressure, causing the kind of injury suffered by Mr. Smith. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

16. Upon information and belief, the complications and failures associated with the Composix Kugel Patches are not limited to the sizes which Defendants have already recalled.

17. Upon information and belief, Defendants were aware of the defect in manufacture and design of the non-recalled Kugel Composix Patch sizes and chose not to issue a recall on all Kugel Composix Patches in the face of the high degree of complication and failure rates.

18. On or about August 18, 2004, Mr. Hadley Scott Smith underwent surgery at Saint Vincent's Hospital in New York County to repair a recurrent incisional hernia. A Bard Composix Kugel Hernia Patch, Medium Oval, Product Code 0010205 and Lot Number 43DOD285 ("Kugel Patch") was implanted along with a Davol Bard Prefix Plug, Medium, Monofolomanet Knitted Polypropylene.

19. The Kugel Patch hernia repair product implanted in Mr. Smith was designed, manufactured, sold and distributed by Davol to be used by surgeons for hernia repair surgeries and was further represented by Davol to be an appropriate, cost-effective and suitable product for such purpose.

20. Neither Mr. Smith nor Plaintiff's physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of Mr. Smith's injuries until some time after Defendants chose to finally inform the general public of the defective nature of the Kugel Patches and the subsequent recalls.

21. In the months that followed the surgery, Mr. Smith's condition worsened. Mr. Smith suffered under extreme fever, pain and discomfort. Despite an aggressive pain control regimen, neither the pain nor discomfort were abated.

22. On or about October 6, 2004, Mr. Smith was re-admitted to Saint Vincent's Hospital in an effort to stabilize his condition, which had significantly worsened. Surgery found that a portion of the Kugel Hernia Patch had broken free and perforated Mr. Smith's colon.

23. Mr. Smith was left to begin months of recovery, requiring re-routing his digestive system, on-going pain maintenance, with substantial medical complications requiring expensive, painful and emotionally harmful medical intervention and care, all in New York County.

24. Mr. Smith incurred substantial medical bills and has lost earning capacity and lost quality of life as a result of the Kugel Patch, and continued to suffer physical pain and mental anguish up until the time of his death.

25. Hadley Scott Smith continued to suffer significant pain as a result of the injuries and conditions caused by the defective product. This significant pain and suffering and its sequelae were a significant contributing factor in his ultimate death which occurred on January 28, 2008.

26. Davol and Bard withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

27. Upon information and belief, Davol and Bard failed to comply with the FDA application and reporting requirements.

28. Upon information and belief, Davol and Bard were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

29. Upon information and belief, Davol and Bard were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

## FRAUDULENT CONCEALMENT

30. Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by defendants when they had a duty to disclose those facts. They have kept plaintiff and others ignorant of vital information essential to his pursuit of these claims, without any fault or lack of diligence on plaintiff's part, for the purpose of obtaining delay on plaintiff’s part in filing a complaint on his causes of action. Their fraudulent concealment did result in such delay.

31. Plaintiff could not reasonably have discovered the claims made herein until shortly before filing this complaint.

32. Defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch that was implanted in Plaintiff, but instead they concealed them. As a result, Defendants are estopped from relying on any statute of limitations defenses.

## CLAIMS FOR RELIEF

### Count I – Negligence

33. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

34. Defendants at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

35. Defendants at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly

manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch's users.

36. Defendants so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

37. Defendants were aware of the probable consequences of the Kugel Patch. Defendants knew or should have known the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Kugel Patch. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted in conscious disregard of the safety of Hadley Scott Smith.

38. Defendants owed a duty to Hadley Scott Smith to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

39. Defendants breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

40. As a direct and proximate result of the duties breached, the Kugel Patch used in Mr. Smith's hernia repair surgery failed, resulting in Mr. Smith suffering pain and harm.

41. As a direct and proximate result of Davol's and Bard's negligence, Mr. Smith has suffered injuries and damages.

42. Defendants' conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count II – Strict Liability: Failure to Warn**

43. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

44. In the course of business, Defendants Davol and Bard designed, manufactured and sold the Kugel Patch used in Hadley Scott Smith.

45. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Hadley Scott Smith received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

46. Defendants Bard and Davol failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. Defendants failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch, including but not limited to

rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

47. The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Mr. Smith had his hernia repair surgery the Kugel Patch was in the same condition as when manufactured, distributed and sold.

48. Mr. Smith did not know at the time of use of the Kugel Patch, nor at any time prior thereto, of the existence of the defects in the Patches.

49. Mr. Smith suffered the aforementioned injuries and damages as a direct result of Defendants' failure to warn.

50. The conduct of Defendants in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter Bard, Davol and others from similar conduct.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count III – Strict Liability: Defective Design and Manufacture**

51. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

52. Defendants Davol and Bard designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

53. The Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. Although Mr. Smith's Kugel Patch was not a Class I recalled device, it failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Kugel Patch for the same reasons that gave rise to the Class I recall.

