**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | § | **Chief Judge Mary M. Lisi** |

**DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR MODIFICATION AND PARTIAL RELIEF AS TO THE PROTECTIVE ORDER**

Plaintiffs' Motion for Modification and Partial Relief as to the Protective Order purports to seek to have the confidentiality imposed by the Protective Order [Document 65] lifted as to certain documents, but does not identify any such documents and does not follow the procedures set forth in the Protective Order for making such a request. The Motion must be denied for these reasons alone, but also because plaintiffs' allegations of fraud on the FDA are all premised on deposition testimony that plaintiffs are free to submit to FDA, and FDA has full authority to seek any further information it deems necessary.

## Argument

### I. Plaintiffs' Motion Must Be Denied Because It Identifies No Specific Documents Subject To The Protective Order And Because It Violates The Protective Order's Own Provisions For Bringing Such A Motion.

Because plaintiffs have identified no particular documents for which they seek relief, this Court cannot properly assess their request for relief from the protective order and cannot enter any order that would give the parties clear guidance as to what is fully subject to the Protective Order and what is not. Even taking at face value their assertion that they are entitled to relief from the Protective Order due to alleged FDA violations –

which is not the case, as detailed in Section II below – they have not even given the Court the most basic information that it must have in evaluating *any* motion for relief from a Protective Order on any ground.

Although plaintiffs make vague assertions in their motion to "information," "documents," or "relevant discovery" that they say should no longer be fully subject to the Protective Order, *see, e.g.*, Plaintiffs' Memorandum ("Pls.' Mem.") 12, 13, 15, 17, nowhere do they specifically identify *any* document that logically falls within the scope of the relief they request – i.e., one that is subject to the Protective Order and is not already in FDA's hands. Were the Court to grant plaintiffs' motion, the parties would have no notice or reasonable expectations concerning *which* documents are, in part, no longer subject to the Protective Order. *See Beals v. General Motors Corp*., No. Civ. A. 85-825-WF, 1989 WL 384829, at *2 (D. Mass. Dec. 4, 1989) (denying in part a motion to modify protective order because plaintiff failed to identify "what information he wishes to disclose to other litigants, the media and the public"). The Motion must be denied because it is impossible to grant it without creating an intolerably vague and opaque situation with regard to what documents fall within the Order and which do not.

Plaintiffs' failure to specifically identify the documents for which they are seeking relief not only makes specific relief impossible, but it also violates the terms of the Protective Order itself. The Protective Order, agreed to by the parties and entered by the Court on December 6, 2007, sets forth the procedures by which the confidential status of materials designated as falling within the Protective Order must be challenged. The party challenging a confidentiality designation is to identify the challenged documents by Bates number in writing. Protective Order ¶ 12. Only if the parties fail to reach

agreement concerning those documents are they then to engage in motions practice, with the party seeking to preserve confidentiality filing a motion for a protective order. *Id.* The party challenging the designation is to "identify the document" in question in their own briefing to the Court. *Id*. Plaintiffs have failed to follow any of these procedures, and so their motion is procedurally improper and should be denied.

To the extent that plaintiffs have actually put forth evidence in support of their thesis that the Defendants have violated FDA regulations —— possibly implying that it is *this* evidence that they wish to provide to FDA — that evidence consists of two deposition transcripts, *both of which they are free to submit to FDA without any modification to the protective order*. *See* Pls.' Mem., Ex. 4 (discussing deposition of Dr. Pelfrey), Ex. 7 (discussing deposition of Dr. Voigt). Plaintiffs' interpretation of testimony from these two depositions forms the basis for every other claim and accusation made in their motion. But the Defendants have not made either deposition subject to the Protective Order. The Pelfrey deposition has not been designated as confidential by any party, and so does not fall within the scope of the Protective Order. *See* Protective Order ¶ 2 (providing procedure for designation of depositions or portions of depositions as confidential). The Voigt deposition *has* been designated as confidential under ¶ 2 of the Protective Order —— but by the plaintiffs. *See* Voigt Dep. 45:20-24. As they are free to waive their own confidentiality, there is no need for the instant motion with regard to that deposition.

