**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**Collins v. Davol Inc., et al,**<br>**CA No. 1:07-cv-1858-ML-LDA** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **MDL Docket No. 07-1842-ML**<br><br>**Chief Judge Mary M. Lisi** |

**DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S**
**<u>MOTION TO STRIKE AND FOR COSTS</u>**

Defendants Davol Inc. and C.R. Bard, Inc. (collectively "Defendants") respectfully submit this motion to strike plaintiffs' Motion for Sanctions and for costs. Plaintiffs' Motion for Sanctions disclosed information concerning confidential settlement positions taken by the Defendants during the court-ordered early neutral ADR process. As discussed more fully in the attached memorandum of law, Plaintiffs violated the confidentiality that protects the ADR settlement discussions, disparaged the integrity of Defendants and their counsel without any basis in law or fact and mischaracterized the purpose and nature of the early neutral ADR evaluation process.

Dated: June 16, 2008

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

s/ Kirby T. Griffis
Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J. Cople, III
1350 I Street NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendant C.R. Bard, Inc. and Defendant Davol Inc.*

655703v1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2008, the foregoing DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC'S MOTION TO STRIKE AND FOR COSTS was served upon the Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
Motley Rice LLC
321 S. Main Street
Providence, RI 02903
Fax: (401) 457-7708
Email: dmigliori@motleyrice.com
*via electronic mail*

s/ Kirby T. Griffis



555325v1
655703v1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO: Collins v. Davol Inc., et al, CA No. 1:07-cv-1858-ML-LDA** | § | **Chief Judge Mary M. Lisi** |

**DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE AND FOR COSTS**

On June 12, 2008, Plaintiffs publicly filed a Motion for Sanctions which disclosed information concerning confidential settlement positions taken by the Defendants during the court-ordered early neutral ADR process. When asked by counsel for the defense the same afternoon that it appeared on the ECF system to withdraw the motion, plaintiffs' counsel flatly refused. The motion should be stricken as a violation of the confidentiality that protects settlement discussions. The motion should also be stricken because it disparages the integrity of Defendants and their counsel without any basis in law or fact and mischaracterizes the purpose and nature of the early neutral ADR evaluation process, and thus is unreasonable and vexatious. Defendants should be awarded their costs for bringing this motion.

## Argument

### I. Plaintiffs' Motion Should Be Stricken For Intentionally Disclosing Details Concerning The Parties' Confidential Mediation Talks.

Alternative dispute resolution in this Court is governed by the Court's Alternative Dispute Resolution Plan, which is incorporated by reference into the first sentence of the Notice of Settlement Conference for this case. *See* Collins Notice of Settlement Conference (Ex. 1). The Court's ADR Plan explicitly prohibits disclosure of ADR information to anyone:

> **The parties** and the ADR provider **shall not disclose information** regarding the process, **including settlement terms,** to the Court or **to third persons unless all parties otherwise agree.**

ADR Plan (Ex. 2) at 6 ¶ VIII (emphasis added).

Notwithstanding this unqualified prohibition, Plaintiffs' publicly-filed memorandum in support of their motion states on the first page that the Defendants "did not make any offer of settlement." There has been no agreement between the parties permitting the disclosure of information related to the ongoing early neutral ADR evaluation process. Thus, by filing their motion and refusing to withdraw it, Plaintiffs have deliberately violated the Court's rules concerning the ADR process.[1] Plaintiff's motion is even more egregious because Defendants cannot respond to it in the same public forum chosen by the plaintiffs without themselves violating the Court's orders concerning ADR confidentiality.

