**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **In re KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION** | § § | **MDL Docket No. 07-1842-ML** |
| | § | |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | § § § § | **JUDGE LISI** |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO AMEND THE PLAINTIFF FACT SHEET AND FOR PROTECTION FROM FURTHER PRODUCTION OF TAX AUTHORIZATIONS WHERE NO LOST WAGES CLAIM IS BROUGHT**

Plaintiffs, by their attorneys, for their reply in support of their Motion for the entry of an order granting them leave to amend the Plaintiff Fact Sheet ("PFS") to explicitly exclude the production of tax record authorizations and prohibiting the discovery of tax records in cases where the Plaintiff has *not* brought a claim for lost wages, lost income or other economic damages, state as follows:

## ARGUMENT

### I. That Plaintiffs' Did Not Object to the Magistrate's Order Granting Defendants' Motion to Compel Does Not Make Their Motion to Amend Improper

Defendants contend that Plaintiffs have waived their right to move this Court to amend the PFS because they did not file an objection to Magistrate Judge Almond's May 2, 2008 order granting Defendants' Motion to Compel. Defendants misunderstand the nature of this motion. Plaintiffs have not engaged in a "collateral attack" on the Magistrate's substantive decision. In fact, Plaintiffs have no reason whatsoever to attack that decision, which acknowledged that their relevancy argument "may well have merit." [See Text Order of May 2, 2008]. Magistrate Judge Almond did not rule on any substantive issue that is at odds with this motion, but merely held

that procedurally, "[i]f Plaintiffs wish[ed] to revise the PFS … triggering a motion to compel [wa]s not the appropriate route." *Id.* Far from implying that Plaintiffs should under no circumstances be allowed to alter the requirements of the PFS, the Magistrate Judge's decision impliedly *instructs* Plaintiffs to follow the "appropriate route" and seek an amendment. That is exactly what Plaintiffs have done.

## II. Plaintiffs Have Adequately Explained the Need to Amend the PFS

Plaintiffs have firmly established a need to amend the PFS. In the memorandum in support of their Motion, Plaintiffs make several reasoned arguments in support of amending of the PFS. First, there is a general public policy against disclosure of tax records. Committee Comments to Fed. R. Civ. P. 26 (*citing Wiesenberger v W. E. Hutton & Co.*, 35 F.R.D. 556 (S.D.N.Y. 1964). Second, tax records are simply not relevant where Plaintiffs are not claiming lost wages, income or other economic damages. *See e.g., In re Lupron Mktg. & Sales Practices Litig*., MDL No. 1430, 2004 U.S. Dist. LEXIS 10224 (D. Mass., March 2, 2004). Such is the case here. Third, any relevant information contained in these tax records is otherwise available to Defendants and not discoverable. *Pedraza v. Holiday Housewares, Inc*., 203 F.R.D. 40, 43 (D. Mass. 2001). Finally, Plaintiffs explain that they never intended on agreeing to such an unreasonable reading of the PFS, and never intended on the disclosure of irrelevant and private tax information. In light of the "substantial leeway" afforded a district court in amending pre-trial orders and managing discovery, *see Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926, 930 (1st Cir. 1991), Plaintiffs have provided sufficient evidence of the need to amend the PFS.

In their opposition, Defendants demonstrate the same rigidity that led to the parties' misunderstanding in this case. Claiming, for example, that *Mitsui & Co. v. Puerto Rico Water Resources Authority*, can only be read to hold that tax returns must "reasonably appear [to be]

relevant and material to the matters at issue" (Opposition at 2 (*citing Mitsui*, 79 F.R.D. 72 (D.P.R. 1978)), and that Plaintiffs were somehow wrong to cite this case as an example of a court holding production of tax records was only required because the plaintiff clearly put his income at issue, merely demonstrates an affinity for sophistry. The court in *Mitsui* found the tax returns reasonably appeared to be relevant *precisely because* the plaintiff in that case put his income at issue. *See also Ellis v. City of New York*, 243 F..D. 109 (S.D.N.Y. 2007) (holding that a party's tax returns are not relevant where the party is not claiming lost wages or other losses related to his income). Plaintiffs do not dispute the fact that where a plaintiff puts her income at issue (such as in *Mitsui*) tax returns are discoverable and may be requested. However, that is irrelevant to the issue at hand.

