**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | § | **Chief Judge Mary M. Lisi** |

**DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE THE AMENDED CASE MANAGEMENT ORDER AND PERMIT COMMUNICATIONS WITH CONSULTING SURGEON EXPERTS WHO ARE ALSO TREATING PHYSICIANS**

Defendants seek an Order that they may resume communications with their consulting surgeon experts, regardless of whether they may also be treating physicians for a plaintiff in this litigation, in the light of Plaintiffs' position that the *ex parte* Order bars all such communications. *See In re Seroquel*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 821889, at *4 (M.D. Fla. Mar. 21, 2008) (allowing retention of treating physicians as consulting experts notwithstanding bar on *ex parte* contacts). Plaintiffs' interpretation of this Order is contrary to the original and Amended Case Management Orders ("CMO" and "Amended CMO"), has no basis in the *ex parte* Order itself or in any case law addressing the issue, and would literally prevent Defendants from consulting with *any* qualified surgeon expert in this litigation.

**HISTORY OF THIS ISSUE**

Both the original CMO, agreed to by the parties and entered by the Court on December 6, 2007 and the Amended CMO, agreed to by the parties and entered by the Court on January 30, 2008, explicitly recognize that "Counsel for Bard and Davol have been contacting and will continue to contact potential consulting and testifying medical experts. Should counsel for Bard and Davol learn that any of those experts is a treating physician for any plaintiff, counsel for

Bard and Davol will refrain from discussing the medical history of that plaintiff, and will inform the physicians of this restriction." CMO at 6 ¶ VI.D.vii.3 (Doc. 66); Amended CMO at 6 ¶ VI.D.vii.3 (Doc. 257). The CMO and Amended CMO also recognize that Defendants would not conduct "ex parte communications about any particular plaintiff" without either agreement from plaintiffs' counsel or an appropriate order of the Court. CMO at 6 ¶ VI.D.vii.1; Amended CMO at 6 ¶ VI.D.vii.1.

On December 27, 2007, acting under ¶ VI.D.vii.1 of the CMO, Defendants moved for the right to conduct affirmative discovery by means of substantive *ex parte* contacts in those states which permitted such contacts. (*See* Mem. of Law in Support of Mot. Seeking *Ex Parte* Contacts with Pls.' Treating Physicians (Doc. 77) at 1). Plaintiffs argued that such substantive discovery should not be permitted, and that a uniform rule should be applied to all cases subject to the MDL barring discovery through informal *ex parte* contacts. *See* Pls' Mem. of Law in Opposition to Defendants Mot. Seeking *Ex Parte* Contacts with Pls' Treating Physicians (Doc. 171). Magistrate Almond denied Defendant's motion to conduct informal discovery through *ex parte* contacts in the states where it is ordinarily allowed.

Subsequently, after Plaintiffs repeatedly failed to provide notices of deposition in a timely fashion to treating physicians whom Defendants wished to depose, Defendants began issuing notices of deposition directly to the physicians, contemporaneously copying plaintiffs' counsel. Plaintiffs' counsel strenuously opposed this as a violation of the *ex parte* order which, they argued, barred *all* direct contacts with treating physicians. Defendants moved to clarify the *ex parte* Order on this issue, and the motion was discussed at the June 17, 2008, MDL conference. In their motion to clarify, Defendants, concerned about Plaintiffs' intransigent and absolutist interpretation of the *ex parte* order as forbidding not only *ex parte* contacts – *i.e.*,

substantive contacts concerning the care and treatment of particular plaintiffs – but also *any* communications with treating physicians, raised the issue of their ongoing communications with consulting surgical experts who have or may have treated plaintiffs. When Defendants stated at the June 17, 2008, MDL hearing that they intended to continue their practice of communicating with consulting expert witnesses, Plaintiffs' counsel said "I'm okay with that," but asked that Defendants disclose the names of their consulting experts. (June 17, 2008, Hearing Tr. 39-40). Defendants asserted their right not to make such a disclosure, *id.*, and in response Plaintiffs requested and received a bar on Defendants communicating with consulting experts until the issue had been resolved.[1] *Id.* at 41.

In their Opposition to the Motion to Clarify, filed on June 20, 2008, Plaintiffs for the first time took the position that Defendants were not entitled to communicate at all with consulting experts who had also treated a plaintiff. (*See* Pls' Response in Opposition to Defendants' Mot. Seeking Clarification of Order Prohibiting *Ex Parte* Contacts with Pls' Treating Physicians) (Doc. 1133). Defendants responded to this position in their reply brief, but Magistrate Almond, finding that the issue was not properly before him, did not rule on it. (*See* July 21, 2008, Order 2 ("Defendants' Motion presents a narrow request for clarification related only to deposition scheduling and document production."); 3 (declining to address issue of expert witness communications as "there is no further request pending before the Court [on that issue]."")).

