**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| IN RE: KUGEL MESH HERNIA PATCH PRODUCTS LIABILITY LITIGATION | ) | MDL Docket No. 07-1842-ML |
| | ) | Judge Mary M. Lisi |
| THIS DOCUMENTS RELATES TO: | ) | Magistrate Judge Lincoln D. Almond |
| ALL ACTIONS | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE THE AMENDED CASE MANAGEMENT ORDER AND PERMIT COMMUNICATIONS WITH CONSULTING SURGEON EXPERTS WHO ARE ALSO TREATING PHYSICIANS**

Plaintiffs, by their attorneys, hereby respond to Defendants' Motion to Enforce the Amended Case Management Order and Permit Communications with Consulting Surgeon Experts who are also Treating Physicians ("Motion") as follows:

## I. INTRODUCTION

On January 22, 2008, Magistrate Judge Lincoln D. Almond denied Defendants' Motion Seeking *Ex Parte* Contacts With Plaintiffs' Treating Physicians ("*Ex Parte* Order"). [Doc. No. 245]. The Court's ruling made no exception for treating physicians designated as Defendants' consulting experts. Displeased with that decision, and their inability to have *ex parte* communications with Plaintiffs' treating physicians, Defendants filed their objection to the ruling on February 5, 2008 - claiming that Judge Almond's ruling was "clearly erroneous and should be set aside." [Doc. No. 290, p. 8]. On February 25, 2008, Chief Judge Mary M. Lisi denied Defendants' objection to Judge Almond's Memorandum and Order. As such, Defendants are, and have been, explicitly prohibited from engaging in *ex parte* communications with Plaintiffs' treating physicians.

On June 12, 2008, Defendants filed their Motion Seeking Clarification of Order Prohibiting *Ex Parte* Contacts with Plaintiffs' Treating Physicians, asking for "clarification" of the Court's already clear *Ex Parte* Order. In a few sentences at the end of their brief, Defendants made the argument that "[i]f Plaintiffs' interpretation of Judge Almond's order were to become the rule, it would prevent Defendants from contacting and consulting with their own retained experts…." [Doc. No. 1111-2 at 4]. In its opinion on Defendants' Motion for Clarification, the Court held:

> Defendants also seek to interject the issue of expert witnesses into their request for clarification – in particular, Defendants' ability to retain consulting or testifying experts who may have treated a Plaintiff. Defendants devote a single paragraph to this issue in their Motion for Clarification. However, Defendants' requests for relief (in both their Motion and Reply Memorandum) does not ask for any relief on the expert witness issue.

[Doc. No. 1222, p. 3]. Therefore, the Court did not rule on the issue of whether it is proper (under the *Ex Parte* Order) for Defendants to contact and retain Plaintiffs' treating physicians as consulting experts.

Through this Motion, Defendants ask the Court to formally address this issue. However, captioned, Defendants' Motion is essentially a motion for further clarification.

## II. <u>DISCUSSION</u>

*Ex parte* communications between Defense counsel and Plaintiffs' treating physicians undermine the physician-patient relationship; sanction the release of confidential information without safeguards; place defense counsel and doctor in a potential conflict of interest; and encourage doctors to become experts against their patients. This is no less true when a defendant seeks to designate a plaintiff's treating physician as a consulting expert.

On August 26, 2008, the Superior Court of Rhode Island ruled on this very same issue in the Rhode Island State Court Kugel Mesh Litigation – prohibiting Defendants from contacting

and retaining Plaintiffs' treating physicians as consultants or experts. In her decision, Judge Gibney of the Superior Court of Rhode Island cited the principles of trust inherent in the physician-patient relationship, and this Court's *Ex Parte* Order, when prohibiting Defendants from retaining Plaintiffs' treating physicians. Specifically, Judge Gibney opined:

