**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: KUGEL MESH HERNIA REPAIR PATCH LITIGATION** | § § § | **MDL Docket No. 07-1842-ML** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | § § § § | **Chief Judge Mary M. Lisi** |

**DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO ENFORCE THE AMENDED CASE MANAGEMENT ORDER AND PERMIT COMMUNICATIONS WITH CONSULTING SURGEON EXPERTS WHO ARE ALSO TREATING PHYSICIANS**

Defendants respond briefly to address only new issues raised in Plaintiffs' Response in Opposition to Defendants' Motion to Enforce the Amended Case Management Order and Permit Communications with Consulting Surgeon Experts Who Are Also Treating Physicians ("Pls.' Opp'n"), and do not address points raised in previous relevant briefing.[1]

## ARGUMENT

### I. The Doctor-Patient Relationship will not be Abridged By Allowing Defendants to Retain Treating Physician Consultants.

The only type of contact at issue is the hiring and retention by Defendants of consulting experts who may also be treating physicians either with regard to their general causation opinions or with regard to their specific causation opinions of cases *in which they are not*

[1] Defendants' arguments in support of allowing communications with treating physician consultants have additionally been briefed in Defendants' Memorandum of Law in Support of Motion Seeking *Ex Parte* Contacts with Plaintiffs' Treating Physicians (Doc #77-1), Defendants' Objection to Magistrate's Denial of Motion Seeking *Ex Parte* Contacts with Plaintiffs' Treating Physicians (Doc # 290), Defendants' Memorandum in Support of Motion Seeking Clarification of Order Prohibiting *Ex Parte* Contacts with Plaintiffs' Treating Physicians (Doc #1111-1 ), Defendants' Reply Memorandum in Support of Motion Seeking Clarification of Order Prohibiting *Ex Parte* Contacts with Plaintiffs' Treating Physicians (Doc # 1143), and Defendants' Memorandum in Support of Their Opposition to Plaintiffs' Motion to Compel Identification of All Plaintiffs' Treating Physicians Who Have Been Contacted or Retained as Consulting Experts by Defendants (Doc. # 1282-1).

*treating physicians.* There will be no instance in which a consultant is retained to give an opinion (as in many of the cases that Plaintiffs attach to their Opposition) in a case where (s)he treated the plaintiff or to provide case-specific information about any plaintiff who they treated. In the briefing before this Court, Defendants have frequently repeated that they will not engage in *ex parte* communications – that is, substantive communications with a plaintiff's treating physicians about their care and treatment of the plaintiff.

Plaintiffs' claim that it is "impossible" for treating physicians to act as defense consultants without taking part in substantive *ex parte* communications related to a specific patient's case, even if they have no intention of doing so, goes much too far. (Pls.' Opp'n 6.) If it were true that a consulting expert inevitably discloses patient confidences even in the course of advising about matters other than their care and treatment of that patient, then no physician could ever be an expert witness, period, because they would routinely violate HIPAA by disclosing patient confidences along with their advice, however inadvertently.[2]

Plaintiffs also err in their extensive reliance on Judge Gibney's Rhode Island state court opinion to support their arguments. In asking this Court to look to Judge Gibney's non-binding opinion for guidance, Plaintiffs' fail to acknowledge that Judge Gibney's opinion is based on her application of the Rhode Island's Confidentiality of Health Care Information Act. In contrast, here plaintiffs request the Court to apply a transnational standard, regardless of the differing laws among the fifty states.[3]

---

[2] In fact, Plaintiffs go so far as to argue that Defendant's consulting witnesses who are also treating physicians will *violate HIPPA* by inadvertently revealing patient confidences that form a part of their general expertise in the area. *See* (Pls.' Opp'n 10). If that were so, it would apply to all of the physician's other patients as well, and *no* physician expert witness could ever be retained by anyone based on their expertise gained through clinical experience. That, of course, is ridiculous.

