UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND


CINDIE TORREY and SCOTT TORREY,
          Plaintiffs,

     v.                                   No. 07-MD-1842-ML
                                          No. 10-CV-3077-ML

DAVOL INC., C.R. BARD INC.,
ABC CORPORATIONS 1-5, and
JOHN DOES 1-5,
          Defendants.


MEMORANDUM AND ORDER

     This case is one of a multitude of cases transferred to this
Court by the United States Judicial Panel on Multidistrict
Litigation ("JPML") as *In re Kugel Mesh Hernia Patch Products
Liability Litigation*, MDL No. 1842, No. 07-MD-1842-ML (D.R.I.).
The multidistrict litigation ("MDL") involves claims surrounding
alleged defective hernia repair patches designed and manufactured
by Defendants Davol, Inc., Bard Devices, Inc., and C.R. Bard, Inc.,
(collectively, "Davol").  This matter is before the Court on the
plaintiffs' motion to amend the complaint.

Factual Background and Procedural History

     On June 25, 2007, plaintiff Cindie Torrey ("Torrey"), a Utah
resident, underwent hernia repair surgery at Cottonwood Hospital in

1

Salt Lake City, Utah.   Her surgeon, Dr. Edward Eyring, II ("Dr. Eyring"), implanted a Large Composix Kugel Patch hernia mesh that was designed and manufactured by Davol.   Torrey alleges that, several weeks after the surgery, she began to suffer from abdominal pain and other complications which eventually necessitated additional surgery.

On June 24, 2009, Torrey and her husband Scott (together, the "Torreys") brought suit in Utah state court, alleging claims against Davol of negligence, violation of Utah's Deceptive Trade Practices Act, strict product liability, breach of implied warranty, and failure to warn.   In addition, the Torreys brought a medical malpractice action against John Doe and ABC Corporation. On September 30, 2009, Davol removed the case to the United States District Court for the Central District of Utah.   On October 23, 2009, the JPML issued a Conditional Transfer Order transferring the case, to which the Torreys have filed an opposition.   At this time, the Torreys seek to amend the complaint to add a medical malpractice claim against Dr. Eyring.

According to the Torreys' memorandum in support of their motion to amend the complaint, they did not name Dr. Eyring[1] in

_____

[1] With respect to Cottonwood Hospital, where Torrey underwent the hernia repair surgery, the Torreys state that they have "to meet Utah's administrative requirements under the Utah Medical Malpractice Act before the entity could be named as a Defendant in the complaint." Plaintiffs' Mot. Amend Compl. 2.   The Torreys also state that they "are not sure at this time if a claim is

2

the original complaint because (1) Dr. Eyring was under the protection of bankruptcy proceedings, and (2) they had not yet complied with certain administrative requirements of Utah's Medical Malpractice Act.   Pltfs.' Motion Amend Compl. 2.   On July 28, 2009, the United States Bankruptcy Court of the District of Utah approved a stipulation for relief from automatic stay filed by Cindie Torrey and Dr. and Paige Eyring.   The Bankruptcy Court's order allows Torrey "to proceed with filing a pre-litigation hearing request with the Utah Department of Professional Licensing and a complaint in Utah state court" regarding her medical malpractice claims against Dr. Eyring.   The order also states that recovery on Torrey's claims against Dr. Eyring are "limited to the applicable insurance policy or policies."   July 28, 2009 Bankruptcy Order 2.

The Torreys assert that, after obtaining relief from the bankruptcy stay, counsel for Dr. Eyring informed them that they were bound to arbitrate their claims against Dr. Eyring pursuant to an arbitration agreement between the parties.   However, Dr. Eyring then agreed to "waive the requirements of notice and a prelitigation hearing under the Medical Malpractice Act."   Pltfs.' Mem. 3.   It is undisputed that an addition of Dr. Eyring to the litigation would defeat diversity jurisdiction and the Torreys

---

appropriate against [Cottonwood Hospital]" and that they have reached a tolling agreement for adding Cottonwood Hospital after conducting further discovery. Id.

anticipate that, after discovery has taken place, the case "will be transferred back to the Utah courts for trial." Pltfs.' Mem. 4. Davol has objected to the Torreys' motion to amend the complaint and requests that the motion be denied or, in the alternative, that the malpractice claim against Dr. Eyring be severed and only that portion of the case be remanded to Utah state court.

