## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF RHODE ISLAND

BRENDA J. BARRETT
           Plaintiff,

     v.

DAVOL, INC., C.R.BARD, INC.,
JOSEPH VITELLO, M.D., individually
and as Agent, Servant, and/or
Employee of University of Illinois
Medical Center, and
UNIVERSITY OF ILLINOIS MEDICAL CENTER[1],
           Defendants.

C.A. 10-3426ML
MDL Docket No. 07-1842ML
In Re: Kugel Mesh Hernia
Repair Patch Litigation

## MEMORANDUM AND ORDER

This case is one of a multitude of cases currently pending before the Court as a result of a transfer by the United States Judicial Panel on Multidistrict Litigation as *In re Kugel Mesh Hernia Patch Products Liability Litigation*, MDL No. 1842, No. 07-MD-1842-ML (D.R.I.). The multidistrict litigation ("MDL") involves claims surrounding alleged defective hernia repair patches designed and manufactured by Defendants Davol, Inc., Bard Devices, Inc., and C.R. Bard, Inc., (collectively, "Davol"). The matter is before the Court on two separate motions by Davol and the Board of Trustees to

_____

[1] The parties agree that the Board of Trustees of the University of Illinois (the "Board of Trustees") is the proper defendant instead of the University of Illinois Medical Center ("UIMC").

dismiss the complaint.

## I.   Factual Background and Procedural History

According to the complaint, plaintiff Brenda J. Barrett ("Barrett"), underwent emergency hernia repair surgery on June 6, 2001 at Rush Medical Center and Hospital in Chicago, Illinois. Complaint ¶ 18.   At that time, a Kugel Patch was implanted in Barrett. Id.   During a December 14, 2005 gastric bypass surgery performed on Barrett, surgeon Joseph Vitello, M.D. ("Dr. Vitello") surgically cut through the previously implanted Kugel Patch, "despite knowledge of the Kugel Patch's propensity to harden and/or become abrasive" inside the body. Id. ¶ 57 a.

Barrett alleges that from "December 15, 2005 to November 27, 2006, [her] abdominal and intestinal wounds failed to heal" and that Dr. Vitello informed Barrett "that the Kugel Patch was causing [Barrett] the inability to heal and causing infection." Id. ¶ 21. Barrett specifically alleges that, "[d]uring that time, Dr. Vitello stated essentially that 'a problem with Kugel mesh is that it solidifies.'" Id. (quotations in original).

On November 27, 2006, "after less invasive methods failed to resolve the symptoms associated with the mesh," Dr. Vitello "surgically removed one-third of the Kugel Patch" from Barrett's abdomen. Id. ¶22.   Barrett states that she continued to suffer severe pain and other complications following the November 27, 2006 surgery. Id. ¶ 24.   With respect to this date, Barrett asserts that

2

she "could not have discovered the existence of the defect in the Kugel Patch implanted in her until at least November 27, 2006, when the subject patch was surgically removed." Id. ¶ 20. The complaint further states that Dr. Vitello performed additional surgery to remove the remainder of the Kugel Patch on February 9, 2007. Id. ¶ 25. According to Barrett, she continues to suffer significant scars and deformation on her abdomen. Id. ¶ 26.

On February 2, 2009, Barrett filed a complaint in Illinois state court against "Johnson & Johnson Div. of Ethicon,[2]" alleging personal injuries as the result of implantation of surgical mesh. On March 25, 2009, Barrett requested that her suit be voluntarily dismissed without prejudice, which was granted on April 13, 2009. On April 15, 2010, Barrett filed, for the first time, a complaint against Davol with the Circuit Court of Cook County, Illinois, which Davol timely removed to the United States District Court for the Northern District of Illinois, based on diversity. The complaint asserts claims of Strict Liability, Negligence, and Willful and Wanton Conduct against Davol. It further asserts a claim of Negligence against Dr. Vitello and UIMC.

On June 28, 2010, the Board of Trustees filed a motion in the Illinois District Court to dismiss Barrett's complaint on the ground that the Illinois Court of Claims has exclusive jurisdiction

---

[2]

It is undisputed that Davol was not a party to this action.

3

over all claims against the State of Illinois for damages in cases sounding in tort.   Board of Trustees' Mot. to dismiss 1-2.

On June 29, 2010, Davol filed a separate  motion to dismiss, asserting that Barrett's claims against it were barred by the Illinois two-year statute of limitations for personal injury claims.

