UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

IN RE KUGEL MESH HERNIA PATCH
PRODUCTS LIABILITY LITIGATION

No. 07-md-1842 ML
This document relates to all actions.

MEMORANDUM AND ORDER

On September 28, 2007, this Court appointed Ernest Cory ("Mr. Cory") and two other attorneys to serve as Co-Lead Plaintiffs' Counsel in this multi-district litigation (MDL). See Practice and Procedure Order Number 2 (Docket No. 24). The Court made the appointment based on Mr. Cory's assurances to the Court that he understood and was capable of performing the important functions of Co-Lead Plaintiffs' Counsel in this MDL. See Petition for Appointment of a Plaintiffs' Steering Committee, Including Co-Lead Plaintiffs' Counsel and Liaison Counsel, and Arguments in Support of Proposals Effecting Procedural Structure (Docket No. 16). Mr. Cory assured this Court that

> counsel proposed to serve as Co-Lead Counsel are fully capable of representing the plaintiffs in all actions during pre-trial proceedings and efficiently and effectively guiding all of the cases in this litigation. These seasoned counsel are prepared for the many tasks ahead, such as initiating, coordinating and conducting pre-trial discovery to develop evidence on issues common to all plaintiffs, calling meetings of counsel for plaintiffs for appropriate purposes, and acting as spokespersons for all plaintiffs at pre-trial proceedings and in response to any inquiries by the court. Moreover, as explained in this petition, these attorneys have already demonstrated an ability to efficiently and cooperatively work together in this litigation.

Id. at 9.

Since his appointment as Co-Lead Plaintiffs' Counsel, Mr. Cory has participated in many

1

conferences with the Court and opposing counsel; he has conducted discovery common to all cases; he has assisted in the selection of bellwether cases for trial; he has conducted case-specific discovery; he has served as trial counsel in one of the bellwether trials; and he has generally performed all the duties of Co-Lead Plaintiffs' Counsel as set forth in Practice and Procedure Order No.2. See generally Practice and Procedure Order Number 2 (Docket No. 24).

The events that gave rise to this Court's issuance of an order to show cause why Mr. Cory's appointment as Co-Lead Plaintiffs' Counsel should not be vacated began in November of 2009 when the Defendants noticed the deposition of Dr. Sandhya-Anand Lagoo-Deenadayalan ("Dr. Lagoo") in the Thorpe matter. Dr. Lagoo is the surgeon who explanted the Composix Kugel patch from Mr. Thorpe. Dr. Lagoo was, therefore, a critical witness in the Thorpe case. Mr. Thorpe's case had been identified as a bellwether case for trial by the parties in about July of 2009.

On November 11, 2009, an attorney from Mr. Cory's law firm,[1] Mr. Stephen R. Hunt, Jr., ("Mr. Hunt"), attended Dr. Lagoo's deposition in Durham, North Carolina. After defense counsel questioned Dr. Lagoo, Mr. Hunt posed a series of questions. At the conclusion of the deposition, Mr. Hunt stated that he had no further questions for Dr. Lagoo. The deposition was not video-taped. Fact discovery in the Thorpe case closed on December 15, 2009.[2]

Of significance to this matter, Dr. Lagoo testified that, as of the time of her November 2009 deposition, no one had asked her to testify at the Thorpe trial which was then scheduled to be tried in Rhode Island in April 2010. Equally significant, both sides knew from the outset that Dr. Lagoo was a resident of North Carolina, and that, therefore, that she was not subject to the subpoena power

---

[1] Cory Watson Crowder & DeGaris ("Cory Watson").

[2] Expert discovery closed on February 5, 2010.

2

of this Court.

At the request of the parties, the <u>Thorpe</u> trial was rescheduled to August 2010. A date-certain of August 2, 2010,[3] was set by the Court at a conference with counsel on May 7, 2010.

