UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TERRY L. ELLINGTON,
    Plaintiff

  v.                                     C.A. No. 007-470-ML
                                          MDL Docket No. 07-1842ML
                                          In Re: Kugel Mesh Hernia
                                          Repair Patch Litigation
DAVOL, INC. and C.R. BARD, INC.,
    Defendants.

**MEMORANDUM AND ORDER**

Mary M. Lisi, Chief United States District Judge.

**I. Background Summary**

This case is part of the multidistrict litigation ("MDL") generally referred to as *In re Kugel Mesh Hernia Patch Products Liability Litigation*, MDL No. 1842, No. 07-MD-1842-ML (D.R.I.). The MDL involves claims surrounding allegedly defective hernia repair patches designed and manufactured by Davol, Inc. ("Davol"), Bard Devices, Inc. ("Bard Devices"), and C.R. Bard, Inc. ("Bard," together with Davol, the "Defendants").

A large number of cases in this MDL were transferred to this Court by the United States Judicial Panel ("USJP") on Multidistrict Litigation. The plaintiff in this particular case, however, Terry L. Ellington ("Ellington" or the "Plaintiff"), elected to file her claims in this Court directly. Ellington underwent surgery in Arizona, during which she received a hernia repair patch that was subsequently recalled by the Federal Drug Administration ("FDA").

Shortly after the surgery, Ellington moved to Oregon and, at the time she filed her complaint against Davol and Bard, Ellington was an Oregon resident. After Ellington developed certain complications, the patch was removed in Oregon. According to more recent filings, Ellington now resides in Arizona. There is no indication that Ellington has any connections to Rhode Island, apart from having filed a complaint in this state against the Defendants, one of which, Davol, is headquartered and conducts business in Rhode Island.[1]

The case has been scheduled for trial in October 2012. The matter now before the Court is Ellington's motion for application of Rhode Island Law. The Defendants have objected to Ellington's motion and assert that Oregon law should be applied. Ellington has filed a reply thereto.

**II. Choice-of-Law Principles**

Jurisdiction in this tort case is based on diversity of citizenship; consequently, the Court is required to apply Rhode Island choice-of-law principles. Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1092 (1st Cir. 1989)("In a tort case invoking diversity jurisdiction, a federal district court must apply the forum's choice-of-law principles."). Rhode Island has adopted an "interest-weighing" approach to determine choice of law questions.

---

[1] Davol, Inc. is a Delaware corporation; C.R. Bard, Inc. is a New Jersey corporation.

Taylor v. Massachusetts Flora Realty, Inc., 840 A.2d 1126, 1128 (R.I. 2004); Woodward v. Stewart, 104 R.I. 290, 299, 243 A.2d 917, 923, *cert. denied*, 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed. 2d 371 (1968). Under this approach, the Court must determine "which state 'bears the most significant relationship to the event and the parties.'" Taylor v. Massachusetts Flora Realty, Inc., 840 A.2d at 1128 (quoting Najarian v. Nat'l Amusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001)(internal citation omitted)).

The factors to be considered in deciding which law should be applied include "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." Najarian v. Nat'l Amusements, Inc., 768 A.2d at 1255 (citing Pardey v. Boulevard Billard Club, 518 A.2d 1349, 1351 (R.I. 1986)).
In order to apply these principles, the Court must consider the following points of contact: "'(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" Najarian v. Nat'l Amusements, Inc., 768 A.2d at 1255 (quoting Brown v. Church of the Holy Name of Jesus, 105 R.I. 322, 252 A.2d 176 (1969))(citing Restatement (Second) *Conflict of Laws*, § 145(2)(1971).

In addition, the Rhode Island Supreme Court has indicated that, "'in an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship ***.'" Najarian v. Nat'l Amusements, Inc., 768 A.2d at 1255 (quoting Blais v. Aetna Cas. & Sur. Co., 526 A.2d 854, 856-57 (R.I. 1987)). Although the Court's analysis is not limited to considering this factor, "the most important factor is the location where the injury occurred." Taylor v. Massachusetts Flora Realty, Inc., 840 A.2d at 1128.