54. At all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of Davol.

55. The Kugel Patch implanted into Mr. Smith was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

56. The Kugel Patches, like the one found in Mr. Smith, at the time they left the possession of Defendants were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mr. Smith as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to Mr. Smith;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Mr. Smith;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Mr. Smith, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. Defendants failed to warn the end user about the dangers and risks of the product;

vii. Defendants knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Defendants failed to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Defendants failed to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery; and

x. Any other acts or failures to act by Davol or Bard regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

57. Defendants' conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Davol, Bard and others from similar conduct in the future.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count IV – Breach of Implied Warranty**

58. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

59. Defendants sold the Kugel Patch which was implanted in Mr. Smith.

60. Defendants impliedly warranted to Mr. Smith, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

61. Defendants knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

62. Mr. Smith, his physicians and health care providers reasonably relied on Defendants' judgment, indications and statements that the Kugel Patch was fit for such use.

63. When the Kugel Patches were distributed into the stream of commerce and sold by Defendants Davol and Bard, they were unsafe for their intended use, and not of merchantable quality, as warranted by Defendants in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

64. Mr. Smith suffered such injuries and damages and death as a result of Defendants' conduct and actions.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count V – Breach of Express Warranty**

65. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

66. In the manufacturing, design, distribution, advertising, marketing, labeling and promotion of the Kugel Patch, Defendants Davol and Bard expressly warranted them to be safe and effective for consumers like Plaintiff.

67. At the time of making these express warranties, Defendants had knowledge of the purpose for which the product was to be used and warranted same in all respects to be safe and proper for such purpose.

68. The Kugel Patch did not conform to these express warranties and representations because they are not safe and pose severe and serious risks of injury.

69. The implantation and use of the Kugel Patch in Plaintiffs case was proper and pursuant to the intended and foreseeable use.

70. Plaintiff, by use of reasonable care, would not and could not have discovered the breach and realized its danger.

71. As a direct and proximate result of Davol's and Bard's negligence, Mr. Smith has suffered injuries and damages, which were a substantial factor in causing his death.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count VI - Fraud**

72. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

73. In the course of business, Defendants designed, manufactured and sold the Kugel Patch for hernia repair surgeries.

74. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mr. Smith received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

75. Defendants falsely and fraudulently represented to the medical community and to plaintiff the qualities of the Kugel Patch.

76. Defendants fraudulently presented to Mr. Smith, Plaintiff’s physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel could and would cause injuries such as

those suffered by Plaintiff.

77. Defendants fraudulently omitted, concealed and suppressed material information regarding the risks and dangers in their medical product, the Kugel Patch.

78. Defendants knew or, but for reckless disregard, should have known the true risk and danger posed by their medical product, the Kugel Patch.

79. Having undertaken the manufacturing, marketing, distribution and promotion of the Kugel Patch, Defendants were under a duty to provide to plaintiff, his physicians, regulators and other consumers and persons with relevant responsibility accurate and complete information regarding the Kugel Patch.

80. Defendants committed their fraud with the intent of deceiving the public in general and the medical community in particular, with the intent that their product be purchased and implanted in persons like Plaintiff.

81. The public in general, and the medical community in particular, were unaware of Defendants' fraud, and reasonably relied upon Defendants.

82. Mr. Smith and Plaintiff's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

83. Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless disregard when committing these acts of consumer fraud.

84. As a result of Defendants' fraud, Plaintiff sustained injury and damages.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count VII - Negligent Misrepresentation and Omission**

85. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

86. Defendants, having undertaken the manufacturing, marketing, dispensing, distribution, sale and promotion of the Kugel Patch, created and were in a special relationship if trust, confidence and privity with the public, consumers, Plaintiff, and his medical care providers and were thus under a duty to provide accurate and complete information and warnings regarding the quality and safety of the Kugel Patch.

87. Defendants misrepresented and/or omitted material facts about the quality and safety of the Kugel Patch to the public, consumers, Plaintiff, and his medical care providers, among others. Defendants misrepresented, among other things, that the Kugel Patch was safe and effective for the purposes for which they were intended. The representations were false since the product was not safe for this purpose and was dangerous to the health of Plaintiff.

88. The aforementioned misrepresentations and/or omissions were made by Defendants with the intent to induce Mr. Smith or his physician to use the product, to his detriment.

89. At the time of the misrepresentations, Mr. Smith and all those responsible for his care were ignorant of the falsity of the statements, and reasonably relied on them and believed them to be true when selecting, purchasing and utilizing the product.

90. Defendants breached their duties to Mr. Smith and his physicians by providing false, incomplete and/or misleading information regarding their product.

91. As a direct a proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff suffered injury and damage and death.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count VIII - Violation of Gen. Bus. L. § 349**

92. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

93. Plaintiff is a "person" within the meaning of New York General Business Law § 349(h).

94. Section 349(a) of New York's General Business Law provides: "Deceptive acts or practices in the conduct of any business, trade of commerce or in the furnishing of any service in this state are hereby declared unlawful."