As plaintiffs have not identified by letter to Defendants or by motion any specific documents that are subject to the Protective Order for which they seek relief from the Protective Order, their motion must be denied.[1]

## II. Plaintiffs Have Failed to Establish Any Compelling Public Interest Warranting Relief From The Protective Order.

Plaintiffs' motion for relief from the protective order is really a litigation-driven accusation that Davol committed FDA reporting violations. These accusations (which also can be found in both the *Jones* and *McNeir* complaints[2]) are not the proper subject of common law tort liability, and defendant will be moving for summary judgment on the substantive allegations at the appropriate time. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (FDA is sole arbiter of whether it has been defrauded by

---

[1] Plaintiffs cannot point to the affidavit of Suzanne Parisian as identifying the documents for which they seek relief, because none of the documents cited therein meets the obvious logical criteria to be the appropriate subjects of a motion for relief from a Protective Order in order to provide documents to the FDA: each of the documents is *not subject* to the Protective Order in the first place, or is *already in the hands of the FDA*, or is *not reportable* to the FDA under any applicable regulations. Plaintiffs motion is thus necessarily meaningless as to each of the documents listed by Dr. Parisian.

The affidavit lists the documents that Dr. Parisian reviewed, Aff. ¶ 14, and says that she has reviewed no other materials, Aff. ¶ 52. The documents are, as enumerated by her:

> (a) and (h) - Davol's Complaint Handling and MDR Device Reporting Policy, which has already been provided to FDA by Davol. In (h), she repeats her reference to this same document, this time giving the Bates range of KPRD0021519-KPRD0021561. That range is part of a larger group of documents that was produced to the plaintiffs, commencing with KPRD0021500, which is a letter to FDA from Davol enclosing various documents, including the Complaint Handling Policy.
> (b) - two reports generated by FDA, which obviously are in their possession already;
> (c) and (f) - discovery responses in the *Jones* and *McNeir* cases, which are litigation documents and not FDA-reportable;
> (d) and (g) - the Pelfrey and Voigt depositions, which are not subject to the Protective Order except to the extent that *plaintiffs* assert confidentiality as to the latter;
> (h) - one of the adverse event reports submitted to FDA in the *Jones* case, already in FDA's possession; and
> (i) - recall letters sent by Bard and Davol, which are already in the public domain.

[2] *See* Jones Compl. ¶ 30 (". . . Davol and Bard failed to comply with the FDA . . . reporting requirements"); McNeir Compl. ¶ 34 (same).

misrepresentations made to it or information withheld from it, and state-law claims to the contrary are preempted). Plaintiffs' attempts to rely on these accusations as a basis for lifting the confidentiality order are equally inappropriate and would not only divert the Court onto an irrelevant frolic and detour in this case but would establish a template whereby plaintiffs nationwide could seek to reinject fraud on the FDA allegations into virtually all pharmaceutical and medical device products liability litigation. *See H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 556-557 (D.C. N.Y. 1985) (affirming magistrate's denial of plaintiff's request for modification of a protective order; noting "plaintiffs appear to have attempted to interest various government agencies in the defendants' allegedly unlawful activities. . . . [H]arassment may well be the only motive for the sought after modification."). Nor do the facts support plaintiffs' accusations.

**A. Plaintiffs' claimed basis for seeking relief is based on two faulty premises.**

The poverty of plaintiffs' "public interest" attack is best demonstrated by an examination of the two faulty premises upon which it rests: that Dr. Pelfrey in the *Jones* case provided a Composix® Kugel® Patch to Davol which Davol then failed to report to FDA or investigate, and that Dr. Voigt in the *McNeir* case offered a Composix® Kugel® Patch to a Davol territory manager, who refused to accept it. *Everything else* in the brief – and the affidavit of Suzanne Parisian —— is a chain of inferences and conclusions built upon this foundation. *See, e.g.*, Pls.' Mem. 1 ("Plaintiffs have already uncovered two separate instances where Defendants [violated FDA regulations and their internal

policies]" (referring to the alleged events in *Jones* and *McNeir*)).[3] Defendants will address in turn the two premises upon which all of the rest of the house of cards is built.