It is impossible to read plaintiffs' statement that the Defendants "did not make any offer of settlement" as being anything other than "information regarding the settlement process." That publicly-filed information has already been widely reported to at least the legal community at large. *See* Ex. 3 (June 13, 2008, Product Liability 360 article reporting on Plaintiffs' motion). Even if there were *no* evidence that anyone viewed the filing – clearly not the case here – a party may properly be sanctioned for violating the confidentiality of a settlement proceeding. *See, e.g., Baella-Silva v. Hulsey*, 454 F.3d 5, 11 (1st Cir. 2006) (upholding sanctions against a party who electronically filed motion containing confidential settlement terms thereby violating confidentiality

[1] Plaintiffs' motion would have violated the Court's confidentiality rules even if filed under seal, since ¶ VIII of the ADR Plan also bars disclosure by the parties or the ADR provider *to the Court* of "information regarding the process, including settlement terms." Defendants have

clause of settlement agreement); *Tokerud v. Pacific Gas & Elec. Co.*, 25 Fed. Appx. 584, 586 (9th Cir. 2001) (holding district court abused its discretion by failing to address issue of monetary sanctions based on defendants' alleged violation of confidentiality agreement).

Plaintiffs' motion should be stricken for deliberately violating this Court's rules concerning the confidentiality of ADR discussions, and defendants should be awarded their costs for bringing this motion.

## II. Plaintiffs' Motion Should Be Stricken As Unreasonable and Vexatious For Mischaracterizing Both the Factual History and the Purpose of the Early Neutral ADR Evaluation Process.

Because Plaintiffs' motion is baseless legally and factually, it should be stricken for the independent reason that it is unreasonable and vexatious. *Cf.* 28 U.S.C. § 1927 (providing for costs and expenses against an attorney who unreasonably and vexatiously multiplies proceedings).

### A. The orders of the Court created no requirement that Defendants make settlement offers regardless of the merits of the case, nor that they advise Plaintiffs' counsel that Defendants evaluated a case as meritless.

This Court *sua sponte* ordered the parties to participate in early neutral ADR evaluation of ten cases unilaterally selected by Plaintiffs, with the explicit expectation that this early evaluation by an experienced magistrate would materially advance this litigation as a whole:

> THE COURT: Let me make a suggestion to you because, as I understood this when the case first came in, it really was on product failure ring breaks. That's how I understood it.
>
> Now, I may be informed later on that it's something more than that, but I understood and most of the individual cases I've read seem to be saying just that. And it occurred to me as I was reading the individual cases, I think I recall one death that is attributed and then there are gradations of injury that have occurred with multiple repair surgeries and long hospitalizations, everything from that end

---

now authorized the disclosure of this information to the Court under seal – *see infra* fn. 4 - but had not done so or been asked to do so when the motion was filed.

> to someone who ended up in the ER, they did an MRI, took it out and is doing fine.
>
> . . . .
>
> I would like to pull [Magistrate Lovegreen] into this. . . . **So if I can get him on board to work with you on what I call a more representative group of these real ring break cases so that both sides get a sense of where we are, sort of an early neutral evaluation, if not an actual settlement conference, so that you know what the ballpark is, this side knows what the ballpark is, and then as you approach each of the other hundreds of individual cases out there, I think you'll have those numbers in mind. And his observations, I think those would be very, very helpful for you to have.**

Hearing Tran., October 30, 2007 at 26:9-22; 27:10-22 (Ex. 4) (emphasis added). The Court's focus was clearly on providing the parties with the benefit of the observations of an early neutral evaluator, and not to force or require actual settlements at this stage.[2]

Plaintiffs contend that the early neutral evaluation of the *Collins* case was "futile" and that they should have been advised in advance of this by Defendants. But the primary purpose of

---

[2] Defendants will address Plaintiffs' spurious legal arguments for why they should be sanctioned in more detail in their opposition to that motion, should one be necessary, but the case law is clear that defendants have not "defied a Court Order" or Rule 16 in any respect. Rather, Defendants attended the Court-scheduled mediation, came to the mediation fully briefed on the *Collins* case, and brought with them a representative of the Defendants with full authority to settle the case. The decision *not* to settle a case is not sanctionable under Rule 16. For example, the court in *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 653 (7th Cir. 1989), explained that:

> If this case represented a situation where [defendant] had sent a corporate representative and was sanctioned because that person refused to make an offer to make money- that is, refused to submit to settlement coercion- we would be faced with a decidedly different issue- a situation we would not countenance.