Defendants also claim "a key factor omitted by plaintiffs" is that it is "the party resisting disclosure [who] bears the burden of establishing alternative sources for the information." Opposition at 2 (*quoting Buntzman v. Springfield Redevelopment Authority*, 146 F.R.D. 30 (D. Mass. 1993). However, Defendants never even bother to explain in their Brief what relevant information they seek through discovery of Plaintiffs' tax returns – or why that unidentified information is relevant. As such, Defendants seek to require Plaintiffs to demonstrate alternative sources for undisclosed types of information. Nevertheless, Plaintiffs have clearly established that alternative sources for *any* information Defendants might seek exist. Under the PFS, Plaintiffs are already required to provide the dates, employer's names and addresses and descriptions of any conditions causing health-related work absences. Motion at 10. They are also required to produce their medical records and offer their treating physicians for depositions. *Id.* at n. 12. Finally, Plaintiff's themselves will be available for deposition. For these reasons, similar information that could be learned from a review of Plaintiffs' tax returns is also available

through alternative means and Defendants' have no right to these private tax documents. Moreover, to the extent Defendants – through the considerable discovery they are already afforded – uncover a basis for requesting additional discovery or demonstrate a need for (and the relevance of) the tax records of a Plaintiff not bringing a claim for lost wages, they can first try to obtain agreement of Plaintiffs' counsel to provide that information, or ask the Court to order production of that information on a case-by-case basis. For Defendants to ask the Court to allow the wholesale production of this private and irrelevant information is just plain wrong. As such, the PFS should be amended to protect Plaintiffs' (and Plaintiffs' family members') privacy.

## III. Defendants Seek Irrelevant Information – Whether Plaintiffs Agreed to Provide All "Requested" Authorizations is Simply Beside the Point

Defendants seek to distinguish every case cited in Plaintiffs' brief by stubbornly asserting that here, unlike in those cases, Plaintiffs have already agreed to provide the documents at issue. Given the extensive briefing, however, both on this motion and the motion to compel, Defendants' assertion that it is "not seeking the tax authorizations over plaintiffs' opposition" (Opposition at 3) is simply wrong. Repeatedly claiming that Plaintiffs have waived all relevance objections with the use of the word "requested" instead of "relevant" in the CMO, Defendants attempt to force an unreasonable construction of that document, one not contemplated by Plaintiffs during negotiations. In fact, it is doubtful whether this construction was even contemplated by Defendants at the time the CMO was executed, as tax record authorizations were not included in the initial packet of PFS authorizations, but were instead provided to Plaintiffs' counsel months later.

Defendants unreasonably believe their dogged adherence to the strict wording of the CMO will allow them to take advantage of an undiscovered misunderstanding between the parties. Defendants unreasonably believe that the use of the word "requested" allows them to

continue to *request* irrelevant and private information. Whatever one's view about the prior agreement between the parties, the issue in this Motion is whether irrelevant and extremely private information should continue to be discovered or, as Plaintiffs claim, the PFSs should be amended to only require relevant information.

### IV. If the Tax Records of a Plaintiff Not Asserting a Loss Wages Claim are Relevant and Discoverable, then the Tax Records of Each and Every Employee that Defendants Offer as a Witness are Likewise Relevant and Discoverable

If, as Defendants suggest, tax records are "both directly relevant and … likely to lead to the discovery of additional admissible evidence," even in the absence of a claim for lost wages, and even where other documents can supply any possible relevant information contained therein, then Defendants should not object to Plaintiffs requesting the same documents from each and every one of Defendants' witnesses in this case.

Indeed, Defendants' original argument (in their Motion to Compel) for why these tax records are relevant is simply that they *might* "reveal information that was inadvertently omitted from the PFS," including omissions such as "employers and sources of income…." [Docket No. 674, p. 3]. If Defendants are entitled to request private tax returns – where the information is not directly relevant to a claim or defense – simply in order to double-check Plaintiffs' PFSs, then Plaintiffs are surely entitled to do the same to Defendants' witnesses. The tax returns of Defendants' employees-witnesses would provide this very same so-called-relevant information (employers and sources of income), and would be likewise discoverable. Surely, Defendants will claim this is not necessary because their witnesses' income and financial worth is not at issue. But Plaintiffs are making the same argument – as these Plaintiffs are not claiming lost wages.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court grant their Motion and enter an Order allowing them leave to amend the Plaintiff Fact Sheet to explicitly exclude the production of tax records authorizations and prohibiting the discovery of tax records in cases where the Plaintiff has not brought a claim for lost wages, lost income or other economic damages. Plaintiffs also request a protective order preventing further discovery on the tax records of Plaintiffs (not bringing claims for lost wages) who have already provided tax records authorizations to Defendants.

Respectfully submitted,

Dated: July 11, 2008

/s/ Donald A. Migliori
Donald A. Migliori (#4936)
MOTLEY RICE LLC
321 South Main Street, Suite 200
Providence, RI 02903
401-457-7700
401-457-7708

***MDL-1842 Plaintiffs' Liaison Counsel***

**CERTIFICATE OF SERVICE**

I, Donald A. Migliori, hereby certify that a copy of the foregoing Plaintiff's ***REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO AMEND THE PLAINTIFF FACT SHEET AND FOR PROTECTION FROM FURTHER PRODUCTION OF TAX AUTHORIZATIONS WHERE NO LOST WAGES CLAIM IS BROUGHT*** was electronically filed. Those attorneys who are registered with the Electronic Filing System may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's Electronic Filing System.

Dated: July 11, 2008

/s/ Donald A. Migliori
Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
Suite 200
Providence, RI 02903
401-457-7700
401-457-7708 FAX