Defendants now move to have the Court enforce the Amended Case Management Order and rule that they are entitled to resume their longstanding practice of retaining and communicating with consulting surgeon experts, whether or not the experts have treated current or possible future plaintiffs in this litigation. As they have been doing all along, Defendants will

---

[1] Except to explain that they could not currently communicate with them for legal reasons, Defendants have not communicated with their surgeon consulting experts since that hearing.

(1) advise the expert that they do not wish to discuss their care and treatment of any plaintiff; (2) will not have an expert comment on or review the medical file of any plaintiff whom they treated at any time; and (3) will reiterate these restrictions should they become aware that the expert has treated a particular plaintiff. Defendants will also provide their consultants with a copy of the appropriate orders governing this issue once they are issued.

## ARGUMENT

### I. The Agreed Case Management Order And Amended Case Management Order Explicitly Contemplates The Retention Of Consulting Experts Who Are Also Treating Physicians.

The original Case Management Order was negotiated by the parties and finally entered by the Court on December 6, 2007. Both it and the Amended Case Management Order entered by the Court on January 30, 2008 contain the following language:

> vii. To resolve disagreements regarding the ability of Defendants to have ex parte contact with any treating physician, whether it be the result of Defendants seeking medical records of a plaintiff that has provided a PFS or by some other means, the parties agree to the following:
>
> 1. Counsel for Bard and Davol agree that they will not conduct ex parte communications about any particular plaintiff with plaintiff's treating physicians without further notice to Plaintiff's Liaison Counsel. Should the parties be unable to reach agreement about those communications, counsel for Bard and Davol will not conduct any such communications until the Court has entered an appropriate order.
>
> 2. In connection with its regulatory obligations to investigate reports of adverse events in its products, Davol will continue its practice of requesting medical records from physicians and/or their attorneys, and may seek follow-up information from physicians by telephone or otherwise. Outside counsel for Bard and Davol will not initiate, prompt, participate in, or otherwise be involved with any such regulatory compliance contacts.
>
> 3. Counsel for Bard and Davol have been contacting and will continue to contact potential consulting and testifying medical experts. Should counsel for Bard and Davol learn that any of those experts is a treating physician for any plaintiff, counsel for Bard and Davol will refrain from discussing the medical history of that plaintiff, and will inform the physicians of this restriction.

Amended CMO ¶ vii.

Paragraph VI.D.vii establishes several crucial principles:

1. The communications with a treating physician that require advance permission from plaintiffs' counsel or, if there is disagreement, an order of the Court, are communications "*about* any particular plaintiff." ¶ VI.D.vii.1 (emphasis added). The CMO and Amended CMO do not contemplate a total ban on communications of any sort with treating physicians, and neither do the subsequent Orders entered by Magistrate Almond. *See* July 21, 2008, Order at 2 ("A substantive communication in this context [the issuance of deposition notices and subpoenas by Defendants directly to treating physicians] is one which goes beyond logistical and scheduling issues *and touches upon topics such as Plaintiff treatment, past/present physical or psychological condition, medical history, employment history, finances etc.*") (emphasis supplied).

2. The second and third provisions in this section describe two types of communication which "the parties agree" that Defendants will continue to engage in: regulatory communications to follow up on medical device reports, ¶ VI.D.vii.2, and communications by defense counsel with consulting experts, ¶ VI.D.vii.3.

3. The provision addressing consulting experts explicitly contemplates that they may be treating physicians, and provides that Bard and Davol will, should they learn that a consultant is also a treating physician of a plaintiff, avoid discussing the medical history of that plaintiff with the consultant. ¶ VI.D.vii.3.

Plaintiffs' current position – taken for the first time in their reply to Defendant's Motion to Clarify – is that the original *ex parte* Order completely debars Defendants from any contact with treating physicians. This position is contrary to the plain language of the original Case

Management Order as well as the Amended Case Management Order, which was entered *after* the *ex parte* Order.