> Furthermore, this Court notes that there is a level of trust inherent in a patient/physician relationship. The patient is entitled to the assurance that his or her physician will not discuss his or her medical situation, however generically, with representatives of the opposition. This trust is of particular significance where the patient's medical situation is at the heart of his or her suit.
>
> …
>
> Where the Court finds that permitting such communication between defense counsel and Plaintiffs' treating physicians will prejudice the Plaintiffs and fail to "protect the relationship between a doctor and patient," then restricting ex parte communication is the "just option." *In re Kugel Mesh Hernia Repair Patch Litig.*, 2008 U.S. Dist. LEXIS 55549, 10-11 (D.R.I. July 21, 2008), quoting *In re Vioxx*, 230 F.R.D. at 475 (E.D. La. 2005).

*In Re: All Individual Kugel Mesh Cases*, August 26, 2008 Decision of Superior Court of Rhode Island, attached as Exhibit A. For these reasons, and for the reasons set forth in Plaintiff's Opposition to Defendants' Motion Seeking *Ex Parte* Contacts With Plaintiffs' Treating Physicians, allowing Defendants to contact and retain Plaintiffs' treating physicians would forsake the physician-patient relationship and violate sound public policy.

## A. Since January 22, 2008, Defendants have been Prohibited from Conducting *Ex Parte* Communications with Plaintiffs' Treating Physicians

On January 22, 2008, this Court issued its Memorandum and Order denying Defendants the right to conduct *ex part* communications with Plaintiffs' treating physicians. The *Ex Parte* Order denied Defendants' request for *ex parte* communications with plaintiffs' treating physicians in its entirety. The Court did not qualify its denial of Defendants' motion in any

manner, nor did it recognize any situations or circumstances in which Defendants could partake in *ex parte* communications with Plaintiffs' treating physicians. [Doc. No. 245].

Defendants now argue that the *Ex Parte* Order was somehow superseded by the entry of the Amended CMO, simply because the *Ex Parte* Order does not specifically mention the prohibition of *ex parte* communications with consulting experts who are also treating physicians. At the time the Amended CMO was proposed to the Court, the parties did not argue and the Court did not recognize that the entry of the Amended CMO abrogated, weakened or narrowed the scope of the *Ex Parte* Order.[1] For Defendants to do so now is improper.

**B. The Agreed CMO Provides Defendants With No Support for Their Arguments.**

Even if the Court determines that the entry of the Amended CMO affected the scope of the *Ex Parte* Order, the language of the Amended CMO does not support Defendants' assertion that they may retain Plaintiffs' treating physicians as consulting experts. The Amended CMO merely sets forth the manner in which the parties are to proceed should a dispute regarding such a situation arise.

Defendants argue that the Amended CMO explicitly contemplates the retention of consulting experts who are also treating physicians. Specifically, Defendants cite to Page 6, Paragraph VI. D. vii. 3. ("Paragraph 3") for the language:

> Counsel for Bard and Davol have been contacting and will continue to contact potential consulting and testifying medical experts. Should counsel for Bard and Davol learn that any of those experts is a treating physician for any plaintiff, counsel for Bard and Davol will refrain from discussing the medical history of that plaintiff, and will inform the physicians of this restriction.

[1] Indeed, at the time that the Amended CMO was entered, Defendants were still objecting to Magistrate Almond's ruling as "clearly erroneous." The initial Case Management Order ("CMO") was entered by the Court on December 6, 2007. Defendants filed their Motion Seeking *Ex Parte* Contacts With Plaintiffs' Treating Physicians on December 27, 2007. The Amended CMO was entered on January 30, 2008.