[3] Indeed, plaintiffs themselves acknowledge that there are different laws governing the physician patient relationship in the fifty states: "As recognized by Judge Fallon in the Vioxx MDL, *In re Vioxx*

Plaintiffs' alleged concern for doctors' potential exposure to tort liability for a breach of a patient's right to privacy or other professional discipline is likewise misplaced. (Pls.' Opp'n 9.) In making their argument, plaintiffs cite no cases where doctors themselves were found liable or otherwise held accountable for a breach of a patient's right of privacy. In fact, plaintiffs only cite cases involving single-claim litigation disallowing *ex parte* communications regarding confidential medical information from doctors about their *own* patients.[4] *See, e.g., Alexander v. Knight*, 177 A.2d 142 (Pa. Super. 1962) (doctor who treated plaintiff gave report to defense counsel about patient's treatment); *Hammonds v. Aetna Cas. & Sur. Co.*, 243 F. Supp. 793 (N.D. Ohio 1965) (doctor gave plaintiff's confidential medical information to defendant). This is wholly inapposite to the situation before the Court, as this litigation involves a mass tort, not a single-claim litigation, and no physician will be asked about his own patient. As Defendants have repeatedly stated, Defendants will not either (a) discuss with consulting experts any

---

*Prods. Liab. Litig.*, 230 F.R.D. 473 (E.D. La. 2005), the confidential relationship between plaintiffs and physicians is subject to different laws of the fifty states." (Pls.' Opp'n 9.) Plaintiffs have asked this Court not to apply some state's law (including that of Rhode Island), but instead to *ignore* the different laws of the fifty states regarding ex parte communications, and uniformly deny them in all circumstances. *See, e.g., Stempler v. Speidell*, 495 A.2d 857, 864 (N.J. 1985) (allowing treating physicians to voluntarily take part in *ex parte* interviews with defense counsel when defense counsel provides plaintiff's counsel with reasonable notice of the time and place of the interviews and provides the physician with an anticipated scope of the interview); *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D. D.C. 1983) (allowing *ex parte* contacts because "the [medical]privilege was never intended, however, to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time."); *Bryant v. Hilst*, 136 F.R.D. 487, 492-493 (D. Kan 1991) (finding that once a patient files litigation putting his medical conditions at issue, should a treating physician choose to partake in *ex parte* communications "he may be assured that there is no physician-patient privilege afforded by law as to plaintiff's medical condition or communications related thereto, whether directly related to plaintiff's medical condition giving rise to the litigation or otherwise.").

[4] Plaintiffs also cite *Wenninger v. Muesinger*, 240 N.W.2d 333 (Minn. 1976) in support of their argument, ignoring the fact that the *Wenninger* is no longer the law in Minnesota, having been overturned by statute in 1988, *see* Minn. Stat. § 595.02, subd. 5 (2008), as recognized in *Samms v. District Court, Fourth Judicial District of the State of Colorado*, 908 P.2d 520, 525 n.2, 333 (Colo. 1995) (*Wenninger* is no longer good law, and in Minnesota informal *ex parte* contacts with a treating physician concerning the care and treatment of a patient are allowed).

plaintiff-patients they treated or (b) retain a treating physician to act as an expert in a case in which his patient is a plaintiff. Any fears plaintiffs may have of treating physicians' tort liability or professional censure are not an issue.[5]

## CONCLUSION

For the foregoing reasons, as well as those previously identified in Defendants' Motion to Enforce the Amended Case Management Order and Permit Communications with Consulting Surgeon Experts who are also Treating Physicians, Defendants respectfully request that the Court issue an Order permitting them to continue their practice of retaining and communicating with consulting surgeon experts whether or not they are also treating physicians.

Dated: September 15, 2008

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

s/ Kirby T. Griffis

Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J. Cople, III
1350 I Street NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendant C.R. Bard, Inc. and Defendant Davol Inc.*

[5] Plaintiffs' counsels' professed fear of being exposed to disciplinary action due to inadvertent conversations with Defendant's consulting experts if Defendants are permitted to engage treating physicians as consultants are meritless. (Pls.' Opp'n. 14). If it were the case that a lawyer were opened up to professional discipline due to unknowingly speaking to a retained expert, then plaintiffs should give Defendants a list of *their* expert consultants to protect Defense counsel from exposure to this same "risk." Of course, parties in litigation never do this, because there is in fact no ethical issue raised by unknowingly talking to another side's consulting expert.

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2008 the foregoing DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC'S REPLY IN SUPPORT OF MOTION SEEKING CLARIFICATION OF ORDER PROHIBITING *EX PARTE* CONTACTS WITH PLAINTIFFS' TREATING PHYSICIANS was electronically filed with the clerk of court and notice of same provided to counsel of record via the Court's ECF system. I further certify that a true and correct copy of this filing was served upon the Plaintiffs' Liaison Counsel in the manner indicated below:

Donald Migliori
Motley Rice LLC
321 S. Main Street
PO Box 6067
Providence, RI 02940-6067
Fax: (401) 457-7708
Email: dmigliori@motleyrice.com
*via electronic mail*

s/ Kirby T. Griffis