The Torreys take the position that, pursuant to Federal Rule of Civil Procedure 15(a), justice requires that an amendment to their complaint be allowed "[i]n order that [their] claims may be fully presented on their merits." Pltfs.' Mem. 6. The Torreys also argue that, pursuant to Federal Rule of Civil Procedure 20, joinder of Dr. Eyring as defendant is warranted because questions of law or fact common to Davol and Dr. Eyring will arise in this case. Specifically, the Torreys allege that Cindie Torrey's injuries are the result of defective mesh produced by Davol and promoted and implanted by Dr. Eyring.

In response, Davol initially asserted that the medical malpractice claims against Dr. Eyring are "legally and factually distinct from the allegations against Davol and Bard, which have nothing to do with the specific care and treatment of [Cindie Torrey]." Defs.' Mem. 3. Davol further claimed that "there are no common questions of law or fact relating to all defendants," and that joinder of Dr. Eyring would be improper." Id.

At a July 23, 2010 hearing on the matter, Davol's counsel also

4

suggested that the Torreys "had not sufficiently pled a case that would allow the amendment of the complaint." Transcript of Hearing on Pltfs.' Motion, July 23, 2010. Counsel for the Torreys stated at the hearing that the Torreys and Dr. Eyring "reached an agreement to waive the prelitigation procedure," which was permissible under Utah law, and "what allowed [Torrey] to even file the motion to amend." At the direction of the Court, Davol then submitted supplemental briefing on the standards for pleading a medical malpractice claim under Utah law. As of the date of this Memorandum and Order, the Torreys have filed no further response or documentation.

### Prelitigation Requirements under Utah Law

The Utah Health Care Malpractice Act ("UHCMA") was enacted in 1976 "to control the rising cost of medical malpractice insurance." Platts v. Parents Helping Parents, 897 P.2d 1228, 1231 (Utah Ct.App. 1995); see Utah Code Ann. § 78B-3-402 (purpose of act is to provide reasonable time limits for actions against health care providers, and "to expedite early evaluation and settlement of claims"). Under the UHCMA, "health care providers," as defined in the Act, are afforded certain procedural protection from malpractice lawsuits. Platts v. Parents Helping Parents, 897 P.2d at 1231. A claimant wishing to sue a health care provider must first (1) provide statutory notice, Utah Code Ann. § 78B-3-412; (2) participate in a prelitigation panel review, Utah Code Ann. § 78B-

3-416; and (3) file a complaint within the abbreviated two-year statute of limitations period, Utah Code Ann. § 78B-3-404. Failure to follow statutory procedures of the UHCDMA results in dismissal of the action. <u>Carter v. Milford Valley Mem'l Hosp.</u>, 2000 UT App 21, ¶ 13, 996 P.2d 1076, 1079 ("If these requirements are not fully met, the action will be dismissed.")(listing cases).

Pursuant to Section 78B-3-412 of the UHCMA, "[a] malpractice action against a health care provider may not be initiated unless and until the plaintiff: (a) gives the prospective defendant . . . at least 90 days' prior notice of intent to commence an action; and (b) . . . the plaintiff receives a certificate of compliance from the division in accordance with Section 78B-3-418." Utah Code Ann. § 78B-3-412. In addition, "[t]he party initiating a medical liability action shall file a request for prelitigation panel review with the division[2] within 60 days after the service of a statutory notice of intent to commence action under Section 78B-3-412." Utah Code Ann. § 78B-3-416(2)(a). Once the claimant has filed a request for prelitigation review, the UDOPL appoints a prelitigation panel and, after the panel determines whether (or not) the claim has merit, the UDOPL issues a certificate of compliance as "proof that the claimant has complied with all conditions precedent under this part prior to the commencement of