On June 30, 2010, the Illinois District Court held a status hearing in the matter, taking the motions to dismiss under advisement, and ordering Barrett to respond by July 20, 2010. Barrett filed an opposition to the Board of Trustees' motion on July 21, 2010, in which she asserted that the Court of Claims' jurisdiction only applies to cases "when damages do not exceed $100,000."   Pltf.'s response ¶ 2.    The following day, Barrett filed an amended response to the Board of Trustees' motion that included an affidavit of her attorney, attesting that Barrett's medical bills exceed the amount of $100,000.   On the same day, Barrett also filed a motion to sever the medical malpractice claims against UIMC and Dr. Vitello and remand those claims to the Illinois state court.   However, Barrett filed no response to Davol's motion to dismiss her complaint.

On July 22, 2010, the Board of Trustees filed a reply in support of its motion and, on July 26, 2010, Davol filed a reply in support of its motion, pointing out that Barrett had failed to comply with the Illinois District Court's instructions to file a

4

response to Davol's motion.

On August 10, 2010, the case was conditionally transferred to this Court as part of the MDL. On September 15, 2010, this Court granted Barrett's request to extend the time period for filing a response to Davol's motion to dismiss her complaint. On October 6, 2010, Barrett filed such a response.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12, a case may be dismissed, *inter alia*, for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Motions to dismiss under either subsection are subject to the identical standard of review. McCloskey v. Mueller, 446 F.3d 262, 265-66 (1st Cir. 2006)("Although these rulings derive from different subsections of Rule 12(b), . . . our standard of review sounds the same familiar refrain."). In reviewing a motion to dismiss, the Court accepts as true the factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008). A complaint is dismissed if it fails to state facts sufficient to establish "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

With respect to affirmative defenses, such as a contention that a claim is barred by the applicable statute of limitations,

5

dismissal may be indicated where "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008)(internal citation omitted). "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." Id.

### III. The Board of Trustees' Motion to Dismiss the Complaint

The Board of Trustees seeks to dismiss Barrett's claim against it on the ground that the Court has no jurisdiction in this case. Specifically, the Board of Trustees argues that any claims against the Board must be brought in the Court of Claims, which provides exclusive jurisdiction over tort claims against the State of Illinois, including specifically named State agencies and entities, such as the Board of Trustees. Board of Trustees' Mem. ¶ 5-7. Barrett's only objection against the Board of Trustees' motion to dismiss her complaint is the assertion that the jurisdiction of the Court of Claims is limited to tort claims "when damages do not exceed $100,000." Barrett's Amended Response ¶ 2. Barrett contends that "[u]pon recovery in this case, [she] will be entitled to damages in excess of $100,000." Id. ¶ 4. On its part, the Board of Trustees replies that "[t]he $100,000 damage

limitation simply provides a cap" on recovery and does not allow Barrett to avoid the Court of Claims' exclusive jurisdiction. Board of Trustees' Reply ¶ 6.

The Illinois Lawsuit Immunity Act provides that the State of Illinois shall not be made a defendant or party in any court except in the Court of Claims. 745 ILCS 5/1 (West 1998). Janes v. Albergo, 254 Ill.App.3d 951, 957, 193 Ill.Dec. 576, 580, 626 N.E.2d 1127, 1131 (1993)(Under the doctrine of sovereign immunity, the State of Illinois may only be sued if the State consents to be sued or the suit is brought in the Court of Claims). In addition, "those entities that can be considered as arms of the State are also immune from suit." Assoc. of Mid-Continent Univs. v. The Bd. of Trustees of Northeastern Illinois Univ., 308 Ill.App.3d 950, 953, 242 Ill. Dec. 526, 528, 721 N.E.2d 805, 807 (1999); Brandon v. Bonell, 368 Ill. App.3d 492, 510, 306 Ill.Dec. 668, 687, 858 N.E.2d 465, 484 (2006)(sovereign immunity under the State Lawsuit Immunity Act includes immunity against arms of the State). The Illinois Supreme Court in Ellis v. Bd. of Governors of State Coll. & Univ., (1984) 102 Ill.2d 387, 393, 80 Ill. Dec. 750, 753, 466 N.E.2d 202, 205, held that a suit against a State college or university must be brought in the Court of Claims because those institutions are arms of the State. Ellis v. Bd. of Governors of State Coll. & Univ., 721 N.E.2d at 206 (on determination that the Board of Governors is an arm of the State, Court of Claims had exclusive jurisdiction

over cause of action sounding in tort or contract).

The Illinois Court of Claims Act (705 ILCS 505/1 et seq.)(West 2000) establishes a Court of Claims to provide a forum for actions against the State. Healy v. Vaupel, 133 Ill.2d 295, 307, 140 Ill. Dec. 368, 374, 549 N.E.2d 1240, 1246 (1990). Pursuant to Section 8 of the Illinois Compiled Statutes, the Court of Claims "shall have exclusive jurisdiction to hear and determine the following matters:

> (d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against . . . the Board of Trustees of the University of Illinois, . . . **provided, that an award for damages in a case sounding in tort**, other than certain cases involving the operation of a State vehicle described in this paragraph, **shall not exceed the sum of $100,000 to or for the benefit of any claimant."** 705 ILCS 505/8(d)(Emphases added).