On May 17, 2010, this Court issued an amended pretrial order which set jury impanelment for July 28, 2010. <u>See</u> Amended Pretrial Order (Docket No. 2797). That order also required counsel to provide to the Court, by July 20, 2010, a full transcript of any witness whose testimony was to be presented by way of deposition. <u>Id.</u> Counsel were also directed to file electronically, by July 20, 2010, a list of the proponent's designations by page and line reference. <u>Id.</u> Opposing counsel were to file cross-designations and objections by July 28, 2010. <u>Id.</u>

On July 12, 2010, Plaintiffs filed a motion for leave to take the <u>de bene esse</u> video deposition of Dr. Lagoo "in order to preserve her testimony for purposes of trial." Plaintiffs' Motion for Leave to Take the <u>De Bene Esse</u> Video Deposition of Dr. Sandya-Anand Lagoo-Deenadayalan at 1 (Docket No. 2930). The motion was signed by Plaintiffs' Liaison Counsel, Mr. Migliori, with Mr. Cory, Mr. Hunt, and Mr. Jon Conlin[4] ("Mr. Conlin") also listed as the submitting attorneys. The motion was supported by a memorandum of law also signed by Messrs. Migliori, Cory, Conlin and Hunt. In that memorandum, counsel stated:

> <u>With the understanding from Dr. Lagoo-Deenadaylan that she would be available to testify at trial, plaintiffs' counsel asked her a limited number of questions during her November 11, 2009 deposition</u>. However, plaintiffs' counsel learned for the first time on July 6, 2010, that Dr. Lagoo-Deenadayalan will be unavailable to attend the trial to testify, and because of her status as a North Carolina resident, plaintiffs cannot compel her

---

[3]Trial actually began August 3, 2010.

[4]Mr. Jon Conlin is also an attorney in the Cory Watson law firm.

appearance by way of a subpoena.

Plaintiffs' Memorandum of Law in Support of Its Motion for Leave to Take the <u>De Bene Esse</u> Video Deposition of Dr. Sandya-Anand Lagoo-Deenadayalan at 2 (emphasis added) (Docket No. 2930-1). Counsel also stated that:

> <u>Plaintiffs also believed until July 6, 2010, in good faith, that Dr. Lagoo-Deenadayalan would be available to attend the upcoming trial.</u> Immediately upon learning of the unavailability for trial, plaintiffs' counsel contacted defendants' counsel, and requested a <u>de bene esse</u> video deposition take place at a mutually agreeable time in order to preserve Dr. Lagoo-Deenadayalan's testimony for use at trial.

Id. at 5 (emphasis added).

On July 15, 2010, Defendants filed an objection to Plaintiffs' motion, and on July 16, 2010, Plaintiffs filed a reply to the Defendants' opposition. The motion was referred to Magistrate Judge Almond, who, after reviewing the papers and listening to the arguments of counsel, granted Plaintiffs' motion on July 21, 2010. Subsequently, Dr. Lagoo was deposed in North Carolina on July 26, 2010. That deposition was video-taped.

On July 30, 2010, Defendants filed an objection to Plaintiffs' anticipated use of the video-taped deposition of Dr. Lagoo. Defendants argued, <u>inter alia</u>, that Plaintiffs had obtained the Court's permission to take the video deposition "by representing to the Court that Dr. Lagoo had 'agreed' or 'promised' to testify live at trial, but then could not rearrange her schedule." Defendants' Objection to the "<u>De Bene Esse</u>" Deposition of Dr. Sandhya-Anand Lagoo-Deenadayalan at 1 (Docket No. 2962). Counsel then set forth portions of the video deposition wherein Dr. Lagoo testified in response to a question posed by Mr. Conlin:

> Q. [I]n July 6th -- was there any time before that you told us definitively that you could not come?

4

[Defense Counsel]: Objection to form.

[A.] I mentioned that I would look into my schedule, <u>but I never promised that I would be able to come.</u>

Id. Exhibit 1 at 12 (emphasis added).

Follow-up questioning by Defendants' counsel further explicated Dr. Lagoo's communications with Mr. Conlin:

> Q. Okay. Did you agree during that call that you would come to Rhode Island to testify?
>
> A. I said that I would –
>
> MR. CONLIN: Objection to form.
>
> [A.] -- but that I had no definite information about the different times because I didn't have my calendar.
>
> [Q.] [ ] Okay.
>
> A. But I knew that I had cases and knew that I was going to be on call and that it -- that I would check my calendar.
>
> Q. <u>Before this call of July 1st of 2010 or thereabouts, had you given any indication to plaintiff's counsel that you would be coming live to trial?</u>
>
> MR. CONLIN: Objection to form.
>
> [A.] <u>No.</u> The -- the information about 'yes, I will try to see what's possible' was only said once on the phone.