### III. The Parties' Positions

In her complaint, Ellington has stated claims for (Count I) Negligence, (Count II) Violation of the Rhode Island Deceptive Trade Practices Act, (Count III) Strict Product Liability, (Count IV) Negligent Infliction of Emotional Distress, (Count V) Intentional Infliction of Emotional Distress, (Count VI) Breach of Implied Warranty, (Count VII) Failure to Warn, (Count VIII) Constructive Fraud and (Count IX) Misrepresentation by Omission. In arguing for the application of Rhode Island law to her claims, Ellington asserts that Rhode Island bears the most significant relationship to the events and parties in this case. Ellington's assertion is based primarily on the allegation that the CK Patch which she received was designed, manufactured, and first placed into the stream of commerce in Rhode Island. Ellington also encourages the Court to follow the reasoning in a 2011 Rhode Island

-4-

state court case involving the Defendants' product, in which Rhode Island State law was applied. See Ingram v. Davol, Inc., 2011 R.I. Super. LEXIS 17, C.A. No. PC 07-4701 (R.I. Super. Feb. 9, 2011). Ellington further alleges that Davol manages its entire sales force from Rhode Island, approves all marketing messages, manages all facets of the Davol Surgeon Training Program, and provides incentives for its Territory Managers.

Ellington suggests that the Defendants had a reasonable expectation that Rhode Island law would be applied in any litigation related to their products; that such application would assist in maintaining interstate order and would simplify the Court's judicial task[2]; and that it would advance Rhode Island's governmental interest.

On their part, the Defendants point out that this Court has twice rejected other plaintiffs' suggestions that it apply Rhode Island law. Although this is correct, the Court notes that, in both cases, the request was made shortly before the respective cases were scheduled to commence trial and long after discovery had closed and the time for dispositive motions had passed. Moreover, one of those cases, Whitfield v. Davol, C.A. No. 07-1918-ML, was transferred to this Court from the Western District of Missouri, where the plaintiff had elected to file his claims.

---

[2] Alternatively, Ellington suggests, without further elaboration, that this Court apply Rhode Island law to those cases in which the state where the hernia patch was implanted is different from the place of injury. Pltf.'s Mem. 14 n. 6.

The Defendants argue that the place of injury is the decisive factor in the Rhode Island's choice-of-law analysis and that the only connection of this case with Rhode Island is the fact that Davol is headquartered and conducts business here. Bard, however, is organized and headquartered in New Jersey and the product at issue was manufactured in Puerto Rico. The Defendants request that this Court apply Oregon law or defer its ruling until an issue requiring application of substantive law is presented in this action.[3] Defs.' Mem. 3.

**IV. Discussion**

(A) Factors in Tort Cases

The parties are in agreement that Oregon is the place of injury where Ellington presented to the hospital complaining of abdominal pain and where the hernia patch was explanted. Because this is essentially an action for personal injury, "unless, with respect to the particular issue, some other state has a more significant relationship," the place of injury is the "most important factor" under a Rhode Island choice-of-law analysis. Taylor, 840 A.2d at 1128; Najarian, 768 A.2d at 1255. Moreover, Ellington, at the time she incurred the injury and at the time she commenced litigation, was a resident of Oregon, which constitutes a significant relationship between the plaintiff and that state.

---

[3] As previously noted, this case has been scheduled for trial to commence in four months. Moreover, a determination of which substantive law applies could be a factor in directing the parties' discovery.

With respect to the conduct which led to her alleged injury, Ellington's assertions are not undisputed. Although Davol is headquartered in Rhode Island, it is a Delaware corporation which does business in many states. Bard is incorporated and based in New Jersey. The manufacture of the product at issue apparently occurred in Puerto Rico. Moreover, the implantation of the hernia patch occurred in Arizona, where the product was marketed, shipped, and sold.