95. Section 349(h) of New York's General Business Law empowers "[a]ny person who has been injured by reason of any violation of this section" to bring an action.

96. At all relevant times Defendants were in the business of designing, manufacturing, marketing, distributing, advertising, promoting and selling their medical product, the Kugel Patch, to medical practitioners and consumers in the State of New York.

97. Defendants' deceptive acts and practices took place in the context of designing, marketing, distributing and selling their medical product, the Kugel Patch to the public and to consumers, including plaintiff and to the medical profession and scientific community, and therefore those deceptive acts and that conduct is consumer-oriented and affects the public interest.

98. Defendants made untrue, materially deceptive or misleading representations of material facts and omitted and/or concealed material facts in the marketing, packaging, advertisement and sale regarding the safety of the Kugel Patch.

99. Defendants made untrue, materially deceptive or misleading representations of material facts and omitted and/or concealed material facts in the marketing, packaging, advertisement and sale to the effect that the Kugel Patch was fit for the purpose for which it was intended, when Defendants knew it was defective and dangerous.

100. Defendants' conduct thereby and otherwise constituted deceptive acts or practices in the conduct of business, trade or commerce.

101. Defendants' conduct thereby and otherwise constituted unfair acts of practices that have the capacity and did deceive consumers.

102. Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless disregard when committing these acts of consumer fraud.

103. As a proximate result of these acts of consumer fraud, Plaintiff was injured and sustained actual damages and injuries. In addition, the injuries and conditions caused by the defective product or a significant contributing factor in the death of Hadley Scott Smith.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count IX – Negligent Infliction of Emotional Distress**

104. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

105. Defendants are liable to Plaintiff for the negligent infliction of emotional distress in the following respect:

106. Mr. Smith suffered severe emotional distress, which was as a result of Defendants' negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the

Kugel Patch for hernia repair surgery.

107. Mr. Smith suffered severe emotional distress, which was as a result of Defendants' negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

108. Therefore, Defendants are liable to Plaintiff.

109. Defendants' conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendants and others from similar conduct in the future.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count X – Intentional Infliction of Emotional Distress**

110. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

111. Defendants are liable to Plaintiff for the intentional infliction of emotional distress in the following respect:

112. Mr. Smith suffered severe emotional distress, which was as a result of Defendants' extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

113. Mr. Smith suffered severe emotional distress, which was as a result of Defendants' extreme outrageous, intentional, willful, and reckless conduct in failing to

adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Mr. Smith.

114. Therefore, Defendants are liable to Plaintiff.

115. Defendants' conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendants and others from similar conduct in the future.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

**Count X – Wrongful Death**

116. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding paragraphs as though fully set forth herein

117. Darlene "Dolly" Percy is a duly appointed representative of Hadley Scott Smith and brings this cause of action on behalf of Mr. Smith's estate.

118. Defendants' aforementioned wrongful acts proximately and wrongfully caused Mr. Smith's conscious pain and suffering and were significant factors contributing to his death on January 28, 2008.

119. Defendants' wrongful conduct has proximately caused Mr. Smith's heirs to suffer the loss of his companionship, services, society and love.

120. Plaintiff's estate further pleads all wrongful death damages allowed by statute in the state or states in which the cause of action accrued.

121. Mr. Smith is survived by family members as distributees.

Wherefore, Plaintiff requests a judgment against Defendants for damages in excess of $50,000 and for other such relief as this Court deems just and proper.

## DAMAGES

122. Plaintiff is entitled to and prays for the following items of damage from defendants, *in solido:*

A. Medical and related expenses incurred by Hadley Scott Smith;

B. Loss of earning capacity of Hadley Scott Smith;

C. Loss of estate;

D. Physical pain and suffering of Hadley Scott Smith prior to death;

E. Mental anguish and distress of Hadley Scott Smith prior to death;

F. Other items of damage which may be shown through discovery or at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against the Defendants, jointly and severally, for economic and non-economic damages in an amount as provided by law and to be determined by a jury; an award of attorney's fees and costs of suit as allowed by law; and such other legal and equitable relief as this Court my deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all counts.

Dated: June 30, 2008

Respectfully submitted,

/s/ Donald A. Migliori
Donald A. Migliori (RI Bar #4936)
Motley Rice LLC
321 South Main Street, Suite 200
Providence, RI 02903
Telephone: (401)457-7700
Facsimile: (401)457-7708
***MDL 1842 Plaintiffs Liaison Counsel***

David Buchanan
Seeger Weiss LLP
One William Street
New York, New York 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

John W. deGravelles
deGravelles, Palmintier, Holthaus & Frugé, L.L.P.
618 Main Street
Baton Rouge, LA 70808
Telephone: (225) 344-3735
Facsimile: (225) 336-1146

Daniel A. Claitor
7520 Perkins Road, Suite 170
Baton Rouge, LA 70808
Telephone: (225) 757-0159
Facsimile: (225) 757-0169

***Attorneys for Plaintiffs***