Jones. Plaintiffs claim that Dr. Pelfrey provided an explanted Composix® Kugel® Patch to the FDA, but that this was not reflected in the Medical Device Report file provided to plaintiffs in discovery, thus purportedly demonstrating multiple alleged violations of FDA reporting regulations. *See* Pls.' Mem. 5. But Defendants did in fact notify the FDA of their receipt of the Composix® Kugel® Patch in question on August 4, 2006, and fully investigated the matter.[4] Defendants notified the FDA *again* when the *Jones* lawsuit was filed, reporting the allegations made by plaintiffs, but not knowing at the time that the two cases were the same. Now that the identity of the two reports has been brought to its attention, Defendants have reported to FDA the additional fact that the two files are the same, and thus that what was reported as two distinct events was only one.[5]

McNeir. Plaintiffs allege, based on Dr. Voigt's testimony, that a Davol sales representative failed to report an explanted and allegedly defective Composix® Kugel® Patch. Dr. Voigt's actual testimony was his interpretation of one end of a phone conversation that he overheard between a nurse and someone he believed to be a Davol territory manager after McNeir's alleged ring break and removal. Voigt Dep. 119-120

---

[3] Plaintiffs also accuse Defendants, in the alternative, of "knowingly" failing to provide adequate discovery responses. Pls.' Mem. 1. This baseless accusation has nothing to do with any FDA regulation, and they make no attempt to claim that it does, and so it is no basis for relief under the motion that the Plaintiffs have filed. Though the issue is not properly before the Court, Defendants deny that they knowingly failed to provide adequate discovery responses.

[4] The MDR file in question was provided to plaintiffs on June 16, 2008.

[5] This supplemental report, which has been provided to the Plaintiffs, was filed with FDA on July 3, 2008.

(Pls.' Mem., Ex. 7). The surgeon himself never actually spoke to the territory manager or had personal confirmation that he was on the phone. *Id.* Neither the nurse nor the territory manager have been deposed, and plaintiffs have offered no other information to support that a Davol territory manager was in fact informed of the event. The deposition testimony of McNeir's surgeon provides no new information about McNeir's alleged injuries than was provided in the report filed by Davol with the FDA. No portion of the FDA regulations requires reporting of such deposition testimony, which is, in any event, in the public domain to the extent that plaintiffs waive their own assertion of confidentiality over it.

Plaintiffs' accusations are all built on the very shaky foundation of these two premises, which in the first case is demonstrably false and in the second is based solely on speculative hearsay testimony of a witness not involved in the alleged conversation at issue. The affidavit of plaintiffs' expert, Suzanne Parisian, rests entirely on the assumption of the truth of these two premises in order to reach an opinion to a "reasonable degree of medical and professional certainty that Davol/Bard's management has shown a callous disregard for the safety of patients. . ." *See* Parisian Aff. ¶ 51. Because her affidavit ultimately relies on its assumption that it is *true* that Davol never reported receipt of the patch from Dr. Pelfrey (which is false) and that it is *true* that Dr. Voigt offered an allegedly broken patch to a Davol territory manager (which is based on extraordinarily thin assertions that are inadmissible hearsay), Dr. Parisian's affidavit is of no value whatsoever to the Court in evaluating the merits of the Motion. Apart from her recitation of her qualifications and her reliance on plaintiffs' unproven allegations

concerning the *Jones* and *McNeir* cases,[6] Dr. Parisian's affidavit consists of little more than a long series of legal conclusions about violations of regulations —– based on the presumed truth of plaintiffs' allegations —– which invade the province of the Court.[7]

**B. Plaintiffs' claimed basis for seeking relief improperly invades the province of the Food and Drug Administration.**

The basis for plaintiffs' motion for relief from the Protective Order is that the Defendants have committed multiple violations of FDA regulations. *See* Pls.' Mem. 13 ("Plaintiffs point to the repetitious failure of Defendants to comply with FDA's requirements . . . as 'good cause' for the modification of the protective order.") But rather than simply providing to FDA the two deposition transcripts that form the factual basis for their claims that FDA violations have occurred, plaintiffs have chosen instead to seek permission from the Court to have the Protective Order lifted with regard to unnamed and undisclosed "documents" and "discovery." This should be seen for what it is —– an attempt to shift the focus of this litigation to collateral and inflammatory issues. If plaintiffs had provided the transcripts to the FDA, and if *FDA* was concerned based on that evidence that it had been deceived, it could wield its authority and expertise to conduct whatever investigation and pursue whatever course it wished to.