*Id; see also Kothe v. Smith*, 771 F.2d 667, 670 (2nd Cir. 1985) (purpose of Rule 16 is not to "impose settlement negotiations on unwilling litigants") (citing Rule 16 Advisory Committee notes, 1983); *Zdravkovic v. U.S.*, No. 01 C 5893, 2002 WL 31744668, at *1 (N.D. Ill. Dec. 5, 2002) (granting sanctions for counsel's behavior at mediation, but stating determination had "nothing to do with whether a settlement is reached in this case or not. Each party has the absolute right to decide whether to settle a claim or to proceed to judgment.").

Each of the cases cited by plaintiffs in support of their "futility" argument in fact address the failure by a party to attend the conference with a representative who had full settlement authority. *See, e.g., Pitman v. Brinker Intern., Inc.* 216 F.R.D. 481, 483, 486, 487 n.15 (D.Ariz. 2003) (granting sanctions against a party because they failed to advise the court that a settlement conference would have be futile act *given their failure to attend with a person* who had "full and complete" settlement authority). *Id.* at 486, 487 n.15. The *Pitman* court's ruling was based on their holding that "settlement negotiations must take place in the physical presence of the parties and qualified representatives from both sides." *Id.* at 486. Here, Greg Dadika, the Assistant General Counsel of Litigation for C.R. Bard, Inc., was fully

the evaluation was to allow "both sides [to] get a sense of where we are" and to "know what the ballpark is." Hearing Tran. at 27:15-19. The Court stated that Magistrate Lovegreen would "measure for you and he's going to give you his eyeball on what the case is worth, and I think that that's valuable information that both sides should have on a going-forward basis." *Id.* at 31:16-19. That purpose was amply achieved by the early neutral evaluation process from June 11 to June 13, including in the *Collins* case.[3]

### B. Plaintiffs knew before the settlement conference that their case lacked merit.

In the October 30, 2007, hearing in which the early neutral ADR evaluation process was explained by the Court, the Court gave the plaintiffs instructions about the cases to be selected for the process: they were to select six to ten *ring break cases* with *injuries*. *See* Hearing Trans. at 30:10-11, :14, :16-20:

> THE COURT: I'm talking about those cases where there's had to be a repair.
> ....
> THE COURT: Where there's been a break.
> ....
> THE COURT: Because those, you're not going to walk away from those. The reality is, if you've had a break and it's punctured some internal organs, you've got somebody who is really sick and had to have repair surgery.

---

prepared for and physically attended the *Collins* ADR and the other five held last week with full authority to settle the cases as appropriate.

[3] Defendants cannot say more, even under seal, about the extreme utility of the process in all of the cases, including *Collins*, based on the information provided by Magistrate Lovegreen about his valuation of the cases and how that valuation compared to those of the respective sides. See ADR Plan at 6 ¶ VIII (barring disclosure even to the Court of "information regarding the [ADR] process.") **So that this Court may be informed regarding the utility of the early neutral ADR evaluation process that it ordered and the baselessness of Plaintiffs' allegations that Defendants participated in any aspect of that process in bad faith, Defendants hereby authorize the full disclosure to the Court, but not to the public, of the settlement positions that it took and the case valuations provided to them by Magistrate Lovegreen, subject to Plaintiffs authorizing the same.** If Plaintiffs similarly authorize disclosure and this information is provided to the Court, either Defendants or Magistrate Lovegreen himself can provide the Court with information that Defendants believe would be highly relevant to the disposition of both this motion and Plaintiffs' Motion for Sanctions. Defendants are currently unable to set forth these facts due to the ADR confidentiality rules.