Should Plaintiffs contend – as they did in the oral argument before Magistrate Almond on July 10 – that ¶ VI.D.vii.1 *governs* the two paragraphs that follow it, and that the *ex parte* Order (as they interpret it) now trumps the explicit language in the CMO and Amended CMO, they run afoul of all applicable canons of interpretation. First, the language of ¶ VI.D.vii.3 of the CMO and of the Amended CMO (which postdates the *ex parte* Order) is plain and clear, and would require an equally plain and clear subsequent order to overcome it. The *ex parte* Order, however, simply does not address the issue of communications with consulting experts about issues *other than* a plaintiffs' care and treatment. Second, plaintiffs' interpretation that the first paragraph trumps the other two violates the canon of contractual interpretation that a document should be interpreted to give effect to each provision included, rather than interpreted to render certain provisions unreasonable or without effect, as plaintiffs would prefer. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63 (1995) (holding that respondents' reading of two clauses in contract at issue "violates another cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other.") (citations omitted); Restatement (Second) of Contracts § 203(a) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

## II. Failure To Enforce The Amended CMO As Written Would Bar Defendants From Retaining Any Surgeon Experts.

In this litigation involving an implantable surgical device, the advice of surgeon experts is essential to the defense of the case and to intelligent ongoing participation in any substantive proceedings that raise issues of medical causation, such as Plaintiffs' pending demand that ten

"migration" cases be set for early neutral ADR evaluation. Plaintiffs' position that the *ex parte* Order bars Defendants from having any communications with treating physicians has already prevented Defendants from communicating with its surgeon experts for a five-week period, and, should they prevail, would extend that bar indefinitely into the future. Any ruling that Defendants may not communicate with surgeon experts who have treated any plaintiff would effectively prevent Defendants from having any surgeon experts at all.

Finding consulting experts who have not treated one or more plaintiffs is not a viable option. There are nearly 1,800 cases on file to date in this litigation, with more filed every week in either the MDL or in Rhode Island state court. Excluding the many thousands of potential claimants in Plaintiffs' purported master class action, the current case count includes personal injury claims brought on behalf of approximately 2,000 patients – representing approximately 1 out of every 50 persons in the United States who ever received a Composix® Kugel® Patch.[2] It is almost inevitable that any surgeon with a substantial hernia repair practice – *i.e.*, any surgeon whose expertise recommends them as a potential consulting expert witness – will have one or more patients who have actually filed a lawsuit.[3] Even if all lawsuits that will ever be filed in this litigation had already been filed, and complete and accurate Plaintiff Fact Sheets had been provided in all – neither of which is the case – it is overwhelmingly likely that Defendants would be barred from using *any* surgeon with a substantial hernia repair practice given the volume of the litigation. And, of course, given that new cases are filed every week and new Plaintiff Fact Sheets arrive regularly, even if Defendants *could* find an acceptably qualified expert who had

---

[2] Plaintiffs and Defendants have both represented to the Court during tutorial and other hearing sessions that the evidence suggests that approximately 100,000 patients received Composix® Kugel® Patches.

[3] For example, a surgeon who saw just 25 Composix® Kugel® patients a year from the introduction of the patch to date would have only a 1.7% chance of *not* having treated a plaintiff in this litigation. The math is as follows: (0.98)^(8*25). If they saw 50 a year, the chances would be 3/100ths of 1%.

treated no known current plaintiffs based on currently-available information, Defendants could never have confidence that they would not suddenly be barred from any further communications with one of their consultants upon receipt of a new complaint or PFS.

In such a situation, the Court must provide the Defendants with fair access to experts by permitting them to retain treating physicians notwithstanding any bar on *ex parte* contacts concerning the care and treatment of particular plaintiffs (which, of course, can remain in place). *See In re Seroquel*, 2008 WL 821889, at *4 (Att. 1) (in consolidated litigation, permitting retention of treating physicians as consulting experts notwithstanding bar on *ex parte* contacts, citing decisions allowing retention of treating-physician-consultants in *In re Prempro Prods. Liab. Litig*., MDL No. 4:03-CV-1507 (E.D. Ark. Dec. 7, 2005) (Att. 2), and *In re AMS Minnesota Penile Prosthesis Litig.*,, No. 87-11183 (Minn. Dist. Ct. May 8, 1998) (Att. 3)). In *In re Seroquel*, the court held that a "[defendant] will not be prohibited from retaining a physician as an expert witness who is identified on a Plaintiff's Fact Sheet or otherwise as being a treater for a plaintiff in this litigation," because to enforce such a "prohibition on [defendant's] contacting and retaining physicians has the potential to deprive [defendant] of a fair opportunity to present its defense"). *In re Seroquel Prods. Liab. Litig*., 2008 WL 821889, at *4.

Any interpretation of the *ex parte* Order as barring all communications with anyone who has treated a plaintiff would effectively prevent Defendants from retaining *any* experts with significant qualifications to opine concerning the Composix® Kugel® Patch. This would deny Defendants their due process rights to identify and call witnesses vital to the defense of these cases. *See*, *e.g.*, *In re Oliver*, 333 U.S. 257, 275 (1948) ("[D]ue process of law . . . requires that one . . . be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to

testify and call other witnesses in his behalf, either by way of defense or explanation."); *cf. Lee v. Winston*, 717 F.2d 888, 898 (4th Cir. 1983) ( finding violation of due process where party was denied time to adequately prepare its case, stating that "[t]o deny [a party] the right to consult with and present suitable independent expert witnesses deprived him of a fundamental resource for adequate representation in the adversarial proceeding he faced").