Defs' Brief, p. 4. Defendants would read that Paragraph to allow them to conduct any sort of *ex parte* communication and discuss any topic with plaintiffs' treating physicians – so long as they do not discuss what *they consider* to be the "the medical history of that plaintiff." Defendants overstate and misinterpret that passage. The Paragraph quoted above merely commands Defendants to cease substantive discussions with a potential expert physician when they determine that he/she is also a treating physician of one of the Plaintiffs. Moreover, it must be read in context and in conjunction with Paragraph VI. D. vii 1 ("Paragraph 1"). Indeed, Paragraph 1 specifically provides:

> Counsel for Bard and Davol agree that they will not conduct ex parte communications about any particular plaintiff with plaintiff's treating physicians without further notice to plaintiffs' liaison counsel. *Should the parties be unable to reach an agreement about those communications, counsel for Bard and Davol will not conduct any communications until the court has entered an appropriate order.*

CMO at VI. D. vii 1 (emphasis added). Paragraph 1 clearly commands Defendants to notify Plaintiffs' counsel of any potential *ex parte* communications with Plaintiffs' treating physicians and then seek an agreement regarding communications with these individuals.

The parties did not agree that Defendants may conduct *ex parte* interviews with physicians whom they know, or should know, are Plaintiffs' treating physicians; they simply agreed that Defendants will consult with physicians in an effort to find consulting and testifying experts; however, should they learn that any of those potential experts are treating physicians of one of the Plaintiffs, they must cease *ex parte* communications and notify Plaintiffs' liaison counsel. Should the parties not be able to agree on how to proceed, the Court would then be asked to intervene. However, in the mean time, Defendants were not to contact or communicate with the treating physicians until the Court had entered an appropriate order on the issue.

The CMO cannot not be interpreted as an agreement of the parties to allow *ex parte* communications between Plaintiffs' treating physicians and defense counsel. At most, the Amended CMO anticipates further clarification by the Court of the type and extent of discovery – including the issue of *ex parte* communications with treating physicians – that will be allowed in this action.[2]

**C. Treating Physicians Serving as Defense Experts Will Result in the Disclosure of Protected Information – Even if Unintentionally**

In their Motion, Defendants wrongly assert that "Plaintiffs face no realistic threat from Defendants' retention of consulting experts given that Defendants will not engage in *ex parte* contacts concerning Plaintiffs." Defendants can realistically offer no such assurance. Communications with Plaintiffs' treating physicians naturally – and inevitably – will result in the communication of information about the treatment that the physician provided in the individual Plaintiff, and therefore, information about the Plaintiff's case. Additionally, this Court and several others have recognized that, even if unintentionally, the likely result of *ex parte* communications is the disclosure of private and privileged information.

*i. Treating physicians acting as consulting experts inevitably disclose information about the treatment of the Plaintiff*

From a practical standpoint, it is impossible for a treating physician to act as a consultant for Defendants without taking part in substantive *ex parte* communications that are related to a patient's case. Even if the treating physicians talk to Defendants in general terms about their experiences and techniques with the Kugel Patch, they are divulging information directly related to their patient's case. Simply because a treating physician does not use a Plaintiff's name when discussing procedures and experiences – a name that is already known by defense counsel – does

[2] This is evidenced by the fact that the issue of *ex parte* contacts with plaintiffs' treating physicians was raised less than a month after the CMO was originally entered.

not mean that the treating physician is not taking part in substantive *ex parte* discussions relating to a Plaintiff's case in violation of the Court's order. As the Superior Court of Rhode Island recently opined:

> The Defendants argue that their contact with the Plaintiffs' treating physicians does not violate the ex parte orders because they have voluntarily agreed not to question the physicians regarding any individual case (at least not for purposes of defending in that particular litigation). The Court finds this argument to be utterly disingenuous.
>
> …
>
> In order to provide helpful information to Defendants regarding the physician's experience with the Kugel Patch, the physician will likely have to disclose information about individual cases.

Ex. A, pp. 3-4

As such, the only way to prevent the disclosure of private and privileged information is the prohibition of all *ex parte* interviews and communications with defense counsel – including those with treating physicians designated as expert consultants.

*ii. The likelihood of inadvertent disclosure of privileged information warrants a directive that Defendants consult and retain non-treating physician experts*

This Court correctly pointed out in the *Ex Parte* Order that:

> [T]he practical effect [of allowing *ex parte* contacts between defense counsel and treating physicians is to] create unintended consequences that can cause more problems than it sought to solve.