---

[2] The 'division' refers to the Utah Division of Occupational and Professional Licensing ("UDOPL"). Utah Code Ann. § 78B-3-403(8).

litigation." Utah Code Ann. § 78B-3-418(1)(b). If no prelitigation hearing has been completed within 180 days after the claimant has filed a request for prelitigation review, the claimant may file an affidavit of merit, after which the UDOPL issues a certificate of compliance and the claimant may commence litigation. Utah Code Ann. §§ 78B-3-416(3)(c), 418(3)(c).

However, the UHCMA also permits the claimant and any respondent to forego a prelitigation hearing if they agree "by written stipulation that no useful purpose would be served by convening a prelitigation panel under this section." Utah Code Ann. § 78B-3-416 (3)(e)(i). Once such a stipulation has been filed with the UDOPL, "the division shall within 10 days after receipt issue a certificate of compliance under Section 78B-3-418, as it concerns the stipulating respondent, and stating that the claimant has complied with all conditions precedent to the commencement of litigation regarding the claim." Utah Code Ann. § 78B-3-416(3)(e)(ii).

In the case before the Court, no evidence has been submitted by the Torreys that they have complied with the statutory requirements necessary to bring a medical malpractice lawsuit against Dr. Eyring. Although the Torreys acknowledged in their motion to amend the complaint that Dr. Eyring could not be named until "administrative requirements under the Utah Medical Malpractice Act" had been met, Defs.' Mot. 2, they have provided no

7

documentation to support their contention that they "have diligently worked out prerequisite legal steps in order to name the Defendants." Id.  Such documentation has been provided only with respect to the stay imposed in Dr. Eyring's bankrupcty proceedings, which explicitly " allow[ed] Torrey to proceed with filing a pre-litigation hearing request" as required under the UHCMA. Bankruptcy Court Order 2.  Regarding compliance with the UHCMA requirements, the Torreys merely state that "rather than spend the resources fighting the arbitration agreement, they would stipulate that Defendant Eyring waive the requirements of notice and a prelitigation hearing under the Medical Malpractice Act, that Dr. Eyring be added to the Torreys' complaint and that the litigation move forward."  Pltfs.' Statement of Facts ¶ 14.  However, the Torreys fail to assert, and there is nothing to indicate, that the parties have stipulated in writing to the UDOPL that "no useful purpose would be served by convening a pre-litigation panel," see Utah Code Ann. § 78B-3-416(3)(e)(i), or that the UDOPL has issued a certificate of compliance necessary for Torrey to commence her action against Dr. Eyring.  Utah Code Ann. § 78B-3-416(3)(e)(ii).[3]

Under the plain language of the UHCMA, the statutory prelitigation hearing proceedings are "compulsory as a condition

---

[3]

A letter from Dr. Eyring's counsel to counsel for the Torreys merely confirms that the parties waived the prelitigation requirements under the Arbitration Agreement. Defs.' Supp. Opp. to Pltfs' Mot. to amend Compl., Ex. 1.

precedent to commencing litigation," Utah Code Ann. § 78B-3-416(a)(c); see Smith v. Four Corners Mental Health Ctr., Inc., 2003 UT 23, ¶ 37, 70 P.3d 903, 914 (plaintiff barred from pursuing claim against mental health provider after failing to comply with procedural requirements of UHCMA).  In the absence of any assertion or documentation that the Torreys have complied with the UHCMA's mandatory administrative requirements, Dr. Eyring cannot be added as a defendant to the instant action.

### Conclusion

For the reasons stated herein, plaintiffs' motion to amend the complaint is DENIED.


SO ORDERED.

Mary M. Lisi
Chief United States District Judge

September 13, 2010

9