Nothing in the plain language of Section 8 indicates that the statute makes a distinction between claims for more or less than $100,000 in order to determine applicable jurisdiction, or that tort cases are exempted from the exclusive jurisdiction of the Court of Claims based on the size of a damage award. Rather, Section 8 limits damages in a tort case to $100,000, unless the action arises out of the operation of a state vehicle. Reichert v. Court of Claims of State of Illinois, 389 Ill. App.3d 999, 1001, 330 Ill. Dec. 117, 119, 907 N.E.2d 930, 932 (4th Dist. 2009) (Court of Claims imposing statutory $100,000 cap on award after

determining plaintiff's damages to be at least $250,000). Barrett's contention that her expected damage award exceeds the statutory cap of $100,000 does not deprive the Court of Claims of its exclusive jurisdiction over Barrett's personal injury claim against the Board of Trustees.

### IV.   Davol's Motion to Dismiss the Complaint

Davol seeks to dismiss Barrett's complaint against it on the groundsthat her stated causes of action are barred by the applicable Illinois statute of limitations.  Davol points out that, according to specific allegations in Barrett's complaint, she learned, at the latest, on November 27, 2006 (the date on which Dr. Vitello removed one-third of the Kugel Patch) that her injuries were attributable to the Kugel Patch.   Barrett, however, did not file a complaint against Davol until April 15, 2010, more than 16 months after the expiration of the Illinois two-year limitations period for all personal injuries.

Davol also suggests that the allegations in Barrett's complaint are not sufficient to support a fraudulent concealment claim that would constitute an exception to the statute of limitations.  Specifically, Barrett fails to allege that Davol acted with fraud and deception in order to prevent her from timely pursuing her claim. Moreover, the complaint explicitly states that Barrett knew the cause of her injuries by November 27, 2006 and could have filed a suit any time thereafter.

In response to Davol's motion, Barrett states that she "did not discover nor could have reasonably discovered" the cause for her injury "until after she completely healed." Barrett Mem. 3, ¶ 7.  Barrett suggests that the date triggering her ability to file a personal injury complaint against Davol fell somewhere in May 2008 because, up to that point, she "still had open wounds and follow up appointments until May 2008 regarding her recovery from surgery." Barrett's Mem. 3, ¶ 7.  In the alternative, Barrett argues that the Davol defendants "fraudulently concealed the defectiveness of their product and are equitably estopped from raising the complaint's timeliness as defense." Id. 5, ¶ 11.

A.  Statute Of Limitations

Under Illinois law, the period during which an action for personal injury may be brought is limited to two years.  735 ILCS 5/13-202.  Pursuant to Section 13-202, "[a]ctions for damages for an injury to the person . . . shall be commenced within 2 years after the cause of action accrued."  Generally, "a cause of action for personal injuries accrues when the plaintiff suffers injury." Golla v. Gen. Motors Corp., 167 Ill.2d 353, 361, 212 Ill. Dec. 549, 553, 657 N.E.2d 894, 898 (1995).  However, "to alleviate harsh consequences that would flow from literal application of the limitations period" in cases where an injury might be latent and not immediately discoverable, "the judiciary created the 'discovery rule.'" Id.; Hollander v. Brown, 457 F.3d 688, 692 (7th Cir.

2006)("The effect of the discovery rule 'is to postpone the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused.'")(citation omitted).

Pursuant to the discovery rule, the statute of limitations begins to run when "the injured plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." Golla v. General Motors Corp., 167 Ill.2d at 361, 212 Ill. Dec. 549 at 553, 657 N.E.2d at 898(citing Rozny v. Marnul, (1969), 43 Ill.2d 54, 72-73, 250 N.E.2d 656)). It is not necessary for the plaintiff to realize "the consequences of her injury or the full extent of her injuries" in order to trigger the statute of limitations. Id.

It is well settled in Illinois law that "once a party knows or reasonably should know both of his injury and that it was wrongfully caused, 'the burden is upon the injured person to inquire further as to the existence of a cause of action.'" Castello v. Kalis, 352 Ill. App.3d 736, 745, 287 Ill.Dec. 815, 816 N.E.2d 782 (2004). To determine whether an injury is "wrongfully caused," it is not necessary that the plaintiff knows "of a specific defendant's negligent conduct" or "of the existence of a cause of action." Id. (quoting Young v. McKieque, 303 Ill.App.3d 380, 388, 236 Ill.Dec.907, 708 N.E.2d 493 (1999)). Rather, it is

11

sufficient that the plaintiff learns "'that the cause of his problem stems from another's negligence and not from natural causes.'" Id. (quoting Saunders v. Klungboonkrong, 150 Ill.App.3d 56, 60, 103 Ill.Dec. 565, 501 N.E.2d 882 (1986)).