Id. at 36 (emphasis added).

> Q. And on that first call, did you promise that you would clear your schedule to find a time to get up to Providence, Rhode Island to testify in trial?
>
> MR. CONLIN: Objection. Asked and answered. Badgering. Misstates her previous testimony. Leading.
>
> [A.] I think I said that I would look at it and -- I would look at my schedule and get back.

Id. at 37.

> Q. Nobody in your office would have agreed that you were going to come testify at trial before you talked to plaintiff's counsel, right?
>
> A. No, no.
>
> Q. Meaning that didn't happen?
>
> A. No, I was the only person who said that I will try to see if it is possible.
>
> Q. Okay.
>
> A. So I –
>
> Q. <u>But you never promised to attend?</u>
>
> A. <u>No</u>.

Id. at 41 (emphasis added).

On August 2, 2010, this Court ruled on Defendants' opposition to Plaintiffs' use of the video deposition. Because of the discrepancies between what Plaintiffs' counsel stated in their memoranda and the testimony of Dr. Lagoo as set forth in Defendants' responsive papers, Plaintiffs were permitted to play to the jury only those portions of the video deposition concerning topics that were discussed at Dr. Lagoo's November 2009 deposition.

On September 16, 2010, this Court issued an order requiring Mr. Cory to show cause why his appointment as Plaintiffs' Co-Lead Plaintiffs' Counsel should not be vacated. That order was based in-part on a finding that:

> 1. The statement in the July 12, 2010, memorandum that Plaintiffs' counsel asked only a limited number of questions of Dr. Lagoo at her November 2009 deposition "[w]ith the understanding from Dr. Lagoo . . . that she would be available to testify at trial," Order to Show Cause at 2 (Docket No. 3092), was a misrepresentation to the Court;

> 2. The statement in the July 12, 2010, memorandum that Plaintiffs "believed until July 6, 2010, in good faith, that Dr. Lagoo . . . would be available to attend the upcoming trial," id., was also a misrepresentation; and,
>
> 3. Mr. Conlin's averment in his July 16, 2010, affidavit regarding Dr. Lagoo's "agreement" to "testify live," id. at 3, on August 5, 2010, was also a misrepresentation.

The order to show cause questioned Mr. Cory's ability to fulfill the important responsibilities as Co-Lead Plaintiffs' Counsel in this MDL. On October 15, 2010, Mr. Cory, through counsel, submitted an extensive written response to the Order to Show Cause. See Response of Ernest Cory to September 16, 2010 Order to Show Cause (Docket No. 3223). The response included affidavits from Mr. Cory, Mr. Conlin, Dr. Lagoo, and Mr. Edward A. Wallace, a partner in the law firm of Wexler Wallace. On October 20, 2010, Mr. Cory submitted a revised affidavit. See Revised Affidavit of Ernest Cory (Docket No. 3240).

In her affidavit, dated September 23, 2010, Dr. Lagoo states:

> I personally spoke with Mr. Conlin on the afternoon of Wednesday, June 30, 2010 regarding the upcoming Thorpe trial. At that time, I incorrectly assumed that I had to come testify live if requested by either side. This was not something that had been told to me by any of the lawyers, or something that I expressed to Mr. Conlin, but was based on my own lack of experience with the federal legal system.

Response of Ernest Cory to September 16, 2010 Order to Show Cause, Affidavit of Dr. Lagoo at ¶ 4 (Docket No. 3223-7). Dr. Lagoo also states that:

> I originally told Mr. Conlin on June 30, 2010 that I would come to Rhode Island to testify at the trial on Thursday August 5, 2010. This agreement to appear and testify in Rhode Island was based upon my personal belief that I was legally required to appear and testify if asked by either party. Upon learning of the voluntary nature of my testimony and after looking again at my schedule, I told Mr. Conlin for the first time on July 6, 2010 that I could not appear and testify live at trial in Rhode Island. At no time prior to July 6, 2010, had I ever specifically informed any lawyers that I would not be able or

7

willing to come and testify live in Rhode Island.

Id. at ¶ 9.