As Ellington acknowledges, the question of where the respective parties are domiciled, incorporated, or conduct business is somewhat diverse and does not conclusively indicate application of Rhode Island law.

Ellington states that she only came in contact with the Defendants' product as a recipient of the hernia patch and had no direct contact with either of the defendants. She suggests, however, that this factor should not weigh heavily in the Court's analysis. Under the circumstance of this case, there is no discernible "relationship" between the Plaintiff and the Defendants and the Defendants' respective home states. Moreover, as the Defendants point out, Ellington received the product in Arizona, which does not indicate either Rhode Island or Oregon law.

(B) Policy Considerations

Ellington correctly states that the Rhode Island Supreme Court recently affirmed an application of Rhode Island law in a case involving an oil pre-heater manufactured in Rhode Island where alleged negligence by the Rhode Island manufacturer resulted in

damages to the plaintiff's facility in Massachusetts. <u>Harodite Indus. Inc. v. Warren Elec. Corp.</u>, 24 A.3d 514 (R.I. 2011). The trial court stated that "it should not be a surprise to a Rhode Island domiciled corporation that it may be sued in a Rhode Island court, under Rhode Island law, for a product manufactured in Rhode Island." <u>Id.</u> at 527. In the instant case, as previously stated, the product was not manufactured in Rhode Island, but in Puerto Rico, and one of the defending corporations is domiciled in New Jersey. Moreover, given the emphasis Rhode Island choice-of-law analysis places on the "place of injury," an equally predictable result would be achieved by applying the law of the state where the injury actually incurred and where the plaintiff resides. Certainly, a company placing products into interstate commerce would have a reasonable expectation that, in the event of an injury, it could be sued in a number of states where the laws of the respective jurisdictions would be applied to the litigation.

With respect to the maintenance of interstate order, both Oregon and Rhode Island can claim a significant interest in the litigation. Oregon's interest in the protection of its residents against injury causing conduct originating outside its borders is weighed against Rhode Island's interest to apply its substantive laws in order to regulate the conduct of manufacturers domiciled in this state.

Although it would arguably be a simplification of the judicial task were this Court to apply Rhode Island law in each of the MDL cases before it, such consideration should not outweigh the more

significant practical and policy considerations of the choice-of-law analysis. Moreover, this Court has previously tried two of the MDL cases before it, in which it applied the substantive law of Missouri and North Carolina, respectively, which did not present an unsurmountable task.

As the parties agree, both Oregon and Rhode Island (and, to a lesser extent, Arizona) have a connection to this case and a corresponding governmental interest in protecting their citizens. Likewise, the Plaintiff's case could be tried under the laws of any of the three states and neither law can be deemed "better" or "worse;" therefore, this factor carries little weight in the Court's consideration.

This is a close case in which connections exist with at least two, arguably three, different states. However, after applying all the factors indicated in a Rhode Island choice-of-law analysis and weighing the policy considerations, this Court is of the opinion that Oregon bears the more significant relationship to the event at issue and the parties. Oregon, which was also Ellington's state of residency at the time she filed her complaint, is undisputedly the place where the injury occurred. Although some of the factors suggest that application of either Rhode Island or Oregon law would be appropriate, Ellington has not supported her contention that Rhode Island has a more significant relationship to this case than

Oregon.[4]

## Conclusion

For the reasons stated herein, the Plaintiff's motion for application of Rhode Island law is DENIED.


SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge
June 5 , 2012

---

[4] The Court is mindful that, with respect to Ellington's claims, Rhode Island law may be more favorable to her case, *e.g.*, unlike Oregon, Rhode Island does not impose a cap on personal injury damages and it does not recognize the learned intermediary doctrine, which may constitute a defense for Davol and/or Bard. However, the mere election to file a complaint in Rhode Island does not serve to establish a relationship between the State and the Plaintiff.