---

[6] *See, e.g.,* Parisian Aff. ¶¶ 24-25 (assuming from Dr. Pelfrey's deposition that Davol did not report receipt of the Composix® Kugel® Patch from Dr. Pelfrey); ¶ 28 (representing based on the uncorroborated hearsay testimony of Dr. Voigt that "[a] Davol/Bard employee had been given the opportunity for access to the patch at the time of explant on April 2, 2007, but refused to accept it").

[7] Dr. Parisian's affidavit should be stricken from the record both for its failure to base its conclusions on any reliable evidence and for its scandalous and impertinent content. *See, e.g.,* Parisian Aff. ¶ 47 (stating that in 1993 Bard was fined and executives indicted for regulatory violations). Defendants will move to strike the affidavit on these grounds after deposing Dr. Parisian in order to establish an appropriate record to support the motion to strike.

Plaintiffs' motion instead takes the course of trying to turn this Court into a branch office of the FDA by urging the Court to make determinations that are solely the province of the FDA to make. *See Buckman Co.*, 531 U.S. 351. Plaintiffs' apparent contention is that FDA —— despite having conducted audits of Davol's adverse event reporting system —— would fail to properly evaluate the purportedly damning deposition testimony and enforce its own regulations without the Court stepping in to perform for it the function of determining whether violations occurred and when and whether further investigation is warranted. If the Court opens the door to this sort of unsubstantiated argument, courts will repeatedly be confronted with plaintiff allegations that the FDA has been defrauded by misrepresentations or underreporting in deciding whether to modify protective orders. This would raise again the specter that the Supreme Court sought to put to rest in *Buckman* when it ruled that state-law claims of fraud on the FDA are preempted. If fraud-on-the-FDA becomes a subject of litigation in the new context of lifting protective orders, the Supreme Court's concerns in *Buckman* about the second-guessing of FDA decisions, the FDA being flooded with unwanted and unneeded submissions by worried manufacturers and by third parties, and manufacturers being subjected to multiple standards instead of a single *expert* standard —— that of the FDA itself —— will once again come to the fore. This Court should reject the plaintiffs' invitation to open that door again.

**C. There is no legal basis for the relief that Plaintiffs seek.**

If plaintiffs truly were motivated by the public interest, rather than a desire to harass the Defendants, they would have simply provided the deposition transcripts at issue to FDA and allowed FDA to proceed in the ordinary course. To the extent FDA

had any need to obtain documents produced in this litigation, it could readily seek such relief itself. The "procedurally appropriate way for a third party to gain access to protected discovery materials is through a Fed. R. Civ. P. 24 motion to intervene." *Mass. v. Mylan Labs., Inc*. 246 F.R.D. 87, 93 (D. Mass. 2007) (citing *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988)). Moreover, FDA has ample authority to obtain any information it deems necessary directly from Defendants and thus would be able to "reasonably obtain the information through alternative means." *Id.* at 92 (citing *SmithKline Beecham Corp. v. Synthon Pharms., Ltd.*, 210 F.R.D. 163, 168 (M.D.N.C. 2002)). "Even when a legitimate reason for the modification [of a protective order] is proposed, such as a need to use the information in other litigation, the movant still should show the inability to reasonably obtain the information by alternative means." *Id.* at 92 (citations omitted).