The medical records for Mr. Collins make clear that he did *not* have a ring break but had cut rings from an operation in which the surgeon deliberately cut through most of the patch and then sewed it back together, and did *not* have any meaningful injury even from the free rings caused by the cutting of the patch. Even if Plaintiffs have not discerned this prior to deposition discovery, the deposition of Collins' surgeon, Dr. Daniel, left no doubt as to the lack of merit of this case. First, Dr. Daniel made clear that he deliberately cut the Composix® Kugel® Patch – and its memory recoil ring(s) – during a surgical procedure conducted just months prior to the appearance of any of Collins' symptoms related to a supposed memory recoil ring break, and that had he been warned not to cut the Patch, he would have done exactly as he did anyway.[4]

Plaintiffs' counsel was aware of the lack of merit of their case as an appropriate candidate for the early neutral ADR evaluation process by the time of Dr. Daniel's deposition. Immediately after the deposition, Mr. Junk, the attorney representing the Defendants, told Mr. Hunt, the attorney representing Mr. Collins, that it was now beyond dispute that there was no product defect at issue in the Collins case. Mr. Junk also told Mr. Hunt that it was less than clear how the Collins case fit into the mediation plan at all. Mr. Hunt essentially agreed, saying that it took him only a short time in reviewing Collins' medical records (just prior to the deposition) to

---

[4] During an exploratory surgery in February 2004, Dr. Daniel cut through the pre-existing Composix® Kugel® Patch. (Daniel Dep. at 140:8-16.) During that procedure he did not note any problems with the Patch. (Daniel Dep. at 144:1-7.) He does not recall the length of the incision that extended through the Patch, nor does he recall whether he divided the Patch completely in half. (Daniel Dep. at 140:17-20; 140:24-141:3.) He admitted that he did not try to avoid either of the two memory recoil rings during the procedure, nor did he have reason to. (Daniel Dep. at 141:20-142:1.) It was only *after* the February 2004 exploratory procedure that Collins developed a protrusion and pain in his lower right quadrant. (Daniel Dep. at 148:3-148:8.) The protrusion turned out to be a memory recoil ring that had migrated into the subcutaneous space above the Patch, which Dr. Daniel then safely removed. Dr. Daniel also testified, when asked if he would have refrained from cutting the patch as he did had he known that doing so could have "dire consequences" for Mr. Collins, that he would still have done exactly what he did. (Daniel Dep. at 178:14-24.)

determine that Dr. Daniel had cut the Patch. He also stated that the case was a bad choice by Plaintiffs for the ADR process. *See* Aff. of Michael L. Junk (Ex. 5).

Plaintiffs cannot credibly say that they were surprised by Defendants' position regarding the lack of merit of their case, which should not have been included in the ADR process in the first place and should at a minimum have been withdrawn from the process following Dr. Daniel's deposition. If any injustice was done to Mr. Collins, it was that he was led to believe by his counsel that he had a meritorious case. Pursuant to the Court's original mandate Plaintiffs should have never selected this case for ADR resolution. Barring that, they should have withdrawn this case from the ADR process before they brought Mr. Collins to Providence, Rhode Island, on the representation that he had a "representative ring break" case.

## Conclusion

Plaintiffs deliberately violated an Order of this Court by publicly disclosing information regarding an early neutral ADR evaluation in their Motion for Sanctions and compounded that violation by refusing to withdraw the motion when promptly asked to do so by counsel for the Defendants. Their motion is unreasonable and vexatious because it misrepresents the Orders of this Court regarding the nature and purpose of the early neutral ADR evaluation process and misrepresents the factual history of this case, which was improperly selected by plaintiffs to be a part of that process. Its vexatiousness is compounded by the fact that Defendants cannot publicly defend themselves against the public accusations made by the Plaintiffs in violation of the Court's rules. The Motion for Sanctions should be stricken on both bases and Defendants should be awarded their costs of bringing this motion.[5]

---

[5] The filing of Plaintiffs' motion also warrants Rule 11 sanctions for these same reasons. Defendants will serve their Rule 11 motion on Plaintiffs and abide by the 21-day statutory period prior to filing.

Dated: June 16, 2008

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

s/ Kirby T. Griffis
Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J. Cople, III
1350 I Street NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendant C.R. Bard, Inc. and Defendant Davol Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2008, the foregoing DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE AND FOR COSTS was served upon the Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
Motley Rice LLC
321 S. Main Street
Providence, RI 02903
Fax: (401) 457-7708
Email: dmigliori@motleyrice.com
*via electronic mail*

s/ Kirby T. Griffis



655707v1