## III. Plaintiffs Face No Realistic Threat From Defendants' Retention Of Consulting Experts Given That Defendants Will Not Engage In *Ex Parte* Contacts Concerning Plaintiffs.

As they have explained to Plaintiffs previously, and as the CMO contemplates in part, Defendants have all along followed, and will continue to follow, these restrictions in their contacts with consulting experts:

1. Defendants will explain to any prospective consultant at the outset of their first communication that they do not wish to discuss the care, treatment, or medical history of any plaintiff.

2. If Defendants know or become aware that a consultant has treated a particular plaintiff, they will advise the consultant of the plaintiffs' name and reiterate the instruction not to disclose information about that person's care, treatment, or medical history.

3. Defendants will not have any consultant review the medical records of a plaintiff that the consultant has treated, provide an opinion concerning a plaintiff the consultant has treated, or testify concerning a plaintiff the consultant has treated.

With these restrictions, Defendants will not be violating any *ex parte* order because they will not be engaging in *ex parte* contacts, which in the context of treating physicians means contacts *concerning the care and treatment of a plaintiff*.

Defendants are following the same behavior regarding contacts with consulting expert surgeons that other courts considering this issue have required when allowing defendants to retain treating physicians as consultants. For example, in *In re Prempro Prods. Liab. Litig* the Court allowed the retention of treating physicians as expert witnesses as long as defendants did

not communicate with the physician about his specific plaintiff-patients, defendants did not use the physician as an expert in a case where his patient was a plaintiff, and defendants provided physicians with the Court's Order and Memorandum to Physicians prior to their retention. *In re Prempro Prods. Liab. Litig*., MDL No. 4:03-CV-1507 (E.D. Ark. Dec. 7, 2005). The Court in *In re Seroquel Prods. Liab. Litig* allowed defendants to retain treating physicians as experts under the same guidelines. *In re Seroquel Prods. Liab. Litig*., 2008 WL 821889 at *4. Defendants here have agreed to substantially the same parameters of physician expert retention as has been required by other courts, and, as have other courts in this situation, this Court should allow Defendants to continue with their retention of expert surgeon witnesses under these guidelines.[4]

## IV. Plaintiffs Have No Entitlement To Disclosure Of Information Concerning Defendants' Consultants.

Plaintiffs have used the *ex parte* issue to attempt to get discovery of Defendants' consulting experts not authorized by the Federal Rules of Civil Procedure. (*See* Pls' Opp. to Motion to Clarify 4 (demanding provision of names of consulting experts, documents provided to experts, and dates upon which experts were first consulted)). This is unwarranted by any provision of the Rules and is also unsupported by any precedent cited by plaintiffs. To the extent that it becomes an issue in a particular litigation in which a treating physician has been retained as a consulting expert - and necessarily, given the restrictions followed by Defendants, they would *not* be a consulting expert with regard to the medical history of that plaintiff - the issue can be explored then to the extent it is properly discoverable at deposition.[5]

---

[4] Defendants have no objection to providing their consulting experts with a copy of any Orders the Court deems appropriate, once those orders exist.

[5] At the deposition of treating physician Bruce Ramshaw, who has also been retained by plaintiffs as a consulting expert, Dr. Ramshaw disclosed that he was a consulting expert for the plaintiffs. Defendants were not permitted to ask Dr. Ramshaw when he was retained, how much he had been paid, or whether he had been paid. (Ramshaw Dep. at 64:9-65:1, 44:18-45:3). Defendants believe that these are all

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court issue an Order permitting them to continue their practice of retaining and communicating with consulting surgeon experts whether or not they are also treating physicians.

Respectfully submitted,

Dated: July 24, 2008

SPRIGGS & HOLLINGSWORTH

s/ Kirby T. Griffis

Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J. Cople, III
1350 I Street NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendant C.R. Bard, Inc. and Defendant Davol Inc.*

---

discoverable issues, and would not – as Plaintiffs did – direct one of their consultants not to answer them during a fact deposition.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 24, 2008, the foregoing DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC'S MEMORANDUM IN SUPPORT OF MOTION SEEKING CLARIFICATION OF ORDER PROHIBITING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS was electronically filed with the clerk of court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon the Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
Motley Rice LLC
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
Fax: (401) 457-7708
Email: dmigliori@motleyrice.com
*via electronic mail*

<u>s/ Kirby T. Griffis</u>