[Docket No. 245, p. 2 (quoting Judge Fallon's opinion in the Vioxx MDL)].

There is a real concern that HIPAA and the physician-patient privilege could be violated by the treating physician or defense counsel during some *ex parte* contact, even if only unintentionally. Indeed, even if Defendants have every intention of complying with HIPAA and the Court's *Ex Parte* Order (and Plaintiffs are not suggesting otherwise), a doctor or his representative might unknowingly disclose protected information to Defense counsel. During an

*ex parte* communication, a violation of a plaintiff's privacy interests and a breach of a physician's fiduciary duty does not require nefarious intentions. Without knowing the nature of the confidential information beforehand, Defense counsel's questioning may unknowingly elicit a response containing substantive information about the Plaintiff's treatment.[3] As one court put it: "[a]sking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician." *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986); *accord, Harlan v. Lewis*, 141 F.R.D. 107, 109 (E.D.Ark. 1992) ("The physician, largely unschooled in legal matters, cannot be expected to make the sometimes difficult determination of what matters are relevant to the plaintiff's claims."); *see also, Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597 (S.D. Tex. 1994). Indeed, it is not difficult to imagine a situation where the communications between defense counsel and a physician results in a discussion of the issues of a Plaintiff's case or the creation of a conflict of interest. As recognized by the Superior Court of Rhode Island:

> Even despite Defendants' "Scout's Honor" promise not to inquire as to individual cases, the risk of unauthorized disclosure greatly outweighs the benefit of such communication. This information may prove highly prejudicial to the Plaintiffs, and presents a conflict should these physicians be called to testify at trial. *See In re Kugel Mesh Hernia Repair Patch Litig.*, 2008 U.S. Dist. LEXIS 55549, 10-11 (D.R.I. July 21, 2008); *In re Vioxx*, 230 F.R.D. 470, 475 (E.D. La. 2005).

Ex. A, p. 4.

[3] While Plaintiffs make no such allegation here, it should be noted that courts have also warned that the use of *ex parte* interviews could encourage improper discussions or collusion between doctors and the attorneys defending others in the industry. *See Horner*, 153 F.RD. 597 (noting that an *ex parte* interview could develop into a "discussion of the impact of a jury's award upon a physician's professional reputation, [or] the rising cost of malpractice insurance premiums .... ").

**D. Defendants Retaining Plaintiffs' Treating Physicians as Consultants or Experts Creates the Potential for Conflicts of Interest, Breaches of Fiduciary Duty and Will Likely Result in Additional Litigation**

As recognized by Judge Fallon in the Vioxx MDL, *In re Vioxx Prods. Liab. Litig.,* 230 F.R.D. 473 (E.D. La. 2005), the confidential relationship between plaintiffs and physicians is subject to different laws of the fifty states:

> Further, this MDL case involves the separate laws of fifty states, some of which provide for a broader physician-patient privilege than others.

*Id.* at 477. Several courts have noted that *ex parte* interviews between defense counsel and physicians create the potential for doctors to be exposed to tort liability for breach of the patient's right to privacy or to professional discipline for unprofessional conduct. *See, e.g., Sornsen v. Barbuto*, 143 P.3d 295 (Utah Ct. App. 2006)("*ex parte* communication between a physician and opposing counsel constitutes a breach of the physician's fiduciary duty of confidentiality"). Moreover, several states recognize that a physician's duty of loyalty prevents him/her from assisting the patient's adversaries in litigation. *See, e.g., Alexander v. Knight,* 177 A.2d 142, 146 (Pa. 1962)(a physician's fiduciary duties include "a duty to refuse affirmative assistance to the patient's antagonist in litigation"); *Hammonds v. Aetna Cas. & Sur. Co.,* 243 F.Supp. 793, 799 (N.D.Ohio 1965) ("during the course of [litigation], in addition to the duty of secrecy, there arises the duty of undivided loyalty."); *Miles v. Farrell*, 549 F.Supp. 82, 84 (N.D. Ill. 1982); *Perkins v. U.S.*, 877 F. Supp. 330, 333-334 (E.D. Tex. 1995); s*ee also*, *Wenninge v. Muesingr*, 240 N.W.2d 333 (Minn. 1976).