In her complaint, Barrett expressly concludes that she "could not have discovered the existence of the defect in the Kugel Patch implanted in her until November 27, 2006, when the subject patch was surgically removed." Complaint ¶ 17. (Emphasis added). Barrett's complaint also clearly states that her attending surgeon, Dr. Vitello, advised her during the period from December 15, 2005 to November 27, 2006, that the Kugel Patch was causing her injuries and that "'a problem with Kugel Mesh is that it solidifies.'" Id. ¶ 21 (quotations in original).  It is evident that, by November 27, 2006, and possibly before that date, Barrett knew that she had suffered an injury and was aware that her injury may have been the result of negligence rather than natural causes.  On these asserted facts, Barrett's complaint, in order to be timely, had to be filed no later than November 27, 2008.  Barrett's suggestion that the statute of limitations did not begin to run until she was "completely healed" has no support in Illinois law.  Once Barrett knew that she had suffered an injury that may have been wrongfully caused, the two-year limitations period began to run.  Therefore, Barrett's claims asserted against Davol in her April 15, 2010 complaint are barred by the Illinois statute of limitations.

B. Fraudulent Concealment

Under an express exception to the statute of limitations, "if a defendant has fraudulently concealed the existence of a cause of action, the plaintiff is allowed five years within which to bring suit after he discovers the cause of action." <u>Lowe v. Ford Motor Co.</u>, 313 Ill. App.3d 418, 421, 246 Ill. Dec. 378, 730 N.E.2d 58 (2000). Illinois law provides that, "[i]f a person liable to an action fraudulently conceals the cause of action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such a cause of action, and not afterwards." 735 ILCS 5/13-215.

In order to invoke Section 13-215 to toll the statute of limitations, a plaintiff is required to show "affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim. Mere silence of the defendant and the mere failure on the part of the plaintiff to learn of a cause of action does not amount to fraudulent concealment." <u>Cangemi v. Advocate South Suburban Hosp.</u>, 364 Ill.App.3d 446, 458, 300 Ill.Dec. 903, 845 N.E.2d 792 (2006). A plaintiff must establish that the defendant "made representations or performed acts which were known by it to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied." <u>Harvey v. Harris Trust and Sav. Bank</u>, 73 Ill.App.3d 280, 287, 29

13

Ill.Dec. 198, 391 N.E.2d 461 (1979); <u>Gredell v. Wyeth Laboratories, Inc.</u>, 346 Ill.App.3d 51, 60, 281 Ill.Dec. 137, 803 N.E.2d 541 (2004) (Plaintiff must show that defendants' misrepresentations were "made with the intent to deceive him and that he detrimentally relied on them such that he was lulled or induced to delay filing suit until after the statute of limitations expired."). Fraudulent concealment in this context "denotes efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded to prevent, by fraud or deception, the plaintiff from suing in time." <u>Shropshear v. Corporation Counsel of City of Chicago</u>, 275 F.3d 593, 595 (7th Cir. 2001).

Barrett's complaint alleges that Davol "actively and intentionally" concealed "from Plaintiff, Plaintiff's physicians, and the general public" notice of the "defective and dangerous condition associated with the Kugel Patch." Complaint ¶¶ 13 - 14. However, nothing in the complaint indicates that Davol concealed the alleged defects of its product with the intent to prevent Barrett from discovering her cause of action. Rather, Barrett simply suggests that Davol's "concealment of a known defect from Plaintiff tolls any applicable statute of limitation." <u>Id.</u> ¶ 17.

In addition, Barrett herself acknowledges that, even in light of Davol's alleged concealment, she had learned of "the existence of the defect in the Kugel Patch" by November 27, 2006. There is nothing to support a reasonable inference that Davol's alleged

concealment precluded Barrett from filing a timely complaint after that discovery.  Given the facts and allegations set forth in the pleadings, this Court is of the opinion that Barrett has failed to assert a claim of fraudulent concealment and that her opportunity to file a complaint against Davol arose no later than November 27, 2006.

## Conclusion

For the reasons stated herein, Davol's motion to dismiss the complaint is GRANTED and the Board of Trustees' motion to dismiss the complaint is GRANTED.

SO ORDERED.

Mary M. Lisi
Chief United States District Judge

October 21, 2010