These statements appear to contradict Dr. Lagoo's earlier testimony given at the July 26, 2010, deposition. Given Dr. Lagoo's recantation of her previous statements that she had not promised to travel to Rhode Island to testify at the Thorpe trial, and because this Court does not have the means to reconcile these discrepancies, the Court will consider only the objectionable statements made in the July 12, 2010, memorandum in support of the motion for leave to take the de bene esse deposition of Dr. Lagoo.

In his revised affidavit, Mr. Cory acknowledges that his firm had the responsibility to coordinate with defense counsel the depositions of treating physicians such as Dr. Lagoo in the Thorpe case. Mr. Cory advised that he delegated these responsibilities to Mr. Conlin and Mr. Hunt. When Dr. Lagoo told Mr. Conlin on July 6, 2010, that she would not travel to Rhode Island to testify, and after Defendants' counsel refused to agree to a second deposition of Dr. Lagoo, the "[t]rial [t]eam"[5] agreed that a motion for leave to take Dr. Lagoo's video taped deposition would be filed. Revised Affidavit of Ernest Cory at ¶¶ 11, 27 (Docket No. 3240). The trial team assigned the drafting of the motion and memorandum to the law firm of Wexler Wallace. Id. at ¶ 27. A draft of the memorandum was circulated to the trial team for "review and edits" on Friday, July 9, 2010. Id. at ¶ 29.

Mr. Cory further states that at the time the memorandum was circulating, he was preparing for trial in the Thorpe case and, "given the urgency of the matter and the limited scope of my involvement with the Lagoo matter up to that point in time, I delegated the responsibility for review

---

[5]The "trial team" consisted of the law firms of Motley Rice, Cory Watson, and Wexler Wallace.

of any pending filings to Jon Conlin in my office." Id. at ¶ 30.

According to the affidavit of Mr. Wallace, he "did not actually receive the assignment to draft the brief[6] until approximately 4:30 p.m. [c]entral [s]tandard [t]ime" on July 8, 2010. Affidavit of Edward A. Wallace at ¶ 5 (Docket No. 3223-5). Mr. Wallace states that "[i]t is my understanding that the factual information in the [m]emorandum was pieced together from information given to us during a conference call among members of the [t]rial [t]eam on or about July 8, 2010 that addressed this and several other issues." Id.

Mr. Wallace states that he sent a draft of the memorandum to the trial team on July 9, 2010, "with the direction that the draft be reviewed." Id. at ¶ 7. Significantly, Mr. Wallace also states:

> Because I was neither at the deposition of Dr. Lagoo nor had any discussions with her, drafting mistakes that might have been made in describing the facts were to be discovered and corrected by the Cory Watson law firm as members of that firm had personal knowledge of these facts, specifically the facts relating to Dr. Lagoo, her deposition and any relevant communications concerning her testimony and/or expected appearance at trial.

Id. at ¶ 9. Further, Mr. Wallace asserts: "the statement in the [m]emorandum that 'with the understanding from Dr. Lagoo [ ] that she would be available to testify at trial, Plaintiffs' counsel asked her a limited number of questions during her November 11, 2009 deposition' was a drafting error that was not corrected by Cory Watson prior to the filing of the [m]emorandum." Id. at ¶ 11. Mr. Wallace does not identify the source from whom he received that specific factual averment which was included in the July 12, 2010, memorandum.

In his affidavit, Mr. Conlin states that he read the "draft papers" after they were circulated on July 9, 2010. Affidavit of Jon C. Conlin, Esq. at ¶ 11 (Docket No. 3223-4). He also

---

[6]The Court assumes he is referring to the July 12, 2010, memorandum.

acknowledges that it "would have ultimately been my responsibility from [Cory Watson] to double check the veracity of any statements in Plaintiffs' . . . motion . . . ." Id. at ¶ 13. Mr. Conlin further states that

> [i]n hindsight, I should have called Mr. Hunt, as the attorney who actually attended this [sic] initial Dr. Lagoo deposition, at this time and confirmed with him that he had read the draft motion and that the wording used by the drafters conformed with his recollection of events and did not overstate or misstate plaintiffs' position.

Id. at ¶12.