The FDA would be the appropriate party to seek any materials actually protected by the Protective Order and not already in their hands —– none of which have yet been identified —– should it choose to do so. Plaintiffs have offered *no* support for their contention that the protective order should be modified at this early stage of the discovery process to allow *plaintiffs* to disseminate unidentified, supposedly confidential materials to a third party government entity. In fact, plaintiffs rely almost exclusively on case law involving modification of a protective order on the motion of a third-party intervener, not by a party in the case who wants to disseminate confidential information to others outside of the litigation;[8] case law involving disclosure of non-confidential materials;[9] and case law where the parties had progressed well past the discovery stage of litigation.[10]

---

[8] *See, e.g.* Pls.' Mem. 10-11, 16 n.4 (citing *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 778 (1st Cir. 1988) (third-party motion to intervene by party seeking access to particular

The sole case offered by plaintiffs in which the *plaintiffs* sought relief from a protective order to provide discovery materials to a government agency and were granted that relief is the unreported *Beals v. General Motors Corp*., No. Civ. A. 85-825-WF, 1989 WL 384829, at *1 (D. Mass. Dec. 4, 1989), which is far different from the case at hand. In *Beals*, the plaintiffs were given permission to provide documents to the National Highway Traffic Safety Administration, which the Court explicitly noted did not have criminal prosecution powers (unlike the FDA). *Id.* at *2 n.1. The protective order in question, unlike the one in this case, did *not* require the parties to identify documents they were challenging or to confer with the opposing party in advance, *id.* at *2, and there was no indication that the documents in question had already been provided to the government agency or were not subject to the Protective Order in the first place, as is the case here, *id.* Moreover, the *Beals* decision turned in part on the fact that the defendants did *not* assert that unfair prejudice or harm would come from the dissemination of the

---

documents after the conclusion of the case); *Anderson v. Cryovac*, 805 F.2d 1, 8 (1st Cir. 1986) (denying intervener newspaper's motion to amend a protective order for public access in toxic tort case); *U.S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co*, 210 F.R.D. 257 (D. Mass. 2002) (granting intervening newspapers' request for access to non-privileged documents); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 101 F.R.D. 34 (C.D. Cal. 1984) (granting intervener Wall Street Journal's request for public access to non-trade-secret pre-trial materials in petroleum class actions)).

[9] *See, e.g.,* Pls.' Mem. 10-11(citing *Franklin*, 210 F.R.D. at 261 (allowing modification of protective order to provide dissemination of *non-confidential* materials not protected by Protective Order)).

[10] *See, e.g.,* Pls.' Mem. 11 (citing *In re Agent Orange Prod. Liab. Litig,*, 98 F.R.D. 539, 547-8 (E.D.N.Y. 1983) (allowing modification of protective order to disseminate documents attached to *summary judgment motions*, and noting that "the public right of access to court records and proceedings *does not* usually include access to discovery material") (emphasis added).

documents to the agency, but argued only that a protective order was necessary in general to protect their trade secrets. *Id.* at *2.[11]

Plaintiffs have simply failed to set forth any legal support for their baseless assertion that the protective order should be modified to allow them to disseminate unidentified materials to the FDA and therefore this Court should deny plaintiffs' motion.

**Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court dismiss plaintiffs' Motion for Modification and Partial Relief as to the Protective and Confidentiality Order as moot. Should plaintiffs seek to challenge any specific documents or materials designated as "confidential," this Court should require plaintiffs to follow the procedures to challenge the confidentiality of documents set forth in the Protective and Confidentiality Order in this case.

Dated: July 7, 2008

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

s/ Kirby T. Griffis

Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J. Cople, III
1350 I Street NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendant C.R. Bard, Inc. and Defendant Davol Inc.*

---

[11] Defendants have not made the argument here, either, that they would be prejudiced or harmed by a disclosure of documents to the FDA, but only because they *cannot* do so given that the plaintiffs have identified no documents that are subject to the Protective Order and not already in the hands of FDA. Had they done so, and depending on the documents, Defendants may have made such an argument in response to their motion.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2008, the foregoing OPPOSITION TO PLAINTIFFS' MOTION FOR MODIFICATION AND PARTIAL RELIEF AS TO THE PROTECTIVE ORDER was electronically filed with the Clerk of Court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
MOTLEY RICE, LLC.
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
*(electronic notice)*

/s/ Kirby T. Griffis