Therefore, a conflict of interest may exist under applicable state law and a treating physician may be breaching his/her fiduciary duty to a Plaintiff by acting as a paid consultant for

Defendants in this litigation.[4] Moreover, there is no reason to believe that the treating physicians being solicited by Defendants have any knowledge of the potential liability they could be exposing themselves to by aiding Defendants in this action. Allowing Defendants to continue to solicit assistance from Plaintiffs' fiduciaries could easily result in ancillary or subsequent litigation.

### E. *Ex Parte* Communications with Plaintiffs' Treating Physicians Invokes HIPAA Concerns – Even if the Surgeon is "Acting as a Consulting Expert"

None of the principles or prohibitions of HIPAA, raised in Plaintiffs' Opposition to Defendants' Motion Seeking *Ex Parte* Contacts With Plaintiffs' Treating Physicians (resulting in the Court's January 22, 2008 prohibition of *ex parte* contacts), are alleviated simply by Defendants' designation of Plaintiffs' treating physicians as "consulting experts." Courts have interpreted HIPAA as prohibiting all *ex parte* interviews of a plaintiff's treating physician by defense counsel in the absence of strict compliance with HIPAA. *Law v. Zuckerman*, 307 F.Supp.2d 705, 707 (D.Md. 2004).

As Judge Fallon pointed out in the *Vioxx* MDL: "All of these concerns have led judges, such as the presiding judge in the currently-pending New Jersey Vioxx litigation, to prohibit defendant's *ex parte* communications with the plaintiff's treating physicians." *In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 470, 472 (D. La. 2005). After discussing *ex parte* contacts between defendants' counsel and plaintiffs' physicians under HIPAA, the court opined that "the just option in this case is to protect the relationship between a doctor and patient by restricting defendants from conducting *ex parte* communications with Plaintiffs' treating physicians…." *In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 473, 477 (D. La. 2005).

---

[4] Plaintiffs do not waive the right to contest or challenge the admissibility of any treating physician's testimony at trial. Moreover, Plaintiffs do not waive any recourse they may have under state law against a treating physician for providing assistance to Defendants.

As HIPAA does not expressly authorize *ex parte* communications between defense counsel and plaintiffs' physicians, courts have concluded that the statute's aims were better safeguarded by not permitting *ex parte* interviews – noting HIPAA's heavy emphasis on patient privacy. *Equal Opportunity Commission v. Boston Mkt. Corp.*, CV 03-4227, 2004 U.S. Dist. LEXIS 27338 (E.D.N.Y. Dec. 16, 2004). Therefore, the strong public policy underlying HIPAA should prevent Defendants from contacting and retaining Plaintiffs' physicians as consulting experts.

**F. Prohibiting Defendant from Retaining Plaintiffs' Treating Physicians as Consulting Experts (and Conducting *Ex Parte* Communications with them) Does Not Bar Defendants from Retaining ANY Surgeon Experts**

Defendants make the bold and unsubstantiated claim that "[a]ny ruling that Defendant may not communicate with surgeons experts who have treated any plaintiff would effectively prevent Defendants from having any surgeon experts at all." Defs' Brief, p. 7. Essentially, Defendants claim that because there are numerous Plaintiffs in this MDL, every surgeon with a hernia repair practice "will have one or more patients who have actually filed a lawsuit." *Id.* Defendants made this same argument to the Superior Court of Rhode Island – and it was roundly rejected by Judge Gibney:

> This Court further finds unpersuasive Defendants' argument that the sheer number of Plaintiffs in this matter precludes Defendants from retaining any consultants who are not also Plaintiffs' treating physicians. The Court simply cannot accept that every knowledgeable physician in the country has performed surgery on one or more of the Plaintiffs in this matter. Once again, this argument is disingenuous. The Court observes that the root of this argument is either a plea to allow ex parte contact for impermissible reasons, or else is a request that the Court simplify the Defendants' task in obtaining consulting physicians. The potential inconvenience of determining whether a physician has treated one of the Plaintiffs is significantly outweighed by Plaintiffs' right to confidentiality in their medical matters.
>
> …

> The Defendants may assert their defense in the Kugel Mesh litigation by retaining consultants who are not treating physicians, as well as through proper discovery notifying and allowing the presence of Plaintiffs' counsel.

Ex. A, pp. 5-6.

Defendants have previously represented to the Court that roughly 100,000 of the recalled devices were sold and implanted in patients. Less than 1,800 cases have been filed. As such, the surgical implantation of more than 98,000 recalled devices have not yet been accounted for – surely Defendants can find a suitable expert surgeon without interfering with Plaintiffs' privacy rights. Indeed, in response to this Court's directive that they identify all Plaintiffs' treating physicians acting as expert consultants for Defendants [Doc. No. 1271], defense counsel identified only *one* such physician. *Letter of August 8, 2008 from Kirby Griffis to Donald A. Migliori*, attached as Exhibit B. After a year and a half of litigation, and after seeing 10 cases through the Court's early neutral ADR process, Defendants claim to have only consulted with one of Plaintiffs' treating physicians. Therefore, they have been able to find suitable experts (who are not Plaintiffs' treating physicians) to build their defense, thus far. There is no reason to believe that they will be prevented from doing so in the future.

**G. Defendants Cannot Claim a Denial of Due Process**

Defendants also claim that prohibiting the retaining of Plaintiffs' treating physicians as consulting experts would result in a denial of their due process. The only two cases cited by Defendants for this proposition are *In re Oliver*, 333 U.S. 257, 275 (1948) and *Lee v. Winston*, 717 F.2d 888, 898 (4th Cir 1983). These cases are inapposite – neither provide any guidance to the Court or support for Defendants' claim that a due process violation would result.

In *In re Oliver*, an inmate sought review of the denial of the *habeas corpus* petition. *See In re Oliver*, 333 U.S. 257. The lower court had denied the defendant the opportunity present a

defense or call any witnesses. The Supreme Court reversed the Michigan Supreme Court's upholding of the denial of the habeas corpus petition and the United States Supreme Court reversed, finding a due process violation. *Id.* Here, Plaintiff does not suggest that these treating physicians cannot be called as witnesses – in fact – Plaintiff has always maintained that they are fact witnesses and will inevitably be called at trial. Plaintiff merely argues that their relationship to the Plaintiffs prevents them from acting as defense experts and consultants.

Likewise, *Lee v. Winston* bears no semblance to this case and provides no guidance on this issue. In *Lee*, a case involving the appeal of an order enjoining law enforcement from surgically removing a bullet from appellee's chest, the court held that the criminal defendant was not provided adequate time to prepare a defense or "obtain an independent review of the medical record by an outside physician nor was he able to consult with the independent expert in anesthesiology in order to prepare a presentation on the risks of general anesthesia." *Lee v. Winston*, 717 F.2d at 898. Here, Defendants cannot claim that the Court has not allowed them to take discovery and prepare a defense; nor can Defendants claim that they will not have adequate time to accomplish either of these tasks. As such, *Lee* provides no guidance for the Court.