Having now read the submissions of Mr. Cory and the affidavits of Dr. Lagoo, Mr. Wallace and Mr. Conlin, the Court is convinced that the misrepresentations of fact as set forth in the July 12, 2010, memorandum were not done intentionally by Mr. Cory. Rather, it is now clear that Mr. Cory delegated to Messrs. Conlin and Hunt the task of securing Dr. Lagoo's testimony for trial. Further, Mr. Cory relied on Mr. Conlin to ensure that the July 12 memorandum accurately set forth the facts and travel of his firm's dealings with Dr. Lagoo. Mr. Conlin has now admitted that he failed to verify the factual averments in the July 12 memorandum. Mr. Cory acknowledges, however, that, as the senior attorney in the firm, he remains ultimately responsible for the misstatements that were filed in this Court.

The Court makes two additional observations:

First, the misstatements contained in that memorandum related to essential elements for the relief sought by Plaintiffs' counsel, i.e., that the second deposition was necessary because counsel were "surprised" by Dr. Lagoo's refusal to come to Rhode Island after she had "agreed" to come, and that Plaintiffs had been diligent in securing her trial testimony. For instance, Plaintiffs asserted that "[s]uch preservation depositions are especially permitted where, as here, . . . the party

proposing the preservation deposition did so diligently and promptly, and thus no attempt to by-pass discovery deadlines could be inferred." Plaintiffs' Memorandum of Law in Support of Its Motion for Leave to Take the De Bene Esse Video Deposition of Dr. Sandya-Anand Lagoo-Deenadayalan at 3 (Docket No. 2930-1). In support of this assertion, Plaintiffs cited to district court cases where preservation depositions had been permitted by the Court. In those cases, Plaintiffs asserted that the preservation deposition was permitted where there was "minimal delay by the proponent" or where the witness was "unexpectedly moving out-of-state and would thus be unavailable for trial beyond the court's subpoena power." Id. at 4 (citing Shannon v. Sasseville, Civ. No. 08-343-P-H, 2009 WL 3711484 (D. Me. Nov. 3, 2009) and Wilmarth v. McKenzie, Civ. No. 5:05CV227, 2006 WL 2738957 (W.D.N.C. Sept. 25, 2006)).

The net effect of Plaintiffs' misrepresentation in the July 12, 2010, memorandum was to "fit" their situation into the legal requirements they knew were necessary to support their claim; i.e., that they were genuinely "surprised" by Dr. Lagoo's refusal to travel to Rhode Island and that they had been diligent in securing Dr. Lagoo's testimony for trial. What we now know is that because the Cory Watson law firm simply "assumed" that Dr. Lagoo would travel voluntarily to testify in Rhode Island, counsel waited until the eve of trial to request that Defendants attend a second deposition to preserve her testimony for trial. The lack of diligence on the part of members of the Cory Watson firm then prompted the "trial team's" last minute scrambling, as described by Mr. Wallace and Mr. Conlin, all of which then led to the filing of the July 12 memorandum.

Second, although Plaintiffs' counsel may have hoped to present Dr. Lagoo live at trial, no one from the trial team or the Cory Watson law firm ever advised her that she could not be compelled to come to Rhode Island. In this respect, no one on the trial team could have had a "good faith belief"

that she would come voluntarily. In order to have a belief based on "good faith," it would have been necessary to lay all the cards on the table and then ask whether Dr. Lagoo would come to trial in Rhode Island voluntarily. In fact, no one from the Cory Watson law firm <u>ever</u> told Dr. Lagoo that she could not be compelled to travel to Rhode Island. She learned this critical fact only after consulting with counsel for Duke University Medical Center. Upon being so informed, Dr. Lagoo advised Mr. Conlin she would not appear at trial.

## CONCLUSION

While the Court is mindful that counsel were all working under great pressure during the time frame when the July 12 memorandum was drafted and filed with the Court, Mr. Cory was appointed Co-Lead Plaintiffs' Counsel by this Court based on his representation and assurance that he and his law firm were capable of handling the complex and demanding responsibilities attendant to that position. As the Court observed at oral argument on Mr. Cory's response to the order to show cause, Mr. Cory has always comported himself as a gentleman in his many appearances before this Court and he has otherwise fulfilled his responsibilities as an officer of the court. The Court accepts his explanation as to how these events came about and his pledge that he will take the necessary measures to ensure that the failings outlined in this memorandum are not repeated. The Court finds that Mr. Cory has, therefore, shown cause why his appointment should not be vacated.

SO ORDERED

_/s/ Mary M. Lisi_
Mary M. Lisi
Chief United States District Judge
March  11 , 2011.