Indeed, the Superior Court of Rhode Island recently rejected Defendants' argument that due process entitles them to contact and retain Plaintiff's treating physicians, holding:

> The Defendants contend that their interests should be weighed more heavily, as they have a constitutional right to call witnesses vital to the defense of their case. *See e.g. In re Oliver*, 333 U.S. 257, 275 (1948). This Court recognizes Defendants' rights to have a reasonable opportunity to defend, but finds that such opportunity is ample in this case. The scope of this protective order prohibits ex parte communication with Plaintiffs' treating physicians; not all communication with the physicians. The rules of discovery will apply with regard to obtaining deposition testimony and other evidence in the presence of Plaintiffs' counsel. This Court is in full agreement with the U.S. District Court in this matter, which stated "Defendants have not identified a single piece of evidence which can be *properly* obtained through ex parte communications but cannot be obtained by

> ordinary discovery." *In re Kugel Mesh Hernia Repair Patch Litig.*, 2008 U.S. Dist. LEXIS 55549, 10-11 (D.R.I. July 21, 2008).

Ex. A, p. 5. Simply put, Defendants' due process rights are in no way implicated by this Motion or the Court's prohibition of *ex parte* communications.

**H. Designating Plaintiffs' Treating Physicians as Consultants Compromises the Court's *Ex Parte* Order**

If Defendants are allowed to conduct *ex parte* communications with any of Plaintiffs' treating physicians (just by designating the physician as a "consulting expert"), theoretically, nothing prevents them from retaining the entire population of Plaintiffs' treating physicians as "consultants," conducting *ex parte* interviews with them, and potentially hiring and paying them as Defendants' expert witnesses. This tactic would destroy both the Plaintiffs' right to place their trust in their doctors, as well as their rights to a fair trial of their claims against wrongdoers. Additionally, if Defendants have retained Plaintiffs' treating physicians as experts to assist in their defense of the litigation, any *ex parte* communications with those treating physicians by Plaintiffs' counsel could be prohibited, and could theoretically subject Plaintiffs' counsel to disciplinary action. Such a result is contrary to reason – and is contrary to this Court's *Ex Parte* order.

**I. Plaintiffs Are Entitled To the Information Sought in Their Motion to Compel**

Finally, Defendants argue that Plaintiffs are not entitled to information regarding Defendants' consulting experts who are also Plaintiffs' treating physicians. Plaintiffs have filed a separate Motion to Compel the Identification of All Plaintiffs' Treating Physicians Contacted or Retained as Consulting Experts by Defendants which is currently pending before the Court. [Doc No. 1241]. As explained more fully in Plaintiffs' memorandum in support of their Motion to Compel, not only is it proper to require Defendants to disclose the identities of all treating

physicians acting as expert consultants – which the Court has already done [Doc. No. 1271] – it is also necessary for Plaintiffs to be provided information regarding the circumstances and timing of these *ex parte* communications. In response to Defendants' arguments in Section IV of their Brief, Plaintiff relies upon the arguments and authorities contained in their memorandum in support of that Motion to Compel, and incorporates them herein.

## III. CONCLUSION

For the forgoing reasons, Plaintiffs' respectfully request that the Court enter an Order denying Defendants' Motion to Enforce the Amended Case Management Order and Permit Communications with Consulting Surgeon Experts who are also Treating Physicians.

DATED: September 8, 2008 Respectfully submitted,

By: /s/ Donald A. Migliori ___
Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
Providence, RI 02903
401-457-7700
401-457-7708 FAX

***MDL-1842 Plaintiffs' Liaison Counsel***

## CERTIFICATE OF SERVICE

I, Donald A. Migliori, hereby certify that a copy of the foregoing Plaintiff's ***Response inOpposition to Defendants' Motion to Enforce the Amended Case Management Order and Permit Communications with Consulting Surgeon Experts Who are Also Treating Physicians*** was electronically filed. Those attorneys who are registered with the Electronic Filing System may access these filings through the Court's System, and notice of these filings will be sent to these parties by operation of the Court's Electronic Filing System.

Dated: September 8, 2008

/s/ Donald A. Migliori
Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
Suite 200
Providence, RI 02903
401-457-7700
401-457-7708 FAX